**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PB LIFE AND ANNUITY CO. LTD, *et al.*,[1] | Case No. 20-12791 (LGB) |
| Debtors in Foreign Proceedings. | (Jointly Administered) |
| Universal Life Insurance Co., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 21-01169 (LGB) |
| Global Growth Holdings, Inc., *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**OF DEFENDANT CHRISTOPHER HERWIG TO**
**DISMISS THE AMENDED COMPLAINT**

WOMBLE BOND DICKINSON (US) LLP
Todd A. Atkinson (NY4970828)
811 Main Street, Suite 3130
Houston, Texas 77002
Telephone: (346) 998-7849
Facsimile: (346) 998-5901
Email: todd.atkinson@wbd-us.com

-AND-

Matthew P. Ward, Esq.
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4338
Facsimile: (302) 598-9256
Email: matthew.ward@wbd-us.com

*Counsel for Defendant Christopher Herwig*

---

[1] PB Life and Annuity Co., Ltd., Northstar Financial Services (Bermuda) Ltd., Omnia Ltd. and PB Investment Holdings Ltd., foreign Debtors, are Bermuda limited companies which each have a registered address in Bermuda c/o Deloitte Ltd., Corner House, 20 Parliament Street, Hamilton HM 12, Bermuda, and are Jointly Administered for procedural purposes, by Order of this Court entered on April 2, 2021, ECF No. 42.

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT .................................................................................2

EVENTS ALLEGED UNDERLYING THE AMENDED COMPLAINT ...................................4

PROCEDURAL HISTORY.......................................................................................5

ARGUMENT .......................................................................................................5

I.  TO THE EXTENT THE AMENDED COMPLAINT SEEKS TO RECOVER PBLA'S
    ASSETS, THEN ULICO LACKS STANDING TO BRING THE CLAIMS ASSERTED
    IN THE AMENDED COMPLAINT ..................................................................5

    A.  ULICO Lacks Standing Because the Court's Recognition Order Enjoins Creditors
        from Bringing Actions Concerning PBLA's Assets............................................5

    B.  ULICO Lacks Standing to Bring this Action on Behalf of the JPLs .............................7

II.  TO THE EXTENT THE AMENDED COMPLAINT DOES NOT SEEK TO RECOVER
     PBLA'S ASSETS, THE COURT
     LACKS SUBJECT MATTER JURISDICTION ..................................................9

III.  THE COMPLAINT FAILS UNDER RULE 12(B)(2) FOR LACK OF
      PERSONAL JURISDICTION OVER HERWIG..............................................10

IV.  THE AMENDED COMPLAINT FAILS TO STATE ANY CLAIMS AGAINST HERWIG
     AS A MATTER OF LAW AND SHOULD
     BE DISMISSED UNDER RULE 12(B)(6) ......................................................11

     A.  Applicable Pleading Standards ...................................................................11

     B.  Count I (Voidable Transfer) Fails to State a Claim Against Herwig ..........................13

     C.  Count II (Unjust Enrichment), Count III (Conversion) and Count IV (Constructive
         Trust) are Duplicative Tack-On Claims that Fail to State a Claim Against Herwig.........17

     D.  Count V (Fraud) and Count VI (Breach of Fiduciary Duty) Fail to State a Claim
         Against Herwig .....................................................................................20

V.  THE COURT MAY NOT ENTER FINAL
    ADJUDICATIONS IN THIS CASE ...............................................................24

VI.  HERWIG EXPRESSLY RESERVES THE RIGHT TO JOIN IN AND INCORPORATE
     MOTIONS TO DISMISS THE AMENDED COMPLAINT FILED AND TO BE
     FILED BY ANY OTHER DEFENDANT IN THIS CASE .............................................24

VII.  CONCLUSION ...........................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Acito v. IMCERA Group, Inc.*,
 47 F.3d 47 (2d Cir. 1995) ................................................................. 20

*Amidax Trading Grp. v. SWIFT SCRL*,
 671 F.3d 140 (2d Cir. 2011) ............................................................... 7

*Ashcroft v. Iqbal*,
 129 S.Ct. 1937 (2009) ........................................................... 11, 12, 14

*Atlanta Shipping Corp., Inc. v. Chemical Bank*,
 818 F.2d 240 (2d Cir. 1987) .............................................................. 12

*Atuahene v. City of Hartford*,
 10 Fed. Appx. 33 (2d Cir. 2001) ........................................................ 15

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..................................................................... 12, 14

*Buchwald Capital Advisors LLC v. JP Morgan Chase Bank (In re M. Fabrikant & Sons, Inc.)*,
 541 Fed.Appx. 55 (2d Cir. 2013) ...................................................... 15

*Corsello v. Verizon N.Y., Inc.*,
 18 N.Y.3d 777, 790 (N.Y. 2012) ....................................................... 18

*DeAngelis v. Corzine*,
 17 F.Supp.3d 270 (S.D.N.Y. 2014) ................................................... 22

*Decker v. Massey-Ferguson, Ltd.*,
 681 F.2d 111 (2d Cir. 1982) .............................................................. 13

*Ellison v. American Image Motor* Co.,
 36 F. Supp.2d 628 (S.D.N.Y. 1999) .................................................. 21

*Fishbein v. Miranda*,
 670 F. Supp. 2d 264 (S.D.N.Y. 2009) ................................................. 7

*Georgia Malone & Co., Inc. v. Rieder*,
 19 N.Y.3d 511 (2012) ...................................................................... 18

*Gowan v. Amaranth LLC (In re Dreier LLP)*,
 452 B.R. 451 (Bankr. S.D.N.Y. 2011) ................................. 11, 12, 13, 14

*Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*,
 452 B.R. 467 (Bankr. S.D.N.Y. 2011) ........................................... 14, 15

*Gross v. Diversified Mortgage Investors*,
 431 F.Supp. 1080 (S.D.N.Y. 1977) ................................................... 13

*Harsco Corp. v. Segui*,
 91 F.3d 337 (2d Cir. 1996) ............................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

*ICD Holdings v. Frankel*,
  976 F.Supp. 234 (S.D.N.Y. 1997) ............................................................... 23

*In re Aegan Marine Petro. Network, Inc. Secs. Litig.*,
  __F.Supp.3d __, 2021 WL 1178216 (Bankr. S.D.N.Y. Mar. 29, 2021)................... 10

*In re Atlas Shipping A/S*,
  404 B.R. 726 (Bankr. S.D.N.Y. 2009)........................................................... 9

