**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

In re:

PB LIFE AND ANNUITY CO., LTD., *et al.*,

      Debtors in Foreign Proceedings

Chapter 15

Case No. 20-12791 (LVB)
(Jointly Administered)

_____

UNIVERSAL LIFE INSURANCE
COMPANY,
Plaintiff,

v.

GLOBAL GROWTH HOLDINGS, INC., *et
al*.
Defendants.

Adv. Proc. No. 21-01169 (LGB)

_____


### UNIVERSAL LIFE INSURANCE COMPANY'S OMNIBUS OPPOSITON TO DEFENDANTS' MOTIONS TO DISMISS

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...........................................................................................iv

PRELIMINARY STATEMENT ........................................................................................1

SUMMARY OF ALLEGATIONS .....................................................................................4

ARGUMENT ...................................................................................................................9

I.  Personal Jurisdiction Exist Over Every Defendant Because Each Conducts Business
    Somewhere in the United States. ........................................................................9

II. The Court Has Subject Matter Jurisdiction to Hear this Adversary Proceeding, ULICO
    Has Standing to Bring this Adversary Proceeding, and the Court Should Not Abstain
    from Hearing this Adversary Proceeding. ........................................................11

    A.    This Action "Relates to" the Chapter 15 Proceeding...........................12

    B.    ULICO Unquestionably Has Standing to Pursue These Claims.........................14

    C.    The Applicable Abstention Statute Specifically Precludes Chapter 15 Actions. 16

III. Defendants' Substantive Attacks on ULICO's Claim Similarly Fail. ............................16

    A.    All Applicable Limitations Periods Have been Compiled With........................17

    B.    Despite Defendants' Contentions, ULICO's Claims Have Been Property Pled
          Under the Applicable Rule 12(b)(6) and Rule 7012 Standards. ........................18

    C.    ULICO Has Pled Its Voidable Transfer Claim with Adequate Particularity.......19

          i.    ULICO Has Met the Heightened Standard of Rule 9(b)..........................20

          ii.   Regardless of Rule 9(b), ULICO Still Satisfies the Pleading Requirement
                of a Voidable Transfer Claim Under Rule 8(a). .....................................22

    D.    ULICO has Similarity Pled its Fraud Claim with Sufficient Particularity Under
          Rule 9(b) ..........................................................................................23

    E.    ULICO Has Sufficiently Met the Pleading Standards For Pursuing A Claim For
          Unjust Enrichment Under Rule 12(b)(6). ...........................................24

F.      ULICO Meets the Pleading Standards for a Constructive Trust Claim...............25

G.      In Turn, ULICO Has Also Satisfied the Broad Federal Pleading Standards to
        Assert a Cause of Action for Conversion. ...........................................................26

H.      ULICO Has Sufficiently Alleged Breach of Fiduciary Duty..............................26

IV. Alternatively, ULICO Requests Leave to Replead its Amended Complaint...................27

CONCLUSION....................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Motor Acceptance Corp. v. McCoy Motors, LLC*,
    2020 WL 223923 (W.D.N.C. Jan. 14, 2020) ..........................................................................22

*In re Adler, Coleman Clearing Corp.*,
    218 B.R. 689 (Bankr. S.D.N.Y. 1998) ...................................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................18

*In re Bernard L. Madoff Inv. Securities, LLC*,
    458 B.R. 87 (Bankr. S.D.N.Y. 2011) ......................................................................21, 22, 26

*In re Bernard L. Madoff Investment Securities, LLC*,
    561 B.R. 334 (Bankr. S.D.N.Y. 2016) ....................................................................12, 13, 14

*Center for Medical Progress v. Planned Parenthood Federation of America*,
    2021 WL 3173804 (S.D.N.Y. July 27, 2021) ..........................................................................5

*Charles Schwab & Co. v. Retrophin, Inc.*,
    No. 14 Civ 4294 (ER), 2015 WL 5729498 (S.D.N.Y. Sept. 30, 2015) ....................................7

*Cipciao, LLC v. M Chow One, LLC*,
    2021 WL 1141567 (S.D.N.Y. March 24, 2021) ....................................................................15

*Cruz v. TD Bank, N.A.*,
    742 F.3d 520 (2d Cir. 2013).................................................................................................27

*Cury v. Mitchell*,
    688 S.E.2d 825 (N.C. Ct. App. 2010) ..................................................................................25

*Devaney v. Chester*,
    813 F.2d 566 (2d Cir. 1987).................................................................................................23

*In re Enron Corp.*,
    316 B.R. 434 (Bankr. S.D. NY 2004) ..................................................................................10

*In re Extended Stay, Inc.*,
    466 B.R. 188 (S.D.N.Y. 2011).............................................................................................12

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    452 B.R. 64 (Bankr. S.D.N.Y.2011), *rev'd on other grounds*, 458 B.R. 665
    (S.D.N.Y. 2011) ...................................................................................................................16

*Finova Capital Corp. v. Cote (In re Finova Capital Corp.)*,
    358 B.R. 113 (Bankr. D. Del. 2006) ...................................................................................10

*Gorbaty v. Kelly*,
    No. 01 Civ. 8112 (LMM), 2003 WL 21673627 (S.D.N.Y. July 17, 2003) ............................7

*Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*,
    128 F.3d 59 (2d Cir. 1997).................................................................................................19

*Haworth, Inc. v. Janumpally*,
    2018 WL 3978173 (E.D.N.C. 2018) ..................................................................................15

*In re Hellas Telecommunications (Luxembourg) II SCA*,
    524 B.R.448 (S.D.N.Y. 2015).......................................................................................13, 14

*In re Hellas Telecommunications (Luxembourg) II SCA*,
    535 B.R. 543 (Bankr. S.D.N.Y. 2015)..........................................................................16, 23

*In re Hellas Telecommunications (Luxembourg) II SCA*,
    547 B.R. ...............................................................................................................................10

*In re Kaiser*,
    722 F.2d 1574 (2d Cir. 1983)............................................................................................20

*Kaprov v. Stalinsky*,
    44 N.Y.S. 3d 123 (N.Y. App. Div. 2016) ..........................................................................25

*Klingher v. Salci (In re Tandycrafts Inc.)*,
    317 B.R. 287 (Bankr. D. Del. 2004) ..................................................................................10

*Kramer v. Lockwood Pension Services, Inc.*,
    653 F.Supp.2d 354 (S.D.N.Y. 2009)..................................................................................24

*Liveo v. Hausman*,
    86 N.Y.S.3d 378 (N.Y. Sup. Ct. 2018) ..............................................................................15

*In re Manhattan Investment Fund Ltd.*,
    310 B.R. 500 (Bankr. S.D.N.Y. 2002)...............................................................................20

*In re Margulies*,
    476 B.R. 393 (Bankr. S.D.NY. 2012)................................................................................12

*Mfrs. Hanover Trust Co. v. Chem. Bank*,
    160 A.D.2d 113 (1st Dep't. 1990) .....................................................................................26

*In re Nine West LBO Sec. Litig.*,
    505 F. Supp. 3d. at 321.This ............................................................................................20

*In re Nine West LBO Securities Litig.*,
   505 F. Supp. 3d 292 (Bankr. S.D.N.Y. 2020) ........................................................................20

*In re Operations NY LLC*,
   490 B.R. 84 (Bankr. S.D.N.Y. 2013) ....................................................................................24

*Orr v. Kinderhall Corp.*,
   991 F.2d 31 (2d Cir. 1993) ...................................................................................................17

*Parmalat Capital Finance Ltd. v. Bank of America Corp.*,
   639 F.3d 572 (2d Cir. 2011) .................................................................................................13

*Payne v. White*,
   477 N.Y.S.2d 456 (App. Div. 1984) .....................................................................................26

*Primerica Life Ins. Co. v. James Massengill & Sons Const. Co.*,
   712 S.E.2d 670 (N.C. Ct. App. 2011) ..................................................................................24

*Raymond Loubier Irrevocable Tr. v. Loubier*,
   858 F.3d 719 (2d Cir. 2017) .................................................................................................15

*Reyes v. Reyes*,
   2012 WL 4058037 (E.D.N.Y Sept. 14, 2012) .....................................................................25

*Rosendale v. Mr. Cooper Group Inc.*,
   2021 WL 4066821 (S.D.N.Y. Sept. 7, 2021) .......................................................................26

*In re Saba Enters., Inc.*,
   421 B.R ..................................................................................................................................21

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
   234 B.R. 293 (Bankr. S.D.N.Y. 1999) .................................................................................25

