Peter J. Haley (*pro hac vice pending*)
NELSON MULLINS RILEY & SCARBOROUGH LLP
One Financial Center
Boston, MA  02111
Tel: (617) 217-4714
Fax: (617) 217-4750
peter.haley@nelsonmullins.com

Christopher J. Blake *(pro hac vice pending)*
NELSON MULLINS RILEY & SCARBOROUGH LLP
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Tel: (919) 329-3800
Fax: (919) 329-3799
chris.blake@nelsonmullins.com

Alan F. Kaufman
NELSON MULLINS RILEY & SCARBOROUGH LLP
280 Park Avenue, 15th Floor West
New York, NY  10017
Tel: (646) 428-2600
Fax: (646) 428-2610
alan.kaufman@nelsonmullins.com

*Counsel to the Defendant Global Bankers Insurance Group, LLC,
now known as Aspida Financial Services, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PB LIFE AND ANNUITY CO., LTD., *et. al.*,<br><br>  Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 20-12791 (LGB)<br>(Jointly Administered) |
| UNIVERSAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>  GREG E. LINDBERG, individually, CHRIS<br>  HERWIG, individually, AAPC HOLDINGS, | Adversary Proceeding<br>Case No.  21-01169 |

LLC, ACADEMY FINANCIAL ASSETS,
LLC, AGH PARENT, LLC, ALPINE
CAPITAL, LLC, ASIM HOLDINGS, LLC,
ASL HOLDINGS, LLC, ATKINSON, LLC,
ATLANTIC COAST LIFE INSURANCE
COMPANY, ATLAS FINANCIAL
INVESTMENTS, LLC, AUGUSTA ASSET
MANAGEMENT, INC., BEGONIA EIGHT,
LLC, BLH CAPITAL, LLC, BLUE DAFFODIL,
LLC,  BLUE VIOLET, LLC, CAPITAL ASSETS
FUND I, LLC, CAPITAL ASSETS FUND II,
LLC, CAPITAL ASSET MANAGEMENT I,
LLC, CAPITAL  ASSETS MANAGEMENT II,
LLC, CAPITAL ASSETS MANAGEMENT III,
LLC, CARNATION THREE, LLC,
CHATSWORTH ASSET MANAGEMENT,
LLC, CHRYSANTHEMUM TWO, LLC, CSI
INTERCO, LLC, DAHLIA TEN, LLC, DAISY
SEVEN, LLC, DRUMMOND GROUP, LLC,
DUNHILL HOLDINGS, LLC, ELI GLOBAL,
LLC, ENGLERT HOLDINGS, LLC, EPPING,
LLC,  ERIE PROPERTIES, LLC, FLAGSHIP
HOLDINGS, LLC, FLEET ASSIST INTERCO
LIMITED, FLOWERY BRANCH, LLC,
FORSYTH, LLC,  FORTREX, LLC, GBIG
CAPITAL, LLC, GBIG HOLDINGS, INC., GBI
GROUP, LLC, GERANIUM TWO, LLC,
GILFORD ASSET MANAGEMENT,
LLC, GLOBAL BANKERS INSURANCE
GROUP,  LLC, GLOBAL GROWTH
HOLDINGS, INC., GLOBAL INSURANCE
CAPITAL, LLC,  GREENFIELD CAPITAL,
LLC, HAMPTON ASSET  MANAGEMENT,
INC., HANSEN AEROSPACE,  LLC,
HEALTHLINK HOLDINGS, LLC,
HOOKSETT, LLC, HUTCHISON LAW
GROUP, PLLC, INTEGRITY EMR
HOLDINGS, LLC, INTEGRITY EMR, LLC,
IRON CITY ASSET  MANAGEMENT, INC.,
ITECH FUNDING, LLC, JACKSON ASSET
MANAGEMENT, INC., KITE
ASSET MANAGEMENT, INC., LILAC SIX,
LLC, MACON, LLC, MORNING MOUNTAIN
HOLDINGS, LLC, NETHERLANDS
INSURANCE HOLDINGS, INC., NEW
ENGLAND CAPITAL, LLC, NIH CAPITAL,

LLC, NOM GB 2018 I, LLC,
PARADIGM PARK HOLDINGS, LLC,
PARALLEL  CAPITAL ASSETS, LLC,
PERSHING, LLC, RED BEGONIA, LLC,
REVOLVERCAP PARTNERS FUND, LP,
SATORI WATERS, LLC, SEDWICK,
LLC, SENTINEL SECURITY LIFE
INSURANCE
COMPANY, SOMERSWORTH, LLC,
STANDARD ADVISORY SERVICES, LTD,
STANDARD FINANCIAL LIMITED,
STANDARD INVESTMENT CAPITAL, LTD,
TREATMENT RESOURCES OF MARGATE,
INC., TRITON FINANCIAL LIMITED, TUX
HOLDINGS, LLC, TYBEE ISLAND ASSET
MANAGEMENT, LLC, UKAT HOLDINGS,
LLC, UKAT INVESTMENT LIMITED,
VERDESIAN LIFE SCIENCES, LLC, WEARE,
LLC, YELLOW LOTUS, LLC, YELLOW
SUNFLOWER, LLC, UBS FINANCIAL
SERVICES, INC., GOLDMAN SACHS
LENDING PARTNERS, LLC, CREDIT SUISSE
AG CAYMAN ISLANDS BRANCH,
GOLDMAN SACHS BANK USA, MORGAN
STANLEY SENIOR FUNDING, INC., THE
BRYN MAWR TRUST COMPANY, and DOES
1 through 10, inclusive,

Defendants.

