STATE OF MICHIGAN
CIRCUIT COURT FOR THE 30TH JUDICIAL CIRCUIT
INGHAM COUNTY

ANITA G. FOX, DIRECTOR OF THE
MICHIGAN DEPARTMENT OF
INSURANCE AND FINANCIAL SERVICES,

    Petitioner,

v

PAVONIA LIFE INSURANCE
COMPANY OF MICHIGAN,

    Respondent.
_____/

Case No. 19-504-CR

HON. WANDA M. STOKES

**[IN REHABILITATION]**

**PLAN OF REHABILITATION**

**I.    BACKGROUND**

The Court placed Pavonia Life Insurance Company of Michigan ("**Pavonia**" or the "**Company**") into rehabilitation on July 9, 2019, pursuant to the *Stipulated Order Placing Pavonia into Rehabilitation, Approving Compensation of Special Deputy Rehabilitators, and Providing Injunctive Relief* (the "**Rehabilitation Order**"). As required by Section 8113(1) [MCL 500.8113(1)] of the Insurance Code of 1956 ("**Insurance Code**"), MCL 500.100 *et seq.*, the Rehabilitation Order appointed the Director ("**Director**") of the Michigan Department of Insurance and Financial Services ("**DIFS**") as the Rehabilitator of Pavonia (the "**Rehabilitator**"). The Rehabilitator further appointed James Gerber, Janice Sylvertooth, and Julieanne Gulliver as Special Deputy Rehabilitators (collectively, the "**Special**

1

**Deputy Rehabilitators**"), whose compensation the Court approved under MCL 500.8114(1).[1]

In accordance with MCL 500.8113(1), the Rehabilitation Order directed the Rehabilitator to take immediate possession of all the assets of Pavonia and to administer those assets under the Court's general supervision, thereby creating the Pavonia rehabilitation estate (the "**Estate**"). Pursuant to MCL 500.8113(1), the Rehabilitation Order further vested legal title to all assets, accounts, and moneys of Pavonia in the Rehabilitator by operation of law. Among the Estate assets that the Rehabilitator controls and administers is Global Bankers Insurance Group, LLC ("**ServiceCo**"), a wholly-owned subsidiary of Pavonia that provides all executive management, regulatory oversight review, and administrative services for Pavonia's operations. Because ServiceCo is included as an asset of Pavonia, all references hereafter to "Pavonia" shall include ServiceCo as Pavonia's wholly-owned subsidiary.

The Rehabilitation Order and MCL 500.8114(2) authorize the Rehabilitator to take such action as she considers necessary or appropriate to reform and revitalize Pavonia. Under MCL 500.8114(4), if the Rehabilitator determines that reorganization, consolidation, conversion, reinsurance, merger or other transformation of Pavonia is appropriate, she must prepare a plan to effect those

---

[1] All policyholders, creditors, and other interested parties of Pavonia are strongly encouraged to review the complete Rehabilitation Order, the Director's Stipulated Petition requesting entry of the Rehabilitation Order, and the separate order containing detailed procedures governing the bar date, claim process, and other aspects of the rehabilitation plan (the "**Procedural Order**"), which are incorporated into this *Plan of Rehabilitation* by reference and are available on the DIFS website at www.michigan.gov/difs, then click on "Who We Regulate," then "Receiverships," then "Pavonia Life Insurance."

2

changes. Upon the Rehabilitator's application for approval of the plan, and after notice and hearings as the Court may prescribe, the Court may either approve or disapprove the plan proposed or may modify it and approve it as modified. (*Id*.) The standard for Court approval of a rehabilitation plan is whether, in the Court's judgment, the plan is fair and equitable to all parties concerned. (*Id*.) When the Court approves the Rehabilitator's plan, the Rehabilitation must then implement the plan. (*Id*.)

