Peter Friedman (admitted *pro hac vice*)
Nicholas Hendrix (admitted *pro hac vice*)
Lauren M. Wagner
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: pfriedman@omm.com
        nhendrix@omm.com
        lwagner@omm.com

*Attorneys for Defendant Morgan Stanley Senior Funding, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PB Life and Annuity Co. Ltd., *et al.*,<br><br>             Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 20-12791 (LGB)<br>(Jointly Administered) |
| Universal Life Insurance Co.,<br><br>             Plaintiff,<br><br>             v.<br><br>Global Growth Holdings, Inc., *et al.*,<br><br>             Defendants. | Adv. Proc. No. 21-01169<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF MORGAN STANLEY SENIOR FUNDING, INC.'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL AND FACTUAL BACKGROUND .................................................................. 2

    A.    PBLA's Bermuda Liquidation Proceeding and Chapter 15 Case ............. 2

    B.    The Adversary Proceeding ........................................................................ 3

    C.    The Amended Complaint's Lack of Allegations About Morgan
           Stanley ...................................................................................................... 4

ARGUMENT .............................................................................................................................. 4

    I.    EITHER ULICO LACKS STANDING TO BRING ITS CLAIMS OR
         THE COURT LACKS JURISDICTION TO ADJUDICATE THEM. ................. 4

    A.    ULICO Lacks Standing to Bring Claims Belonging to the JPLs. ............. 5

    B.    ULICO's Claims Are Barred by the Recognition Order and
           Foreclosed by the Automatic Stay. ......................................................... 11

    C.    The Court Lacks Subject Matter Jurisdiction to Adjudicate Any
           Claims ULICO Brings on Its Own Behalf. ............................................. 12

    II.    EACH CLAIM AGAINST MORGAN STANLEY FAILS AS A
          MATTER OF LAW. .......................................................................................... 15

    A.    The Voidable Transfer Claim Fails (Count I). ....................................... 17

    B.    The Unjust Enrichment Claim Fails (Count II). ..................................... 22

    C.    The Constructive Trust Claim Fails (Count IV). .................................... 26

    III.    THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH
          PREJUDICE BECAUSE ANY EFFORT TO REPLEAD WOULD BE
          FUTILE. ............................................................................................................ 27

CONCLUSION ......................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AEL Fin., LLC v. Tessier*,
  2007 WL 2427867 (S.D. Tex. Aug. 22, 2007) ........................................................................ 14

*Anwar v. Fairfield Greenwich Ltd.*,
  728 F. Supp. 2d 372 (S.D.N.Y. 2010) .................................................................................... 27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 16

*Bascuñan v. Elsaca*,
  2021 WL 3540315 (S.D.N.Y. Aug. 11, 2021) ....................................................................... 27

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................... 8, 15

*Buchwald Capital Advisors, Inc. v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*,
  480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55 (2d Cir. 2013) .................................. 18

*Christy v. Alexander & Alexander of N.Y., Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*,
  130 F.3d 52 (2d Cir.1997) ..................................................................................................... 22

*Dibbern v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*,
  331 B.R. 93 (S.D.N.Y. 2005) ................................................................................................ 27

*Eberhard v. Marcu*,
  530 F.3d 122 (2d Cir.2008) ................................................................................................... 10

*Enron Corp. v. Granite Construction Co. (In re Enron Corp.)*,
  2006 WL 2400369 (Bankr. S.D.N.Y. May 11, 2006) ............................................................ 17

*Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*,
  2006 WL 2802092 (E.D.N.Y. Sept. 28, 2006) ...................................................................... 19

*Georgia Malone & Co. v. Rieder*,
  973 N.E.2d 743 (N.Y. App. 2012) .......................................................................................... 8

*Graham v. Take-Two Interactive Software, Inc.*,
  2020 WL 408408 (S.D.N.Y. Jan. 24, 2020) .................................................................... 23, 24

*Hayden v. Cty. of Nassau*,
  180 F.3d 42 (2d Cir. 1999) .................................................................................................... 28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Holliday v. K Road Power Mgmt., LLC (In re Boston Generating LLC)*,
617 B.R. 442 (Bankr. S.D.N.Y. 2020) .................................................................... 24, 25

*In re AOG Enter., Inc.*,
569 B.R. 563 (Bankr. S.D.N.Y. 2017) ........................................................................ 15

*In re AppliedTheory Corp.*,
493 F.3d 82 (2d Cir. 2007)........................................................................................... 7

*In re Bernard L. Madoff Inv. Sec. LLC.*,
721 F.3d 54 (2d Cir. 2013)......................................................................................... 25

*In re Big Apple Volkswagen, LLC*,
571 B.R. 43 (Bankr. S.D.N.Y. 2017) ......................................................................... 14

*In re Cinque Terre Fin. Group Ltd.*,
2017 WL 4843738 (Bankr. S.D.N.Y. Oct. 24, 2017)................................................. 14

*In re Commodore Int'l Ltd.*,
262 F.3d 96 (2d Cir. 2001)........................................................................................... 7

*In re Dreier LLP*,
544 B.R. 760 (Bankr. S.D.N.Y. 2016) ....................................................................... 26

*In re Glitnir banki hf*,
2011 WL 3652764.......................................................................................................... 9

*In re Granite Partners, L.P.*,
194 B.R. 318 (Bankr. S.D.N.Y.1996) .......................................................................... 5

*In re Hellas Telecomms. (Luxembourg) II SCA*,
524 B.R. 488 (Banrk. S.D.N.Y 2015) ....................................................... 9, 10, 24, 25

*In re Hellas Telecommunications (Luxembourg) II SCA*,
535 B.R. 543 (Bankr. S.D.N.Y. 2015) ....................................................................... 16

*In re Holland Indus., Inc.*,
103 B.R. 461 (Bankr. S.D.N.Y.1989) ........................................................................ 13

*In re JVJ Pharmacy Inc.*,
630 B.R. 388 (Bankr. S.D.N.Y. 2021) ....................................................................... 21

*In re Kingate Mgmt. Ltd. Litig.*,
2016 WL 5339538 (S.D.N.Y. Sept. 21, 2016), *aff'd*, 746 F. App'x 40 (2d Cir. 2018) ............ 27

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Manley Toys Ltd.*,
   2020 WL 1580244 (Bankr. D.N.J. Mar. 31, 2020) ......................................... 5, 6, 11

*In re Manshul Constr. Corp.*,
   225 B.R. 41 (Bankr. S.D.N.Y. 1998) ....................................................... 13

*In re Norske Skogindustrier ASA*,
   629 B.R. 717 (Bankr. S.D.N.Y. 2021) ..................................................... 9

*In re PB Life and Annuity Co., Ltd.*,
   Case No. 20-12791-lgb, Dkt. No. 33 ....................................................... 12

*In re Refco, Inc. Sec. Litig.*,
   2009 WL 7242548 (S.D.N.Y. Nov. 13, 2009) ....................................... 20

*In re Sabine Oil & Gas Corp.*,
   547 B.R. 503 (Bankr. S.D.N.Y. 2016) ..................................................... 8

*In re Schick*,
   246 B.R. 41 (Bankr. S.D.N.Y. 2000) ....................................................... 8

*In re STN Enters.*,
   779 F.2d 901 (2d. Cir. 1985) ................................................................. 6, 8

*In re Trinsum Grp., Inc.*,
   460 B.R. 379 (Bankr. S.D.N.Y. 2011) ............................................... 18, 24

*Jacobs v. State Bank of Long Island (In re AppOnline.com, Inc.)*,
   296 B.R. 602 (E.D.N.Y. 2003) ............................................................. 22

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (N.Y. 2011) ................................................................... 23

*Metromedia Fiber Network, Inc. v. Various State and Local Taxing Auth. (In re Metromedia Fiber Network, Inc.)*,
   299 B.R. 251 (Bankr. S.D.N.Y. 2003) ..................................................... 5

*Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*,
   848 F.2d 1196 (11th Cir. 1988) ............................................................. 22

