**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

In re:

PB LIFE AND ANNUITY CO., LTD., *et al.*,

    Debtors in Foreign Proceedings

Chapter 15

Case No. 20-12791 (LVB)
(Jointly Administered)

---

UNIVERSAL LIFE INSURANCE
COMPANY,
Plaintiff,

v.

GLOBAL GROWTH HOLDINGS, INC., *et al*.
Defendants.

Adv. Proc. No. 21-01169 (LGB)

**UNIVERSAL LIFE INSURANCE COMPANY'S OPPOSITON TO DEFENDANT
ASPIDA FINANCIAL SERVICES, LLC'S MOTION TO DISMISS**

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................... 4

      A.     Aspida Has Failed to Show that It Is Entitled to Dismissal on the Basis of Its Affirmative Defense of Release. ....................................................................... 4

      B.     The Michigan Insurance Code Does Not Provide the Michigan State Court with the Power to Provide a Third Party, Non-Insurer, with a Non-Consensual Release of Claims. ................................................................................................... 5

      C.     The *Rooker-Feldman* Doctrine Has Been Substantially Limited to Apply in Very Narrow Circumstances That Are Not Present Here and is Therefore Inapplicable. ............................................................................................................ 9

      D.     The *Buford* Abstention Doctrine Is Also Inapplicable as This Matter Does Not Concern State Law and Will not Impact Michigan State Insurance Regulation. ............................................................................................................ 12

CONCLUSION ......................................................................................................................... 15

# TABLE OF AUTHORITIES

                                                              **Page(s)**

**Cases**

*Sevigny v. Employers Ins. of Wausau*,
    411 F.3d 24 (1st Cir. 2005) ................................................................................13

*Bristol-Myers Squibb Co. v. Super. Ct.*,
    137 S. Ct. 1773 (2017) ........................................................................................8

*Dir. of Dep't of Ins. & Fin. Servs v. Pavonia Life Ins. Co. of Michigan*,
    No. 354182, 2021 WL 1157286 (Mich. Ct. App. Mar. 25, 2021) ..................1, 2

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005) ..............................................................................9, 10, 11

*In re Frontier Ins. Grp., LLC*,
    517 B.R. 496 (Bankr. S.D.N.Y. 2014) ..........................................................12, 13

*Hoblock v. Albany Cty. Bd. of Elections*,
    422 F.3d 77 (2d Cir. 2005) ..........................................................................10, 11

*McKenna v. Wright*,
    386 F.3d 432 (2d Cir. 2004) ................................................................................5

*Mondrus v. Mut. Ben. Life Ins. Co.*,
    775 F. Supp. 1155 (N.D. Ill. 1991) ....................................................................14

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................................................8

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) ..................................................................................4

*In re Philips Offset Co., Inc.*,
    152 B.R. 836 (Bankr. S.D.N.Y. 1992) ........................................................13, 14

*In re Purdue Pharma L.P.*,
    21 cv 7532 (CM), 2021 WL 5979108 (S.D.N.Y. Dec. 16, 2021) ......................3

*In re Reliance Group Holdings, Inc.*,
    273 B.R. 374 (Bankr. E.D. Pa. 2002) ................................................................13

*In re Residential Cap., LLC*,
    2014 WL 3057111 (Bankr. S.D.N.Y. July 7, 2014) ..........................................10

*Wiederspan v. Republic of Cuba*,
    246 F. Supp. 3d 873 (S.D.N.Y. 2017) ......................................................................... 12

**Statutes**

28 U.S.C. § 1738 ................................................................................................................ 9

11 U.S. Code § 363(f) ................................................................................................ 3, 4, 6

11 U.S. Code § 105 ............................................................................................................ 7

Mich. Comp. Laws Ann. § 500.8101, *et seq.* ................................................................... 6

Mich. Comp. Laws Ann. § 500.8104(3) ........................................................................... 6

Mich. Comp. Laws Ann. § 500.8105(c), (f), and (k) ........................................................ 7

Mich. Comp. Laws Ann. § 500.8112 ................................................................................ 6

Michigan Insurance Code Chapter 81 ........................................................................... 6, 7

**Other Authorities**

Fed. R. Bankr. P. 7012 .................................................................................................. 1, 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 4, 5