*In re Commodore Int'l Ltd.*,
  262 F.3d 96 (2d Cir. 2001) ....................................................................... 7

*In re Fairfield Sentry Ltd. Litig*
  458 B.R. 665 (S.D.N.Y. 2011)................................................................... 8

*In re Glitnir banki hf.*,
  2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) ...................................... 8

*In re STN Enters*,
  779 F.2d 901 (2d Cir.1985) ...................................................................... 7

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ..................................................................... 23

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings, Inc.)*,
  541 B.R. 551 (Bank. S.D.N.Y. 2015) .......................................................... 19

*Leidel v. Annicelli*,
  114 A.D.3d 536 (N.Y. App. Div. 2014) ....................................................... 19

*Liebmann v. Pucci (In re Ampat So. Corp.)*,
  128 B.R. 405 (Bank. D. Md. 1991).............................................................. 16

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y. 3d 173 (N.Y. 2011) ..................................................................... 18

*Meadowlands Invs., LLC v. CIBC World Markets Corp.*,
  2005 WL 2347856 (S.D.N.Y. Sept. 22, 2005)................................................ 21

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2nd Cir. 1993) ................................................................... 21

*Morgens Waterfall Holdings, L.L.C. v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
  198 F.R.D. 608 (S.D.N.Y. 2001) ............................................................... 21

*Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*,
  222 B.R. 417 (Bankr. S.D.N.Y. 1998)......................................................... 22

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
  639 F.3d 572 (2d Cir. 2011) ..................................................................... 9

*Picard v. Madoff (In re Bernard L. Madoff Inv. Secs. LLC)*,
  458 B.R. 87 (Bankr. S.D.N.Y. 2011)........................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

*Pullman v. Alpha Media Publ'g,*
  2013 WL 1290409 (S.D.N.Y. Jan. 11, 2013) ................................................... 17, 22

*Rose v. Fahfco Mgmt. Group, LLC,*
  2014 WL 7389900 (S.D.N.Y. Dec. 15, 2014) ....................................................... 20

*Schulman Family Enter. v. Schulman,*
  2011 WL 6224563 (N.Y. App. Div. 2011) ........................................................... 19

*Segal v. Gordon,*
  467 F.2d 602 (2d Cir. 1972) ................................................................................. 13

*Shields v. Citytrust Bancorp, Inc.,*
  25 F.3d 1124 (2d Cir. 1994) ................................................................................. 22

*SPV Osus Ltd. v. UBS AG,*
  882 F.3d 333 (2d Cir. 2018) ................................................................................... 9

*Stern v.Marshall,*
  131 S. Ct. 2594 (2011) ....................................................................................... 4, 24

*Tribune Co. v. Purcigliotti,*
  869 F. Supp. 1076 (S.D.N.Y. 1994) ..................................................................... 18

*Trustees of Plumbers & Pipefitters Nat. Pension Fund v. De-Con Mech. Contractors,
  Inc.,*
  896 F.Supp. 342 (S.D.N.Y. 1995) ........................................................................ 20

*Tutor Perini Building Corp. v. George Washington Bridge Bus Station Develop. Venture
  LLC (In re George Washington Bridge Bus Station Develop. Venture LLC),*
  2021 WL 568241 (S.D.N.Y. Feb. 16, 2021) ........................................................... 7

*Vaughn v. Air Line Pilots Ass'n, Int'l,*
  604 F.3d 703 (2d Cir. 2010) ................................................................................. 12

*Wynn v. AC Rochester,*
  273 F.3d 153 (2d Cir. 2001) ................................................................................. 20

**Statutes**

11 U.S.C. § 541 ........................................................................................................ 8

11 U.S.C. § 544 ................................................................................................... 5, 10

11 U.S.C. § 550 ........................................................................................................ 5

11 U.S.C. § 551 ...................................................................................................... 11

11 U.S.C. § 1517 ...................................................................................................... 7

11 U.S.C. § 1521 ........................................................................................... 5, 7, 9, 10

11 U.S.C. § 1523 .................................................................................................... 10

11 U.S.C. § 1528 .................................................................................................... 10

28 U.S.C. § 157 ........................................................................................... 11, 12, 26

## TABLE OF AUTHORITIES

**Page(s)**

28 U.S.C. § 1332 ................................................................................................ 11, 12

28 U.S.C. § 1334 .................................................................................................... 11

**Rules**

Fed. R. Bankr. P. 9 ................................................................................................... 2

Fed. R. Bankr. P. 12 ................................................................................................. 2

Fed. R. Civ. P. 8 ..................................................................................................... 17

Fed. R. Civ. P. 9 .............................................................. 14, 16, 17, 22, 23, 25

Fed. R. Civ. P. 12 .................................................................................... 12, 13, 15

Defendant Christopher Herwig ("Herwig") submits this memorandum of law in support of his motion to dismiss (the "Motion to Dismiss") the First Amended Complaint (the "Amended Complaint") pursuant to Rules 9(b) and 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable hereto by Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PRELIMINARY STATEMENT

By the Amended Complaint, Puerto Rican insurance company Plaintiff Universal Life Insurance Company ("ULICO") seeks to recover over $500 million that Bermudian insurance company Private Bankers Life & Annuity Co., Ltd. (the "Debtor" or "PBLA") allegedly transferred. Despite having uncovered no real operative facts, ULICO hastily commenced this action apparently clouded by concern about the statute of limitations, commencing this case on July 6, 2021, 4 years after PBLA allegedly transferred $44 million.[2] The Amended Complaint fails on nearly every jurisdictional, procedural and substantive ground.

ULICO claims in the Amended Complaint that Greg Lindberg and the entities he controlled engaged in a confidence game where these entities acted as alter egos of Lindberg behind a veil of smoke and mirrors. ULICO does not base the Amended Complaint on the law— glaringly omitted from the enumerated counts—nor on operative facts. Instead, as against Herwig, the Amended Complaint rests on a deplorable device: "*guilt by association*." ULICO accuses Herwig of fraud, which he purportedly committed as an affiliate and alter ego of Lindberg and the entities Lindberg controlled.

The Amended Complaint posits that because a jury found Lindberg guilty of "conspiring to bribe the North Carolina Insurance Commissioner with $2 million in payments," Herwig must

---

[2] *See* Compl. ¶ 127 (alleging PBLA made three large transfers on July 7, 2017, aggregating over $44 million).

be guilty too. Missing from the Amended Complaint, however, is anything supporting the alleged affiliation. Even worse, other than conclusory allegations ULICO parrots in its claims against Herwig to try and meet the elements of these claims, the Amended Complaint contains not much else. At bottom, the Amended Complaint contains nothing to support ULICO's very serious claim of "fraud" against Herwig or likewise the other misguided claims against him.