*In re Sharp Int'l Corp.*,
   403 F.3d 43 (2d Cir. 2005) ...................................................................................................22

*Shih v. Petal Card, Inc.*,
   2020 WL 5659429 (S.D.N.Y. Sept. 23, 2020) .....................................................................24

*Tribune Media Servs. Inc. v. Beatty (In re Tribune Co.)*,
   418 B.R. 116 (Bankr. D. Del. 2009) ....................................................................................10

*In re WorldCom, Inc.*,
   322 B.R. 530 (Bankr. S.D.N.Y. 2005) .................................................................................19

*In re WorldCom, Inc. Securities Litigation*,
   293 B.R. 308 (Bankr. S.D.N.Y. 2003) .................................................................................13

*In re Yahweh Ctr., Inc.*,
    2019 WL 1325032 (Bankr. E.D.N.C. Mar. 22, 2019) ...........................................................20

**Statutes**

11 U.S.C. § 152(a)(7) ..............................................................................................................14

11 U.S.C. § 548(a)(1) ...........................................................................................................3, 17

11 U.S.C. §1521 (a)(7) ..........................................................................................................2, 17

28 U.S.C. §§ 1332(a), 1332(e) ..............................................................................................14

28 U.S.C. §1334 ...........................................................................................................2, 15, 16

28 U.S.C. § 1334(b) ..................................................................................................................2

28 U.S.C. §1334(b) a ..............................................................................................................13

28 U.S.C. § 1334(c) ..................................................................................................................3

28 U.S.C. § 1334(c)(1) ........................................................................................................3, 16

United States Code Title 11 ...............................................................................................2, 13

United States Code Title 11 Chapter 15, 11 U.S.C. § 101 *et seq.* ...........................................7

Bankruptcy Code section 362 ..................................................................................................8

Bankruptcy Code Section 548 ...............................................................................................17

Bankruptcy Code section 1517 ................................................................................................7

Bankruptcy Code section 1520 ................................................................................................7

Code Chapter 15 .......................................................................................................................3

Federal Arbitration Act ............................................................................................................7

General Statutes, §39-23.4 .........................................................................................15, 19, 21

N.C.G.S. § 39-23.9 .................................................................................................................18

New York Civil Practice Law Section 213 ...........................................................................17

Recognition Order ...............................................................................................................7, 15

UFTA .........................................................................................................................................2

Uniform Voidable Transactions Act .....................................................................................17

Uniform Voidable Transfer Act.................................................................................22

UVTA .............................................................................................................. *passim*

**Other Authorities**

Bankruptcy Rule 7004 .................................................................................................10

Bankruptcy Rule 7004 .................................................................................................10

Bankruptcy Rules of Procedure Rule 7004....................................................................9

CPLR Section 213........................................................................................................18

Fed. R. Bankr. P. 7004................................................................................................11

Fed. R. Bankr. P. 7004(f)............................................................................................10

Fed. R. Civ. P. 8(a)(3)................................................................................................23

Fed. R. Civ .P. 9(b)'...................................................................................................22

Federal Rule of Bankruptcy Procedure 7012...............................................................18

Federal Rule of Civil Procedure 12(b)(6), (2), 9(b), and (8)(a) .....................................1

Federal Rules of Bankruptcy Procedure Rule 7004.......................................................2

Federal Rules of Bankruptcy Procedure Rule 7004(d) .............................................2, 10

Federal Rules of Bankruptcy Procedure Rule 7012(b) .................................................12

Federal Rules of Bankruptcy Procedure Rule 7015.....................................................27

Federal Rules of Civil Procedure Rule 12(b)(1) ..........................................................12

Federal Rules of Civil Procedure Rule 15(a)...............................................................27

Maremount & Scism, *Financier Who Amassed Insurance Firms Diverted $2
    Billion Into His Private Empire*, The Wall Street Journal (Feb. 28, 2019) ..............5

Rule 8(a)................................................................................................21, 22, 23

Rule 8(a)(2).................................................................................................19, 21, 22

Rule 9(b) ........................................................................................................ *passim*

Rule 12(b)(6)...........................................................................................4, 18, 19, 23

Rule 12(b)(6) and Rule 8(a).........................................................................................26

Rule 12(b)(6), Rule 8(a), and Rule 9(b) ....................................................................................16

Rule 12(b)(6) and Rule 7012 ...................................................................................................18

Rule 7004 .................................................................................................................................9

Rule 7004 .................................................................................................................................9

Rule 7004 ................................................................................................................................10

Rule 7004 ................................................................................................................................11

Rule 7004 ................................................................................................................................11

Rule 7004 ................................................................................................................................11

Scism & Maremont, *Insurance Magnate Greg Lindberg Found Guilty on Bribery Charges*, The Wall Street Journal (Mar. 5, 2020) ......................................................................6

United States Constitution ........................................................................................................11

*Wall Street Journal* ..................................................................................................................5

## PRELIMINARY STATEMENT

Plaintiff, Universal Life Insurance Company ("ULICO") submits this *omnibus* response in opposition to Defendants' motions to dismiss this adversary proceeding under Federal Rule of Civil Procedure 12(b)(6), (2), 9(b), and (8)(a).[1]

Before the Court are seven motions to dismiss ULICO's complaint. The Defendants have independently filed distinct motions, but their arguments are substantially similar, broadly falling into four categories: (1) lack of personal jurisdiction; (2) lack of subject matter jurisdiction or standing; (3) abstention; and (4) failure to state a claim for relief.  In moving to dismiss on these grounds, the Defendants uniformly misapply the law, relying on state common law standards when the Bankruptcy Code applies and relying upon the Code when state common law applies.

On personal jurisdiction, Defendants erroneously argue that the Court should apply a "minimum contacts" standard imported from the application of state long-arm statutes rather than the

---

[1] There are currently seven motions to dismiss that have been filed [ECF Nos. 90, 80, 84, 75, 68, 65, 71], which have been filed by the following Defendant groups:

(1) Defendant AAPC Holdings, LLC;

(2) Defendant Chris Herwig;

(3) Defendants Atlantic Coast Life Insurance Company and Sentinel Security Life Insurance Company;

(4) "Lindberg Defendants" consisting of: Defendants Greg Lindberg, Academy Financial Assets, LLC, Alpine Capital, LLC, Atlas Financial Investments, LLC, Augusta Asset Management, LLC, Capital Assets Management I, LLC, Capital Assets Management II, LLC, Capital Assets Management III, LLC, CSI Interco, LLC, Eli Global, LLC, GBI Group, LLC, GBIG Capital, LLC, GBIG Holdings, LLC, Global Insurance Capital, LLC, Hampton Asset Management, LLC, Iron City Asset Management, LLC, Jackson Assets Management, LLC, Kite Asset Management, LLC, New England Capital, LLC, Parallel Capital Assets, LLC, Tybee Island Asset Management, LLC, AGH Parent, LLC, ASiM Holdings, LLC, ASL Holdings, LLC, BLH Capital, LLC, Capital Assets Fund I, LLC, Capital Assets Fund II, LLC, Chatsworth Asset Management, LLC, Drummond Group, LLC, Dunhill Holdings, LLC, Englert Holdings, LLC, Flagship Holdings, LLC, Fortrex, LLC, Gilford Asset Management, LLC, Global Growth Holdings, Inc., Greenfield Capital, LLC, Healthlink Holdings, LLC, Integrity EMR Holdings, LLC, Integrity EMR, LLC, iTech Funding, LLC, Netherlands Insurance Holdings, Inc., NIH Capital, LLC, Sedwick, LLC, and UKAT Holdings, LLC;

(5) "Flowery Defendants" consisting of Defendants Atkinson, LLC, Begonia Eight, LLC, Blue Daffodil, LLC, Blue Violet, LLC, Carnation Three, LLC, Chrysanthemum Two, LLC, Dahlia Ten, LLC, Daisy Seven, LLC, Epping, LLC, Flowery Branch, LLC, Forsyth, LLC, Geranium Two, LLC, Hookset, LLC, Lilac Six, LLC, Macon, LLC, Red Begonia, LLC, Somersworth, LLC, Weare, LLC, Yellow Lotus, LLC, and Yellow Sunflower, LLC;

(6) Defendant Hutchison PLLC; and

(7) Defendant Hansen Aerospace, LLC.

1

familiar nationwide standard applicable under federal jurisdictional statutes and rules, including Rule 7004 of the Federal Rules of Bankruptcy Procedure. In fact, the personal jurisdiction analysis in an adversary proceeding is governed by Rule 7004(d) of the Federal Rules of Bankruptcy Procedure, which provides for nationwide service of process. Because no Defendant denies that it does business somewhere in the United States, all of the Defendants' motions to dismiss based on lack of personal jurisdiction must be rejected.