**MEMORANDUM OF LAW OF ASPIDA FINANCIAL SERVICES, LLC (F/K/A
GLOBAL BANKERS INSURANCE GROUP, LLC) IN SUPPORT OF
MOTION TO DISMISS THE AMENDED COMPLAINT
OR, IN THE ALTERNATIVE, TO ABSTAIN**

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................ ii

Introduction ...................................................................................................... 1

Procedural History ............................................................................................ 2

        A.      Related Proceedings.................................................................. 2

               i.     The Bankruptcy Case.................................................. 2

               ii.    The Adversary Proceeding................................................ 2

               iii.   The Michigan Proceeding.................................................. 3

        B.      Allegations of the Amended Complaint ........................................ 4

Argument ...................................................................................................... 6

      I.     Applicable Standard........................................................ 6

      II.    ULICO Lacks Standing...................................................... 7

      III.   The Court Lacks Subject Matter Jurisdiction ...................................... 9

      IV.   The Amended Complaint Fails to State a Claim Under Rule 12(b)(6)................. 10

        A.      Failure to Identity the "Voidable Transfers" and to Meet the Pleading
              Standard for Fraud ...................................................... 10

        B.      The Alternative Claims Fail as a Matter of Law .......................... 11

      V.    The Michigan Rehabilitation Orders Bar the Continued Prosecution of this
           Action Against Aspida .......................................................... 12

Conclusion ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A/S Kreditt-Finans v. Cia Venetico De Navegacion S.A. of Panama*,
    560 F.Supp. 705 (E.D.Pa.1983) *aff'd*, 729 F.2d 1446 (3d Cir.1984) ........................................9

*Anita G. Fox as Director of the Michigan Department of Insurance and Financial
    Services v. Pavonia Life Insurance Company of Michigan, Case No. 19-504-
    CR* ................................................................................................................................................1

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ...........................................................6

*In re Barkany*,
    542 B.R. 662 (Bankr. E.D.N.Y. 2015) ................................................................................8, 14

*Bechtold v. City of Rosemount*,
    104 F.3d 1062 (8th Cir.1997) .................................................................................................13

*Blank v. TriPoint Glob. Equities, LLC*,
    338 F. Supp. 3d 194 (S.D.N.Y. 2018) ....................................................................................12

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir.1993) ......................................................................................................3

*Burford v. Sun Oil Co.*,
    319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) .......................................................14, 15

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir.2002) ......................................................................................................3

*Corsello v. Verizon New York, Inc.*,
    18 N.Y.3d 777 (2012) .............................................................................................................11

*Cumberland Oil Corp. v. Thropp*,
    791 F.2d 1037 (2d Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d
    385 (1986) ................................................................................................................................8

*Di Vittorio v. Equidyne Extractive Indus. Inc.*,
    822 F.2d 1242 (2d Cir.1987) ..................................................................................................11

*Diana Allen Life Ins. Tr. v. BP P.L.C.*,
    333 F. App'x 636 (2d Cir. 2009) .............................................................................................9

*District of Columbia Court of Appeals v. Feldman*,
    460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) ..........................................................13

*In re Fairfield Sentry Ltd.*,
   458 B.R. 665 (S.D.N.Y.2011) ................................................................................7

*In re Fedders North America, Inc.*,
   405 B.R. 527 (Bankr. D. Del. 2009) ...................................................................10

Ford v. U.S. Dept. of Treasury, 50 Fed.Appx. 490, 2002 WL 31505263 (2nd Cir.
   2002) .....................................................................................................................13

*Hyland v. Navient Corp.*,
   No. 18cv9031 (DLC), 2019 U.S. Dist. LEXIS 113038 (S.D.N.Y. July 8, 2019) ...................12

In re Holland Indus., Inc., 103 B.R. 461 (Bankr.S.D.N.Y.1989)....................................9

*K I C Chems. v. ADCO Chem. Co.*,
   1996 U.S. Dist. LEXIS 3244 (S.D.N.Y. Mar. 19, 1996) ...........................................12

*Krys v. Pigott*,
   749 F.3d 117 (2d Cir.2014)......................................................................................6

*Mondrus v. Mutual Benefit Life Insurance Co.*,
   775 F.Supp. 1155 (N.D.Ill.1991) ............................................................................15

*New Orleans Public Serv., Inc. v. Council of the City of New Orleans*,
   *491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)*...........................................14

*O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*,
   383 B.R. 231 (Bankr.S.D.N.Y.2008) .....................................................................11

*O'Connell v. Penson Fin. Services, Inc. (In re Arbco Capital Mgmt., LLP)*,
   498 B.R. 32 (Bankr.S.D.N.Y.2013) .......................................................................11