Here, this *Plan of Rehabilitation* document explains and submits for the Court's approval the Rehabilitator's proposed plan to effect Pavonia's reorganization and transformation (the "**Plan**") for the benefit of the Company, its policyholders, and creditors. Generally speaking, the Plan proposes Pavonia's sale by its current owner, GBIG Holdings, Inc. ("**GBIG Holdings**"), to a non-affiliated third party, Aspida Holdco LLC ("**Aspida**"), a Delaware holding company that is an affiliate of ARES Management Corporation.

## II.  ADDITIONAL DEFINITIONS

As used hereafter in this Plan, the following definitions apply:

"**Buyer**" means Aspida and "**Seller**" means GBIG Holdings, which collectively are referred to as the "**Transaction Parties**."

"**Chapter 81**" means Chapter 81 of the Insurance Code, MCL 500.8101 – 500.8159.

3

"**Creditor**" means a person having a claim against Pavonia, whether matured or unmatured, liquidated or unliquidated, secured or unsecured, absolute, fixed, or contingent.

"**Effective Date**" means the date on which this Plan is approved by the Court.

"**Policies**" means insurance policies, annuities, and other insurance contracts of Pavonia, including insurance liabilities and obligations arising under policies, annuities, and contracts assumed or otherwise reinsured by Pavonia.

"**Policyholders**" means the owners, holders, and beneficiaries of Policies.

The rights of Policyholders in or to Policies that are: (1) currently recorded on the books and records of Pavonia or ServiceCo on behalf of Pavonia; or (2) identified or scheduled in: (a) Pavonia's 2018 annual and first quarter 2019 financial statements prepared according to statutory accounting principles ("**Pavonia's SAP Statements**"); and (b) ServiceCo's 2018 annual and first quarter 2019 financial statements prepared according to generally accepted accounting principles ("**ServiceCo's GAAP Statements**," and collectively with Pavonia's SAP Statements, the "**Financial Statements**"), are referred to as the "**Policyholder Liabilities**."

The rights of, and the liabilities or obligations owed to, non-Policyholder Creditors that Pavonia has not formally disputed and that: (1) are identified or scheduled in the Financial Statements; or (2) Pavonia agrees are due and payable by Pavonia or ServiceCo in the ordinary course of their respective business

4

21-01169-lgb    Doc 117-3    Filed 12/13/21    Entered 12/13/21 15:16:53    Exhibit C
Pg 5 of 19

operations, are referred to as the "**Non-Policyholder Liabilities**," and collectively with the Policyholder Liabilities, the "**Scheduled Liabilities**."

All other Creditor claims against Pavonia or ServiceCo not included within the definition of "Scheduled Liabilities" above (regardless whether matured or unmatured, liquidated or unliquidated, secured or unsecured, absolute, fixed, or contingent, asserted or unasserted, known or unknown) are collectively referred to as the "**Unscheduled Liabilities**."

"**Stock Purchase Agreement**" means that agreement entered into between and executed by Seller and Buyer on July 9, 2019, subject to DIFS' Form A regulatory approval and the Court's approval of this Plan, which is attached hereto as Exhibit A and is fully incorporated into this Plan with all of its recitals, terms, conditions, representations, warranties, covenants, indemnities, and exhibits, under which Buyer will acquire all of the issued and outstanding capital stock of Pavonia.

All other defined terms used in this Plan that are not specifically defined herein shall have the meanings ascribed to them in the Stock Purchase Agreement. In the event of a conflict between a term defined in both this Plan and the Stock Purchase Agreement, the definition contained in this Plan shall control.

### III.    APPLICABLE LAW

Pursuant to Section 8114(2) of the Insurance Code, MCL 500.8114(2), the Director in her capacity as Rehabilitator is authorized, subject to the Court's supervision, to "take such action as [she] considers necessary or appropriate to

reform and revitalize the insurer including, but not limited to, the powers in section 8121(1)(f), (l), (m), (r), and (u) . . . [and] has full power to direct and manage, to hire and discharge employees subject to any contract rights they may have, and to deal with the property and business of the insurer."