*O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*,
   383 B.R. 231 (Bankr. S.D.N.Y. 2008) ................................................... 19

*O'Connor v. DL-DW Holdings, LLC (In re Extended Stay, Inc.)*,
   2020 WL 10762310 (Bankr. S.D.N.Y. Aug. 8, 2020) ....................... 18, 21

# TABLE OF AUTHORITIES

(continued)

Page(s)

*Off. Comm. of Unsec. Cred. of Hydrogen LLC v. Blomen (In re Hydrogen, LLC)*,
  431 B.R. 337 (Bankr. S.D.N.Y. 2010).................................................................. 24

*Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.
  v. Chinery*,
  330 F.3d 548 (3d Cir. 2003) ............................................................................. 6

*Pereira v. Frenkel Benefits, LLC (In re Moyer Grp. Inc.*,
  586 B.R. 401 (Bankr. S.D.N.Y. 2018) ................................................................ 23

*Pereira v. Urthbox, Inc. (In re Try The World, Inc.)*,
  2021 WL 3502607 (Bankr. S.D.N.Y. Aug. 9, 2021) ............................................. 16

*Picard v. HSBC Bank PLC*,
  454 B.R. 25 (S.D.N.Y. 2011) ............................................................................ 25

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff, LLC)*,
  610 B.R. 197 (Bankr. S.D.N.Y. 2019) ........................................................... 21, 22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff, LLC)*,
  631 B.R. 1 (Bankr. S.D.N.Y. 2021) .................................................................... 21

*Shearson Lehman Hutton, Inc. v. Wagoner*,
  944 F.2d 114 (2d Cir. 1991) ............................................................................. 25

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018) ............................................................................. 13

*Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*,
  377 F.3d 209 (2d Cir. 2004) ............................................................................. 26

*Waite v. Schoenbach*,
  2010 WL 4456955 (S.D.N.Y. Oct. 29, 2010) ...................................................... 18

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
  341 F. Supp. 2d 258 ........................................................................................ 8

**Statutes**

11 U.S.C. § 1103(c)(5) ...................................................................................... 6

11 U.S.C. § 1109(b) .......................................................................................... 6

11 U.S.C. § 1523(a) .......................................................................................... 9

11 U.S.C. § 550(a) ............................................................................................ 21

# TABLE OF AUTHORITIES
(continued)

Page(s)

28 U.S.C. § 1334(b) ............................................................................................................ 5, 13

28 U.S.C. § 157(a) .................................................................................................................. 13

N.Y. D.C.L. § 276.............................................................................................................. 10, 11

**Other Authorities**

Bermuda Conveyancing Act 1983 §§ 36A - 36G .......................................................... 10

**Rules**

32 L.P.R.A. §  3351d ............................................................................................................ 27

32 L.P.R.A. §  3352 ............................................................................................................... 27

Fed. R. Civ. P. 9(b) .............................................................................................................. 16

Defendant Morgan Stanley Senior Funding, Inc. ("Morgan Stanley") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint filed by Universal Life Insurance Co. ("ULICO"), for failure to state a claim on which relief can be granted and lack of subject matter jurisdiction under Federal Rule of Bankruptcy Procedure 7012 and Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

## PRELIMINARY STATEMENT[1]

Morgan Stanley is not a proper defendant in this adversary proceeding, and ULICO is not a proper plaintiff.  In the Amended Complaint, ULICO attempts to hold Morgan Stanley, an uninvolved outsider, liable for a fraud allegedly carried out by Greg Lindberg, the currently incarcerated owner of reinsurance company PB Life and Annuity Co. ("PBLA").  ULICO contends that it holds a $524 million judgment against PBLA arising out of Lindberg's fraud, and while ULICO was a creditor of PBLA, PBLA transferred funds to Lindberg and his affiliate co-conspirators (which have been named as defendants in this case) to defraud ULICO and other creditors.

ULICO does not allege that Morgan Stanley participated in the fraud, dealt with Lindberg, or even received any transfers of debtor property for its own benefit.  ULICO's *sole* basis for sweeping Morgan Stanley into this lawsuit is that Morgan Stanley, at an unspecified time, purportedly acted as a "conduit" and processed unspecified transfers from PBLA to Lindberg's affiliates.  That lone vague allegation does not state a claim against Morgan Stanley. If anything, the allegation dooms each one of the three claims—for voidable transfer, unjust

---

[1] Capitalized terms not defined in this brief have the meanings used in the Amended Complaint (ECF Doc. No. 14).

enrichment, and constructive trust—by showing that Morgan Stanley never exercised control over or benefitted from any of the Transfers (which are never identified by ULICO).

The Amended Complaint also should be dismissed because ULICO either lacks standing to bring the claims or the Court lacks jurisdiction to adjudicate them. To the extent ULICO seeks to recover assets that belong to PBLA, ULICO has failed to move for and obtain derivative standing to pursue its claims on behalf of PBLA's Joint Provisional Liquidators (the "JPLs"). This failure is incurable, because standing would not be granted to pursue these meritless claims under well-settled law. And if ULICO is pursuing its own claims, the Amended Complaint is just litigation between non-debtor entities with no possible impact on PBLA's property. In that case, this Adversary Proceeding does not "relate to" PBLA's chapter 15 case, and the Court lacks jurisdiction to adjudicate it.

For all these reasons, the Court should dismiss the Amended Complaint with prejudice.

## PROCEDURAL AND FACTUAL BACKGROUND[2]

### A.    PBLA's Bermuda Liquidation Proceeding and Chapter 15 Case

PBLA is a Bermuda-based life reinsurance company currently in liquidation proceedings in the Supreme Court of Bermuda (the "Bermuda Proceeding"). (Am. Compl. ¶ 11.) On September 25, 2020, the Supreme Court of Bermuda appointed Rachelle Frisby and John Johnston as JPLs of PBLA. (*Id.*) On December 3, 2020, the JPLs filed a chapter 15 case in this Court, and on January 5, 2021, this Court entered an order granting recognition of the Bermuda Proceeding as a foreign main proceeding under section 1517 of the Bankruptcy Code (the "Recognition Order"). (*Id.* ¶ 12.)

---

[2] These facts are taken from the Amended Complaint, which Morgan Stanley accepts as true for purposes of this Motion to Dismiss only.

B.      **The Adversary Proceeding**

On July 7, 2021, ULICO, a Puerto Rico insurance company, sued Morgan Stanley and

dozens of other defendants (ECF Doc. No. 1), and on July 30, 2021, filed the Amended

Complaint adding additional defendants. (ECF Doc. No. 14).  The claims in the Amended

Complaint arise out of a fraudulent scheme orchestrated by PBLA's owner and convicted

fraudster, Greg Lindberg.  (*Id.* ¶ 1.)  According to ULICO, Lindberg engaged in a massive fraud

to enrich himself by shuffling money between entities that were Lindberg's alter egos.  (*Id.* ¶ 7.)

ULICO claims that pursuant to a reinsurance agreement between it and PBLA, PBLA

agreed to reinsure certain insurance policies ULICO issued.  (*Id.* ¶¶ 2, 3.)  The reinsurance

agreement required PBLA to fund certain trust accounts (the "Trust") as security for the

insurance liabilities covered under the reinsurance agreement.  (*Id.* ¶ 120.)  ULICO supplied the

Trust with assets to meet the required statutory reserves for the reinsured policies, and PBLA had

the right to manage the investment of the Trust assets.  (*Id.* ¶ 122.)  As a result of litigation

concerning Lindberg's fraud, an approximately $524 million judgment was rendered against

PBLA in ULICO's favor.  (*Id.* ¶ 8.)  ULICO alleges that between July 2017 and December 2018,

the Trust (which is not identified as a debtor) transferred funds (the "Trust Proceeds") to PBLA

and then to entities controlled by Lindberg (the "Transfers"), and that PBLA made the Transfers

with intent to defraud creditors and to enrich Lindberg and his co-conspirators.  (*Id.* ¶ 126.)

Through this case, ULICO seeks to claw back the Transfers it claims were made to each

defendant.  (*Id.* ¶ 7.)