**PRELIMINARY STATEMENT**

Plaintiff, Universal Life Insurance Company ("ULICO") submits this response in opposition to Defendant Aspida Financial Services, LLC, formally known as Global Bankers Insurance Group ("Aspida")'s Motion to Dismiss this adversary proceeding under Federal Rule of Civil Procedure 12 and Bankruptcy Rule 7012. Aspida sets forth several arguments for dismissal in its motion that ULICO addressed and responded to in its Omnibus Opposition to Defendants' Motions to Dismiss [ECF No. 111] filed December 6, 2021 ("Omnibus Opposition"). Specifically, ULICO directs the Court to the arguments set forth in its Omnibus Opposition with regards to Aspida's contentions that: (1) ULICO lacks standing to bring this adversary proceeding; (2) the Court lacks subject matter jurisdiction over this adversary proceeding; and (3) that ULICO's Amended Complaint fails to state a claim as a matter of law pursuant to Rule 12(b)(6), particularly with regards to ULICO's fraud claims. The Omnibus Opposition fully responds to these arguments that were also set forth by various other Defendants and ULICO will not reiterate those arguments here in respect of the Court's time and resources.[1]

In addition to the rehashing of the arguments made by the prior moving defendants, Aspida also makes the novel claim that it is immune to suit because of an order from a Michigan trial court. *See* ECF No. 117 at 13. That argument relates to an insurance rehabilitation proceeding for an insurer called Pavonia Life Insurance Company of Michigan ("Pavonia"). *See Dir. of Dep't of Ins. & Fin. Servs v. Pavonia Life Ins. Co. of Michigan*, No. 354182, 2021 WL 1157286, at *2 (Mich. Ct. App. Mar. 25, 2021). On July 9, 2019, the Director of the Michigan Department of Insurance and Financial Services ("DIFS") brought a petition to place Pavonia into rehabilitation. *Id.* The rehabilitation was not occasioned by Pavonia being insolvent.

---

[1] ULICO also refers the Court to the Omnibus Opposition for a relevant Summary of Allegations.

- 1 -

Instead, it was intended to be a vehicle to facilitate the sale of Pavonia to an entity named Aspida Holdco LLC ("Aspida Holdco") to separate it from Greg Lindberg following his indictment on criminal charges. *Id.* The original plan of rehabilitation was approved by the Michigan trial court, but was subsequently reversed by the Michigan Court of Appeals because the trial court exceeded its jurisdiction. *See id.* at *9-*10.

Then the idea changed. Instead of buying Pavonia, Aspida Holdco decided to purchase *only* an entity named Global Bankers Insurance Group, LLC ("GBIG LLC"). GBIG LLC is the named defendant in this case. GBIG LLC is *not* an insurance company. It is an LLC (now named Aspida) that provided certain management services to several of Lindberg's insurance companies, including Pavonia. Just prior to the agreed rehabilitation proceedings, Lindberg transferred the membership interests in GBIG LLC to Pavonia in order to facilitate the original sale proposal, with the idea being that GBIG LLC would provide the necessary management skills to run Pavonia and other insurance companies. *See* Clinton E. Cameron Declaration, Exhibit C.

Aspida Holdco agreed to the purchase of membership interests in GBIG LLC (which it called "ServiceCo") from Pavonia for $5.5 million. *See* ECF No. 117, Exhibit B. The parties filed a motion to approve the sale in the Michigan trial court on June 14, 2021 – *after* the filing of this case. *Id.* That motion was served solely on counsel for Aspdia Holdco and the Lindberg-controlled entity, GBIG Holdings, Inc. ("GBIG Holdings"). *See* Clinton E. Cameron Declaration, Exhibit B. Given the paucity of service of process, there was, not surprisingly, no objection filed to the sale, and the Michigan trial court entered a stipulated order on July 24, 2021. The terms of that order included the following:

> 8. The terms for a sale of ServiceCo to Aspida are set forth in the Interim Settlement Agreement and have been definitively