As threshold matters—and there are many in this case—neither ULICO nor the JPLs have standing to prosecute the claims in the Amended Complaint. PBLA is a debtor in a Chapter 15 case pending before this Court in connection with a foreign main proceeding in Bermuda. In this case, as in most Chapter 15 cases, except for the foreign representative, all parties are explicitly barred from bringing actions to recover debtors' assets. To the extent this action seeks to recover PBLA's assets, ULICO accordingly has violated the Court's order granting recognition of PBLA's foreign proceeding in Bermuda. Further, "derivative" standing is similarly unavailing to ULICO because section 1521(a)(7) of the Bankruptcy Code expressly prohibits the JPLs from obtaining "the relief available" under sections 544(b), 548 and 550 of the Bankruptcy Code without filing a plenary bankruptcy case. Besides this, to the extent this action does not concern PBLA's assets, a position belied by the Amended Complaint itself, this Court lacks subject matter jurisdiction in the first instance.

But, even if ULICO had standing, and even if this Court had subject matter jurisdiction, ULICO's claims against Herwig still fail as a matter of law. Among other claims, ULICO fails to adequately plead its voidable transfer claim against Herwig. Notably absent from the Amended Complaint are the vital statistics of transferee liability: the who, when and how much. Most importantly, ULICO never shows (nor can it show) that Herwig received any of the $500 million that are in dispute, as Herwig was not a transferee.

3

Finally, to the extent this case is not dismissed, this Court lacks jurisdiction to enter final judgments. This case, like *Stern v. Marshall*, involves non-bankruptcy law claims that exist independently of PBLA's bankruptcy proceeding and does not involve an adjustment of a debtor-creditor relationship. Accordingly, under *Stern*, it would be unconstitutional for this Court to enter final judgments in this case.

For these and other reasons, as more fully discussed herein, the Court should dismiss the Amended Complaint against Herwig.

## **EVENTS ALLEGED UNDERLYING THE AMENDED COMPLAINT**

According to the Amended Complaint, Lindberg implemented a scheme to monetize valuable assets held in a trust by transferring cash from the trust to PBLA and then to entities Lindberg controlled. *See* Compl. ¶¶ 5-7. The Amended Complaint repeatedly alleges that certain Lindberg "entities" were alter egos of Lindberg and each other. *See* Compl. ¶¶ 7, 18, 123, 145, 174. ULICO alleges that Lindberg personally guaranteed PBLA's obligations and was PBLA's 100% ultimate and beneficial owner. *See* Compl. ¶¶ 4, 18. Besides this, the Amended Complaint alleges that Lindberg signed all the transactions underlying the alleged transfers for which ULICO seeks to avoid. *See* Compl. ¶¶ 128, 133.

The Amended Complaint, nonetheless, further alleges—in wholly conclusory terms—that "Herwig at various times *assisted* Lindberg with his conspiracy to defraud ULICO" (Compl. ¶ 19, emphasis added) and PBLA's alleged transfers were made through the "direction" of not only Lindberg but through Herwig as well. *See* Compl. ¶¶ 136, 145-46. But the Amended Complaint is devoid of any factual material supporting these conclusory allegations against Herwig, employing instead wholly inappropriate and sloppy group pleading, defining Herwig as an affiliate and alter ego of Lindberg *himself* and the entities Lindberg owned and controlled. *See* Compl. ¶ 105.

## PROCEDURAL HISTORY

On September 25, 2020, the Supreme Court of Bermuda (the "Bermuda Court") appointed Rachelle Frisby and John Johnston of Deloitte as Joint Provisional Liquidators (the "JPLs") to wind up PB Life & Annuity Co. Ltd. (the "Debtor" or "PBLA") in Bermuda (the "Bermuda Proceeding").

On December 3, 2020 (the "Petition Date"), the JPLs filed a voluntary petition for relief under Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court.

On January 15, 2021, this Court issued an order (the "Recognition Order"), granting recognition of the Bermuda Proceeding as a foreign main proceeding under section 1517 of the Bankruptcy Code and appointing the JPLs the foreign representative (together, the "Foreign Representative") of PBLA and a number of other debtors. *See* Bankr. Doc. No. 33.

## ARGUMENT

## I.

## TO THE EXTENT THE AMENDED COMPLAINT SEEKS TO RECOVER PBLA'S ASSETS, THEN ULICO LACKS STANDING TO BRING THE CLAIMS ASSERTED IN THE AMENDED COMPLAINT

To the extent the Amended Complaint seeks to recover PBLA's assets, ULICO lacks standing in this case, whether standing in its own shoes or the JPLs' shoes, because (i) the Recognition Order enjoins creditors like ULICO from this action; and (ii) the JPLs lack standing to avoid PBLA's transfers under section 1521(a)(7) of the Bankruptcy Code.

### A.    ULICO Lacks Standing Because the Court's Recognition Order Enjoins Creditors from Bringing Actions Concerning PBLA's Assets

ULICO does not have standing to bring the Amended Complaint on its own behalf for the plain and important reason that the Recognition Order expressly precludes purported creditors from asserting claims concerning PBLA's or any of the other Chapter 15 debtor's assets.  In

particular, the Recognition Order provides, in pertinent part, that:

> All entities . . ., other than the JPLs and their expressly
> authorized representatives and agents, are hereby enjoined
> from:
>
> (e) commencing or continuing an individual action or
> proceeding concerning the Debtors' assets, rights,
> obligations, or liabilities to the extent they have not been
> stayed pursuant to section 1520(a) of the Bankruptcy
> Code[.]

Recognition Order, ¶ 7(e) (emphasis added).

Further, the Amended Complaint is directly at odds with chapter 15 itself and the Court's

finding in the Recognition Order that:

> Absent the requested relief, the efforts of the Bermuda
> Court and the JPLs in conducting the Bermuda Proceeding
> and effecting the proposed administration of the Debtors
> may be thwarted by the actions of certain creditors and
> other entities, a result that is antithetical to the purposes of
> chapter 15 in section 1501(a) of the Bankruptcy Code.

Recognition Order, ¶ M (emphasis added).