On subject matter jurisdiction, Defendants' arguments are similarly wrong. Under 28 U.S.C. § 1334(b), this Court has subject matter jurisdiction over proceedings which are "related to" cases under Title 11 of the United States Code, including Chapter 15. This adversary proceeding directly arises out of ULICO's claims as a creditor against the debtor, PB Life and Annuity, Co., Ltd. ("PBLA") (including a final and unappealable judgment of more than $524 million from this district). Moreover, the amount of that claim will be directly affected by amounts recovered in this proceeding. Sums collected from the Defendants will reduce the amount of ULICO's claim arising out of the judgment. There can be no doubt that these facts demonstrate that the claims in this proceeding are "related to" the Chapter 15 case under 28 U.S.C. §1334 and the broad standards applied in the Second Circuit.

Relatedly, there is no question that ULICO has standing to pursue its claims in this adversary proceeding. First, as the main case was filed under Chapter 15, the conventional avoidance remedies provided in the Bankruptcy Code are unavailable to all parties, including the debtor. *See* 11 U.S.C. §1521 (a)(7). Rather, the avoidance claims arise under applicable non-bankruptcy law. In this case, all of the relevant statutes related to voidable, or fraudulent, conveyances (including the UVTA and the UFTA), provide on their face that those claims belong to aggrieved *creditors*, and not the debtor. That is unlike the Code, which provides that "the *trustee*

2

may avoid" such transfers.  11 U.S.C. § 548(a)(1). (emphasis added).  The upshot of this is that not only does ULICO have standing, it is likely to be the *only* entity with standing to pursue the avoidance claims.

These controlling legal standards are further buttressed by PBLA's agreement that it is ULICO, and not PBLA, that has standing to pursue the avoidance claims.  In a settlement agreement entered between the JPLs and ULICO, the JPLs themselves acknowledged that ULICO's action "relates to the Bankruptcy Court Action" and that "the Adversary Proceeding impacts the JPLs' rights and liabilities, in that any recoveries by ULICO in this Adversary Proceeding shall inure to the benefit of the JPLs."  Consequently, the Court has subject matter jurisdiction to hear and resolve all of the claims in this case.

On abstention, the Defendants again apply the wrong legal standard.   This is a case under Chapter 15 of the Code, governed by 28 U.S.C. § 1334(c).  Section 1334(c)(1) provides that a court may permissively abstain from hearing certain cases involving state law, "*except with respect to a case under Chapter 15 of title 11*." 28 U.S.C. § 1334(c)(1) (emphasis added).   Contrary to Defendants' arguments, abstention is actually forbidden under the plain meaning of the Code.

Finally, on Defendants' argument that ULICO has failed to state a claim for relief regarding each of its causes of action, the Defendants demand specificity of pleading that is not required under the Bankruptcy Rules.  Those rules do not require extensive and precise pleading of all the facts that a plaintiff is required to prove at trial: they require "notice pleading." There can be no doubt that each and every one of the defendants has received adequate notice of the nature and basis of the claims pled against it sufficient to meet the limited standards for pleading provided for in federal practice.

3

For the reasons set forth below, all Defendants' motions to dismiss must be denied in all respects, or alternatively, ULICO should be granted leave to replead as necessary.

## **SUMMARY OF ALLEGATIONS**[2]

Plaintiff ULICO is a stock life insurance company licensed and domiciled in Puerto Rico. *See* Compl. ¶17.

The Debtor is PB Life and Annuity Co., Ltd. which the Bermuda Supreme Court has placed under the stewardship of Joint Provisional Liquidators ("JPLs") by an Order of September 25, 2020. *See* Compl. ¶¶ 11, 12. Prior to being placed under supervision by the Bermuda Supreme Court, PBLA was a life reinsurance company licensed and domiciled in Bermuda which was one of a number of insurance companies and commercial businesses contained within a holding company structure known as the "Eli Global Group," which Eli Global was, in turn, ultimately owned by a single individual: Greg E. Lindberg. *See* Compl. ¶¶ 1-2, 18, 47.

Lindberg, like many less-than-scrupulous persons before him, found insurance an attractive business because insurers are required by law to set aside substantial reserves against the liabilities they have undertaken by issuing insurance policies. According to various published reports, and as pled in the Complaint, Lindberg's scheme was to purchase insurance companies, and then replace the cash-equivalent investments from those companies' reserve accounts with illiquid debt instruments reflecting loans from affiliates in Eli Global Group, the holding company that Lindberg wholly owned and controlled. *See* Compl. ¶¶ 5-7. With the cash he removed from these insurers, Lindberg provided for himself lavishly, obtaining private jets, yachts, and mansions.

---

[2] The facts section here is not limited to those facts plead on the face of the complaint because the motions are not exclusively brought under Rule 12(b)(6). Instead, they raise a variety of issues including personal jurisdiction, subject matter jurisdiction, standing, and abstention that are appropriate to look beyond the face of the complaint.

As reported by the *Wall Street Journal* in its February 28, 2019 edition:[3]

Soon after Greg Lindberg moved into the insurance business, the North Carolina entrepreneur went on a spending spree.

He bought nearly 100 companies around the globe, an estate in the Florida Keys, an Idaho lakeside retreat, a Gulfstream jet, and the most expensive mansion ever sold in Raleigh, N.C.  In September 2018 he added a 214-foot yacht with room for a dozen overnight guests.  He also became the largest political donor in North Carolina and lavished money on other races around the country.

The cash came, at least in part, from huge sums Mr. Lindberg diverted from the group of life insurance firms he began assembling in 2014, a Wall Street Journal investigation found.

The Yale-educated executive lent at least $2 billion from those insurers to scores of entities he controlled, using much of it to expand his private holdings, according to interviews, regulatory filings and more than 4,500 internal documents from Mr. Lindberg's companies reviewed by the Journal.[4]

To advance his illegal schemes, Lindberg sought to bribe local regulators to look away as he exchanged liquid assets for the corporate debt of his affiliated companies. Compl. ¶ 6.

While many U.S. States and territories limit the amount of affiliated investments to 10% of the reserve totals (and in Puerto Rico where ULICO is domiciled the limit is just 5%), Lindberg sought to use political influence to overcome those limits, as part of an unlawful scheme to replace the liquid assets held by insurers with his own illiquid and non-compliant corporate IOUs. According to the U.S. government prosecutors, North Carolina regulators opposed Lindberg's requests to lift North Carolina's limitations concerning the percentage of cash-equivalent assets that could be replaced with affiliated companies' debts.  Lindberg attempted bribery and other unlawful acts to either coerce or replace the regulators who he sought to control.  *Id.*, ¶¶ 6-7. When

---

[3] *Center for Medical Progress v. Planned Parenthood Federation of America*, 2021 WL 3173804, at *1, n. 2 (S.D.N.Y. July 27, 2021) ("The Court may take judicial notice of court filings and other matters of public record, including newspaper articles and media interviews, without converting a motion to dismiss into a motion for summary judgment.")

[4] Maremount & Scism, *Financier Who Amassed Insurance Firms Diverted $2 Billion Into His Private Empire*, The Wall Street Journal (Feb. 28, 2019), https://www.wsj.com/articles/financier-who-amassed-insurance-firms-diverted-2-billion-into-his-private-empire-11551367856.

5

Lindberg approached North Carolina Insurance Commissioner Mike Causey, Causey informed the FBI of Lindberg's misconduct.

Lindberg and others associated with Eli Global were indicted by a federal grand jury for financial crimes including wire fraud and bribery. *See* Compl. ¶ 6.  On March 5, 2020, a jury found Lindberg guilty of conspiracy to commit honest services wire fraud and bribery.[5]  Lindberg was sentenced to 87 months in a federal penitentiary and is incarcerated today. *See* Compl. ¶ 6.

Lindberg's incarceration did not come soon enough for ULICO to escape harm at his hands. On June 30, 2017, ULICO and PBLA entered into a Reinsurance Agreement (the "Reinsurance Agreement") whereby PBLA agreed to reinsure ULICO's obligations under certain insurance policies or annuity contracts written by ULICO.  *See* ECF No. 16-1, § 2.1(a)-(b).  In consideration of PBLA's undertaking of these reinsurance obligations, PBLA was given certain limited rights with respect to a trust account established for the benefit of ULICO (the "ULICO Trust"), which contained hundreds of millions of dollars in liquid assets which were set aside as reserves for the business ULICO issued and which was reinsured by PBLA. However, PBLA, then under the control of Lindberg, withdrew the liquid assets and replaced them with illiquid, and unrated, IOUs of corporate affiliates owned and controlled by Lindberg. *Id.* ¶ 7.