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
   639 F.3d 572 (2d Cir.2011).................................................................................7, 9

*In re Philips Offset Co., Inc.*,
   152 B.R. 836 (Bankr. S.D.N.Y. 1992) ...................................................................15

*Rajamin v. Deutsche Bank Nat. Tr. Co.*,
   757 F.3d 79 (2d Cir. 2014)......................................................................................7

*Renco Group, Inc. v. Wilmington Trust, N.A. (In re Magnesium Corp. of
   America)*,
   583 B.R. 637 (Bankr. S.D. N.Y. 2018) ....................................................................6

*Renco Group, Inc. v. Wilmington Trust, N.A. (In re Magnesium Corp. of
   America)*,
   *supra* at 647-648 ....................................................................................................7

*Rooker v. Fidelity Trust Co.*,
263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)..................................................................13

*Silverman Partners, L.P. v. First Bank*,
687 F. Supp. 2d 269 (E.D.N.Y. 2010) ...................................................................................11

*Spinelli v. NFL*,
903 F.3d 185 (2d Cir. 2018)...................................................................................................12

*St. Paul Fire & Marine Insurance Co. v. PepsiCo, Inc.*,
884 F.2d 688 (2d Cir.1989)......................................................................................................8

*United States v. Owens*,
54 F.3d 271 (6th Cir.), *cert. dismissed*, 516 U.S. 983, 116 S.Ct. 492, 133
L.Ed.2d 418 (1995) ................................................................................................................14

*Yashiro Co. v. Falchi (In re Falchi)*,
1998 Bankr. LEXIS 622 (Bankr. S.D.N.Y. May 26, 1998)...................................................10

*Yukos Capital S.A.R.L. v. Feldman*,
977 F.3d 216 (2d Cir. 2020)...................................................................................................12

**Statutes**

11 USC § 362.............................................................................................................................7

11 USC § 541.............................................................................................................................7

11 USC § 1520...........................................................................................................................7

**Rules**

Bankruptcy Rule 7012 ...............................................................................................................1

FRCP Rule 9(b)........................................................................................................................11

FRCP Rule 12 ............................................................................................................................1

FRCP Rule 12(b)(1)...................................................................................................................6

FRCP Rule 12(b)(6).........................................................................................................6, 7, 10

**Other Authorities**

Bankruptcy Code Chapter 5.......................................................................................................7

Debtor and Creditor Law, § 273 ...............................................................................................8

Insurance Code of 1956, MCL 500.100 et seq. .......................................................................3

McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015 ...................................................................15

Michigan Insurance Code ...................................................................................................3, 15

*Rooker-Feldman* Doctrine .................................................................................................13

## **Introduction**

Aspida Financial Services, LLC, formerly known as Global Bankers Insurance Group, LLC, ("Aspida") submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint or, alternatively, to abstain.  The Amended Complaint suffers from a compendium of pleading deficiencies common to most defendants named in this action: (1) it presumes standing that does not exist as a matter of law; (2) it fails to establish a basis for the "related to" jurisdiction in this Court; and (3) it is based primarily on a theory of recovery dependent upon proof that certain transfers were made to the defendant parties, but fails to offer even the most rudimentary detail beyond the supposition that some transfers must have been made.  The Amended Complaint should be dismissed as a matter of law in accordance with Rule 12 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7012.

The claims as asserted against Aspida suffer from an even more glaring deficiency in that they have been asserted in direct contravention of state court[1] orders entered in connection with the Michigan rehabilitation of an insurance affiliate, Pavonia Life Insurance Company of Michigan ("Pavonia"), in which the Michigan court authorized the transfer of Pavonia's interests in the defendant Global Bankers Insurance Group, LLC to Aspida Holdco, LLC ("Aspida Holdco") free and clear of all claims, including any claims asserted in this action.  Universal Life Insurance Company ("ULICO") is aware of the Michigan court orders and their terms, but simply asserts that the Michigan court was without jurisdiction to enter the orders and has chosen to ignore their effect without seeking any redress from the Michigan court.  ULICO, in continuing to prosecute this action against Aspida, asks this Court to ignore well-established

---

[1] The Michigan rehabilitation court was the Circuit Court for the 30th Judicial Circuit, Ingham County (the "Michigan Court"), *Anita G. Fox as Director of the Michigan Department of Insurance and Financial Services v. Pavonia Life Insurance Company of Michigan, Case No. 19-504-CR* (the "Michigan Proceeding"). Copies of the relevant court orders are attached hereto and discussed below.

1

principles of comity and both sanction and adopt its own blithe disdain for the Michigan court orders. The Court should decline to do so.