Section 8121 of Insurance Code, MCL 500.8121, also includes, and therefore when appropriate the Rehabilitator may exercise, the power, among others:

> (g) To conduct public and private sales of the insurer's property.

> * * *

> (i) To acquire, hypothecate, encumber, lease, improve, sell, transfer, abandon, or otherwise dispose of, or deal with, insurer property at its market value or upon terms and conditions as are fair and reasonable. He or she shall also have power to execute, acknowledge, and deliver any and all deeds, assignments, releases, and other instruments necessary or proper to effectuate the sale of property or other transaction in connection with the liquidation except that for trusteed assets, any instruments necessary or proper shall be executed only pursuant to court order.

> * * *

> (k) To enter into contracts necessary to carry out the order to liquidate, and to affirm or disavow any contracts to which the insurer is a party.

> * * *

> (r) To assert all defenses available to the insurer as against third persons, including statutes of limitation, statutes of frauds, and the defense of usury. . . .

> (s) To exercise and enforce all the rights, remedies, and powers of a creditor, shareholder, policyholder, or member, including the power to avoid a transfer or lien that may be given by the general law and that is not included in sections 8126 to 8128.

As summarized in the Background section above, Section 8114(4) of the Insurance Code, MCL 500.8114(4), states in pertinent part:

6

>(4) If the rehabilitator determines that reorganization, consolidation, conversion, reinsurance, merger, or other transformation of the insurer is appropriate, [she] shall prepare a plan to effect those changes.  Upon application of the rehabilitator for approval of the plan, and after notice and hearings as the court may prescribe, the court may either approve or disapprove the plan proposed, or may modify it and approve it as modified.  A plan approved under this section shall be, in the court's judgment, fair and equitable to all parties concerned.  If the plan is approved, the rehabilitator shall implement the plan. . . .

Section 8116(2) of the Insurance Code, MCL 500.8116(2), provides for the termination of a pending rehabilitation:

>(2) The rehabilitator may petition at any time the circuit court for Ingham county for an order terminating rehabilitation of an insurer.  The court shall also permit the insurer's directors to petition the court for an order terminating rehabilitation of the insurer and may order payment from the insurer's estate for costs and other expenses of the petition as justice may require.  If the court finds that rehabilitation has been accomplished and that grounds for rehabilitation under section 8112 no longer exist, it shall order that the insurer be restored to possession of its property and the control of the business.  The court may also make that finding and issue that order at any time upon its own motion.

The cited sections empower the Rehabilitator to propose, and the Court to approve, this Plan, which is founded upon Aspida's acquisition of Pavonia pursuant to the Stock Purchase Agreement attached as Exhibit A.

IV.    PLAN DETAILS SUBMITTED FOR THE COURT'S APPROVAL

<u>General</u>.  This Plan is designed to protect Pavonia, its Policyholders, and Creditors by means of a change in ownership and management of the Company, which will be achieved through the implementation of a process for resolving claims for Unscheduled Liabilities and the sale of the Company to Aspida, a non-affiliated third party.

7

Toward this end, on July 9, 2019, the Seller and Buyer, or Transaction Parties, entered into the Stock Purchase Agreement attached as Exhibit A.  The Transaction Parties negotiated the Stock Purchase Agreement at arms' length and in good faith over the course of several months before finally executing the document, which addresses all material terms of Seller's sale of Pavonia to Buyer.  The Transaction Parties executed the Stock Purchase Agreement prior to the Company being placed into rehabilitation on July 9, 2019, thus, the Rehabilitator assumed control of the Company with the agreement already in place.  As defined in Section II, the Stock Purchase Agreement is subject to DIFS' Form A regulatory approval and the Court's approval of this Plan.