### C.    The Amended Complaint's Lack of Allegations About Morgan Stanley

The Amended Complaint barely bothers to mention Morgan Stanley and lacks a single good faith factual allegation that Morgan Stanley benefitted from debtor property.[3]  ULICO rotely alleges (without factual support) that Morgan Stanley is among six banks ULICO deems "Conduit Defendants," each of which "acted as a conduit and received funds transferred from the Trust, before such funds were transferred to various Lindberg Affiliates and other entities or individuals."  (*Id*. ¶¶ 111, 113.)  ULICO alleges zero facts regarding the dates, amounts, or nature of any transfers for which Morgan Stanley allegedly acted as a conduit.  Nor does the Amended Complaint allege that Morgan Stanley received any monetary benefit from any Transfer by PBLA, the Trust, or any relevant party.  And there are no allegations that Morgan Stanley had any knowledge about Lindberg's fraudulent scheme (let alone benefited from or assisted it).

ULICO asserts claims against Morgan Stanley for (i) voidable transfer (Count I), (ii) unjust enrichment (Count II), and (iii) constructive trust (Count IV).

### ARGUMENT[4]

### I.    EITHER ULICO LACKS STANDING TO BRING ITS CLAIMS OR THE COURT LACKS JURISDICTION TO ADJUDICATE THEM.

The Amended Complaint fails at the starting gate because either (i) ULICO lacks standing to bring its claims, (ii) the Court's recognition order in the PBLA chapter 15 case and the Bankruptcy Code would foreclose ULICO's claims even if it sought derivative standing, or (iii) this Court lacks jurisdiction to adjudicate the claims.

---

[3] Morgan Stanley believes the Amended Complaint lacks a good faith legal and factual foundation and Morgan Stanley reserves its right to pursue appropriate relief against ULICO and its counsel for pursuing the Adversary Proceeding, and has communicated this position to ULICO and its counsel.

[4] Unless otherwise indicated, all citations and quotation marks are omitted.

The basis for the relief ULICO seeks in the Amended Complaint is amorphous, unclear, and internally inconsistent, but can be interpreted in two ways, either of which mandate dismissal of the Amended Complaint.  If ULICO seeks to recover PBLA's assets, ULICO lacks standing to pursue the claims on the JPLs' behalf because ULICO has failed to properly obtain derivative standing to do so.  Even if ULICO followed the required procedural steps and sought leave from the Court to obtain derivative standing, it would be unable to step into the JPLs' shoes to bring a fraudulent transfer claim because such relief is unavailable to the JPLs themselves, and barred by both the Recognition Order and the Bankruptcy Code.  If, on the other hand, ULICO seeks to recover its own assets—that is, assets that are not the debtor's property—this case does not "relate to" PBLA's chapter 15 case, and this Court lacks subject matter jurisdiction to hear the Amended Complaint under 28 U.S.C. § 1334(b).  These are gating issues the Court must determine before addressing the substance of ULICO's claims.  *See, e.g.*, *Metromedia Fiber Network, Inc. v. Various State and Local Taxing Auth. (In re Metromedia Fiber Network, Inc.)*, 299 B.R. 251, 256 (Bankr. S.D.N.Y. 2003) (holding the court's jurisdiction is a threshold issue).

### A.      ULICO Lacks Standing to Bring Claims Belonging to the JPLs.

The bankruptcy process provides for a centralized, orderly resolution of competing claims to the assets of a debtor, and thus, fundamental bankruptcy principles preclude individual creditors like ULICO from pursuing claims that belong to a debtor.[5]  *See In re Granite Partners, L.P.*, 194 B.R. 318, 324 (Bankr. S.D.N.Y. 1996) ("If the cause of action belongs to the estate, the trustee has exclusive standing to assert it[.]").  An action to recover property transferred by the debtor prepetition—including each of the deficient claims for voidable transfer, unjust

---

[5] While there is no "estate" in a chapter 15 proceeding, only "property of the debtor," the same principles apply.  *In re Manley Toys Ltd.*, 2020 WL 1580244, at *3–4 (Bankr. D.N.J. Mar. 31, 2020).

enrichment, and constructive trust against Morgan Stanley—is one that belongs solely to the trustee, debtor-in-possession, or, as is the case here, the JPLs. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 565 (3d Cir. 2003) ("[The court] cannot conceive of a situation in which a creditor has independent standing which would allow it to pursue the recovery of property transferred or concealed by the debtor."); *In re Manley Toys*, 2020 WL 1580244, at *7 (explaining that permitting a creditor to pursue a fraudulent transfer claim after a bankruptcy proceeding has commenced "would essentially defeat an underlying purpose of bankruptcy—to prevent the race to collect estate assets and instead impose an orderly liquidation and distribution of assets through a single proceeding").

ULICO blatantly disregards these bedrock bankruptcy principles and ignores the well-established path for attempting to obtain derivative standing where a debtor refuses to pursue meritorious claims. *First*, a creditor may seek derivative standing by demonstrating that (i) the trustee has unjustifiably failed to bring suit, and (ii) the claim is likely to benefit the estate. *See In re STN Enters.*, 779 F.2d 901, 904–05 (2d. Cir. 1985) ("We agree with these bankruptcy courts that 11 U.S.C. §§ 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate suit *with the approval of the bankruptcy court*.") (emphasis added). *Second*, a creditor may obtain derivative standing if: "(1) the [creditor] has the consent of the debtor in possession or trustee, and (2) *the court* finds that suit by the [creditor] is (a) in the best interest of the bankruptcy estate, and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." *In re Commodore Int'l Ltd.*, 262 F.3d 96, 100 (2d Cir. 2001) (emphasis added).

Under either formulation, obtaining court approval is mandatory for a creditor to obtain derivative standing.  *See In re AppliedTheory Corp.*, 493 F.3d 82, 86 (2d Cir. 2007).  As the Second Circuit has recognized, court oversight plays a critical role in ensuring that derivative standing is granted only when doing so will benefit the estate as a whole, not merely a single creditor:

> [*STN*] and [*Commodore*] doom the Committee's appeal. They make clear that claims such as those the Committee wishes to pursue depend on a judicial determination that they are likely to benefit the estate. Here both the trustee and the bankruptcy court concluded that they were not. The Committee advances no reasons for us to disturb these conclusions.  Moreover, sound reasons underlie the requirement of court authorization that *STN* and *Commodore* insist upon. Reorganizations would routinely spin out of control if decisions that would commit the time and limited resources of the estate could be taken without the consent of the bankruptcy court, the entity charged by law with controlling and regulating such matters. Requiring bankruptcy court approval conditioned upon the litigation's effect on the estate helps prevent committees and individual creditors from pursuing adversary proceedings that may provide them with private benefits but result in a net loss to the entire estate.  Therefore, beyond the absence of benefit to the estate, approval to litigate is an independent justification for dismissal of this appeal.

*Id.*

ULICO never sought or obtained court approval to pursue these claims.  Instead, incredibly, ULICO grants itself standing in the Amended Complaint, asserting that "ULICO, as PBLA's largest creditor, has requested that the [JPLs] institute litigation to void the transfers at issue in this case, but to date the JPLs have declined to pursue those claims," and "[a]ccordingly, ULICO has standing to pursue the voidable transfer claims, among others, at issue in this case." (Am. Compl. ¶¶ 9, 10.)  This single sentence purports to wipe away the decades-old governing doctrine of bankruptcy standing.  ULICO cannot do this.

The unjust enrichment and constructive trust claims likewise belong solely to the JPLs and cannot be brought by ULICO absent a grant of derivative standing.  ULICO does not allege any relationship between itself and Morgan Stanley, but instead alleges that the transfers came

from the Trust to other entities with Morgan Stanley serving as the conduit intermediary.  (Am.

Compl. ¶¶ 111, 113.)  To the extent any entity has an unjust enrichment claim, it must

necessarily be PBLA or the Trust, as any others would be strangers to the transaction and unable

to bring such claims.  *See Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 747 (N.Y. App.