- 2 -

> memorialized in an LLC Unit Purchase Agreement (the "Sale Agreement"). Under such terms, and subject to the approval of this Court and the Director, the Rehabilitator shall cause Pavonia Life to sell convey, assign, transfer, and deliver to Aspida, and Aspida shall purchase, acquire, and accept from the Rehabilitator, all of Pavonia's right, title and interest in ServiceCo consisting of all of the outstanding membership units of ServiceCo (the "Units"), free and clear of all liens or other encumbrances, and ServiceCo shall resume its operations subject to the applicable "Scheduled Liabilities" as defined in the Plan and previously determined during these rehabilitation proceedings.
>
> \* \* \* \* \* \* \* \*
>
> 16.    The Rehabilitator has further requested that this Order provide for the release and discharge from, and extinguishment of, any pre-rehabilitation and pre-Closing liability or responsibility for ServiceCo, GBIG Holdings, Aspida, and their respective past, present and future parents, owners, members, equity holders, subsidiaries, affiliates, directors, officers, managers, employees, successors, agents or assignees in such capacities (collectively, "Affiliates"), and their representatives in the transaction for any Unscheduled ServiceCo Liabilities; and include injunctions issued in favor of ServiceCo, GBIG Holdings, their Affiliates, and their representatives in the transaction precluding the assertion against them of any claims for Unscheduled ServiceCo Liabilities by any and all "Unscheduled Liabilities Claimants" and "Unscheduled Liabilities Potential Claimants," except for such Permitted Claims as are described or defined in the Plan and in the Court's June 25 Order and are applicable to ServiceCo (the "ServiceCo Permitted Claims").

*See* ECF No. 117 at Exhibit B; *See also* Clinton E. Cameron Declaration, Exhibit A.

The Court will, no doubt, recognize the language of this order as being derived from Section 363(f) of the Bankruptcy Code and the increasingly popular, and hotly contested, ability of Bankruptcy Courts to provide non-consensual third-party releases to non-debtors. *See, e.g.*, *In re Purdue Pharma L.P.*, 21 cv 7532 (CM), 2021 WL 5979108 (S.D.N.Y. Dec. 16, 2021). Those issues are complex and difficult under the Code, given the broad powers conferred on bankruptcy courts under that law. Fortunately, those issues are much simpler and clearer here. The Michigan trial court is *not* operating under a statute that parallels the Code, and there is

nothing in the Michigan Insurance Code that remotely suggests that that court had any power whatsoever: (1) to transfer assets to a buyer in a manner analogous to Section 363(f); (2) to exercise jurisdiction of GBIG LLC at all, since it is not an insurance company; or (3) to provide third-party releases.  Moreover, Aspida Holding's and GBIG LLC's utter failure to provide any notice to ULICO or PBLA clearly amounts to a violation of fundamental principles of due process, which would allow ULICO to collaterally attack the order.

More fundamentally, Aspida's motion is brought under Rule 12(b)(6) based on *an affirmative defense* (presumably on the basis of release or claim preclusion).  It is black letter law that a party may only prevail under Rule 12(b)(6) on the basis of an affirmative defense where all of the facts sufficient to make out the defense are set forth on the face of the complaint itself. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (2d Cir. 1998).  Aspida does not even make that argument here, nor could it.  Finally, all of its arguments on this Court's inability to adjudicate the effect of the Michigan court order based on the *Rooker-Feldman* doctrine and *Burford* abstention are completely inapposite because, among other things, there is not, and has never been, a state court case between ULICO and Aspida.  For these reasons, Aspida's motion must be denied.

## ARGUMENT

### A. Aspida Has Failed to Show that It Is Entitled to Dismissal on the Basis of Its Affirmative Defense of Release.

Aspida's motion is based on Rule 7012 of the Federal Bankruptcy Rules, which incorporates Rule 12 of the Federal Rules of Civil Procedure.  A defendant seeking to avail itself of the remedy of dismissal under Rule 12(b)(6) on the basis of an affirmative defense is limited only to the facts pled on the face of the complaint. *Pani*, 152 F.3d at 74-75 (noting that "an affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6),

without resort to summary judgment procedure, if the defense appears on the face of the complaint"). Importantly, the complaint itself must establish "the circumstances required as a predicate to a finding" that the affirmative defense applies. *McKenna v. Wright,* 386 F.3d 432, 435-436 (2d Cir. 2004) ("Not only must the facts supporting the defense appear on the face of the complaint but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."). In this instance, Aspida cannot plausibly make the argument that the necessary facts **establishing** such affirmative defense are plead on the face of the complaint. Because they are not there. ULICO has plead no such facts nor could it, as ULICO was never served in the Michigan proceeding. Thus, Aspida's motion to dismiss is dead on arrival.