Here, by the Amended Complaint, ULICO seeks to recover PBLA's transfers and, thus, it

appears to concern the debtors' assets. In fact, by invoking section 541 of the Bankruptcy Code

as a statutory predicate for the Amended Complaint, ULICO alleges that it seeks to recover

PBLA's property. See Compl. ¶ 118 (relying on section 541 of the Bankruptcy Code as a

statutory predicate for this action). Accordingly, the Amended Complaint is barred by the

express terms of the Recognition Order.[3]

When bringing a lawsuit, a plaintiff "must allege facts that affirmatively and plausibly

---

[3] Even so, at the status conference on August 12, 2021, the JPLs' counsel suggested to the Court that they were okay with ULICO bringing this action. Yet the JPLs are not empowered to unilaterally change the terms of the Recognition Order and, at the very least, should request permission from the Court to amend this order, after notice and a hearing.

suggest it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (citations omitted). Where, as here, a plaintiff lacks standing, the court lacks subject matter jurisdiction. *See Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (emphasizing that "if Plaintiffs lack standing under Article III of the U.S. Constitution, there is no subject matter jurisdiction and the Court must dismiss this case"). On this basis alone the Court should dismiss the Amended Complaint.

### B.   ULICO Lacks Standing to Bring this Action on Behalf of the JPLs

ULICO also does not have standing to bring the Amended Complaint on behalf of the JPLs, as it purports to do in this case. ULICO alleges it has standing to pursue this action because the JPLs declined to do so. *See* Compl. ¶¶ 9-10. But, even if ULICO could assert claims "derivatively" on behalf of the JPLs—an ability it has not established—because the JPLs lack standing, the same is true for ULICO.

As an initial matter, ULICO has neither sought nor obtained approval from the Court to bring this action on behalf of the Foreign Representative. The Court can and should dismiss the Amended Complaint on this basis. *See, e.g., In re STN Enters*, 779 F.2d 901, 904-05 (2d Cir.1985) (recognizing creditors' committee standing to pursue debtor's cause of action against a third-party where trustee unjustifiably fails to bring the action, and the committee first obtains court approval); *In re Commodore Int'l Ltd.*, 262 F.3d 96, 100 (2d Cir.2001); *see also Tutor Perini Building Corp. v. George Washington Bridge Bus Station Develop. Venture LLC (In re George Washington Bridge Bus Station Develop. Venture LLC)*, 2021 WL 568241, at *5 (S.D.N.Y. Feb. 16, 2021) (concluding, in affirming bankruptcy court's denial of derivative standing, creditor did not seek to pursue claims that will grow the size of the bankruptcy estate and explaining that "[t]he Second Circuit has instructed courts to consider the probable 'financial recovery' in assessing whether pursuit of a claim would benefit the estate").

7

ULICO also would not be able to escape this result by seeking "derivative" standing from the Court because even had it done so, it would have simply revealed the JPLs own lack of standing to avoid the alleged transfers.  In particular, section 1521(a)(7) of the Bankruptcy Code expressly bars the JPLs from bringing Count I, as follows:

> (a) Upon recognition of a foreign proceeding, whether main or nonmain, . . . the court may, at the request of the foreign representative, grant any appropriate relief, including . . . .
>
> (7) granting any additional relief that may be available to a trustee, *except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).*

11 U.S.C. § 1521(a)(7) (emphasis added). Thus, "[u]nlike a bankruptcy trustee, the JPLs *cannot bring avoidance claims on behalf of other creditors under bankruptcy or state fraudulent transfer laws*." *In re Glitnir banki hf.*, 2011 WL 3652764, at *7 n.17 (Bankr. S.D.N.Y. Aug. 19, 2011) (emphasis added).   The JPLs accordingly have standing only if "a plenary U.S. bankruptcy case under Chapter 7 or 11 within a Chapter 15 case" is pending.  *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 678 (S.D.N.Y. 2011) (citation omitted).[4]

Section 1523(a) of the Bankruptcy Code confirms that section 1521(a)(7) bars a foreign representative from asserting avoidance claims in a Chapter 15 case.  Section 1523(a) provides, in pertinent part, that a "foreign representative has standing in a case concerning the debtor *under another chapter of this title* to initiate actions under sections 522, 544, 545, 547, 548, 550, 553, and 724(a)." 11 U.S.C. § 1523 (a) (emphasis added).   When read together, sections 1523(a) and 1521(a)(7) make clear that a foreign representative may bring avoidance actions *only* in a case under a chapter of Title 11 *other than Chapter 15*, such as a Chapter 7 or 11 case.  *See, e.g., In re*

---

[4] "The ability to file a plenary case within a Chapter 15 case is provided for in sections 1523(a) and 1528." *Id.*

*Atlas Shipping A/S*, 404 B.R. 726, 742-43 (Bankr. S.D.N.Y. 2009) (explaining that "[s]ection 1521(a)(7) carves out avoidance powers under §§ 544, 547 and 548 which are only available to the trustee in a full case under another chapter") (citations omitted).  Thus, because the JPLs may not pursue avoidance claims against Herwig, neither can ULICO.

## II.

### TO THE EXTENT THE AMENDED COMPLAINT DOES NOT SEEK TO RECOVER PBLA'S ASSETS, THE COURT LACKS SUBJECT MATTER JURISDICTION

To the extent ULICO contends the Amended Complaint does not seek to recover PBLA's assets (a position contrary to the Amended Complaint itself as explained above) this Court lacks subject matter jurisdiction.  District courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under Title 11," 28 U.S.C. § 1334 (b), which are then referred to the bankruptcy courts. *See* 28 U.S.C. § 157.  ULICO alleges the Court has "related to" jurisdiction. *See* Compl. ¶ 114.  A civil proceeding is "related to" a bankruptcy case "if the action's outcome might have any conceivable effect on the bankrupt estate." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339-40 (2d Cir. 2018) (quoting *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)).

Here, to the extent the Amended Complaint does not seek to recover PBLA's assets, then this action neither "arises under," nor "arises in," nor is "related to" a case under Title 11.  Accordingly, the Court lacks subject matter jurisdiction and, accordingly, should dismiss the Amended Complaint.[5]

---

[5] In this regard, because ULICO seeks to recover the alleged transfer in the Amended Complaint *solely for itself*, the Court lacks even "related to" subject matter jurisdiction under 28 U.S.C. § 1334 (b), taking aside the question of whether ULICO can do so.  *See* 11 U.S.C. § 551.

Despite this, ULICO further alleges the Court also has "diversity" jurisdiction "pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between ULICO and all of the defendants." Compl. ¶ 115. But, even if complete diversity among the parties exists in this case (which ULICO fails to demonstrate), "diversity" jurisdiction does not provide an independent basis for the Court's subject matter jurisdiction. The reason for this is plain, bankruptcy courts derive their jurisdiction from 28 U.S.C. § 157—not 28 U.S.C. § 1332, a statute ULICO relies on but, by its terms, expressly applies only to district courts. *Compare* 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the *bankruptcy judges* for the district") (emphasis added) *with* 28 U.S.C. § 1332(a) ("The *district courts* shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States.") (emphasis added).