At a time before PBLA was placed into liquidation, ULICO commenced arbitration against PBLA seeking recovery of the $524,009,051.26 which ULICO then contended was improperly withdrawn from ULICO's reinsurance trust account.  An arbitration panel (the "Panel") was duly constituted under the auspices of the American Arbitration Association. After the presentation of witness statements, supporting documents, briefing, and a hearing, the Panel issued an arbitration

---

[5] Scism & Maremont, *Insurance Magnate Greg Lindberg Found Guilty on Bribery Charges*, The Wall Street Journal (Mar. 5, 2020), https://www.wsj.com/articles/insurance-magnate-greg-lindberg-found-guilty-on-bribery-charges-11583426452.

award on June 2, 2020 (the "Award").[6]  The Panel's award declared that PBLA had breached its

contractual obligations to ULICO and directed PBLA to pay ULICO the amount of

$524,009,051.26 within 10 days of issuance of the Award.[7]  Pursuant to the provisions of the

Federal Arbitration Act, ULICO subsequently petitioned the District Court for the Southern

District of New York to confirm the arbitration Award as a judgment of the Court, which the Court

did by decision dated July 30, 2020 and Judgment dated August 11, 2020.

On September 18, 2020, the Bermuda Monetary Authority presented a petition to the

Supreme Court of Bermuda (the "Bermuda Court") to, *inter alia,* wind up PBLA and to appoint

Rachelle Frisby and John Johnston of Deloitte as JPLs of the Debtor. Compl. ¶ 11.  By order dated

September 25, 2020 (the "Bermuda Order"), the Bermuda Court appointed the JPLs as duly

authorized foreign representatives of the Debtor. *Id.*  On December 3, 2020, the JPLs commenced

the "Chapter 15 Proceeding" by filing the Verified Petition for relief under Chapter 15 of Title 11

of the United States Code, 11 U.S.C. § 101 *et seq.*, as amended (the "Bankruptcy Code"). *Id.* ¶ 12.

On January 5, 2021, this Court entered an order granting recognition of the Bermuda Proceeding

as a foreign main proceeding under section 1517 of the Bankruptcy Code (the "Recognition

Order"). *Id.* ¶ 13.

The Recognition Order specifically provides, "[a]ll provisions of section 1520 of the

Bankruptcy Code apply in these Chapter 15 cases, including, without limitation, the stay under

---

[6] The Reinsurance Agreement contains a broad arbitration clause which stated that "all disputes or differences between the Parties arising under or relating to this Reinsurance Agreement upon which an amicable understanding cannot be reached shall be decided by arbitration."   ECF No. 16-1, § 10.1.

[7] A court may also take judicial notice of an arbitral award.  *See e.g., Charles Schwab & Co. v. Retrophin, Inc.*, No. 14 Civ 4294 (ER), 2015 WL 5729498, at *7 (S.D.N.Y. Sept. 30, 2015); *see also, Gorbaty v. Kelly*, No. 01 Civ. 8112 (LMM), 2003 WL 21673627, at *2 n.3 (S.D.N.Y. July 17, 2003) (finding that "[a]s the arbitration complaint and award are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,' Fed. R. Evid. 201(b)(2), the Court may take judicial notice of them and consider them in deciding the motion.").

section 362 of the Bankruptcy Code throughout the duration of these Chapter 15 cases or until otherwise ordered by this Court." *See* Compl. ¶ 14.

On January 14, 2021, this Court ordered Lindberg (formerly the controlling owner of PBLA) to turn over PBLA's financial books and records.[8]  For more than six months, Lindberg and his companies including the corporate parent and Defendant Eli Global (collectively, the "Lindberg Defendants") resisted the Court's order.[9]  The Lindberg Defendants' initial disregard of the Court's order not only has stalled the JPLs' efforts to untangle Lindberg's web of fraudulent self-dealing, but has stalled ULICO's efforts to recover funds from the Defendants, which can be applied towards satisfaction of the Debtor's obligations to ULICO.

ULICO's $524,009,051.26 judgment against PBLA remains unsatisfied and the judgment remains the largest debt of the PBLA estate, making ULICO by far the largest creditor of the PBLA estate.  ULICO commenced this Adversary Proceeding in order to collect from Defendants the liquid assets, which remain owed to ULICO and which were fraudulently transferred from PBLA to defraud, hinder, and delay ULICO as PBLA's creditor.  Not only is this action proceeding with the knowledge of the JPLs, but indeed with the encouragement of the JPLs so that ULICO can assist in pursuing recovery of amounts owned by PBLA.   In order to facilitate the efficient and cost-effective recovery of amounts due to ULICO, ULICO and PBLA have reached a mutual agreement whereby the JPLs "are expressly of the view that [this action] relates to" the Chapter 15 Proceeding and that "any recoveries by ULICO in [this action] shall inure to the benefit of the JPLs." *See* Clinton E. Cameron Declaration, Exhibit A.

---

[8] *See* Main Chapter 15 Proceeding, Case No. 20-1279 (LGB), ECF No. 37.

[9] In fact, the JPLs and Lindberg continue to fight over the turnover of certain documents and records, however Lindberg has complied, in part, with several of the orders.  *See* Main Chapter 15 Proceeding, Case No. 20-1279 (LGB), ECF Nos. 114, 131,137, and 138.

## ARGUMENT

In this omnibus opposition to Defendants' motions to dismiss, ULICO addresses all arguments made by all Defendants, but focuses in the narrative upon the motions made by Defendant Herwig and the Lindberg Defendants, as these motions are the most comprehensive and are reflective of largely all of the Defendants' arguments. Where particular Defendants have raised unique arguments, ULICO addresses those specifically.[10]

## I.    Personal Jurisdiction Exists Over Every Defendant Because Each Conducts Business Somewhere in the United States.

Rule 7004 of the Bankruptcy Rules of Procedure ("Service of Summons; Complaint"), governs the exercise of personal jurisdiction over a defendant in an adversary proceeding. Rule 7004(d) provides:

> (d) NATIONWIDE SERVICE OF PROCESS. The summons and complaint and all other process except a subpoena may be served anywhere in the United States.

Br. Proc. 7004(f). Section (f) provides:

> (f) PERSONAL JURISDICTION. If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

This nationwide service of process rule in adversary proceedings is unlike a case arising in the state or federal courts (*e.g.*, in diversity jurisdiction) using a state "long-arm" statute. There, a defendant's minimum contacts with the forum state must be established to warrant the exercise of personal jurisdiction over a defendant. The exercise of personal jurisdiction under Rule 7004, like many other federal statutes, does not turn on a state-specific analysis, but applies if the defendant

---

[10] In the avoidance of doubt, ULICO opposes all arguments asserted in each of the motions to dismiss and address those more thoroughly below.

does business *anywhere* in the United States.[11]   In order to determine whether the exercise of

personal jurisdiction over a defendant "is consistent with the Constitution and laws of the United

States," courts in adversary proceedings have looked not to the defendant's contacts with the forum

state, but instead to the defendant's presence in the United States as a whole.[12]   The inquiry is not

whether the Defendant is subject to personal jurisdiction in New York, but whether the Defendant

is subject to personal jurisdiction *anywhere in the United States.*[13] Under this standard, applicable

to adversary proceedings, it is black letter law that any party that has contacts with the United States

as a whole can be summoned before this Court regardless of the entity's contacts with New York.

Fed. R. Bankr. Proc. 7004(d). *See, e.g.*, *In re Hellas Telecommunications (Luxembourg) II SCA*, 547

B.R. 80, 97 (Bankr. S.D.N.Y 2016) (collecting cases).   None of the moving Defendants is a foreign

enterprise and none has challenged the fact that it is subject to jurisdiction somewhere within the

borders of the United States.

Inexplicably, either by neglect or design, of those Defendants that have raised the defense

of personal jurisdiction, none have addressed the governing Rule 7004.   Instead, all such

Defendants have erroneously relied upon the inapplicable *International Shoe* standard to argue

that ULICO must establish that the Defendants have minimum contacts with New York State.   In

---

[11]  Fed. R. Bankr. P. 7004(f); *see also Finova Capital Corp. v. Cote (In re Finova Capital Corp.)*, 358 B.R. 113, 119 (Bankr. D. Del. 2006).