## Procedural History

### A.  Related Proceedings

#### i.    *The Bankruptcy Case*

The debtors in the jointly administered foreign proceedings ("Foreign Debtors") are companies incorporated in Bermuda. One of the Foreign Debtors is PB Life and Annuity Co., Ltd., fka Private Bankers and Annuity Co., Ltd., ("PBLA"). Am. Compl. ¶ 18.   On September 25, 2020, the Supreme Court of Bermuda entered orders appointing Rachelle Frisby and John Johnston of Deloitte Touche Tohmatsu Limited ("Deloitte") as the joint provisional liquidators of the Foreign Debtors (the "JPLs"). See Case No. 20-12791 (Dkt. No. 2) ¶ 1. On December 3, 2020, at the direction of the JPLs, the Foreign Debtors filed Chapter 15 petitions for foreign recognition in this Court.  The Court granted recognition of the Foreign Debtor's Bermuda Proceedings as jointly administered foreign main proceedings on January 5, 2021 and recognized the JPLs as their foreign representatives in the Chapter 15 proceeding.  Case No. 20-12791, Dkt No. 33.

#### ii.    *The Adversary Proceeding*

The Plaintiff ULICO, a creditor of the Foreign Debtors, is an insurance company incorporated in Puerto Rico with its principal place of business in Puerto Rico. On July 6, 2021, ULICO commenced this action.  ULICO filed its Amended Complaint on July 30, 2021. Dkt. No. 14. The Amended Complaint asserts claims against 93 Defendants. Am. Compl. ¶¶ 18-104, 107-112.

### iii.   *The Michigan Proceeding*

Pavonia is a Michigan domiciled life, accident, and health insurance company authorized to conduct insurance business in Michigan under the Insurance Code of 1956, MCL 500.100 et seq. ("Michigan Insurance Code").   Pavonia received its Michigan certificate of authority on January 1, 1996.  *See generally, Stipulated Order Placing Pavonia Life Insurance Company of Michigan Into Rehabilitation, Approving Compensation of Special Deputy Rehabilitators, and Providing Injunctive Relief* (Michigan Proceeding, July 9, 2019) (Attached hereto as Exhibit A.)[2]

Pavonia was acquired by GBIG Holdings, Inc. in 2017 and became part of an insurance holding company system within the meaning of the Michigan Insurance Code. Exhibit A, page 2. The Defendant Global Bankers Insurance Group, LLC was a wholly owned subsidiary of Pavonia. Exhibit A, page 2.  On July 9, 2019, Pavonia was placed into a rehabilitation proceeding by the Michigan Court in accordance with the terms of the Rehabilitation Order and pursuant to the Michigan Insurance Code.  Exhibit A.   As part of the Michigan Proceeding to rehabilitate Pavonia, by Order dated June 24, 2021, attached hereto as Exhibit B (the "Sale Order"), the Michigan Court approved the sale of Global Bankers Insurance Group, LLC to Aspida Holdco[3].[The terms of the Sale Order define Global Bankers Insurance Group, LLC as "ServiceCo" and Aspida Holdco, LLC as "Aspida".]

Paragraph 8 of the Sale Order provides that:

---

[2] The Court may on a motion to dismiss consider pleadings and other material submitted if subject to judicial notice. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir.2002); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993).
[3] Following the sale Global Bankers Insurance Group, LLC changed its name to Aspida Financial Services, LLC.

"… the Rehabilitator shall cause Pavonia Life to sell convey, assign, transfer, and deliver to Aspida, and Aspida shall purchase, acquire, and accept from the Rehabilitator, all of Pavonia's right, title and interest in ServiceCo consisting of all of the outstanding membership units of ServiceCo (the "Units"), **free and clear of all liens or other encumbrances**, and ServiceCo shall resume its operations subject to the applicable 'Scheduled Liabilities' as defined in the Plan and previously determined during these rehabilitation proceedings."

[Exhibit B, page 4].(emphasis added)

The Sale Order at Paragraph G states that:

Upon Closing, ServiceCo shall be vested with good, valid, and marketable title in and to all ServiceCo Assets, **free of any and all liens, security interests, or encumbrances of whatever kind or nature, adverse claims**, defenses (including, without limitation, rights of setoff and recoupment), and interests of third parties of any kind or nature, other than the Scheduled ServiceCo Liabilities and ServiceCo Permitted Claims, if any.

[Exhibit B, page 11]. (emphasis added)

The Sale Order further directly enjoins any third party from pursuing any claims against Global Bankers Insurance Group, LLC or Aspida other than Scheduled Liabilities. [Exhibit B, pages 12-13]. The Plan of Rehabilitation, attached hereto as Exhibit C, defines Scheduled Liabilities.  [See Exhibit C, pages 4-5.] The claims asserted by ULICO in this action are not Scheduled Liabilities

The Orders entered in the Michigan Proceeding bar the assertion of ULICO's claims in this Adversary Proceeding against Aspida and its predecessor Global Bankers Insurance Group, LLC.

### B.  <u>Allegations of the Amended Complaint</u>

The Amended Complaint asserts six causes of action: Count I, Voidable Transfers; Count II, Unjust Enrichment; Count III, Conversion; Count IV, Constructive Trust; Count V, Fraud; and Count VI, Breach of Fiduciary Duty.  Counts I through IV are asserted against all Defendants.  Counts V and VI are asserted against the so-called "Lindberg Affiliates."