The Rehabilitator's Plan for Pavonia, subject to this Court's approval in a final order approving the Plan, is to consummate the Company's sale from Seller to Buyer pursuant to the terms of the Stock Purchase Agreement, together with the additional procedures and conditions contained in this Section IV.  In general terms, the Buyer will acquire all of the issued and outstanding capital stock of Pavonia (the "**Shares**") from Seller for Seventy Five Million Dollars ($75,000,000), which amount will be adjusted at the closing of the transaction for certain indebtedness of Seller, costs associated with the settlement of intercompany loans, notes and advances of the Acquired Companies, expenses of Pavonia, and transactional expenses.  The Stock Purchase Agreement contains various representations and warranties as well as covenants by each of the Transaction Parties, and each of the Transaction Parties will indemnify the other party with respect to certain losses

8

arising out of or resulting from breaches of such representations, warranties, and covenants, among other things.  In order to incent the Transaction Parties to complete the transaction, the Stock Purchase Agreement provides for a termination fee, which would be payable by Seller to Buyer, and a "reverse" termination fee, which would be payable by Buyer to Seller, if the Stock Purchase Agreement is terminated in certain circumstances.

The closing of the transaction contemplated by the Stock Purchase Agreement ("**Closing**") is subject to certain conditions, including, among others, applicable DIFS regulatory approvals, the completion of the Claim Procedure (defined below), the Court's entry of an order approving this Plan, achievement of a minimum ratio related to and level of capital and surplus, and the Court's entry of an order terminating the rehabilitation of Pavonia.  It is a further condition to Buyer's obligation to close that the regulatory conditions to closing can be satisfied without the imposition of a "Burdensome Condition," as that term is defined in the Stock Purchase Agreement, which is generally defined as any requirement by any governmental entity that Buyer, Pavonia, or any of their affiliates take or refrain from taking actions that result in certain consequences.

The Stock Purchase Agreement envisions, consistent with the Procedural Order entered by the Court entitled the *Order Preliminarily Approving Plan of Rehabilitation to: (i) Set Bar Date and Establish Mandatory Procedures for Claims for Unscheduled Liabilities; (ii) Establish Procedures for Notice, Comment and Hearing Concerning Final Approval of Plan of Rehabilitation; and (iii) Authorize*

9

*Combined Notice,* a 90-day proof of claim filing process with a bar date ("**Claim Procedure**") applicable to Creditors holding claims for Unscheduled Liabilities, as discussed below. The Stock Purchase Agreement further envisions, consistent with the Rehabilitation Order, the payment of all Policyholder Liabilities and Non-Policyholder Liabilities in the ordinary course of business, which ensures the continuity of insurance coverage to Pavonia's Policyholders and minimizes disruptions to Pavonia's business operations.

Employment Matters. The Rehabilitation Order provides that Pavonia's officers, managers, and employees remain employed during the rehabilitation unless discharged. Officer, manager, and employee wages (including any associated fringe benefits, such as health and dental insurance) will continue to be paid in the ordinary course of business. Any non-wage benefits payable to officers, managers, and employees under existing or replacement employment agreements, except for benefits under replacement retention bonus and post-termination agreements for specified employees that the Rehabilitator or Special Deputy Rehabilitators expressly approved, will be paid from non-Estate assets.

Fixing of Unscheduled Liabilities and Related Rights. As provided by the Rehabilitation Order, because the rehabilitation of Pavonia includes the Claim Procedure for Unscheduled Liabilities, the rights and liabilities of all Creditors holding claims for Unscheduled Liabilities, and of Pavonia and ServiceCo with respect to such claims, are fixed as of the date of entry of the Rehabilitation Order pursuant to MCL 500.8118(2).