2012) (dismissing unjust enrichment claim because the plaintiff had no relationship with the

defendant, and one cannot seek unjust enrichment from another when the parties "simply had no

dealings with each other"); *see also Xpedior Creditor Trust v. Credit Suisse First Boston (USA)

Inc.*, 341 F. Supp. 2d 258, 273 (S.D.N.Y. 2004) ("[Plaintiff] does not allege that [defendant] was

enriched at its expense.  To the contrary, [defendant] allegedly received excess compensation

from its own customers.  They, not [plaintiff], might have a cause of action.").  The same is true

of the constructive trust claim.  *See In re Schick*, 246 B.R. 41, 46 (Bankr. S.D.N.Y. 2000) ("[A]

stranger cannot sue to impose a constructive trust for the benefit of a defrauded party.").

But even if ULICO had followed the mandatory procedural steps and sought this Court's

approval to proceed, its efforts would have been futile for several reasons.

*First*, the Amended Complaint fails to satisfy the requirement that the claims be

"colorable."  *In re STN*, 779 F.2d at 905.  "The inquiry as to whether a claim is 'colorable'

under *STN* is similar to that undertaken by the court on a motion to dismiss."  *In re Sabine Oil &

Gas Corp.*, 547 B.R. 503, 515 (Bankr. S.D.N.Y. 2016).  The movant must "state a claim [for]

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  As

explained in Section II below, ULICO alleges no facts, let alone legally sufficient facts, to state a

claim against Morgan Stanley.  Thus, permitting ULICO to pursue deficient claims would not

benefit the debtor, and any effort to obtain derivative standing would necessarily fail.

*Second*, the JPLs could not bring the voidable transfer claim that ULICO seeks to bring through Count I of the Amended Complaint on the JPLs' behalf. Section 1521(a)(7) of the Bankruptcy Code forecloses foreign representatives from bringing avoidance actions under section 548 or section 544(b)(1)—which would otherwise permit a trustee to bring avoidance claims under state law.[6] *See In re Norske Skogindustrier ASA*, 629 B.R. 717, 757 (Bankr. S.D.N.Y. 2021); *see also In re Hellas Telecomms. (Luxembourg) II SCA*, 524 B.R. 488, 522–23 (Banrk. S.D.N.Y 2015) ("Plaintiffs, as foreign representatives in the Debtor's chapter 15 proceeding, do not have standing to assert Count I if the Plaintiffs need to rely on section 544 to provide that standing because section 1521(a)(7) of the Bankruptcy Code does not permit a foreign representative to utilize section 544 to gain standing in a chapter 15 case."); *In re Glitnir banki hf*, 2011 WL 3652764, at *7 n.17 (Bankr. S.D.N.Y. Aug. 19, 2011) ("Unlike a bankruptcy trustee, the Foreign Representative cannot bring avoidance claims on behalf of other creditors under bankruptcy or state fraudulent transfer laws."). Instead, a foreign representative may only bring avoidance claims under applicable foreign law, or, if it has independent standing—i.e., outside of the Bankruptcy Code—under applicable state law. *See Norske*, 629 B.R. at 757; *Hellas*, 524 B.R. at 523, n.37.

While New York has adopted the Uniform Voidable Transactions Act, that statute provides an avenue of relief to creditors, not the transferor itself.[7] New York Debtor and Creditor Law ("D.C.L.") § 276; *Eberhard v. Marcu*, 530 F.3d 122, 131–35 (2d Cir.2008)

---

[6] The JPLs would have standing to bring avoidance actions under section 544 or 548 if PBLA commenced a case under another chapter of the Bankruptcy Code, but they have not done so. 11 U.S.C. § 1523(a).

[7] ULICO does not specify under what law it brings its voidable transfer claim or enough facts to conduct a choice of law analysis to determine what law applies, and Morgan Stanley reserves the right to assert that non-New York law applies to the claim.

(holding that only creditors may utilize D.C.L. § 276 to set aside fraudulent transactions).  In *Hellas*, the foreign representative of a UK-based debtor sought to bring avoidance claims under D.C.L. § 276.  *Hellas*, 524 B.R. at 521.  The court first held that, because the foreign representative represented the debtor-transferor, not a creditor, the foreign representative lacked standing to bring D.C.L. § 276 claims unless some aspect of UK insolvency law or the foreign main proceeding in the UK vested the foreign representative with authority to assert claims on behalf of the debtor's creditors.  *Id.* at 524–28.  The court, after analyzing each of the foreign representative's arguments, held that the foreign representative had no such authority and dismissed the avoidance claim.  *Id.*

Here, the JPLs represent the alleged debtor-transferor, PBLA, not a creditor, and cannot pursue a claim under D.C.L. § 276 without looking to Bermuda law—where PBLA's foreign main proceeding is pending—for additional authority to bring claims on behalf of PBLA's creditors.  *See id.*  While the JPLs (or ULICO if it is seeking to sue derivatively on behalf of the JPLs) bear the burden of establishing their right to proceed with a state law avoidance action, ULICO has failed to follow the proper procedural steps to obtain derivative standing.  In any event, under Bermuda's insolvency laws, creditors may set aside fraudulent transfers, but no similar right is granted to liquidators.  *See* Bermuda Conveyancing Act 1983 §§ 36A - 36G (permitting an eligible creditor, not a liquidator, to set aside a fraudulent conveyance).  This Court should concur with *Hellas* and conclude that the JPLs lack the ability to bring claims under D.C.L. § 276.  ULICO, through a motion to obtain derivative standing, could not acquire greater rights than the JPLs—the owners of the purported cause of action themselves—possess.  Because the JPLs could not bring fraudulent transfer claims, ULICO cannot either.

*Third*, the Amended Complaint also, at times, characterizes the voidable transfer claim as seeking to recover funds that PBLA caused to be transferred out of the Trust, which ULICO does not control, and not assets transferred by PBLA itself.  (Am. Compl. ¶ 123–126 ("[M]onies were transferred out of the Trust to affiliates owned by Lindberg. . .;" "PBLA under the direction of Lindberg, siphoned off more than $500 million of funds from the Trust . . .;" "Defendants were recipients of such transfers from the Trust.").)  Yet, the Amended Complaint focuses on PBLA's actions as the basis for liability.  (*Id.* ¶ 126 ("PBLA engaged in those transactions with the specific intent of defrauding, hindering, and delaying its creditors . . .").)  Under that reading of the Amended Complaint, ULICO's efforts to assert the JPLs' rights and recover the debtor's assets is yet another step removed.  ULICO has not demonstrated any authority for its ability to challenge PBLA's transfers from the Trust.

## B.    ULICO's Claims Are Barred by the Recognition Order and Foreclosed by the Automatic Stay.

ULICO also cannot bring claims without contravening the Bankruptcy Code and this Court's order.  Section 1520 of the Bankruptcy Code provides that recognizing a liquidation proceeding as a foreign main proceeding triggers and imposes the automatic stay of section 362 on any property of the debtor located within the United States.  *In re Manley Toys*, 2020 WL 1580244, at *3.  Inexplicably, ULICO cites Bankruptcy Code sections 1520, 362, and 541 (which delineate what constitutes the property of the estate in cases filed under chapters 7, 11, 12, or 13) as the statutory predicates for its claims.  But those provisions provide no basis for ULICO's claims—they foreclose the relief ULICO seeks by highlighting the applicability of the automatic stay to claims against PBLA's assets.[8]  (Am. Comp. ¶ 118.)  While it is unclear why

---

[8] As noted above, there is no "estate" in a chapter 15 proceeding, and § 103(a) provides that § 541 does not apply in a chapter 15 case.

ULICO cited these provisions of the Bankruptcy Code, in doing so, ULICO pleads itself into dismissal to the extent each of its claims seeks to recover assets that belong to PBLA.