**B.  The Michigan Insurance Code Does Not Provide the Michigan State Court with the Power to Provide a Third Party, Non-Insurer, with a Non-Consensual Release of Claims.**

Aspida's argument that the Michigan Rehabilitation Order bars ULICO's claims against Aspida ignores the fact that the Michigan court does not have subject matter jurisdiction over ULICO as a foreign, non-insurance entity. The relevant statute authorizing rehabilitation proceedings relating to an insurance company states that the proceedings may be applied to:

a. *An insurer* who is transacting, or has transacted, insurance business in this state, and against whom claims arising from that business may exist now or in the future.

b. *An insurer* who purports to transact an insurance business in this state.

c. *An insurer* who has insureds resident in this state.

d. All other persons organized or in the process of organizing *with the intent to transact an insurance business in this state*.

Mich. Comp. Laws Ann. § 500.8102 (West) (emphasis added) (hereinafter "MCL"). Given that ULICO is not an insurer, nor has it ever had any intent to transact insurance business in the state

- 5 -

of Michigan, the Michigan court lacks any jurisdiction to bar ULICO's claims against Aspida. Thus, this court should consider the Rehabilitation to be null and void as applied to ULICO and allow ULICO's claims against Aspida to proceed.

The basis for the Michigan trial court's jurisdiction over Pavonia is Chapter 81 of the Michigan Insurance Code, MCL 500.8101, *et seq.* It provides jurisdiction to the Ingham County, Michigan Circuit Court (where the capital of Michigan is located) with the power to preside over rehabilitations of *insurers*. *See* MCL 500.8112. It does not give that court the power, similar to the Bankruptcy Code, to preside over rehabilitation or insolvency actions involving *non-insurers*, like GBIG LLC. There is nothing in the Michigan Insurance Code that contains a provision anything like Section 363(f) of the Bankruptcy Code, and there is no reason whatsoever to imagine that the Michigan trial court could provide a type of third-party, non-consensual release to a non-insurance company that would even be beyond the powers of a bankruptcy court operating under the Code. Yet, that absurd and Constitutionally moribund result is exactly what Aspida claims occurred here. It is wrong.

The order upon which Aspida is relying for its assertion that it received a broad discharge of pre-sale liabilities asserts that it has jurisdiction to provide such sweeping relief pursuant to MCL 500.8104(3). *See* Clinton E. Cameron Declaration, Exhibit A at ¶19. That section provides as follows:

> (3) The circuit court for Ingham county shall have sole jurisdiction of a delinquency proceeding commenced under this chapter. In addition to other grounds for jurisdiction provided by the law of this state, the circuit court for Ingham county shall also have jurisdiction over a person served pursuant to the applicable provisions of law in an action brought by the receiver of a domestic insurer or an alien insurer domiciled in this state, if any of the following apply:
>
>   (a) The person served is obligated to the insurer as incident to an agency or brokerage arrangement that may exist or has existed

>   between the insurer and the agent or broker, in an action on or incident to the obligation.
>
>   (b) The person served is a reinsurer who has at any time written a policy of reinsurance for an insurer against which a rehabilitation or liquidation order is in effect when the action is commenced, or is an agent or broker of or for the reinsurer, in an action on or incident to the reinsurance contract.
>
>   (c) The person served is or has been an officer, manager, trustee, organizer, promoter, or person in a position of comparable authority or influence on an insurer against which a rehabilitation or liquidation order is in effect when the action is commenced, in an action resulting from such a relationship with the insurer.

There is absolutely nothing about that statute that would purport to give the Michigan trial court the power to make Aspida born again, as hypothesized here, or to exercise any sort of jurisdiction over ULICO. ULICO is plainly not a broker, agent, reinsurer, officer, manager, trustee, or anything of the like of Pavonia. Instead, it simply has a claim against GBIG LLC.

Elsewhere in the order upon which Aspida relies, the Michigan trial court asserts that it has the power to enter an injunction against claims that were supposedly released pursuant to MCL 500.8105(c), (f), and (k). *Id.* at ¶ I. Again, that statute provides no basis for subject matter jurisdiction over ULICO's claims. That statute, similar to Section 105 of the Code, provides the Michigan trial court with the power to issue injunctions to implement actions that are otherwise within its subject matter jurisdiction under Chapter 81 of the Michigan Insurance Code.