For this reason, the Court lacks subject matter jurisdiction and should dismiss the Amended Complaint.

## III.

## THE COMPLAINT FAILS UNDER RULE 12(B)(2) FOR LACK OF PERSONAL JURISDICTION OVER HERWIG

Similarly, the Amended Complaint fails under Rule 12(b)(2) because ULICO never even alleges personal jurisdiction over Herwig. "To allege personal jurisdiction over a defendant, group pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant" and "with respect to each claim asserted." *In re Aegan Marine Petro. Network, Inc. Secs. Litig.*, __F.Supp.3d __, 2021 WL 1178216, at *12 (Bankr. S.D.N.Y. Mar. 29, 2021). Here, the Amended Complaint merely alleges Herwig resides

in North Carolina—a fact militating against personal jurisdiction—and provides nothing to indicate he has sufficient minimum contacts with the state of New York, as no such contacts are even alleged.  In any event, Herwig has no such contacts.  Accordingly, the Complaint fails under Rule 12(b)(2) for lack of personal jurisdiction over Herwig.

## IV.

### THE AMENDED COMPLAINT FAILS TO STATE ANY CLAIMS AGAINST HERWIG AS A MATTER OF LAW AND SHOULD BE DISMISSED UNDER RULE 12(B)(6)

Even if ULICO were able to overcome the foregoing threshold defects of lack of standing, lack of subject matter jurisdiction, and lack of personal jurisdiction, the Amended Complaint lacks substance and fails to state any claims against Herwig as a matter of law. Accordingly, for the reasons below, the Court should dismiss each and every count of the Amended Complaint against Herwig under Rule 12(b)(6).

### A.    Applicable Pleading Standards

Courts use a two-prong approach when considering a motion to dismiss:  "First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in the factual garb. . . .  Second, the court must determine if these well-pleaded factual allegations state a 'plausible claim for relief.'"  *Gowan v. Amaranth LLC (In re Dreier LLP)*, 452 B.R. 451, 459-60 (Bankr. S.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)) ("*Iqbal*")(citations omitted).  "Courts do not make plausibility determinations in a vacuum; it is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id*. at 460 (quoting *Iqbal*, 129 S.Ct. at 1950)*.*  "A claim is plausible when the factual allegations permit 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'  Meeting the plausibility standard requires a complaint to plead facts

that show 'more than a sheer possibility that a defendant has acted unlawfully.'  A complaint that

only pleads facts that are 'merely consistent with a defendant's liability' does not meet the

plausibility requirement." *Id*. at 460 (citations omitted, quoting *Iqbal*, 129 S.Ct. at 1949, quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice. The pleadings must create the possibility of a right to relief that is

more than speculative." *Id*. at 460 (quoting *Iqbal*, 129 S.Ct. at 1949).  "[A] complaint must

contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its

face.'" *Id*. at 459 (quoting *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir.

2010)).

For counts involving fraud, as in Count I and Count V here, a further heightened pleading

standard applies.  Specifically, when "fraud is pleaded, Rule 9(b) requires the plaintiff to plead

fraud with particularity." *Id*. at 460-61 (citing *Atlanta Shipping Corp., Inc. v. Chemical Bank*,

818 F.2d 240, 251 (2d Cir. 1987)).  "Pursuant to Rule 9(b) 'in alleging fraud . . ., a party must

state with particularity the circumstances constituting fraud . . . .'" *Id.* at 460-61 (quoting Fed R.

Civ. P. 9(b)).  In the Second Circuit, "when a complaint charges fraud, it must: (1) detail the

statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3)

state where and when the statements (or omissions) were made, and (4) explain why the

statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir.

1996)).  The plaintiff "must allege facts that give rise to a strong inference of fraudulent intent . .

. by alleging facts to show that defendants had both motive and opportunity to commit fraud, or .

. . by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or

recklessness." *Amaranth,* 452 B.R. at 461 (citations and quotations omitted).  In this regard, the

Second Circuit has cautioned plaintiffs who may consider charging a defendant with fraud: "It is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the allege fraud consists of specifically." *Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972) (citations and quotations omitted). Rule 9(b) acts to prohibits this and, likewise, discourages the filing of complaints "as a pretext for discovery of unknown wrongs." *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087 (S.D.N.Y. 1977); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 116 (2d Cir. 1982) (emphasizing "Rule 9(b) will have failed in its purpose if conclusory generalizations . . . will permit a plaintiff to set off on a long and expensive discovery process in the hope of uncovering some sort of wrongdoing or of obtaining a substantial settlement").

As discussed below, the Amended Complaint entirely fails to satisfy the applicable pleading standards and therefore should be dismissed for failure to state claims against Herwig.

### B.    Count I (Voidable Transfer) Fails to State a Claim Against Herwig

Count I should be dismissed, pursuant to Federal Rule 12 (b)(6), against Herwig for failure to state a claim upon which relief can be granted. As an initial matter, Count I fails to properly re-allege the facts it claims support the fraudulent transfers—as paltry as they were— in the Amended Complaint, re-alleging only paragraphs 1 through 90 of the Amended Complaint and thereby omitting paragraphs 119 through 134. *See* Compl. ¶ 135.

More important, ULICO pleads no facts—let alone sufficient facts—to plausibly show that Herwig received any portion of the alleged transfers. Under both Federal Rules 8(a) and 9 (b), a complaint seeking recovery against a transferee must allege specific facts showing that the alleged transfer actually occurred; in particular, the complaint must "contain the necessary vital statistics – the who, when and how much of the purported transfers to establish an entity [or individual] as the subsequent transferee of the funds." *Amaranth*, 452 B.R. at 464 (citations and

quotations omitted) (dismissing transferee claims because complaint failed to allege facts showing the alleged transfer was made to transferee); *see Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*, 452 B.R. 467, 480 (Bankr. S.D.N.Y. 2011) (dismissing transferee claims where complaint failed to allege specific facts showing funds were received); *Picard v. Madoff (In re Bernard L. Madoff Inv. Secs. LLC)*, 458 B.R. 87, 120 (Bankr. S.D.N.Y. 2011) (explaining, through comparison, that complaint must apprise alleged transferees "which transactions are claimed to be fraudulent and why, when they took place, and how they were executed and by whom") (citations and quotations omitted).