[12] Thus, if the defendant does not contend that service of process was improper under Bankruptcy Rule 7004, "[it] is subject to personal jurisdiction in this Court so long as the Due Process requirements are satisfied." *In re Hellas Telecommunications (Luxembourg) II SCA*, 547 B.R. at 96.

[13]  *See, e.g., Tribune Media Servs. Inc. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 123 (Bankr. D. Del. 2009); *Klingher v. Salci (In re Tandycrafts Inc.)*, 317 B.R. 287, 289 (Bankr. D. Del. 2004); *In re Hellas Telecommunications (Luxembourg) II SCA*, 547 B.R. at 97.  Accordingly, each Defendant's contacts with the United States as a whole, rather than with New York specifically, should be evaluated for purposes of personal jurisdiction. *In re Enron Corp.*, 316 B.R. 434, 444 (Bankr. S.D. NY 2004)("no inquiry into a defendant's 'minimum contacts' with the forum state is needed to exercise jurisdiction pursuant to Bankruptcy Rule 7004; rather, only a federal 'minimum contacts' test is required, whereby the Fifth Amendment's Due Process Clause limits a bankruptcy court's exercise of personal jurisdiction over a defendant").

so doing, the Defendants not only assert the incorrect standard, but also fail to address the requirements of Rule 7004.  Thus, none of the Defendants refute ULICO's contention that the service of process requirements of Rule 7004 has been met.  In fact, all moving Defendants have waived any objection to service of process.[14]  Nor have any of the Defendants argued that they do not conduct business anywhere in the United States, such that the exercise of jurisdiction over them in this Court is not "consistent with the United States Constitution or the laws of the United States."  Fed. R. Bankr. P. 7004.  In short, all the requirements of Rule 7004 have been met and personal jurisdiction has clearly been established.  Therefore, Defendants' motions to dismiss for lack of personal jurisdiction must be denied.

## II.   The Court Has Subject Matter Jurisdiction to Hear this Adversary Proceeding, ULICO Has Standing to Bring this Adversary Proceeding, and the Court Should Not Abstain from Hearing this Adversary Proceeding.

The Defendants further seek to dismiss on the related grounds that the Court does not have subject matter jurisdiction to hear this action and that ULICO does not have standing to bring this adversary proceeding.[15]  Additionally, some Defendants argue that – even if the Court's subject matter jurisdiction and ULICO's standing are established – the Court should nonetheless abstain from exercising jurisdiction.  None of these arguments are meritorious.

### A.   This Action "Relates to" the Chapter 15 Proceeding.

Context is appropriate in this analysis.  By virtue of the $524,009,051.26 Arbitration Award which was confirmed as a judgment of the District Court for the District of New York, ULICO is

---

[14] *See* [ECF Nos. 23, 30, 32, 34, 37, 39, 42, 44, 46, 48, 52, 56-58, 60, 62, 64].

[15] While the Lindberg Defendants, Defendant Herwig, and Defendant AAPC all raise standing as a substantive defense in their motions, for ease of responding, we direct the court's attention to Defendant Herwig's brief that most encompasses the Defendants' collective argument. *See* ECF No. 81.

indisputably and by far the largest creditor of the Debtor's estate. *See* Compl. ¶¶ 8-9. Indeed, before

its liquidation, PBLA's business was dominated by its reinsurance arrangement with ULICO.

Meanwhile, some of the Defendants are alleged to have been active participants in a vast

corrupt conspiracy, that had at its goal the wrongful removal of assets from the ULICO Trust in

order to fund Lindberg's lavish lifestyle and for other improper purposes. Others are recipients of

funds that were deployed in the furtherance of that conspiracy and to defeat ULICO's rights as the

primary, if not exclusive creditor of PBLA. Given the nature of the complex transactions

wrongfully perpetrated, piecemeal litigation of these transactions would not only be inefficient but

nearly impossible, as each Defendant would doubtlessly attempt to shift liability to other entities

not party to their particular piecemeal slice of the litigation. It is precisely these sorts of

creditor/multi-defendant litigations that Bankruptcy Courts are particularly well-suited to preside

over and resolve in adversary proceedings. *See e.g., In re Extended Stay, Inc.*, 466 B.R. 188, 206–

07 (S.D.N.Y. 2011) (holding that judicial economy would be promoted by allowing the bankruptcy

court to adjudicate five separate adversary proceedings due to the bankruptcy court's familiarity

with the case, and that allowing the matters to proceed in the bankruptcy court is "the more efficient

course.")

The JPLs and ULICO have entered into an agreement which expressly recognizes these

realities and constitutes their mutual, joint approach to pursue the Defendants in order to recover

funds wrongfully removed from the ULICO Trust. *See* Exhibit A. According to the terms of this

Settlement Agreement, as stated in pertinent part: [16]

---

[16] "When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure . . . [a] court may consider materials outside the pleadings to resolve jurisdictional disputes." *In re Bernard L. Madoff Investment Securities, LLC*, 561 B.R. 334, 344-345 (Bankr. S.D.N.Y. 2016); *see also In re Margulies*, 476 B.R. 393, 399 (Bankr. S.D.NY. 2012).

> 2. The JPLs acknowledge and confirm their view that the Adversary Proceeding impacts the JPLs' rights and liabilities, in that any recoveries by ULICO in that Adversary Proceeding shall inure to the benefit of the JPLs as referenced in this agreement. The JPLs therefore are expressly of the view that the SDNY Action "relates to" the Bankruptcy Court Action as that term is understood under federal law.

This Settlement Agreement removes any doubt that there could be as to whether the Court has subject matter jurisdiction over this Adversary Proceeding and whether ULICO has standing to pursue it. Under 28 U.S.C. §1334(b) a court has subject matter jurisdiction over proceedings which are "related to" cases under Title 11 of the United States Code – this includes Chapter 15 actions. *See e.g., In re Bernard L. Madoff Inv. Sec. LLC,* 561 B.R. 334, 345 (Bankr. S.D.N.Y. 2016).

A proceeding is "related to" a bankruptcy action "if the action's outcome might have any conceivable effect on the bankrupt estate." *Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (citing 28 U.S.C. § 1334(b)); *See also In re WorldCom, Inc. Securities Litigation*, 293 B.R. 308, 318 (Bankr. S.D.N.Y. 2003) (holding "the test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any "conceivable effect" on the bankrupt estate") *citing In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 113 (2d Cir. 1992); *In re Bernard L. Madoff Inv. Sec. LLC,* 561 B.R. at 345 ("an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.").[17]    The Agreement

---

[17] The fact that this Adversary Proceeding "relates to" a Chapter 15 proceeding is of no consequence as courts in this Circuit have previously held that an adversary proceeding is "related to" a debtor's foreign estate in the context of a Chapter 15 proceeding where the adversary proceeding seeks relief under state and foreign law. *See e.g., In re Hellas Telecommunications (Luxembourg) II SCA,* 524 B.R.448, 515 (S.D.N.Y. 2015) (finding authority to determine "related to jurisdiction where the "[p]laintiffs' claims are all state law claims brought in an adversary proceeding related to a chapter 15 proceeding").

13

explicitly provides "any recoveries by ULICO . . . shall inure to the benefit of the JPLs." *See* Ex. A, ¶ 2. It is beyond doubt that the reduction of PBLA's liability would have both a "conceivable effect" on the bankruptcy estate and that the Adversary Proceeding itself has a "significant connection" to the Chapter 15 Proceeding. In fact, the JPLs explicitly acknowledge this action "relates to the Bankruptcy Court Action." *Id.*

Finally, and notwithstanding the above, there is diversity jurisdiction over this case regardless of the relationship to the Chapter 15 Proceeding (although the reference would be withdrawn). That is because there is complete diversity of citizenship between the Plaintiff (a Puerto Rican citizen) and all of the Defendants (none of which is a citizen of Puerto Rico), and the claims exceed $75,000. *See* 28 U.S.C. §§ 1332(a), 1332(e) (providing that the Commonwealth of Puerto Rico is a "state" for the purposes of diversity jurisdiction). For these reasons, the Defendants' motions to dismiss for lack of subject matter jurisdiction must be denied.

## B. ULICO Unquestionably Has Standing to Pursue These Claims.

As to Defendants' motions to dismiss on the grounds that ULICO lacks standing to bring this Adversary Proceeding, Defendants again proceed under an incorrect view of applicable law. This is not a Chapter 11 case where the Code relies on the debtor to be the primary pursuer of avoidance claims, it is a Chapter 15 case, where the Code specifically precludes use of the normal Bankruptcy Code avoidance remedies. *See* 11 U.S.C. § 152(a)(7). Instead, the sole remedies available are those provided in applicable non-bankruptcy law. *See e.g., In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. at 515 (finding authority to determine "related to" jurisdiction where the "[p]laintiffs' claims are all state law claims brought in an adversary proceeding related to a chapter 15 proceeding") (internal citations omitted).