4

Paragraph 105 of the Amended Complaint defines Lindberg Affiliates as the "above-listed Defendants."   Global Bankers Insurance Group, LLC is identified as a party in Paragraph 61 of the Amended Complaint, with the notation that Greg Lindberg was listed as a member of the LLC in a 2019 public filing.[4]   With broad assertions, the Amended Complaint alleges that Defendants are "all affiliates of Lindberg ('Lindberg Affiliates') and alter egos of Lindberg, each other, and other corporate entities owned and controlled by Lindberg," and that "[a]t one point each of the Lindberg Affiliates received disbursements from the Trust, as directed by PBLA," and that "each of the named Defendants were recipients of such transfers from the Trust." Am. Compl. ¶¶ 105-106.

The "Trust" is identified in the Amended Complaint as a trust created on June 30, 2017 pursuant to a written reinsurance agreement between ULICO and PBLA.  PBLA  allegedly caused transfers to be made from the Trust to each of the Defendants, to the detriment of ULICO.  *Id.* ¶¶ 119-125.  Wilmington Trust acted as Trustee under the Trust. *Id.* ¶ 121.

Each count of the Amended Complaint relies upon central factual allegations as stated in Paragraphs 142-145, namely that:

142.      The transactions noted above are merely examples of several that continued through December 31, 2018.

143.      All of the transactions, included those stated above, were conducted with the actual and specific intent to hinder, delay, or defraud ULICO and any related creditors.

144.      For each of the hundreds of transactions, ULICO did not receive reasonably equivalent value in exchange for the transfer, and PBLA was engaged in a transaction for which the remaining assets of the Trust were unreasonably small in relation to the transaction, and should have reasonably believed at the time of each transaction that such transactions were beyond PBLA's ability to pay as such obligations became due.

---

[4] The Amended Complaint elides the Michigan Proceeding and the plain fact that Mr. Lindberg no longer has any interest in or affiliation with the successor Aspida.

5

145.    Each of the transfers that occurred were between PBLA (as instructed by Lindberg and Herwig) and a Lindberg affiliated entity, whereby each of the Lindberg affiliated entities acted as alter-egos of Lindberg himself.

*Id*. ¶¶ 142-145.

The six counts as stated rely upon the fact of these alleged and unspecified transfers to state various claims by which the foreign debtor PBLA transferred money through the Trust to the defendants for which it allegedly failed to receive reasonably equivalent value, thereby allegedly harming the creditors of PBLA, including ULICO.

## ARGUMENT

### I.  Applicable Standard

In evaluating a motion to dismiss under Rule 12(b)(6) the Court accepts the complaint's factual allegations as true, drawing all reasonable inferences in the plaintiff's favor. *See Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir.2014).  The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Renco Group, Inc. v. Wilmington Trust, N.A. (In re Magnesium Corp. of America),* 583 B.R. 637, 645-46 (Bankr. S.D. N.Y. 2018) *quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Moreover, "[t]hreadbare recitals of the elements of a cause of action supported by conclusory statements" do not constitute sufficient factual allegations. *Id. citing Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .

Although Aspida's Motion to Dismiss  is also premised on ULICO's lack of standing and the consequent absence of subject matter jurisdiction made applicable by Rule 12(b)(1), the

6

standing at issue is based, in part, on the concept of prudential standing which "…normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v. Deutsche Bank Nat. Tr. Co.,* 757 F.3d 79, 86 (2d Cir. 2014) *quoting Warth v. Seldin*, 422 U.S. 490, 509, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).   The appropriate standard for evaluating motions to dismiss under the doctrine of prudential standing is the same standard applied in evaluating motions to dismiss under Rule 12(b)(6).   *See Renco Group, Inc. v. Wilmington Trust, N.A. (In re Magnesium Corp. of America), supra* at 647-648.

## II.   **ULICO Lacks Standing**

The Amended Complaint does not clearly state the basis for the standing asserted by Plaintiff.  Paragraphs 8, 9 and 10 of the Amended Complaint allege that ULICO was a creditor of the foreign debtor (¶8), that ULICO has asked the Joint Provisional Liquidators to commence this action and that they have declined to so (¶9) and, "accordingly" ULICO has standing (¶10) Am. Compl. ¶ ¶8-10.  The Amended Complaint identifies 11 USC §§ 1520, 362 and 541 as the "statutory predicate(s)" for this action. *Id*. ¶ 118. While appropriately generic, the statutes providing for the commencement of a foreign proceeding (§1520), the imposition of the automatic stay (§362) and defining the property of the estate (§541[5]) do not go very far in terms of establishing a statutory cause of action or licensing a creditor of the estate to pursue such a claim. The normal repository of subject matter jurisdiction in fraudulent transfer cases is encoded within the statutory causes of action created by Chapter 5 of the Bankruptcy Code, e.g., § 544. Chapter 5, however, is not available here, because this is a foreign proceeding. *See In re Fairfield Sentry Ltd*., 458 B.R. 665, 676 (S.D.N.Y.2011). ("Chapter 15 does not allow foreign representative 'to gain access to avoidance powers not provided by the law of the foreign

---

[5] It is not clear that any "bankruptcy estate" exists in this case. 11 USC § 1502 does not include the "estate" in its definitions.  *But see, Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir.2011), recognizing the foreign insolvency estate as an appropriate concept for jurisdiction.

proceeding' unless he files a 'full bankruptcy case' under U.S. law." *citing In re Condor Ins. Ltd*., 601 F.3d 319, 327 (5th Cir.2010)  Accordingly, the foreign representatives (and ULICO which is asserting some derivative right to pursue claims they have so far declined to pursue) are limited to claims available under state law or the law of foreign jurisdictions.  The Amended Complaint does not identify any specific state or foreign law in alleging the claims.