Capacity of the Rehabilitator and Objections to Plan.  The Rehabilitator was appointed by the Court pursuant to statute given her position as the chief insurance regulator of the State of Michigan.  In this capacity, the Rehabilitator supports a change in control of Pavonia through its sale to Buyer, subject to DIFS' Form A regulatory approval and the Court's approval of this Plan, according to the terms of the Stock Purchase Agreement.  Further, in her fiduciary capacity as the statutory and Court-appointed Rehabilitator of Pavonia, the Rehabilitator recommends that the Court approve this Plan because under the circumstances described herein, she believes that it fully protects the Company, its Policyholders, and Creditors.  However, it is incumbent on any interested person or party of any kind, including Policyholders, Creditors, or other persons or entities, to exercise their right to appear and object in the event they do not agree with this Plan.  Any interested person not objecting pursuant to the process set forth herein, and for which notice will be provided pursuant to the Procedural Order entered by this Court, will be deemed to have waived any objection to the Plan.

90-Day Claim Filing Procedure.  At the request of the Rehabilitator, the Court initiated the Claim Procedure that provides for a 90-day period to file a proof of claim applicable to Creditors holding claims for Unscheduled Liabilities, as more specifically described in and governed by the Procedural Order.  The Rehabilitator will provide notice of this 90-day proof of claim filing process as required by the Procedural Order.  The Rehabilitator requested this Claim Procedure in

rehabilitation as the most effective mechanism under the circumstances to protect the interests of Pavonia, its Insureds, and Creditors.

Claims to be resolved through the Claim Procedure are limited to those of any Creditors holding claims for Unscheduled Liabilities, which includes any Creditors holding claims for otherwise Scheduled Liabilities that Pavonia has formally disputed. Conversely, pursuant to the Rehabilitation Order, the Rehabilitator will pay: (a) all Creditor claims for Policyholder Liabilities arising from benefits payable and/or losses covered under Pavonia Policies, whether incurred or accrued before, on, or after the date of the Rehabilitation Order, according to the Company's normal claim processing procedures; (b) all Creditor claims for Non-Policyholder Liabilities incurred or accrued before the date of the Rehabilitation Order as they become due in the ordinary course of business; and (c) all Creditor claims for Non-Policyholder Liabilities incurred or accrued on or after the date of the Rehabilitation Order that are necessary for the continued operation and/or rehabilitation of Pavonia as they become due in the ordinary course of business. Thus, Creditors holding claims for these Scheduled Liabilities (provided the claim has not been formally disputed) are not subject to the Claim Procedure. The sale Closing will not occur until after the Claim Procedure concludes.

Bar Date. On or before the Claim Procedure's 90-day bar date for filing proofs of claim ("**Bar Date**"), as set forth in the Procedural Order, any Creditors holding claims for Unscheduled Liabilities are required to file their proofs of claim with the Rehabilitator (each, a "**Proof of Claim**" and collectively, the "**Proofs of**

**Claim**"). Proofs of Claim must contain all information required by MCL 500.8136 and use the Rehabilitator's approved proof of claim form, which is available on the DIFS website and through other means specified in the Procedural Order.

As stated, Creditors holding claims for Scheduled Liabilities that have not been formally disputed are not subject to the Claim Procedure or impacted by the Bar Date.

<u>Proofs of Claim</u>. Pursuant to the Procedural Order, Creditors holding claims for Unscheduled Liabilities who are required to file a claim can acquire a Proof of Claim form and instructions by various means specified in such Order. The Rehabilitator will not consider or allow any Creditor's claim for an Unscheduled Liability unless that Creditor files a timely Proof of Claim (i.e., on or before the Bar Date) containing substantially all of the information required by MCL 500.8136 and the Rehabilitator's approved Proof of Claim form. Under MCL 500.8136(3), at any time the Rehabilitator may request that the claimant present information or evidence supplementary to that required on the Proof of Claim form and may take testimony under oath, require the production of documents, filing of affidavits, or taking of depositions, or otherwise obtain additional information or evidence.