The Recognition Order further forecloses ULICO's claims, expressly ordering that "[a]ll entities . . . other than the JPLs . . . are hereby enjoined from . . . commencing or continuing an individual action or proceeding concerning the Debtor's assets, rights, obligations, or liabilities to the extent they have not been stayed pursuant to section 1520(a) of the Bankruptcy Code." *In re PB Life and Annuity Co., Ltd.*, Case No. 20-12791-lgb, Dkt. No. 33 (Bankr. S.D.N.Y. 2020), ¶ 7(e). The Recognition Order removes any question about whether would-be litigants, other than the JPLs, may pursue claims against the debtor's property. ULICO cannot unilaterally circumvent the Court's order and pursue its own actions to recover the debtor's assets. Thus both the Bankruptcy Code and Recognition Order bar ULICO, even with the JPLs' consent, from pursuing any of the claims alleged in the Amended Complaint to the extent the seek to recover PBLA's property, whether under the guise of fraudulent conveyance, unjust enrichment, or constructive trust.

### C. The Court Lacks Subject Matter Jurisdiction to Adjudicate Any Claims ULICO Brings on Its Own Behalf.

If ULICO is not seeking to recover PBLA's property—and again, to be clear, it never alleges that Morgan Stanley received any interest in PBLA's property—but is instead seeking to recover ULICO's property, then this is simply litigation between a creditor of the debtor and a laundry list of non-debtor defendants. If that is the nature of ULICO's lawsuit, then this Court lacks subject matter jurisdiction to consider the Amended Complaint.[9]

---

[9] Any argument that ULICO is bringing its own claims is belied by allegations in the Amended Complaint that ULICO brought these claims because it claims to be PBLA's largest creditor and the JPLs have thus far refused to take action. (Am. Compl. ¶¶ 8–10, 126.)

ULICO alleges that this Court has subject matter jurisdiction because the Amended

Complaint is "related to" the main bankruptcy case.  (Am. Comp. ¶ 114.)  A civil proceeding is

"related to" a bankruptcy case "if the action's outcome might have any conceivable effect on the

bankrupt estate."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339–40 (2d Cir. 2018); *see also* 28

U.S.C. § 1334(b) (providing for "related to" jurisdiction), *and* 28 U.S.C. § 157(a) (providing for

referral of proceedings "related to" title 11 cases to the bankruptcy court).  "Related to

jurisdiction, however, is not without limits.  Bankruptcy courts have no jurisdiction over

proceedings that have no effect on the debtor."  *In re Manshul Constr. Corp.*, 225 B.R. 41, 45

(Bankr. S.D.N.Y. 1998).  Thus "a proceeding involving non-debtors will not be found to be

related solely on the ground that it will affect a distribution to creditors unless that proceeding

also involves property in which the debtor has a legally cognizable interest."  *Id.* (quoting *In re

Holland Indus., Inc.*, 103 B.R. 461, 469 (Bankr. S.D.N.Y.1989)).

If the wholly-unidentified assets the Amended Complaint seeks to recover are ULICO's,

then this adversary proceeding is solely between non-debtor parties regarding non-debtor

property, and a resolution of this proceeding can have no impact whatsoever on PBLA.  If so,

this proceeding does not "relate to" the main bankruptcy case, and this Court lacks jurisdiction

over the Amended Complaint.  *See AEL Fin., LLC v. Tessier*, 2007 WL 2427867, at *1 (S.D.

Tex. Aug. 22, 2007) ("A third party action does not create 'related to' jurisdiction when the asset

in question is not a property of the estate.").

In response to arguments pressed by other defendants in their motions to dismiss the

Amended Complaint, ULICO attempts to end run this jurisdictional problem by citing to a

settlement agreement between ULICO and the JPLs (signed some four months after ULICO

initiated this adversary).  (*See* ECF Doc. No. 111 at 12–13.)  In yet another flouting of

-13-

bankruptcy practice, ULICO and the JPLs did not seek court approval under Federal Rule of

Bankruptcy Procedure 9019 for the settlement agreement, rendering the agreement

unenforceable and meaningless.  *See Sallim v. Nisselson (In re Big Apple Volkswagen, LLC)*, 571

B.R. 43, 54 (Bankr. S.D.N.Y. 2017) ("the Court agrees with the majority view that a compromise

or settlement is enforceable only if the bankruptcy court has approved it."); *In re Cinque Terre*

*Fin. Group Ltd.*, No. 16–11086, 2017 WL 4843738, at *10 (Bankr. S.D.N.Y. Oct. 24, 2017)

(noting that Rule 9019 applies in chapter 15 cases).  And setting aside this failure, the agreement

provides that "PBLA shall receive a full credit against the amount of the judgment plus ongoing

interest entered in the SDNY Action for any amounts recovered by PBLA and actually placed

into the Trust Accounts for the benefit of ULICO."  (*See* ECF Doc. No. 111-2 ¶ 1.)  By

highlighting the fact that any funds are to be recovered by PBLA, ULICO's insertion of a

muddled agreement with the JPLs serves to highlight the fact that ULICO is improperly seeking

to pursue the JPLs' claims without first establishing its entitlement to do so by obtaining

derivative standing, and the Amended Complaint must be dismissed.

    The agreement then contains the self-serving conclusion that this adversary proceeding

"impacts the JPLs' rights and liabilities, in that any recoveries by ULICO in [this lawsuit] shall

inure to the benefit of the JPLs as referenced in this agreement.  The JPLs therefore are expressly

of the view that the SDNY Action "relates to" the Bankruptcy Court Action as that term is

understood under federal law."  (*Id.* ¶ 2.)  It goes on to explain "[a]ny funds recovered in the

Adversary Proceeding for the Trust Accounts shall be credited against PBLA's obligations under

the judgment in the SDNY Action."  (*Id.* ¶ 3.)

    But ULICO's collusive, belated attempt to manufacture bankruptcy jurisdiction does not

cure the jurisdictional defect.  That PBLA and ULICO have entered into an agreement affirming

PBLA's liability to ULICO does not create subject matter jurisdiction. PBLA's liability to

ULICO was established before PBLA filed its bankruptcy case—indeed, an adverse ruling

against PBLA in its prior litigation with ULICO was the primary catalyst for the bankruptcy.

And the JPLs' belief that this proceeding "relates to" PBLA's bankruptcy is entirely irrelevant,

as it is axiomatic that parties cannot not create subject matter jurisdiction by agreement. *In re*

*AOG Enter., Inc.*, 569 B.R. 563, 578 (Bankr. S.D.N.Y. 2017) ("Where a court lacks subject

matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of

reorganization."). And if parties to an agreement cannot create subject matter jurisdiction

between themselves, they most assuredly cannot create it with respect to non-parties to the

collusive agreement, like Morgan Stanley.

## II.    EACH CLAIM AGAINST MORGAN STANLEY FAILS AS A MATTER OF LAW.

Even if ULICO had standing to bring this Adversary Proceeding, and the Bankruptcy

Court had jurisdiction over it, ULICO's claims against Morgan Stanley for (i) voidable transfer,

(ii) unjust enrichment, and (iii) constructive trust, are dismissible on their face.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's factual allegations must

"raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. A complaint

cannot rely on bare legal conclusions. Rather, a plaintiff must offer "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, where, as here, a plaintiff

asserts a claim based in fraud, the claim must "state with particularity the circumstances

constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened standard applies to ULICO's

claim for voidable transfer (Count I).  *See Pereira v. Urthbox, Inc. (In re Try The World, Inc.)*,
2021 WL 3502607, at *6 (Bankr. S.D.N.Y. Aug. 9, 2021).[10]

As demonstrated below, the Amended Complaint falls far short of these standards for
each of its claims.  Tellingly—and despite the fact that ULICO had access to bank and financial
records allegedly related to the Transfers—the Amended Complaint mentions Morgan Stanley
exactly ***once***.  (Am. Compl. ¶111.)  Equally critical, the single allegation on which ULICO
hinges its case against Morgan Stanley dooms all three of ULICO's claims.  ULICO alleges only
that "[a]t various times, Morgan Stanley Senior Funding, Inc. acted as a conduit and received
funds transferred from the Trust, before such funds were transferred to various Lindberg
Affiliates."  (*Id.* ¶ 111.)  The only reasonable conclusion to draw from this lone allegation is that
Morgan Stanley (i) did not engage in any wrongdoing, (ii) took no part in a fraud, (iii) did not
receive for its own benefit any transfer of interest from PBLA, and (iv) was a simple conduit of
funds between entities.  The claims suffer from a host of other legal deficiencies, and each of the
claims fails as a matter of law.