The Michigan trial court order is defective not only because it was plainly beyond the subject matter jurisdiction of that court under the Michigan Insurance Code, but also because it purports to bind parties, like ULICO, who did not receive service of the motion or order purporting to extinguish their claims and who are beyond the personal jurisdiction of the Michigan courts. The Certificate of Service for the order upon which Aspida is relying provides

- 7 -

that the parties to the sale thought it appropriate to serve themselves, but no one else. *See* Clinton E. Cameron Declaration, Exhibit B.

It appears that Aspida thought that posting the order on the Michigan DIFS's website about Pavonia, not GBIG LLC, could be used in lieu of actually providing notice to ULICO. *See* Clinton E. Cameron Declaration, Exhibit A at ¶ N. However, that approach to "service" is plainly insufficient under the Supreme Court's precedent in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), and its progeny. No attempt was made to serve ULICO itself; instead, it appears that Aspida was relying on ULICO to search the internet for information on the case.

Moreover, even if that form of "service" was sufficient (which it is not), it could not cure the fact that the Michigan trial court lacked personal jurisdiction over ULICO. ULICO is a Puerto Rican company, with its principal place of business in Puerto Rico. Aspida is a North Carolina limited liability company, and nothing about ULICO's claims against Aspida have anything at all to do with the State of Michigan. Since ULICO is neither incorporated in, nor headquartered in Michigan – and thus not "at home" there – the Michigan courts would only have personal jurisdiction over it, consistent with the Supreme Court's recent case law, under principles of "specific jurisdiction." *See, e.g.*, *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781-82 (2017); *Daimler AG v. Bauman*, 571. U.S. 117, 133-39 (2014). There is no connection between ULICO's claims and Michigan whatsoever, so it follows *a fortiori* that the Michigan trial court would not have had personal jurisdiction over ULICO's claims, even if ULICO had been served. *See, e.g.*, *Bristol-Myers Squibb*, 137 S. Ct. 1781 (in order for there to be specific jurisdiction, at a minimum "there must be an 'affiliation between the forum and the

underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

For these reasons, Aspida's reliance on the Rehabilitation Order to bar ULICO's claims are wholly misguided and if anything, this Court should render the Rehabilitation Order null and void as applied to ULICO.

### C. The *Rooker-Feldman* Doctrine Has Been Substantially Limited to Apply in Very Narrow Circumstances That Are Not Present Here and is Therefore Inapplicable.

Leaving aside Aspida's flawed reliance on an inapplicable Michigan Rehabilitation Order, Aspida claims that this Court is "prevented" from asserting jurisdiction over Aspida in this matter under the *Rooker-Feldman* Doctrine because ULICO's claims against Aspida are allegedly "inextricably intertwined with the state court's underlying judgment," which supposedly bars all claims against Aspida. ECF No. 117 at 13. In so asserting, Aspida cites to outdated case authority and flagrantly ignores more recent precedent from the United States Supreme Court greatly limiting the application of the *Rooker-Feldman* Doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). The Exxon Mobil court, in analyzing the application of the *Rooker-Feldman* Doctrine, noted that "the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Id*. at 283.  Due to concerns that the doctrine had been too broadly applied, the Exxon Mobil court held as follows:

> The *Rooker–Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: *cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and*

> *rejection of those judgments*. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Id*. (emphasis added). The *Exxon Mobil* court also emphasized that "[w]hen there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id*. at 292. This holding has subsequently been applied in the Second Circuit to curtail overuse of the *Rooker-Feldman* Doctrine to limit federal court jurisdiction. *See Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005). Applying the rationale set forth in *Exxon Mobil*, the *Hoblock* court articulated four factors that must be met before the *Rooker-Feldman* doctrine is applied:

> From this holding, we can see that there are four requirements for the application of *Rooker–Feldman*. First, the federal-court plaintiff <u>must have lost in state court</u>. Second, <u>the plaintiff must complain of injuries caused by a state-court judgment</u>. Third, <u>the plaintiff must invite district court review and rejection of that judgment</u>." Fourth, the state-court judgment must have been rendered before the district court proceedings commenced— i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Id*. at 85 (internal quotations omitted) (emphasis added). These very factors have been applied by this Court to render the *Rooker-Feldman* Doctrine inapplicable in an adversary proceeding. *See In re Residential Cap., LLC*, 2014 WL 3057111, at *11 (Bankr. S.D.N.Y. July 7, 2014) ("[t]he Court finds that *Rooker–Feldman* does not bar Wilson's UDTPA cause of action because she is not complaining of injury caused by the Foreclosure Action, but is instead complaining of the very conduct that led to the Foreclosure Order. The Court has jurisdiction to rule on that claim against [defendant].")