Here, ULICO fails to adequately allege transferee liability against Herwig because it pleads no facts—let alone (as set forth in *Amaranth*, 452 B.R. at 464) the "necessary vital statistics" of "who, when, and how much"—to plausibly show that Herwig received any portion of the alleged transfers.  Moreover, the bald allegations that "PBLA under the direction of Lindberg, siphoned off more than $500 million of funds from the Trust . . . to Lindberg and his affiliated entities [and a]t one time, each of the named Defendants were recipients of such transfers from the Trust[,]" Compl. ¶¶ 124-25, do not plausibly show that *Herwig* received a fraudulent transfer.  Such "'naked assertion[s]' devoid of 'further factual enhancement'" do not suffice to meet the federal pleading standard.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

ULICO, nonetheless, attempts to supply two of the "necessary vital statistics"—the date and amount allegedly transferred—by providing piecemeal samples of the alleged transfers and grouping defendants together.  *See* Compl. ¶¶ 137-41.  The Amended Complaint alleges, for example, that "on July 7, 2017 disguised as loan and security agreements, PBLA loaned Trust Proceeds to various Lindberg affiliated entities," (Compl. ¶ 137) and alleges that all "[t]he

transactions above are merely examples of several that continued through December 31, 2018."
Compl. ¶ 142.

This misplaced attempt at "group pleading," however, is plainly inadequate under
Federal Rule 9(b). *See, e.g.*, *Buchwald Capital Advisors LLC v. JP Morgan Chase Bank (In re M.
Fabrikant & Sons, Inc.)*, 541 Fed.Appx. 55, 57-58 (2d Cir. 2013) (concluding, in affirming
dismissal, "[t]he Trustee has not identified the dates, amounts, and other relevant circumstances of
the particular transfers that it contends were made with the actual intend to defraud creditors");
*Novator*, 452 B.R. at 478 (emphasizing that under Federal Rule 9(b), "group pleading is
generally forbidden because each defendant is entitled to know what he is accused of doing")
(citations and quotations omitted). Moreover, even the more liberal Federal Rule 8(a) is not
satisfied where, as here, a complaint "lump[s] all the defendants together . . . and provid[es] no
basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir.
2001) (explaining that Rule 8, "requires at a minimum, that a complaint give *each defendant* fair
notice of what the plaintiff's claim is and the ground upon which it rests") (citation and
quotations omitted, emphasis added).[6]

Here, nothing in the Amended Complaint gives fair notice to Herwig of the amount
allegedly transferred to *him*, the specific date of any transfer to *him*, or the entities or entities
from which *he* allegedly received one or more transfers. Indeed, ULICO does not even specify
an aggregate amount of transfers, pleading instead that the transfers "are merely examples of the
several that continued through December 31, 2018," and, in other cases, alleging that the
transfers are "not exhaustive," entirely leaving to speculation the actual amounts supposedly

---

[6] Even if the Court concludes that the group pleading in Amended Complaint paragraphs 136 through 149 is
sufficient under Rule 8(a), it should still dismiss Count I, which is governed by Federal Rule 9(b), for the reasons
stated above.

received by defendants, including Herwig.  Compl. ¶¶ 127, 142.  These allegations fall well short of the federal pleading standard.[7]

In addition to failing to adequately allege Herwig is a transferee of any of the alleged transfers, Count I should be dismissed against Herwig because ULICO fails to adequately allege that Herwig directed PBLA to make the transfers.  For example, the Amended Complaint alleges "PBLA, *through the direction of Lindberg <u>and</u> Herwig* entered into and executed hundreds of transactions withdrawing assets from the Trust and then loaded the Trust Proceeds to various affiliates of Lindberg with knowledge of the effect such transactions would have on the future creditors, mainly, ULICO."  *See* Compl. ¶ 128 (emphasis added).  Similarly, the Amended Complaint baldly alleges that Herwig "*assisted Lindberg* with his conspiracy to defraud ULICO" and "[t]he nature of each of the transactions were such that PBLA, through the direction of Lindberg and *Herwig* attempted to conceal the Trust Benefits for the sole benefit of Lindberg and his affiliated entities, and affiliated persons, *including Chris Herwig*."  *See* Compl. ¶ 149 (emphasis added).

Yet, notably absent for the Amended Complaint is any allegation that ties Herwig to PBLA or even remotely suggests—let alone strongly infers—that Herwig "directed" the transactions alleged in this case, not to mention how or why he would do so under ULICO's fraudulent theory of its case.  As to this point, the Amended Complaint alleges that Herwig "was the Chief Investment Officer of Eli Global, LLC," *not PBLA*.  And, according to the Amended Complaint, Eli Global, LLC is "a limited liability company in which *Lindberg* is the sole member," underscoring Herwig's lack of control over that entity.  Compl. ¶¶ 19, 47 (emphasis

---

[7] Further, "[t]o the extent that the instant complaint seeks the recovery of property of the debtor from [Herwig] which he allegedly caused to be transferred to another, the complaint is defective.  A number of courts have held that a bankruptcy trustee cannot recover fraudulent transfers from other than the transferees."  *Liebmann v. Pucci (In re Ampat So. Corp.)*, 128 B.R. 405, 411 (Bank. D. Md. 1991).

added).  Besides this, as discussed above, the Complaint does not even allege Herwig authorized any of the purported transactions, alleging instead that Lindberg signed all of the alleged transactions underlying the transfers.  *See* Compl. ¶¶ 128, 133.

Further, the Amended Complaint alleges that Herwig is a manager—as of 2021—of three defendants affiliated with Lindberg, namely, Alpine Capital, LLC, Fortrex, LLC, and Integrity EMR, LLC.  Compl. ¶¶ 22, 55, 71.  But, Herwig's status as a manger of these entities does not plausibly support any inference—let alone a strong one—that Herwig directed the transfers ULICO alleges PBLA fraudulently made, taking aside the more obvious fact that Herwig's status as a manager in 2021, years after the transfers occurred, is entirely irrelevant.  *See, e.g., Pullman v. Alpha Media Publ'g, Inc.*, 2013 WL 1290409, at *22 (S.D.N.Y. Jan. 11, 2013) (alleging fraud requires more than pleading guilt by association").

Finally, to the extent the Amended Complaint alleges a claim for "constructive" fraudulent transfer, because ULICO has failed to allege PBLA was insolvent, this claim too fails.

For all of these reasons, the Court should dismiss Count I of the Amended Complaint against Herwig.