14

ULICO is pursuing its claims under one of the uniform voidable transfer statutes, be it the UVTA, the UFTA, or the UFTC, in any case, those statutes only give rights to creditors. The UVTA explicitly provides that "[a] transfer made or obligation incurred by a debtor is voidable, as to a creditor . . ." NC General Statutes, §39-23.4 (emphasis added); *See e.g. Cipciao, LLC v. M Chow One, LLC*, 2021 WL 1141567, at *7 (S.D.N.Y. March 24, 2021) (noting the relevant provisions of the "U.V.T.A. provide causes of action to a creditor"); *See also Haworth, Inc. v. Janumpally,* 2018 WL 3978173 *5 (E.D.N.C. 2018) ("The statute authorizes a creditor to make a claim for relief" and "also provides for remedies of a creditor in an action brought under the statute including, avoidance of the transfer . . . to the extent necessary to satisfy the creditor's claim") (internal citations omitted). Clearly, as the largest creditor of PBLA, ULICO has standing to pursue its own actions under the UVTA.[18] Despite Defendants' faulty premise, ULICO's standing is not derivative of PBLA's standing. That is why the Recognition Order does not have any preclusive effect on ULICO to assert its claims. *See* ECF No. 81, p. 6.

C.     **The Applicable Abstention Statute Specifically Precludes Chapter 15 Actions.**

Similarly, Defendants' arguments that this Court should abstain from hearing this matter must be rejected because such arguments contradict the governing law as set forth in 28 U.S.C. § 1334, which provides as follows:

> *Except with respect to a case under chapter 15 of title 11*, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or

---

[18] Defendant AAPC also asserts an argument that ULICO has failed to join necessary parties, namely the Trustee or the Trust. ECF No. 99 p. 13. As this Court knows, a trust does not have legal identity to assert claims on its behalf. *See Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 730 (2d Cir. 2017) (stating that a trust "is not a legal entity . . . capable of legal action on its own behalf") (*citing* Restatement (Second) of Trusts § 2 (1957)); *see also Liveo v. Hausman*, 86 N.Y.S.3d 378, 379 (N.Y. Sup. Ct. 2018) ("A trust, however, is a legal fiction, and cannot sue or be sued itself"). Moreover, as the claims ULICO is pursuing are explicitly granted to creditors, AAPC's joinder argument is inapplicable.

15

respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1) (emphasis added). [19]  Thus, the statute itself explicitly excludes Chapter 15 actions from proceedings in which a federal bankruptcy may permissibly abstain. *See In re Hellas Telecommunications (Luxembourg) II SCA*, 535 B.R. 543, 588 (Bankr. S.D.N.Y. 2015) ("federal law does not authorize permissive abstention of this Adversary Proceeding."); *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 452 B.R. 64, 83 (Bankr. S.D.N.Y.2011), *rev'd on other grounds,* 458 B.R. 665 (S.D.N.Y. 2011) (holding that there is no provision in federal law permitting abstention from matters arising under Chapter 15 or arising in a Chapter 15 case). Accordingly, "most courts that have interpreted the exclusionary scope of [28 U.S.C. § 1334] have held that it applies to both the Chapter 15 case itself and cases 'arising in or related to' Chapter 15 cases." *In re Hellas Telecommunications (Luxembourg) II SCA*, 535 B.R. at 588. Therefore, given that this Adversary Proceeding is "related to" the Chapter 15 Proceeding, this Court may not abstain from hearing it, and Defendants' motion on this ground must be denied.

## III.   <u>Defendants' Substantive Attacks on ULICO's Claims Similarly Fail.</u>

Separate from Defendants' procedural and jurisdictional defenses, Defendants attack the substance of ULICO's claims, asserting they are barred by applicable statutes of limitations and fail to state a claim for which relief can be granted under Rule 12(b)(6), Rule 8(a), and Rule 9(b). For the reasons stated more thoroughly below, Defendants' assertions are simply unsupported.

### A.   **All Applicable Limitations Periods Have Been Complied With.[20]**

---

[19] The Lindberg Defendants are the only Defendants that raise abstention as a defense within their motion.  *See* ECF No. 75, ¶¶14-17.

[20] The Flowery Defendants are the only Defendants that assert in their motion that ULICO's claims are time-barred. *See* ECF No. 68, p. 12.  ULICO therefore refers the Court to this motion, and respond directly to that brief here.

There is a consensus among most of the Defendants that all of the claims made by ULICO are timely under the applicable limitations periods.  However, one set of Defendants – consisting of SPVs formed by Lindberg with colorful, often flowery names (the "Flowery Defendants")[21] – argues that the avoidance claims are barred by the limitation contained in Section 548 of the Bankruptcy Code, providing that a trustee may file a claim under that section related to a transfer "that was made or incurred on or within 2 years before the date of the filing of the petition."  11 U.S.C. § 548(a)(1). [ECF No. 70, at 12].  As set forth above, the avoidance claims at issue in this Adversary Proceeding are not brought under Section 548, as such claims are prohibited under Section 1521(a)(7) of the Code.  11 U.S.C. § 1521(a)(7).  Therefore, the two-year period contained in Section 548 is simply irrelevant and inapplicable here.

The other arguments on limitations made in the Flowery Defendants' motion are similarly unavailing.  The motion asserts that a three-year statute of limitations provided under North Carolina law applies to virtually all of the claims at issue here, that the statute does not use a discovery rule, and therefore that virtually all of ULICO's claims are time barred.  That is wrong for numerous reasons.  First, the Flowery Defendants fail to explain why North Carolina statutes of limitation would apply here at all.  As this case is filed in New York, the general rule is that the Court should apply the limitations periods set forth in the New York CPLR to ULICO's claims.  For fraudulent conveyance claims arising prior to New York's recent enactment of the Uniform Voidable Transactions Act, the applicable period is governed by the six-year "catch all" period embodied in Section 213 of the New York Civil Practice Law and Rules ("CPLR").  *See, e.g.*, *Orr*

---

[21] Atkinson, LLC; Begonia Eight, LLC; Blue Daffodil, LLC; Blue Violet, LLC; Carnation Three, LLC; Chrysanthemum Two, LLC; Dahlia Ten, LLC; Daisy Seven, LLC; Epping, LLC; Flowery Branch, LLC; Forsyth, LLC; Geranium Two, LLC; Hookset, LLC; Lilac Six, LLC; Macon, LLC; Red Begonia, LLC; Somersworth, LLC; Weare, LLC; Yellow, Lotus, LLC; and Yellow Sunflower, LLC.

17

*v. Kinderhall Corp.*, 991 F.2d 31,35 (2d Cir. 1993). The other claims referenced in the Flowery Defendants' motion are also governed by that same period.

Pursuant to CPLR Section 213, an action to "procure a judgment on the ground of fraud" is subject to a six-year statute of limitations. Thus, the argument that ULICO's voidable transfer, fraud, and unjust enrichment claims are barred by the applicable statute of limitations under the Bankruptcy Code, as raised by the Flowery Defendants, relies upon the wrong law and the wrong statute of limitations. ULICO's voidable transfer, fraud and unjust enrichment claims allege claims grounded in state statutes and common law fraud. Given that the alleged fraudulent transfers first began, based on available information, in the summer of 2017, ULICO is well within the appropriate time period to timely file its complaint. Finally, even if the Court were to apply North Carolina limitations periods to this case, the result argued by the Flowery Defendants would not apply. The limitations period for fraudulent conveyance claims in North Carolina is four years, not three. *See KB Aircraft Acquisition, LLC v. Berry*, 790 S.E.2d 559, 569 (N.C. Ct. App. 2016); N.C.G.S. § 39-23.9. None of the avoidance claims here arose more than four years from the time of filing. Accordingly, ULICO's claims are not time-barred and the Flowery Defendants' motion should be denied.

**B.      Despite Defendants' Contentions, ULICO's Claims Have Been Properly Pled Under the Applicable Rule 12(b)(6) and Rule 7012 Standards.**

Finally, Defendants attack virtually all ULICO's counts for failure to state a claim pursuant to Rule 12(b)(6), and in doing so ignore the broad pleading standards afforded in federal courts.