In citing the fact that ULICO has asked the Joint Provisional Liquidators to commence this action and that they have declined to so (Amended Complaint, ¶9), ULICO appears to presume that allegation acts as an operative fact in the standing analysis.  Claims, like those asserted in the Amended Complaint, which are general in nature and may yield recovery for all creditors, however, are properly asserted by the representatives of the estate and "the creditors are bound by the outcome of the trustee's action." *St. Paul Fire & Marine Insurance Co. v. PepsiCo, Inc.,* 884 F.2d 688, 701 (2d Cir.1989) *citing Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1107 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, ——, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989); *Cumberland Oil Corp. v. Thropp,* 791 F.2d 1037, 1042–43 (2d Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986); *In re Barkany*, 542 B.R. 662, 690 (Bankr. E.D.N.Y. 2015) ("Where the third-party complaint alleges claims that normally would be an independent cause of action, but the injury suffered is generalized to all or most of the creditors of the bankruptcy estate, then those claims belong to the bankruptcy estate.").  The fact that the JPLs as estate representatives apparently do not have the necessary facts to pursue an action at this at this time does not equate to "abandonment" and does not vest ULICO with derivative standing.

While New York law may permit a creditor to pursue certain fraudulent transfers made from the assets of the judgment debtor (*see* Debtor and Creditor Law, Section 273) the Amended

Complaint identifies PBLA as the judgment debtor but asserts that the transfers were made from the Trust.  The Amended Complaint although it offers up the conclusory suggestion that the decision of the Joint Provisional Liquidators to decline to pursue certain claims inherently provides standing to ULICO, does not indicate any right or authority to pursue claims related to transfers made from the Trust, which rights, if they exist, are vested in the Trustee. *Diana Allen Life Ins. Tr. v. BP P.L.C.*, 333 F. App'x 636, 638 (2d Cir. 2009).

### III.    The Court Lacks Subject Matter Jurisdiction

ULICO alleges that the Court has "related to" jurisdiction over this proceeding. Am. Compl. ¶ 114.    Related to jurisdiction exists where the proceeding would have an effect on the bankrupt estate.  *See Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir.2011).  ULICO in this action is seeking to recover for its own benefit a judgment in excess of $500 million.  An injured creditor pursuing a claim under New York law may recover only for its own benefit and enjoys no derivative standing to pursue claims on behalf of other creditors. *See A/S Kreditt-Finans v. Cia Venetico De Navegacion S.A. of Panama*, 560 F.Supp. 705, (E.D.Pa.1983) *aff'd*, 729 F.2d 1446 (3d Cir.1984).

A proceeding involving non-debtors will not be found to be related solely on the ground that it will affect a distribution to creditors unless the proceeding involves property in which the debtor has a legally cognizable interest." *In re Holland Indus., Inc.*, 103 B.R. 461, 469 (Bankr.S.D.N.Y.1989).  The interests advanced by the Plaintiff in this instance are the interests of ULICO and no one else.

Notably in *Parmalat* and the other reported Chapter 15 cases involving the exercise of "related to" jurisdiction, it is the foreign representatives acting as the plaintiffs and not creditors of the foreign estates.  In those instances, the "estate" has identified a legally cognizable interest,

9

yet here no such interest has been identified or claimed. *See Yashiro Co. v. Falchi (In re Falchi)*, 1998 Bankr. LEXIS 622, at *19 (Bankr. S.D.N.Y. May 26, 1998) (holding that plaintiff's breach of contract and fraud claims will not affect the debtor's estate because it will be payable to plaintiff only).

IV.    **The Amended Complaint Fails to State a Claim Under Rule 12(b)(6)**

A.  **Failure to Identity the "Voidable Transfers" and to Meet the Pleading Standard for Fraud**

The Amended Complaint is based on the alleged transfer of funds and value to Aspida in a manner that causes those transfers to be recoverable for the benefit of ULICO.  The critical information in evaluating and responding to the Amended Complaint is understanding what transfers were made and when.  The Amended Complaint lacks this basic information.   In *In re Fedders North America, Inc.,* 405 B.R. 527 (Bankr. D. Del. 2009) the court granted a motion to dismiss a fraudulent transfer action based on the inability of the plaintiff to specify the actual transfers it sought to recover,  observing that:

> The complaint also makes reference to "exorbitant salaries," "large bonuses," and "interest free" loans given to the Individual Defendants. (Compl. at ¶ 53). But with the exception of Salvatore Giordano, Jr., the complaint fails to state who received these perks, in what amounts, and under what circumstances. Instead, the complaint simply alleges that the transfers to the insiders and outside directors "included (but were not limited to) all forms of compensation that they received." (Compl. at ¶ 116). These vague references are insufficient to state a claim for actually fraudulent transfers.