<u>Proof of Claim Resolution</u>. Pursuant to MCL 500.8143, the Rehabilitator will review all Proofs of Claim that are timely and duly filed and will make such further investigation as she deems necessary or advisable to determine which such claims should be allowed and in what amount. She may compound, compromise, or in any

other manner negotiate the amount for which claims will be allowed and recommended to the Court.

Pursuant to MCL 500.8139(1), if a claim is denied in whole or in part by the Rehabilitator, written notice of the determination will be given to the claimant by first class mail on the address shown on the Proof of Claim. Within 30 days from the mailing of the notice (which is expedited from the 60-day period provided in the statute), the claimant may file with the Rehabilitator a written objection to the claim determination. If no written objection is timely filed, the Rehabilitator's determination will be a final determination as to the validity, distribution priority, and allowed amount of the claim, and the claimant shall not further object to the Rehabilitator's determination.

Pursuant to MCL 500.8139(2), if the claimant files a timely, written objection with the Rehabilitator and the Rehabilitator does not alter her denial of the claim as a result of the objection, or an agreement cannot be reached to resolve the claimant's claim, then the Rehabilitator will ask the Court for a hearing as soon as practicable. Upon receipt of the Rehabilitator's request for hearing, the Court will set a date and time for such hearing and provide the Rehabilitator with a notice of the hearing date. The Rehabilitator will then give notice of the hearing by first-class mail to the claimant or his or her attorney and to any other persons directly affected, not less than 10 nor more than 30 days before the date of the hearing. If a hearing is necessary, the Court will determine the validity, distribution priority,

and/or allowed amount of the Claim, as applicable. The Court's decision will be a final and appealable order.

Rehabilitator's Report and Recommendation on Timely Filed Claims. As provided by MCL 500.8143(1), as soon as practicable after the Bar Date elapses, the Rehabilitator will present to the Court her report of all timely and duly filed Proofs of Claim received in the Pavonia rehabilitation and will further submit to the Court her recommendations on the handling of such Proofs of Claim (the "**Claim Report and Recommendations**"). The report will include the name and address of each claimant and the amount of the claim finally recommended, if any. The Rehabilitator will recommend that the distribution priority for payment of all allowed Proofs of Claim be made in accordance with MCL 500.8142. Pursuant to MCL 500.8143(2), the Court may then approve, disapprove, or modify the Rehabilitator's Claim Report and Recommendations. Following the Court's entry of a final order on the Rehabilitator's Claim Report and Recommendations, the Rehabilitator will take any action necessary to effectuate the Court's order, including by making any recommended, Court-approved payments on allowed Proofs of Claim.

The Stock Purchase Agreement. As stated, the Rehabilitator's Plan for Pavonia, subject to this Court's approval in a final order approving the Plan, is to consummate the Company's sale from Seller to Buyer pursuant to the terms of the Stock Purchase Agreement attached as Exhibit A. The Stock Purchase Agreement is therefore central to this Plan, and the Rehabilitator finds that it is consistent

15

with the Plan's objectives and the principles, circumstances, findings, and conclusions set forth herein.  Accordingly, the Rehabilitator hereby confirms to the Court that: (a) she or her representatives have reviewed the final version of the Stock Purchase Agreement; (b) the Stock Purchase Agreement and Buyer's acquisition of Pavonia are subject to DIFS' Form A regulatory approval and the Court's approval of this Plan; (c) she has determined that the rehabilitation process and submission of this Plan for Court approval fully protects Pavonia, its Policyholders, and Creditors; (d) the Transaction Parties have represented that they are ready and willing to perform or cause the performance of the obligations under the Stock Purchase Agreement; and (e) she recommends that the Court approve this Plan which incorporates the Stock Purchase Agreement.

The Rehabilitator has further determined that assuming DIFS' Form A regulatory approval, the rights of Policyholders to coverage under their Policies will be completely secured as a result of the Stock Purchase Agreement and Buyer's acquisition of Pavonia.