---

[10] While some courts have held that the Rule 9(b) standard is relaxed (although not eliminated) when
a plaintiff is a trustee or a third party who lacks information to plead with particularly, that is not the case
here.  ULICO alleges that it was a beneficiary of the Trust pursuant to which PBLA allegedly made the
Transfers, and ULICO could have sought bank records and information about the Transfers from the
trustee of the Trust (and in fact, it is actively seeking such discovery now (*see* ECF Doc. No. 49)).
ULICO also does not suffer from a lack of knowledge.  ULICO states that it has already obtained
financial records and information concerning PBLA's transfers.  (Am Compl. ¶ 16.)  There is therefore no
justification to relax Rule 9(b)'s heightened pleading standard for ULICO's voidable transfer claim.  *See
In re Hellas Telecommunications (Luxembourg) II SCA*, 535 B.R. 543, 562 (Bankr. S.D.N.Y. 2015).

A.      **The Voidable Transfer Claim Fails (Count I).**

1.      **The Amended Complaint Does Not Meet Applicable Pleading
Standards to State a Claim for Voidable Transfer.**

The Amended Complaint falls drastically short of pleading a voidable transfer claim

against Morgan Stanley under any theory of fraudulent transfer law.[11]  Crucially, ULICO fails to

plead the most basic element of a fraudulent transfer claim: a transfer of an interest in property

from the debtor to Morgan Stanley.  Under well-settled law, this defect is fatal to the claim.  *See*

*Enron Corp. v. Granite Construction Co. (In re Enron Corp.)*, 2006 WL 2400369, at *6 (Bankr.

S.D.N.Y. May 11, 2006) (holding that to adequately plead a fraudulent transfer claim, a plaintiff

must allege that the transfer "actually involved property . . . being transferred to the Defendant").

The Amended Complaint lists a handful of Transfers made by PBLA—none of which are

alleged to have been made to Morgan Stanley—and asserts that the transactions are "merely

examples" of the "several" Transfers that took place between July 2017 and December 2018 for

which ULICO brings its voidable transfer claim.  (Am. Compl. ¶¶ 123–134, 142.)  ULICO

concludes that the unidentified Transfers were made "with specific intent to hinder delay, or

defraud ULICO and any related creditors," and for each of the Transfers, "ULICO did not

receive reasonably equivalent value," and "PBLA was engaged in a transaction for which the

remaining assets of the Trust were unreasonably small . . . and should have reasonably believed

at the time of each transaction that such transactions were beyond PBLA's ability to pay such

obligations as they came due."  (*Id.* ¶¶ 143, 144.)  Courts uniformly hold that such bare-bones

claims that fail to allege specifics like the dates and amounts of transfers, a basis for the

plaintiff's belief that the defendant did not provide reasonably equivalent value, or other facts to

---

[11] ULICO does not specify under what law it brings its voidable transfer claim, or whether it seeks to
bring the claim based on a theory of intentional or constructive fraud.  But as established here, the claim
fails under any theory.

-17-

establish that a transfer actually took place, must be dismissed.[12]  *See, e.g.*, *O'Connor v. DL-DW*

*Holdings, LLC (In re Extended Stay, Inc.)*, 2020 WL 10762310, at *63 (Bankr. S.D.N.Y. Aug. 8,

2020) ("[A]t a minimum, the Trust must provide notice to the Defendants of which Debtor made

each transfer, the date and amount of the transfer, the Defendant who received the transfer and

the other necessary elements of the cause of action."); *Buchwald Capital Advisors, LLC. v. JP*

*Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.*), 480 B.R. 480, 491 (S.D.N.Y.

2012), *aff'd*, 541 F. App'x 55 (2d Cir. 2013) (affirming bankruptcy court's dismissal of

fraudulent transfer claims and holding that a "failure to identify . . . the dates and amounts of

particular transfers alleged to be fraudulent is fatal to any claim for intentional fraudulent

conveyance"); *O'Toole v. Karnani* (*In re Trinsum Grp., Inc.*, 460 B.R. 379, 388 (Bankr.

S.D.N.Y. 2011) (holding that "adequate factual information" to survive a motion to dismiss a

constructively fraudulent transfer claim includes "the transferor and the transferees as well as the

amount of each transfer and the year in which each took place"); *Waite v. Schoenbach*, 2010 WL

4456955, at *6 (S.D.N.Y. Oct. 29, 2010) (dismissing fraudulent transfer claim where complaint

did not specify "the property that was allegedly conveyed, the timing and frequency of those

fraudulent conveyances, or the consideration paid");  *Fed. Nat'l Mortg. Ass'n v. Olympia Mortg.*

*Corp.*, 2006 WL 2802092, at *9 (E.D.N.Y. Sept. 28, 2006) (dismissing claims of intentional

fraudulent conveyance where complaint did "not identify how many transfers plaintiff is

---

[12] Even ULICO's attempt to recite the elements of its claim is inconsistent with state and federal fraudulent transfer law.  For example, ULICO alleges that for each of the Transfers, "ULICO did not receive reasonably equivalent value."  (Am. Compl. ¶ 144.)  To state a claim for a constructive fraudulent transfer, the allegation would need to be that the ***transferor***—PBLA—did not receive reasonably equivalent value.  Similarly, ULICO claims that the Transfers were made when the Trust had unreasonably small assets.  But an allegation properly supporting a constructive fraudulent transfer claim would be that the alleged ***transferor***—PBLA—had unreasonably small assets when it made the Transfers.

challenging or the specific dates and amounts of those transfers" and instead "aggregate[d] the transfers into lump sums over three to five year time periods").

Those cases dictate the outcome here and show how woefully inadequate ULICO's claims are.  The sum total of ULICO's allegations against Morgan Stanley consists of lumping it with other defendants, and then alleging without a shred of detail or support that "[a]t various times [Morgan Stanley] acted as a conduit and received funds transferred from the Trust, before such funds were transferred to various Lindberg Affiliates and other entities or individuals." (Am. Compl. ¶ 111.)  Rule 8(a) requires far more.

The claim fails for a host of other reasons.  For example, ULICO's conclusory allegations, which include Morgan Stanley among nearly one hundred other defendants without pleading a single fact to support Morgan Stanley acted with fraudulent intent (or even acted at all), do not come close to meeting Rule 9(b)'s requirement to plead an actual fraudulent transfer claim with particularity.  *See O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231, 257–58 (Bankr. S.D.N.Y. 2008) (holding with respect to intentional fraudulent transfer claims, "group pleading is generally forbidden because each defendant is entitled to know what he is accused of doing").  Moreover, actual fraudulent transfer claims hinge on whether "there is a *knowing intent . . . to damage creditors.*"  *In re Actrade Fin. Tech., Ltd.*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005) (emphasis added).  And here, ULICO does not allege that Morgan Stanley had ***any*** knowledge of Lindberg's or PBLA's alleged fraud.  On the contrary, the Amended Complaint paints a picture of Lindberg orchestrating his fraud through his affiliated entities, and at most alleges that Morgan Stanley was a mere conduit, processing alleged transfers made by PBLA in the ordinary course, without any knowledge of a fraud, much less an intent to "hinder, delay, or defraud" PBLA's creditors.  While courts acknowledge that

"badges of fraud" may be used to establish intent, ULICO still must offer "specific allegations setting forth such badges of fraud" or "otherwise implicating the defendant in intentional wrongdoing against creditors." *Id.*

ULICO fails to do so. The alleged "badges of fraud" set out in paragraphs 145 to 149 of the Amended Complaint fail to establish Morgan Stanley's fraudulent intent because they are not even directed at Morgan Stanley.[13] *See Miller v. CSFB, Lab Morgan Corp. (In re Refco, Inc. Sec. Litig.)*, 2009 WL 7242548, at *17 (S.D.N.Y. Nov. 13, 2009) (to survive a motion to dismiss, a plaintiff must allege a "strong showing of circumstantial evidence," not merely rely on a rote collection of badges of fraud).