Aspida does not cite to or reference *Exxon Mobil*, *Hoblock*, or any of its progeny, likely because application of this precedent requires a finding that the *Rooker-Feldman* Doctrine does not apply to bar ULICO's claim. In applying the four *Hoblock* factors, it is glaring that the significant roadblock for application of the doctrine *is that ULICO was and is not a party to the Michigan Rehabilitation Action*. While Aspida dismisses this detail as "nominal," (ECF No. 117 at 14), it in fact precludes application of the doctrine all together because, as a non-party to the Michigan Rehabilitation Action, ULICO could not have (1) lost in state court and (2) could not be complaining of injuries caused by the state court judgment.

Even if it were a party to the Michigan State Court action, ULICO is certainly not complaining of any injuries caused by a judgment in that matter and in fact does not even mention the matter in its Amended Complaint. Like preclusion asserted via *res judicata*, it is imperative under *Rooker-Feldman* that the two actions in question involved the same parties. And just as *res judicata* could not apply to limit this Court's jurisdiction based on the Michigan Rehabilitation Order, nor does the *Rooker-Feldman* Doctrine.

Additionally, whether or not this matter is "inextricably intertwined" with the state court matter is no longer even part of the relevant legal inquiry – although if it were it would be clear that the matters do not even share common parties or causes of action and therefore are actually quite unrelated. While the Michigan Rehabilitation Action concerns the rehabilitation of Pavonia – and allegedly involves Global Bankers Insurance Group as a former asset of Pavonia – ULICO's allegations in this adversary proceeding involve fraudulent transfers in and out of the ULICO Trust. This is a completely separate legal matter proceeding in federal bankruptcy court, and the *Rooker-Feldman* doctrine does not apply to force this Court to succumb to an unrelated order in Michigan state court.

As explained above, this Court is not precluded from determining the effect of the Michigan trial court order on these proceedings under the *Rooker-Feldman* doctrine. Instead, this Court has the absolute power and responsibility to review whether the Michigan trial court had subject matter jurisdiction and personal jurisdiction in that proceeding because ULICO did not appear as a party in that case. Cases in this Circuit readily uphold the proposition that ULICO has the right to contest the subject matter and personal jurisdiction of the Michigan Order in this Court. *See e.g., Wiederspan v. Republic of Cuba*, 246 F. Supp. 3d 873, 877 (S.D.N.Y. 2017) (noting that "[a] defendant is always free to ignore judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding") *citing Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 706 (1982). Here, of course, ULICO was never granted the opportunity to consider "ignoring the judicial proceedings" in Michigan, as it was never served. The preceding sections of this brief show how the Michigan order is infirm on all of those grounds. Accordingly, Aspida's motion should be denied.

      **D.**    **The *Buford* Abstention Doctrine Is Also Inapplicable as This Matter Does Not Concern State Law and Will Not Impact Michigan State Insurance Regulation.**

Like its arguments under the *Rooker-Feldman* doctrine, Aspida similarly misapplies the *Burford* Abstention Doctrine, which provides that a federal court should abstain from exercising jurisdiction where such jurisdiction would disrupt a state purpose in establishing a coherent public policy on a matter involving a substantial concern to the public. *In re Frontier Ins. Grp., LLC,* 517 B.R. 496, 507 (Bankr. S.D.N.Y. 2014). Generally, a court should consider three factors to determine if application of the doctrine is appropriate: (1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable

construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Id.*

However, application of the *Burford* Abstention Doctrine is not appropriate simply because a federal matter in some way implicates a state matter involving an insurer's rehabilitation proceeding. *See, e.g.*, *In re Reliance Group Holdings, Inc.,* 273 B.R. 374, 402 (Bankr. E.D. Pa. 2002) ("While the outcome of this matter may affect the amount of assets in the [insurer's] liquidation proceeding [and in the Debtor's bankruptcy cases], it will not directly impact the state's regulation of insurers or the state's ability to establish rules for the orderly rehabilitation or liquidation of insolvent insurers"); *Sevigny v. Employers Ins. of Wausau,* 411 F.3d 24, 29 (1st Cir. 2005) (in the context of *Burford* abstention, if financial impact on an insurance liquidation proceeding were a sufficient basis for abstention, a state insurance commissioner "could invoke *Burford* in every federal suit between himself as liquidator and any third party who had a still-unsettled tort or contract dispute with the now-insolvent insurer, regardless of its actual disruptive effect upon the liquidation").  Instead, "abstention will be appropriate if federal jurisdiction deals primarily with state law issues and will disrupt a state's efforts "to establish a coherent policy with respect to a matter of substantial public concern." *In re Philips Offset Co., Inc.*, 152 B.R. 836, 838 (Bankr. S.D.N.Y. 1992).