### C.   Count II (Unjust Enrichment), Count III (Conversion) and Count IV (Constructive Trust) are Duplicative Tack-On Claims that Fail to State a Claim Against Herwig

In several tack-on claims, Count II (Unjust Enrichment), Count III (Conversion), and Count IV (Constructive Trust), ULICO seeks to recover the same alleged transfers based on exactly the same set of alleged facts as in Count I against Herwig.  *Compare* Compl. ¶ 175 (Count I, "All transactions . . . are deemed voidable, and Defendants must repay ULICO for each voidable transaction . . .") *with* ¶ 155 (Count II, seeking "immediately turnover of Trust Proceeds[]"); ¶ 162 (Count III, seeking "an order from this Court instructing Lindberg Affiliates to turn over the Trust proceeds immediately[]"); ¶ 167 (Count IV, seeking to establish that

"Defendants had no equitable title or right to the Trust Proceeds[]").  Accordingly, for the same reasons that Count I must be dismissed (as discussed above) against Herwig, these counts too fail.  *See, e.g., Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012) (explaining that "unjust enrichment claim is not a catch-all cause of action . . .[,]" and "is not available where it simply duplicates, or replaces, a conventional contract or tort claim") (citations omitted).

To the extent these claims are not dismissed by the Court out of hand, these claims fail upon even a cursory review.  As to Count II (Unjust Enrichment), under New York law,[8] "it is well established that to successfully plead unjust enrichment a plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012) (citations and quotations omitted).  To survive a motion to dismiss, a plaintiff must, among other things, plead facts that "assert a connection between the parties that [is] not too attenuated," and that "indicate a relationship between the parties that could have caused reliance or inducement."  *Id.*, at 517-18 (internal citation and quotations omitted); *see Mandarin Trading Ltd. v. Wildenstein,* 16 N.Y. 3d 173, 182 (N.Y. 2011) (explaining that "[a]lthough privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated") (citations omitted).

Here, the Amended Complaint does not identify a tangible benefit Herwig received from the alleged transfers of the Trust Proceeds.  *See, e.g.*, *Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076, 1102 (S.D.N.Y. 1994) (emphasizing that "it must be alleged that plaintiff conferred a tangible benefit upon the defendant").  Further, the Amended Complaint fails to plead a

---

[8] Although the Amended Complaint does not specify any law that applies to any of the counts alleged, including Count II, Count III and Count IV, Herwig assumes for purpose of this motion only that ULICO relies on New York law.

sufficiently close relationship—indeed, any relationship—between ULICO and Herwig. Instead, "Lindberg, the ultimate owner of [PBLA], caused PBLA to enter into reinsurance and trust agreements with ULICO . . ." (Compl. ¶ 2) and the Amended Complaint does not even allege a single contact between Herwig and ULICO.

As to Count III (Conversion) against Herwig, under New York law, "[t]o establish a cause of action to recover damages for conversion, a plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights." *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings, Inc.)*, 541 B.R. 551 (Bank. S.D.N.Y. 2015) (citations and quotations omitted).

The Amended Complaint fails to allege that Herwig exercised dominion and control over the Trust Proceeds to the exclusion of ULICO. On the contrary, other than conclusory allegations inserted in this count, the Amended Complaint alleges that Lindberg was the person who exercised dominion and control, *not Herwig*. *See* Compl. ¶ 124 ("PBLA under the direction of Lindberg, siphoned off more than $500 million of funds from the Trust (referred to as the 'Trust Proceeds') to Lindberg and his affiliated entities in an effort to hinder, defraud and delay recovery to creditors, including ULICO").

Finally, the Court must dismiss Count IV (Constructive Trust) against Herwig because ULICO's unjust enrichment (Count II) fails, as discussed above. *See, e.g., Leidel v. Annicelli*, 114 A.D.3d 536, 537 (N.Y. App. Div. 2014); *see also Schulman Family Enter. v. Schulman*, 2011 WL 6224563, *5 (N.Y. App. Div. 2011) (emphasizing that "[u]njust enrichment is the heart of the constructive trust doctrine"). Moreover, under New York law, "[a] confidential or fiduciary relationship between [ULICO] and [Herwig] is an element of [a] claim[] for a

constructive trust . . .," and ULICO fails to plead any such relationship existed. *Rose v. Fahfco Mgmt. Group, LLC*, 2014 WL 7389900 (S.D.N.Y. Dec. 15, 2014) (dismissing constructive trust claim where plaintiff failed to allege a confidential or fiduciary relationship with defendant). According, ULICO's constructive trust count fails as a matter of law.

> **D.     Count V (Fraud) and Count VI (Breach of Fiduciary Duty) Fail to State a Claim Against Herwig**

As to Count V (Fraud) and ULICO's unfounded accusations of fraud against Herwig, "[u]nder New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). Further, it is hornbook law that a complaint which seeks relief based on fraud theories must be pled with specificity. *See, e.g., Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52-53 (2d Cir. 1995) (explaining that "Rule 9(b) is intended to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect the defendant against the institution of a strike suit"). ULICO is required under Rule 9(b) "to connect the allegations of fraud to each individual defendant." *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. De-Con Mech. Contractors, Inc.*, 896 F.Supp. 342, 347 (S.D.N.Y. 1995). A complaint which sounds in fraud "may not rely on sweeping references to acts by all or some of the defendants because each named defendant is entitled to be apprised of the facts surrounding the alleged fraud." *Id.*

Courts universally prohibit group pleading, what ULICO has done here by charging Herwig with fraudulent conduct in defining him as a "Lindberg Affiliate." Courts in the Second Circuit and this district have routinely dismissed group pleading of fraud claims pursuant to Rule

9(b) where, as here, plaintiff has failed to adequately plead fraud against individual defendants. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2nd Cir. 1993) (dismissing complaint where plaintiff failed to link the alleged fraudulent statements to particular directors); *Morgens Waterfall Holdings, L.L.C. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 198 F.R.D. 608, 609-10 (S.D.N.Y. 2001) (explaining that "a plaintiff may not circumvent this [Rule 9(b)] requirement by identifying the defendants as members of various groups"); *Ellison v. American Image Motor Co.*, 36 F. Supp.2d 628, 640 (S.D.N.Y. 1999) (emphasizing "Rule 9(b) is not satisfied by a complaint in which defendants are clumped together in vague allegations") (citation and quotations omitted); *Meadowlands Invs., LLC v. CIBC World Markets Corp.*, 2005 WL 2347856 at *7 (S.D.N.Y. Sept. 22, 2005) (concluding "Plaintiff impermissibly clumps Defendants together and also fails to give any specific information about the allegedly false statements as required by Rule 9(b), such as when and where the statements were made, identifying the speaker responsible for those statements more specifically than a general identification of the speaker as 'Defendants,' and giving particulars about why the statements were fraudulent when made").