Dismissal pursuant to Federal Rule of Bankruptcy Procedure 7012 incorporates Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Bankr. P. 7012. Under Rule 12(b)(6), dismissal is only appropriate if it states a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, "the court must accept as true all factual

allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 (2d Cir. 1997). "The Court's task in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re WorldCom, Inc.,* 322 B.R. 530, 535 (Bankr. S.D.N.Y. 2005). When assessing the viability of a complaint, courts "read the [c]omplaint generously and make all reasonable inferences in favor of the non-movant." *In re Adler, Coleman Clearing Corp.,* 218 B.R. 689, 696 (Bankr. S.D.N.Y. 1998) (denying defendants' motion to dismiss finding the trustee sufficiently pled facts to assert avoidance claims under the Code). As a result, the fundamental issue at the dismissal stage "is not whether [a plaintiff] will ultimately prevail but whether [it] is entitled to offer evidence to support the claims." *Id.* As addressed more fully below, ULICO has more than adequately fulfilled the standards under Rule 12(b)(6) for pleading its claims in this adversary proceeding.

### C.      ULICO Has Pled Its Voidable Transfer Claim with Adequate Particularity.

Despite Defendants' contentions, ULICO has properly pled its Voidable Transfer claim with the requisite particularly under applicable standards. Once again, Defendants seek to apply the pleading standards under the Bankruptcy Code to ULICO's voidable transfer claim. However, ULICO does not seek relief under the Code – but rather state law. Under the UVTA, a creditor can seek to void a transfer or obligation incurred by a debtor, if the debtor made the transfer in two general circumstances: (1) with the intent to hinder, delay, or defraud any creditor; or (2) without receiving reasonably equivalent value in exchange for the transfer where the transfer is insolvent. *See generally* NC General Statutes, §39-23.4. ULICO pleads both instances in its Complaint. *See* Compl. ¶¶ 121-146. Therefore, there are two applicable pleading standards that may apply: Rule 8(a)(2) or Rule 9(b). ULICO has satisfied both.

19

### i.      ULICO Has Met the Heightened Standards of Rule 9(b).

Defendants are correct that, generally where an action seeks to avoid a transfer based on

"actual fraud," the higher pleading standard of Rule 9(b) must be met.  Courts "have taken a more

liberal view when examining allegations of actual fraud that are [pleaded] by a bankruptcy trustee

in the context of a fraudulent conveyance, since a trustee is an outsider to the transaction who must

plead fraud from second-hand knowledge." *In re Nine West LBO Securities Litig.,* 505 F. Supp.

3d 292, 320-321 (Bankr. S.D.N.Y. 2020); (quoting *In re Saba Enters., Inc.*, 324 B.R. 626, 640

(Bankr. S.D.N.Y. 2009).   While not the Trustee, ULICO is in a similar outsider role as the

beneficiary to the Trust.  The underlying theory behind a more liberal approach is often that a

trustee – or other outsider – is limited to second-hand knowledge when asserting the cause of

action. *In re Nine West LBO Sec. Litig.*, 505 F. Supp. 3d. at 321.This more relaxed standard

accounting for second-hand knowledge requires that a plaintiff need only plead certain "badges of

fraud." *In re Manhattan Investment Fund Ltd.,* 310 B.R. 500, 505-06 (Bankr. S.D.N.Y. 2002)

("Given the difficulties in establishing a transferor's actual intent, courts often look at the totality

of the circumstances as well as the badges of fraud surrounding the transfers"); *In re Kaiser,* 722

F.2d 1574, 1582 (2d Cir. 1983) ("Fraudulent intent is rarely susceptible to direct proof . . .

Therefore, courts have developed 'badges of fraud' to establish the requisite actual intent to

defraud"); *See also In re Yahweh Ctr., Inc.,* 2019 WL 1325032, at *6 (Bankr. E.D.N.C. Mar. 22,

2019) (noting under the UVTA intent is determined by whether the pleading sufficiently alleges

"badges of fraud").

The "badges of fraud," which can be relied upon under this relaxed pleading standard,

can include:

    (1) the lack or inadequacy of consideration;
    (2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;
(4) the financial condition of the party sought to be charged both before and after the transaction in question;
(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;
(6) the general chronology of the event and transactions under inquiry;
(7) a questionable transfer not in the usual course of business; and
(8) the secrecy, haste, or unusualness of the transaction.

*In re Saba Enters., Inc.*, 421 B.R at 643. Similar to a situation with a trustee, ULICO is working from limited, second-hand knowledge, especially at the time of pleading. Even so, ULICO successfully pleads many of the "badges of fraud." For example, ULICO alleges that it did not receive reasonably equivalent value for each of the alleged fraudulent transactions (Compl. ¶144), that many of the corporate entities involved in the transfers were owned by Defendant Greg Lindberg or his various other corporate entities (*Id.* ¶123), that over $500 million was siphoned off from the Trust (*Id.* ¶124), the general timeline of the transactions beginning on or around July of 2017 (*Id.* ¶127), the date, amount and recipient of exemplary transactions (*Id.* ¶127) the fact that all of the documents associated with those transactions were signed by Lindberg on behalf of PBLA, and that the trust assets were unreasonably small in relation to the transactions (*Id.* ¶144). These allegations alone satisfy the heightened pleading requirement under Rule 9(b) and further establish the elements necessary to plead a cause of action under the UVTA.

### ii.    Regardless of Rule 9(b), ULICO Still Satisfies the Pleading Requirements of a Voidable Transfer Claim Under Rule 8(a).

Notwithstanding the heightened 9(b) requirements, the UVTA also grants relief for fraudulent conveyances that do not involve intentional fraud. *See* NC General Statutes, §39-23.4. In that instance, Rule 8(a)(2) is the only pleading standard that must be met. *See In re Bernard L. Madoff Inv. Securities, LLC,* 458 B.R. 87, 110-111 (Bankr. S.D.N.Y. 2011) ("courts consistently hold that claims of 'constructive fraud do not need to meet the heightened pleading requirements

of Fed. R. Civ .P. 9(b)'") *citing Bank of Commc'ns v. Ocean Dev. Am., Inc.*, No. 07-CIV-4628,

2010 WL 768881, at \*6 (S.D.N.Y. Mar. 8, 2010); *see also In re Sharp Int'l Corp.*, 403 F.3d 43, 53

(2d Cir. 2005) (applying Rule 8(a) to constructive fraudulent conveyance claims and Rule 9(b) to

actual fraudulent conveyance claims, where recipient of transfer allegedly knew it was receiving

proceeds of a fraud).  Under Rule 8(a)(2), ULICO need only to provide "a short and plain statement

of the claim showing that [it] is entitled to relief." Fed. R. Civ. P. 8(a)(2); *In re Bernard Madoff

Inv. Sec. LLC*, 458 B.R. at 111 ("The sole consideration should be whether, consistent with the

requirements of Rule 8(a), the complaint gives the defendant sufficient notice to prepare an answer,

frame discovery, and defend against the charges.") (internal citations omitted); *see Ace Motor

Acceptance Corp. v. McCoy Motors, LLC*, 2020 WL 223923, at \*7 (W.D.N.C. Jan. 14, 2020)

(holding a creditor properly plead the statutory requirements under Rule 8(a) for a fraudulent

conveyance under the Uniform Voidable Transfer Act and defendants had "sufficient information

to answer the complaint").

ULICO has met this standard.  ULICO has sufficiently pled that PBLA initiated hundreds

of transfers to Defendants whereby PBLA did not receive reasonably equivalent value in exchange

for the transfer.  Compl. ¶144.  In fact, the majority of these fraudulent conveyances were disguised

as loan or security agreements to various Defendants – often those affiliated with Lindberg

("Lindberg Affiliates") – for large sums of money withdrawn from the Trust Accounts the very

same day.  Compl. ¶¶140-141.  As a result, the Trust was left with diminishing assets and

outstanding obligations PBLA was unable to satisfy.  Compl. ¶144.  These facts alone provide

Defendants with sufficient information to answer the complaint – and thus meet the liberal

pleading standards required under Rule 8(a).

### D.     ULICO has Similarly Pled its Fraud Claim with Sufficient Particularity Under Rule 9(b).

Similar to instances involving fraudulent conveyance claims, courts also relax the particularity requirement for pleading fraud where the plaintiff is a third-party relying upon secondhand information. *In re Hellas Telecommunications (Luxembourg) II SCA*, 535 B.R. at 561-62 ("[c]ourts relax, but do not eliminate, the particularity requirement for pleading fraud where the plaintiff is a bankruptcy trustee or a third party who is pleading fraud on secondhand information."); *see also Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987) ("[T]he degree of particularity required should be determined in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts"). As established above, ULICO has set forth allegations against the Lindberg Affiliates with adequate particularly considering its position as a third party attempting to recover transactions it was not a party to. Paragraphs 1 through 123 of the Amended Complaint, which are expressly incorporated into Count V (Fraud), specifically detail how PBLA, in concert with the Lindberg Affiliates, represented to ULICO that the Trust would be effectively managed pursuant to the parties' agreement and applicable law, and that misrepresentations were made to ULICO in this regard, causing ULICO damages in the realm of $500 million.