*Id.* at 546.

Among the various theories cited by ULICO for recovery is a count for Fraud, but all of its claims are premised on the allegation that the transfers were all part of a "massive fraudulent scheme," Am. Compl.,  ¶ 1,  and that any transfers to Aspida and all of the other defendants were carried out with the "specific intent of defrauding, hindering and delaying" creditors.  *Id.* ¶ 126;

10

*See Silverman Partners, L.P. v. First Bank*, 687 F.Supp. 2d 269, 288 (E.D.N.Y. 2010) (applying Rule 9(b) to breach of fiduciary duty, conversion, and unjust enrichment claims)  "[T]o state an actual fraudulent transfer claim with Rule 9(b) particularity, a party must ordinarily allege: (i) the property that was conveyed; (ii) the timing and, if applicable, frequency of the transfer; and (iii) the consideration (if any) paid for the transfer...in addition to specifically identifying the transfers to be avoided, a party must also sufficiently plead the element of fraudulent intent required by Rule 9(b)." *O'Connell v. Penson Fin. Services, Inc. (In re Arbco Capital Mgmt., LLP),* 498 B.R. 32, 40–41 (Bankr.S.D.N.Y.2013).    ULICO cannot, as it has done here, rely upon a group pleading asserting that 93 different defendants received the benefit of an unknown number of transfers in unknown amounts on unspecified dates. "[G]roup pleading is generally forbidden because each defendant is entitled to know what he is accused of doing." *O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.),* 383 B.R. 231, 257–58 (Bankr.S.D.N.Y.2008); *see also Di Vittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

ULICO has failed in the Amended Complaint to meet the most basic pleading standards and has fallen far short of the particularity required by Rule 9(b).

### B.  The Alternative Claims Fail as a Matter of Law

ULICO's repackaging of the fraud claim in various alternative guises does nothing to cure the deficiencies created by the absence of the necessary facts.  **Unjust enrichment** "is available only in unusual situations when . . . circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012).  No such circumstances exist here.  To establish a claim for **conversion** under

New York law, requires an allegation that the money is specifically identifiable and there is an obligation to return specific, segregated monies. *K I C Chems. v. ADCO Chem. Co.*, 1996 U.S. Dist. LEXIS 3244, at *20 (S.D.N.Y. Mar. 19, 1996). No monies have been identified by ULICO in its Amended Complaint. Claims for **constructive trust** are remedial measures that do not create a separate cause of action. *See Blank v. TriPoint Glob. Equities, LLC,* 338 F. Supp. 3d 194, 220 (S.D.N.Y. 2018) (dismissing claim for constructive trust because it is not a basis for a separate cause of action). Claims for **breach of fiduciary duty** require ULICO to allege: (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages directly caused by the defendant's misconduct. *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020). "A fiduciary relationship exists under New York law when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Spinelli v. NFL*, 903 F.3d 185, 207 (2d Cir. 2018). The relationship "exists only when a person reposes a high level of confidence and reliance in another, who thereby exercises control and dominance over him." *Hyland v. Navient Corp.*, No. 18cv9031 (DLC), 2019 U.S. Dist. LEXIS 113038, at *28 (S.D.N.Y. July 8, 2019). The Amended Complaint lacks the necessary factual allegations to establish a breach of fiduciary claim against Aspida.

### V.    The Michigan Rehabilitation Orders Bar the Continued Prosecution of this Action Against Aspida.

Aspida stands on different footing than the other alleged "Lindberg Affiliates" in this proceeding. Aspida is no longer a "Lindberg Affiliate," it was acquired by Aspida Holdco, a third-party purchaser, through a proceeding initiated by the Insurance Commissioner for the State of Michigan. The purpose of the Michigan Proceeding was to salvage the assets of Pavonia, including Global Bankers Insurance Group, LLC, in a manner designed to protect and

12

promote the public interest and in doing so eliminate the taint and overhang caused by the alleged wrongful actions of Mr. Lindberg.

The actions of the Michigan Court in administering the assets of the Defendant Global Bankers Insurance Group, LLC (now known as Aspida), are without ambiguity.  The Michigan Court as part of the rehabilitation of Pavonia under the Michigan Insurance Code authorized and approved the transfer of Global Bankers Insurance Group, LLC and its assets to Aspida Holdco free and clear of all claims, including the claims asserted by ULICO in this Adversary Proceeding.  ULICO contests the efficacy of the orders entered by the Michigan Court and asks this Court to in effect reverse them by ignoring their import and permitting ULICO to continue to prosecute this action against Aspida.  The *Rooker-Feldman* doctrine is a doctrine of limited jurisdiction that prevents the Court from reviewing matters previously decided in state court. *See, Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). ULICO's claims asserted against Aspida are "inextricably intertwined with the state court's underlying … judgment."  *Ford v. U.S. Dept. of Treasury*, 50 Fed.Appx. 490, 2002 WL 31505263 (2nd Cir. 2002).  The plaintiff in *Ford*, like the Plaintiff here "in essence… seeks a declaration that the [foreclosure] judgment is void, thereby requiring reversal of the state court." *Id.*  This is the very thing denied to federal courts under the *Rooker Feldman* doctrine.