<u>Conducting Pavonia's Business in the Ordinary Course and Consistent with Chapter 81 and this Plan</u>.  During the rehabilitation, the Rehabilitator will cause the Company to conduct its business in the ordinary course and in accordance with Chapter 81 and this Plan, as may be amended under the *Modification, Amendments, and Disputes* sub-section below.

In addition, the Rehabilitator will endeavor to have regular (weekly or biweekly) meetings and/or teleconference calls with the Buyer and Seller to discuss

16

the status of the rehabilitation, the transaction, progress toward consummating the closing conditions in the Stock Purchase Agreement, and achieving restoration to Pavonia of possession of its assets and the control of its business consistent with MCL 500.8116(2).

Restoration of Pavonia. The restoration of Pavonia (post-Closing, as a then wholly-owned subsidiary of Aspida) to possession of its property and the control of its business is consistent with the goals of rehabilitation under Chapter 81, and will be accomplished as and when appropriate under MCL 500.8116(2). The Rehabilitator will rely on this statute to authorize restoration in a manner that protects the interests of Pavonia, its Policyholders, and Creditors.

Conveyance of Shares Free and Clear; Releases; Injunctions. Upon the successful completion of this rehabilitation and the Court's approval of this Plan, and if authorized by and consistent with Chapter 81, the Rehabilitator will include in a proposed order terminating the rehabilitation of Pavonia the following:

- A provision stating that as a result of the transaction, upon Closing, the Court orders and decrees Buyer the owner of legal and beneficial title to the Shares free and clear of any liens, claims, interests, charges, and any other encumbrances (including but not limited to Unscheduled Liabilities).

- A provision releasing the Rehabilitator, Buyer, and Seller from any and all claims and liabilities relating to or arising from, at a minimum, the rehabilitation, the transaction, and the Unscheduled Liabilities.

17

- A provision enjoining all persons and entities from pursuing any claims, actions, or proceedings relating to or arising from, at a minimum, the rehabilitation, the transaction, and the Unscheduled Liabilities.

Notice.  Notice will be provided in compliance with all notice procedures contained in the Procedural Order entered by this Court.

Plan Enforcement.  The Court will retain exclusive jurisdiction to enforce the provisions of this Plan and to ensure that the intent and purposes of the Plan are carried out and given effect.  The Court will further retain jurisdiction as set forth in its order approving this Plan and in the Stock Purchase Agreement.

Modification, Amendments, and Disputes.  In addition, and without limitation by reason of specification, the Court will retain exclusive jurisdiction of the rehabilitation proceeding to consider any modification or amendment of this Plan and to hear and determine:

(i)      all disputes, if any, as may arise concerning the classification, subordination, allowance, or disallowance of Creditor Proofs of Claim involving Unscheduled Liabilities, and any objections thereto, to the extent consistent with this Plan;

(ii)     all controversies, suits, and disputes, if any, as may arise in connection with the interpretation or enforcement of this Plan;

(iii)    all Creditor claims, causes of action, controversies, suits, and disputes against Pavonia, if any, as may arise prior to the Effective Date, whether or not the subject of an action that was pending as of the Effective Date;

(iv)    applications for the allowance of compensation to and the expenses of professional persons;

(v)    any and all applications, motions, or litigated matters arising out of or relating to the rehabilitation that were pending before this Court on the Effective Date; and

(vi)    all proceedings to enforce performance of this Plan against any person or entity, including without limitation, proceedings to enforce any injunction and stay provided for in the Rehabilitation Order, the Procedural Order, the proposed order terminating the rehabilitation of Pavonia, and any other order duly entered by the Court.

Reservation of Rights. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Rehabilitator or any of her employees or agents with respect to this Plan will be or be deemed to be an admission or a waiver of any rights of Pavonia, the Rehabilitator, Buyer, or Seller prior to the Effective Date.  In the event the Effective Date does not occur, no statement contained herein may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside of this proceeding.