To make matters worse, the Amended Complaint is entirely vague as to which entity is even alleged to have made the Transfers. For example, ULICO asserts that "[a]t one time, each of the named Defendants were recipients of such transfers from the Trust," implying that the transferor was the Trust. (Am. Compl. ¶ 125.) In the very next sentence, ULICO states that "PBLA engaged in those transactions with the specific intent of defrauding . . . creditors[.]" (*Id.* ¶ 126.) Still later in the Amended Complaint, ULICO alleges that "[e]ach of the transfers that occurred were between PBLA . . . and a Lindberg affiliated entity." (*Id.* ¶ 145.) ULICO provides no basis to collapse the Trust and PBLA into one entity for the purpose of analyzing its voidable transfer claim, and a failure to identify the transferor is another dispositive defect to ULICO's claim. *See In re Extended Stay*, 2020 WL 10762310, at *63 (holding that to plead a

---

[13] *See, e.g.*, Am. Compl. ¶¶ 145–147 ("Each of the [Transfers] were between PBLA . . . and a Lindberg affiliated entity . . . . At all times Lindberg was an insider to PBLA and each of the affiliated entities to which the Trust Proceeds were transferred. At all times, PBLA, a known affiliate of Lindberg, retained possession or control of the Trust Proceeds that were transferred from the Trust.").

plausible fraudulent transfer claim, a plaintiff must identify "which [d]ebtor made each transfer").

### 2.    Morgan Stanley Is Not a Transferee From Whom ULICO Can Recover

ULICO's voidable transfer claim fails for the additional independent reason that Morgan Stanley is not alleged to be a "transferee" from whom ULICO can recover voidable transfers. *See* 11 U.S.C. § 550(a). Courts consistently hold that a financial intermediary that is alleged to have acted as a "conduit," and exercised no control over funds that passed through it, is not a "transferee" that can be liable for a fraudulent transfer. *See, e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff, LLC)*, 610 B.R. 197, 238 (Bankr. S.D.N.Y. 2019) ("The initial transferee is the one who first acquires dominion and control over the transferred asset."); *Harrah's Atlantic City Op. Co., LLC v. Lamonica (In re JVJ Pharmacy Inc.)*, 630 B.R. 388, 408 (Bankr. S.D.N.Y. 2021) ("The mere conduit is a financial intermediary, with actual or constructive possession of the asset, whose sole function is to transfer the property to another entity."). "Under the mere conduit test, one who merely facilitates the transfer of funds from the debtor to a third party does not exercise sufficient dominion and control and is not an initial transferee." *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff, LLC)*, 631 B.R. 1, 13 (Bankr. S.D.N.Y. 2021). This test is founded on a basic principle of fraudulent transfer law—for a party to be liable, it must have obtained for itself a legal interest in debtor property. A conduit, of course, does not do so.

That is precisely what ULICO pleads here. ULICO asserts that Morgan Stanley is a "Conduit Defendant," and "acted as a conduit and received funds . . . before such funds were transferred to various Lindberg Affiliates . . . ." (Am. Compl. ¶ 111.) Thus, ULICO's own allegations defeat its claims. Most crucially, ULICO concedes that "PBLA . . . retained

possession or control of the Trust Proceeds that were transferred from the Trust," acknowledging

that Morgan Stanley did not benefit from such funds.  (Am. Compl. ¶ 147; *see also id.* ¶ 145

("Each of the transfers that occurred were between PBLA . . . and a Lindberg affiliated entity.").)

Courts routinely reject similar attempts to enmesh innocent financial institutions and other

entities into fraudulent transfer litigation when there are no allegations the intermediary

benefitted from transfers or did anything other than process transactions in the ordinary course.

*See, e.g.*, *Christy v. Alexander & Alexander of N.Y., Inc. (In re Finley, Kumble, Wagner, Heine,*

*Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57 (2d Cir.1997) ("[A] commercial entity

that, in the ordinary course of its business, acts as a mere conduit for funds and performs that role

consistent with its contractual undertaking in respect of the challenged transaction, is not an

initial transferee within the meaning of § 550(a)(1)"); *Nordberg v. Societe Generale* (*In re Chase*

*& Sanborn Corp.*), 848 F.2d 1196, 1200 (11th Cir. 1988) (affirming bankruptcy court's dismissal

of fraudulent transfer claim where bank was not alleged to have actual control over the allegedly

transferred funds); *Madoff*, 610 B.R. at 238 (holding IRA custodian with no control over funds

was a mere conduit); *Jacobs v. State Bank of Long Island (In re AppOnline.com, Inc.)*, 296 B.R.

602, 623 (Bankr. E.D.N.Y. 2003) (bank that processed banking transactions in the ordinary

course was not a "transferee" under Bankruptcy Code section 550).  This principle applies with

even greater force here, where ULICO ***concedes*** that Morgan Stanley is a conduit.

### B.    The Unjust Enrichment Claim Fails (Count II).

ULICO's unjust enrichment claim fails for similar reasons.  To allege an unjust

enrichment claim, a plaintiff must plead facts showing that "(1) the other party was enriched (2)

at that party's expense, and (3) that it is against equity and good conscience to permit the other

party to retain what is sought to be recovered."  *Mandarin Trading Ltd. v. Wildenstein*, 16

N.Y.3d 173, 182 (N.Y. 2011).[14]  The unjust enrichment claim must be dismissed because (i) ULICO does not allege any of the elements of the claim, (ii) the claim is duplicative of the fraudulent transfer claim, and (iii) the claim is barred under the equitable doctrine of *in pari delicto* and the *Wagoner* rule.

*First*, the unjust enrichment claim is frivolous because ULICO does not allege Morgan Stanley received **any** financial benefit from the alleged transfers; to the contrary, ULICO, at most, alleges Morgan Stanley was a mere conduit of funds.  In other words, Morgan Stanley cannot have been "unjustly" enriched when ULICO does not allege that Morgan Stanley benefitted from the transfers.  *See, e.g.*, *Graham v. Take-Two Interactive Software, Inc.*, 2020 WL 408408, at *2 (S.D.N.Y. Jan. 24, 2020) (dismissing unjust enrichment claim where no "specific and direct benefit" was "conferred upon Defendants"); *Pereira v. Frenkel Benefits, LLC (In re Moyer Grp. Inc.)*, 586 B.R. 401, 410 (Bankr. S.D.N.Y. 2018) (dismissing unjust enrichment claim where no payment was ever made to defendant).  ULICO cannot claim Morgan Stanley was somehow enriched without contradicting ULICO's central theory of the case, i.e., that the Transfers were "really for the purpose of enriching Lindberg and his co-conspirators," at all times "PBLA . . . retained possession or control of the Trust Proceeds that were transferred from the Trust," and Morgan Stanley's only involvement was to act as a "conduit" for transactions that allegedly occurred between PBLA and other defendants.  (Am. Compl. ¶¶ 5, 111, 147.)  All ULICO states to support its unjust enrichment claim is that "Defendants have received a benefit from the transfer of the Trust Proceeds at the Plaintiff's expense," and they

---

[14] ULICO does not specify under what laws it purports to bring its unjust enrichment and constructive trust claims, or enough facts to determine what laws apply.  For the purposes of this Motion to Dismiss only, Morgan Stanley references New York law, but the principles under which the claims are flawed are likely the same under other jurisdictions' laws.

have been "unjustly enriched as a result." (Am. Compl. ¶¶ 151, 154.) In addition to being implausible given ULICO's theory of the case, this is the exact type of conclusory allegation that courts routinely reject. *See, e.g.*, *Trinsum*, 460 B.R. at 396 (dismissing unjust enrichment claim where complaint contained only legal conclusions); *Off. Comm. of Unsec. Cred. of Hydrogen LLC v. Blomen (In re Hydrogen, LLC)*, 431 B.R. 337, 359–60 (Bankr. S.D.N.Y. 2010 (dismissing unjust enrichment claim where complaint only contained "conclusory and general allegations," and lacked facts to support element of claim).[15]

In addition, since unjust enrichment claims generally seek payment due to an obligation running from the defendant to the claimant, "there must exist a relationship or connection between the parties that is not too attenuated." *Graham*, 2020 WL 408408, at *2. Here, ULICO does not allege it or PBLA had any relationship, communications, or dealings with Morgan Stanley such that could have caused reliance or inducement. *See Hellas*, 524 B.R. at 536.