Here, the mere fact that the Michigan Rehabilitation Proceeding may be in some way be implicated by virtue of the function of the Rehabilitation Order does not satisfy the factors for applicable of the *Burford* Abstention doctrine.  This matter in no way involves the regulation or interpretation of the Michigan insurance industry, it in fact involves fraudulent transfers and other wrongdoings relating to a trust account for which ULICO is the beneficiary.  None of the causes of action plead by ULICO reference Michigan insurance law whatsoever.  In fact, the

very case authority relied upon by Aspida in its Motion illustrates the vast contextual difference between this action and those where the *Burford* Abstention Doctrine is traditionally applied. *Mondrus*, for example, involved an action brought *by an insured against its insurer* for failure to pay benefits, despite the fact that the insurer was involved in liquidation proceedings. *Mondrus v. Mut. Ben. Life Ins. Co.*, 775 F. Supp. 1155, 1158 (N.D. Ill. 1991) (emphasis added). Thus, the court found that:

> In this circumstance, an exercise of federal court jurisdiction would be highly destructive of the state's regulatory scheme. The purpose of rehabilitation is the preservation of the company and the removal of the causes of insolvency. Requiring [an insurer] in rehabilitation, to dissipate its funds to defend unconnected suits across the country would seriously thwart New Jersey's regulatory purpose.

*Id.* at 1158 (internal quotation omitted). Similarly, *In re Philips Offset Co.* involved an action directly against an insurer that was in the midst of liquidation seeking to dispose of that insurer's assets. *In re Philips Offset Co., Inc.*, 152 B.R. at 836. The case at hand is not a declaratory action directly against an insurer in rehabilitation – it is a complex, multi-defendant adversary proceeding in which one Defendant, GBIG LLC (now known as Aspida), also happens to be tangentially involved in the rehabilitation proceeding for a non-party insurer, Pavonia. This proceeding also does not seek disposition of any of Pavonia's assets, but instead seeks to undo and recover from fraudulent transactions that Aspida seemingly had a role in.

Thus, even a brief analysis of the *Buford* Abstention Doctrine factors illustrates how inapplicable the doctrine is to the case at hand. The case in no way seeks a judgment that would interfere with the state of Michigan's insurance regulatory scheme and in fact does not involve insurance whatsoever. Nor does the Amended Complaint invite construction of any Michigan insurance statute or contain causes of action that would traditionally be addressed in a state court. In the event that Aspida feels that any action taken by ULICO is in violation of the Michigan

Rehabilitation Order, such grievances can be addressed in the Michigan forum – they do not require dismissal of this action. Aspida has simply failed to articulate how the existence of the Pavonia rehabilitation proceeding in any way limits this Court's jurisdiction as against Aspida, and for that reason Aspida's Motion should be dismissed.

## CONCLUSION

For the reasons set forth above, ULICO respectfully requests that Defendant Aspida Financial Services, LLC's Motion to Dismiss is denied in its entirety.

Dated: January 12, 2022

Respectfully submitted,

**UNIVERSAL LIFE INSURANCE COMPANY**

/s/ Clinton E. Cameron
Clinton E. Cameron, *pro hac vice*
Meghan C. Dalton, *pro hac vice*
Courtney D. Logli, *pro hac vice*
CLYDE & CO US LLP
55 West Monroe Street, Suite 3000 Chicago, Illinois 60603-5757
Telephone: 312.635.7000
Facsimile: 312.635.6950
Clinton.Cameron@clydeco.us
Meghan.Dalton@clydeco.us
Courtney.Logli@clydeco.us

Christopher Carlson
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue, 16th Floor
New York, NY 10174
Telephone: 212.710.3900
Christopher.Carlsen@clydeco.us

*Counsel for Plaintiff Universal Life Insurance Company*