Here, Herwig is entitled to dismissal of Count V and VI of the Amended Complaint. When a case involves multiple defendants, Rule 9(b) requires the complaint to allege facts specifying each defendant's contribution to the fraud and identifying which defendant is responsible for which act. Despite this, as well as the Second Circuit's instruction that charging a person with fraud is a serious matter that must be done specifically and not based on hope of uncovering wrongdoing later,[9] ULICO fails in the Amended Complaint to identify any

---

[9] *See Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 116 (2d Cir. 1982) (emphasizing "Rule 9(b) will have failed in its purpose if conclusory generalizations . . . will permit a plaintiff to set off on a long and expensive discovery process in the hope of uncovering some sort of wrongdoing or of obtaining a substantial settlement").

statements—let alone specific actual misrepresentations—by Herwig or that ULICO relied upon

such misrepresentations.   For this reason, Count V and Count VI against Herwig should be

dismissed.   *See, e.g., Pullman*, 2013 WL 1290409, at *22 (granting motion to dismiss fraud

claim where, as here, plaintiff failed to identify actual misrepresentations made by defendant and

reliance on those misrepresentations).

But even if ULICO could identify specific misrepresentations and show its reliance, for

obvious reasons, the Amended Complaint still does not even come close to pleading with any

particularity what basis there is for alleging fraud against Herwig.   The Second Circuit explains:

"The requisite 'strong inference' of fraud, [or scienter]' may be established either a) by alleging

facts showing that defendants had both motive and opportunity to commit fraud, or (b) by

alleging facts that constitute strong circumstantial evidence of conscious misbehavior or

recklessness."   *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir. 1994); *see also*

*Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 422

(Bankr. S.D.N.Y. 1998).   As stated above, there is no specific conduct alleged on the part of

Herwig that meets this standard.   Further, "[i]n a case involving multiple defendants, plaintiffs

must plead circumstances providing a factual basis for scienter for each defendant; guilt by

association is impermissible."   *DeAngelis v. Corzine*, 17 F.Supp.3d 270, 281-82 (S.D.N.Y. 2014)

(concluding complaint "does not offer a sufficient basis to permit a reasonable inference that the

Individual Defendants acted with scienter").

As to the first prong, requiring motive and opportunity, the Amended Complaint is

devoid of any allegations that would even suggest Herwig had motive and opportunity to commit

fraud against ULICO.   In this regard, by alleging Lindberg, is "the ultimate beneficial owner of

PBLA," the Amended Complaint itself indicates Lindberg is the only person who stood to

benefit from the alleged fraud. *See* Compl. ¶ 18. Similarly, by alleging that "Lindberg signed on behalf of PBLA (the lender) and signed on behalf of borrower affiliated entities," and "Lindberg was a signatory for each of those transfers," the Amended Complaint makes clear that Lindberg is the only person alleged with opportunity to commit such fraud. *See* Compl. ¶¶ 128, 133. Similarly, while the Amended Complaint alleges that Herwig "was the Chief Investment Officer of Eli Global, LLC," that is as far as it goes; this alleged status does not support the strong inference that Herwig engaged in fraud or, likewise, that he had the motive and opportunity to commit such fraud. And, Eli Global, LLC is "a limited liability company in which *Lindberg* is the sole member," underscoring Herwig's lack of opportunity. Compl. ¶¶ 19, 47 (emphasis added).

Similarly, as to the second prong, conscious misbehavior or recklessness, "[w]here motive is not apparent . . . the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (affirming dismissal because plaintiff failed to adequately allege scienter). In this case, other than wholly conclusory allegations that Herwig "assisted" Lindberg and "directed" the transfers, ULICO fails to allege any operative facts that Herwig engaged in wrongdoing, let alone that he the acted with conscious misbehavior or recklessness. For these reasons, Count V against Herwig fails as a matter of law.

Finally, as to Count VI (Breach of Fiduciary Duty") against Herwig, where the complaint purports to incorporate by reference prior allegations of fraud into other claims those claims must be plead with particularity pursuant to Rule 9(b). *See, e.g., ICD Holdings v. Frankel*, 976 F.Supp. 234, 246 n.53 (S.D.N.Y. 1997) (incorporating other allegations of fraud makes Rule 9(b) applicable). In this case, not only does ULICO fail to meet Rule 9(b) in Count VI, ULICO fails

to even allege that it had any relationship with Herwig let alone a special one where Herwig owed it a fiduciary duty.

For these reasons, Count V and VI of the Amended Complaint against Herwig both fail as a matter of law.

## V.

### THE COURT MAY NOT ENTER FINAL ADJUDICATIONS IN THIS CASE

Even if ULICO had standing and the Court had subject matter jurisdiction over this dispute, and ULICO's claims against Herwig did not all fail as a matter of law, under *Stern v. Marshall*, 131 S.Ct. 2594, 2603 (2011), the Court may not enter final judgment on nonbankruptcy law claims that, like ULICO's claims here, do not implicate the claims allowance process. Further, the Court has authority to issue only proposed pre-trial findings in this case, because ULICO has demanded a jury trial, which this Court may not conduct without Herwig's express consent, if at all.[10]

## VI.

### HERWIG EXPRESSLY RESERVES THE RIGHT TO JOIN IN AND INCORPORATE MOTIONS TO DISMISS THE AMENDED COMPLAINT FILED AND TO BE FILED BY ANY OTHER DEFENDANT IN THIS CASE

Herwig hereby reserves his rights to join in and incorporate motions to dismiss the Amended Complaint filed or to be filed by any other defendants named in this case.

---

[10] *See* 28 U.S.C. § 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties").

## VII.

## <u>CONCLUSION</u>

For the reasons set forth above, Mr. Herwig respectfully requests the Court grant the Motion and dismiss the Amended Complaint against him in its entirety.

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Todd A. Atkinson*
Todd A. Atkinson (NY Bar No. 4970828)
811 Main Street, Suite 3130
Houston, Texas 77002
Telephone: (346) 998-7849
Facsimile: (346) 998-5901
Email: todd.atkinson@wbd-us.com

-AND-

Matthew P. Ward, Esq.
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4338
Facsimile: (302) 598-9256
Email: matthew.ward@wbd-us.com

*Counsel for Defendant Christopher Herwig*