### E.     ULICO Has Sufficiently Met the Pleading Standards For Pursuing A Claim For Unjust Enrichment Under Rule 12(b)(6).

Rule 8(a) provides that "relief in the alternative or of several different types may be demanded." Fed. R. Civ. P. 8(a)(3). "[C]ourts have refused to dismiss unjust enrichment claims on the basis that they were duplicative of fraudulent transfer claims, noting that 'it is conceivable that the plaintiff could recover under one theory but not the other.'" *In re Hellas Telecommunications (Luxembourg) II SCA*, 535 B.R. at 575 (citing *In re Operations NY LLC*, 490

23

B.R. 84, 99-100 (Bankr. S.D.N.Y. 2013) (denying motion to dismiss unjust enrichment claim despite overlapping with fraudulent transfer claim).

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that 'equity and good conscience' require restitution." *In re Operations,* 490 B.R. at 99.   The elements are similar under North Carolina law, requiring: (1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously. *Primerica Life Ins. Co. v. James Massengill & Sons Const. Co.*, 712 S.E.2d 670, 677 (N.C. Ct. App. 2011).   Ultimately, "the essence of such a claim is that one party has received money or a benefit at the expense of another."   *Kramer v. Lockwood Pension Services, Inc.,* 653 F.Supp.2d 354, 381 (S.D.N.Y. 2009) (internal citations and quotations omitted); *Shih v. Petal Card, Inc.*, 2020 WL 5659429 (S.D.N.Y. Sept. 23, 2020).

Here, it is without question that ULICO has properly plead its unjust enrichment claim. ULICO effectively pleads that Defendants were enriched by receipt of the Trust funds, which were consciously accepted, and that equity weighs in favor of ULICO to assert this cause of action. *See* Compl. ¶¶ 151-155.   There is no overarching contract that existed between ULICO and all of the Defendants; thus it is possible that ULICO could recover under its unjust enrichment theory as an alternative theory of recovery, should it be unable to recover under its fraudulent conveyance claims.

### F.      ULICO Meets the Pleading Standards for a Constructive Trust Claim.

In conjunction with ULICO's claim for unjust enrichment, ULICO has also sufficiently plead the imposition of a constructive trust. To properly plead a claim for a constructive trust, a party must establish four factors: "(1) a fiduciary or confidential relationship; (2) an express or

24

implied promise; (3) a transfer in reliance on the promise; and (4) unjust enrichment." *Kaprov v. Stalinsky*, 44 N.Y.S.3d 123, 126 (App. Div. 2016). The mere fact that ULICO has satisfied the pleading requirements for its unjust enrichment claim necessarily satisfies the pleading requirements for a constructive trust claim. *See e.g. Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 335 (Bankr. S.D.N.Y. 1999) ("By alleging that the wives are the settlors of offshore trusts which hold property allegedly given to them by their husbands but which, instead, rightfully belongs to [another], the Trustee has pleaded unjust enrichment by [the wives] as well as their status as donees rather than as *bona fide* purchasers. As a result . . . the trustee may trace the trust property to the wives and impress a constructive trust upon that property."). *See also Reyes v. Reyes*, 2012 WL 4058037, at *9-11 (E.D.N.Y Sept. 14, 2012) (denying motion to dismiss where plaintiff alleged facts establishing unjust enrichment, thus supporting the claim for a constructive trust); *Cury v. Mitchell*, 688 S.E.2d 825, 826-28 (N.C. Ct. App. 2010) (denying motion to dismiss where the plaintiff alleged "a fiduciary relationship existed, that defendant breached a fiduciary duty, and that defendant was unjustly enriched because of that breach").

Here, ULICO has established a fiduciary relationship between PBLA – under the direction of Greg Lindberg – and ULICO (Compl. ¶165); a promise to ULICO concerning certain returns on the various loan agreements (*Id.*); a transfer of hundreds of millions from the Trust Accounts to the various Defendants (*Id.* ¶166); and the unjust enrichment of the various Defendants and the breach of the promise from Lindberg and his affiliates on the return for investments (*Id.* ¶¶ 166-67). Similarly, if ULICO can prove that Defendants were unjustly enriched by the trust funds, and the funds are effectively traced to Defendants, such funds can and should be held in constructive trust for the benefit of ULICO. In this instance, ULICO has effectively plead the imposition of such a trust.

25

### G.    In Turn, ULICO Has Also Satisfied the Broad Federal Pleading Standards to Assert a Cause of Action for Conversion.

An action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question. *See e.g., Mfrs. Hanover Trust Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 708 (App. Div. 1990); *Rosendale v. Mr. Cooper Group Inc.*, 2021 WL 4066821 at *15 (S.D.N.Y. Sept. 7, 2021) (finding a valid conversion claim where "the money converted was in specific tangible funds of which the plaintiff was the legal owner and entitled to immediate possession"); *see also Payne v. White*, 477 N.Y.S.2d 456, 458 (App. Div. 1984) ("the funds in question were clearly identifiable as the proceeds of a specific named bank account").  Here, there is no question as to what funds are at issue – the over $500 million that was fraudulently transferred out of the ULICO trusts. Compl. ¶¶ 1, 8. It is undisputed that such funds previously belonged to ULICO as beneficiary of the Trust. *Id.* ¶¶ 119-122, 124, and 159.  ULICO has sufficiently met the pleading standards to satisfy the threshold requirements under Rule 12(b)(6) and Rule 8(a) to plead a cause of action for conversion.

### H.    ULICO Has Sufficiently Alleged Breach of Fiduciary Duty.

Under New York law, "[t]he elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. at 127.

Not dissimilar to the facts pled in support of the constructive trust claim, ULICO clearly satisfies the requirements to plead a cause of action for breach of fiduciary duty.  As ULICO asserts in its Complaint, PBLA, as alter ego of Lindberg, had a fiduciary duty to ULICO (Compl. ¶ 105), and Lindberg breached his fiduciary duty by engaging in self-dealing transactions while failing to protect ULICO's interest in the trust (*Id.* ¶ 174) ultimately causing ULICO to suffer substantial

damages upwards of $500 million (*Id.*).  Because the Lindberg Affiliates are all alleged to be alter-egos of Lindberg as well, the fiduciary obligation to ULICO likewise flows through the affiliates at the direction of Lindberg. *Id.* ¶¶ 17, 105.  Accordingly, ULICO has, at a minimum, stated a claim against Lindberg and the Lindberg Affiliates for breach of fiduciary duty.

IV.    **Alternatively, ULICO Requests Leave to Replead Its Amended Complaint.**

In the alternative, should this Court agree with Defendants that Plaintiff has failed to satisfy any of the pleading standards addressed above, ULICO respectfully requests this Court grant it leave to file a second amended complaint.  Pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure, Rule 15(a) of the Federal Rules of Civil Procedure applies in adversary proceedings and as such, leave to file an amended complaint can be granted by a court.  *Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013) (a "court should freely give leave when justice so requires and it is the usual practice upon granting a motion to dismiss to allow leave to replead").  Accordingly, ULICO respectfully requests, in the alternative, leave to replead its complaint in this action.

27

## CONCLUSION

For the reasons set forth above, ULICO respectfully requests that Defendants' Motions to Dismiss are denied in their entirety.

Dated: December 6, 2021                                    Respectfully submitted,

**UNIVERSAL LIFE INSURANCE COMPANY**

/s/ Clinton E. Cameron
Clinton E. Cameron, *pro hac vice*
Meghan C. Dalton, *pro hac vice*
Courtney D. Logli, *pro hac vice*
CLYDE & CO US LLP
55 West Monroe Street, Suite 3000 Chicago, Illinois 60603-5757
Telephone: 312.635.7000
Facsimile: 312.635.6950
Clinton.Cameron@clydeco.us
Meghan.Dalton@clydeco.us
Courtney.Logli@clydeco.us

Christopher Carlson
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue, 16th Floor
New York, NY 10174
Telephone: 212.710.3900
Christopher.Carlsen@clydeco.us

*Counsel for Plaintiff Universal Life Insurance Company*