The state and federal claims at issue need not be identical for the doctrine to apply. "In order to determine whether a claim is 'inextricably intertwined' with a state court claim, the federal court must analyze whether the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir.1997). That is surely the case in this matter.  The doctrine does not apply to bar a

13

suit in federal court brought by a party that was not a party in the preceding action in state court.

*United States v. Owens*, 54 F.3d 271, 274 (6th Cir.), *cert. dismissed*, 516 U.S. 983, 116 S.Ct. 492, 133 L.Ed.2d 418 (1995). Nominally, the Plaintiff here was not a party to the Michigan Proceeding, however, the Michigan Proceeding was meant to, and did, provide the appropriate forum for the administration of all claims against the insurer Pavonia and its affiliates (including Aspida's predecessor Global Bankers Insurance Group LLC), including the claims of all creditors and the "interests of third parties of any kind or nature." Sale Order, Exhibit B, page 11. In that sense, the debtor PBLA (through which the Plaintiff allegedly derives its claims[6]) was certainly a party to the Michigan Proceeding and the application of the doctrine remains appropriate.

Even more pointedly, however, the *Burford* [7] abstention doctrine mandates federal abstention in this case:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (quoting Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244-45, 47 L.Ed.2d 483 (1976)) These circumstances describe the insurance regulatory scheme in place in the State of Michigan. The

---

[6] See discussion, supra. (*In re Barkany*, 542 B.R. 662, 690 (Bankr. E.D.N.Y. 2015) ("Where the third-party complaint alleges claims that normally would be an independent cause of action, but the injury suffered is generalized to all or most of the creditors of the bankruptcy estate, then those claims belong to the bankruptcy estate.").

[7] *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

14

Michigan Proceeding is a proceeding in which the plaintiff is the state insurance commissioner acting under the Michigan Insurance Code to administer the assets of an insolvent insurer under Michigan state law.  *See* Rehabilitation Order, Exhibit A.

In *Mondrus v. Mutual Benefit Life Insurance Co.,* 775 F.Supp. 1155 (N.D.Ill.1991) the United States District Court for the Northern District of Illinois addressed a similar insurance rehabilitation statute in place in New Jersey finding that:

> The McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, specifically authorizes the states to continue serving their traditional role as the preeminent regulators of the insurance industry. Under this regulatory authority, most states, including New Jersey, have adopted complex and comprehensive schemes to govern the rehabilitation and liquidation of insolvent insurers. The New Jersey regulation entails the very type of "partnership" between the New Jersey state courts and the Commissioner of Insurance as discussed in Burford. The New Jersey courts issue the orders of rehabilitation, enjoin suits against the rehabilitator (i.e. the Commissioner of Insurance) to protect the proceedings, and oversee the assessment of claims against the insurer's estate.

*Id*. at 1158; *accord In re Philips Offset Co., Inc.*, 152 B.R. 836 (Bankr. S.D.N.Y. 1992).  These are the very things that took place in the Michigan Proceeding and to which ULICO objects and seeks this Court's interference in the state scheme.  The Court, honoring the precepts articulated in the *Burford* doctrine, should decline the invitation to interfere in the Michigan Proceeding by ignoring the effect of the Rehabilitation Order and should abstain from hearing the claims asserted against Aspida in this matter.

## CONCLUSION

Wherefore, the Defendant Aspida Financial Services, LLC, formerly known as Global Bankers Insurance Group, LLC, prays that the Court enter an order dismissing the Amended Complaint against it, or alternatively, abstaining from exercising jurisdiction in this matter and that the Court grant such other and further relief as is just and proper.

15

ASPIDA FINANCIAL SERVICES, LLC, FORMERLY
KNOWN AS GLOBAL BANKERS INSURANCE
GROUP, LLC


by its attorneys,


_____/s/ Alan F. Kaufman_____
Alan F. Kaufman
NELSON MULLINS RILEY & SCARBOROUGH LLP
280 Park Avenue, 15th Floor West
New York, NY 10017
Tel: (646) 428-2600
Fax: (646) 428-2610
alan.kaufman@nelsonmullins.com

Peter J. Haley (pro hac vice pending)
NELSON MULLINS RILEY & SCARBOROUGH LLP
One Financial Center
Boston, MA 02111
Tel: (617) 217-4714
Fax: (617) 217-4750
peter.haley@nelsonmullins.com

Christopher J. Blake (pro hac vice pending)
NELSON MULLINS RILEY & SCARBOROUGH LLP
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Telephone: (919) 329-3800
Fax: (919) 329-3799
chris.blake@nelsonmullins.com


Dated: December 13, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 13, 2021                        _____/s/ Alan F. Kaufman_____
                                                Alan F. Kaufman