*Second*, the unjust enrichment claim fails for the additional reason that it is duplicative of ULICO's voidable transfer claim. *See Holliday v. K Road Power Mgmt., LLC (In re Boston Generating LLC)*, 617 B.R. 442, 476 (Bankr. S.D.N.Y. 2020) (dismissing unjust enrichment claim where the alleged conduct underlying the fraudulent transfer claims was the basis for the unjust enrichment claim), aff'd 2021 WL 4150523 (S.D.N.Y. Sep. 13, 2021). An unjust enrichment claim is not a catchall cause of action to be used when others fail, but that is exactly how ULICO pleads the claim here. ULICO's sole basis for the claim is that Morgan Stanley was enriched "as a result of the fraudulent transfers." (Am. Compl. ¶ 154.) Since the unjust

---

[15] ULICO also claims that Morgan Stanley received "Trust Proceeds at the Plaintiff's expense," but that allegation would imply that ULICO's claim exists outside of the bankruptcy court's realm so would divest the Court of its jurisdiction (*see* Section I, *supra* at 12–15).

enrichment claim simply repackages ULICO's voidable transfer claim, it cannot survive a motion to dismiss. *Boston Generating*, 617 B.R. at 476.

*Third*, to the extent ULICO purports to bring the unjust enrichment claim on behalf of the JPLs, the claim is barred as a matter of law under the *in pari delicto* doctrine and the *Wagoner* rule. Under the equitable doctrine of *in pari delicto*, a plaintiff who has engaged in misconduct cannot recover against another wrongdoer, because "courts should not help plaintiffs profit from their wrongdoings." *Hellas*, 524 B.R. at 531. Under the *Wagoner* rule, "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991); *see also Hellas*, 524 B.R. at 531 ("[B]ecause a trustee in bankruptcy may assert whatever claims the debtor corporation may have brought prepetition, subject to all available defenses, any wrongdoing imputed to the corporation under a theory of agency also taints the trustee's claims."). Thus, applying *in pari delicto* in the bankruptcy setting, courts have held that a "debtor's misconduct is imputed to the trustee because, innocent as he may be, he acts as the debtor's representative" *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 63 (2d Cir. 2013), and thus, a bankruptcy trustee, and by extension, a foreign representative in a chapter 15 case, cannot bring a claim that would be barred by *in pari delicto*. *Picard v. HSBC Bank PLC*, 454 B.R. 25, 29 (S.D.N.Y. 2011); *see also Hellas*, 524 B.R. at 531. Here, as discussed above, the Amended Complaint is replete with allegations that the alleged harm resulted from PBLA's own participation in Lindberg's fraud by transferring funds to Lindberg's affiliates from the Trust, while Morgan Stanley on the other hand engaged in no wrongful conduct. The *in pari delicto* doctrine therefore bars ULICO's efforts to recover from innocent third parties like Morgan Stanley for PBLA's own misconduct. Thus, even if ULICO

had standing to bring the unjust enrichment claim on behalf of the JPLs, ULICO could not do so

because the JPLs are barred from bringing the claim.

### C.    The Constructive Trust Claim Fails (Count IV).

For similar reasons, ULICO's constructive trust claim must be dismissed.  ULICO does

not allege a single one of the essential elements to support imposing a constructive trust: "(1) a

confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the

subject *res* made in reliance on that promise; and (4) unjust enrichment."  *Superintendent of Ins.*

*v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 212 (2d Cir. 2004).

As established above, no basis exists in the woefully inadequate allegations to conclude

that Morgan Stanley had a fiduciary relationship with ULICO or made a promise to ULICO and

was enriched at ULICO's expense.  Is there even a single allegation in the Amended Complaint

establishing that Morgan Stanley knew that the entity ULICO existed?  Obviously, then, ULICO

does not allege a transfer of a trust *res* by ULICO based on a promise by Morgan Stanley, or that

it can trace the *res* to ULICO's funds.  Presumably (although ULICO does not specify), the

alleged *res* here is the portion of the Trust Proceeds in which ULICO claims to have had a

beneficial interest based on the fact that its reinsurance agreement with PBLA required that a

minimum reserve be maintained in the Trust for ULICO's benefit.  (*See* Am. Compl. ¶ 164.)  But

ULICO does not allege that the portion of the Trust Proceeds in which it allegedly had a

beneficial interest was transferred to Morgan Stanley in connection with any promise made by

Morgan Stanley to ULICO, or that any transfer to Morgan Stanley can be traced to the *res*.  *See*

*In re Dreier LLP*, 544 B.R. 760, 767 (Bankr. S.D.N.Y. 2016) ("[T]he person asserting a

constructive trust must be able to identify the trust res, that is, the claimant of funds held in trust

or in escrow bears the burden of tracing those funds to the specific property at issue.").  Since

ULICO does not allege any of the elements that give rise to a constructive trust, ULICO's

constructive trust claim must be dismissed.

In any event, a constructive trust is a remedy, and "not a basis for a separate cause of

action," and the claim can be dismissed on this basis alone.  *See Bascuñan v. Elsaca*, 2021 WL

3540315, at *7 (S.D.N.Y. Aug. 11, 2021) (dismissing constructive trust claim); *Anwar v.

Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 419 (S.D.N.Y. 2010) (dismissing constructive

trust claim, explaining it is a remedy and may be requested later in the litigation); *see also

Dibbern v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 331 B.R. 93, 101

(S.D.N.Y. 2005) (affirming bankruptcy court's dismissal of constructive trust claim because,

*inter alia*, a constructive trust is a remedy and not an independent claim).  Furthermore, to the

extent either Puerto Rico law or Bermuda law apply to the claim, the claim is ineffective because

it does not appear to exist as a separate cause of action under either.  *See In re Kingate Mgmt.

Ltd. Litig.*, 2016 WL 5339538, at *49 (S.D.N.Y. Sept. 21, 2016), *aff'd*, 746 F. App'x 40 (2d Cir.

2018) ("Under BVI/Bermuda law, there is no separate cause of action for . . . constructive

trust."); 32 L.P.R.A. §§ 3351d, 3352 (specifying that in Puerto Rico, trusts can be created only

through public deed or a last will and testament, and "[e]very trust constituted in Puerto Rico

must be recorded in the Special Trust Registry under penalty of nullity").

## III.   THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE ANY EFFORT TO REPLEAD WOULD BE FUTILE.

If the Court agrees that the Amended Complaint's allegations are insufficient, it should

deny any request for leave to replead against Morgan Stanley.  ULICO has already asserted that

it possesses PBLA bank records, and has also received discovery from Morgan Stanley, and yet

ULICO has failed to plead colorable claims against Morgan Stanley.  And for the reasons stated

above, ULICO would be unable to state any viable claim against Morgan Stanley if given the

opportunity to replead. The claims against Morgan Stanley should therefore be dismissed with prejudice. *See Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) ("There is nothing to suggest that appellants could replead in a fashion which would [state a viable claim].").

## CONCLUSION

For the above reasons, Morgan Stanley respectfully requests that the Court dismiss the Amended Complaint with prejudice.

Dated: December 23, 2021

Respectfully submitted,

*/s/ Peter Friedman*
Peter Friedman (admitted *pro hac vice*)
Nicholas Hendrix (admitted *pro hac vice*)
Lauren M. Wagner
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: pfriedman@omm.com
            nhendrix@omm.com
            lwagner@omm.com

*Attorneys for Defendant Morgan Stanley Senior Funding, Inc.*