# EXHIBIT C

STATE OF MICHIGAN
DEPARTMENT OF ATTORNEY GENERAL



P.O. Box 30736
LANSING, MICHIGAN 48909

**DANA NESSEL**
ATTORNEY GENERAL

June 24, 2021

*Via Hand Delivery*

Clerk of the Court
Ingham County Circuit Court
Veterans Memorial Courthouse
313 W. Kalamazoo St.
Lansing, MI 48901

> **Re:** *Anita G. Fox, Director of the Michigan Department of Insurance
> and Financial Services v Pavonia Life Ins. Co. of Michigan
> Case No. 19-504-CR; Honorable Wanda M. Stokes*

Dear Clerk of the Court:

Enclosed for filing with the Ingham County Circuit Court is the **Deputy
Rehabilitator's Second Report and Accounting dated June, 2021** relative to
the above-captioned rehabilitation of Pavonia Life Insurance Company of Michigan
("Pavonia Life").

The report and attached exhibits were prepared by James Gerber, Special
Deputy Rehabilitator of Pavonia Life, and his staff. Mr. Gerber has given his
approval and authorization for filing the report. I enclose one original, signed by
Mr. Gerber on January 23, 2021, together with all exhibits. I also enclose one
complete Judge's copy of the report and all exhibits for Judge Stokes.

If you or Judge Stokes have any questions regarding this filing, please do not
hesitate to contact me directly.

Sincerely,

Christopher L. Kerr (P57131)
Assistant Attorney General
Corporate Oversight Division
(517) 335-7632

Enc
cc:   James Gerber, Special Deputy Rehabilitator (via e-mail only)

STATE OF MICHIGAN
CIRCUIT COURT FOR THE 30TH JUDICIAL CIRCUIT
INGHAM COUNTY

ANITA G. FOX, DIRECTOR OF THE
MICHIGAN DEPARTMENT OF INSURANCE
AND FINANCIAL SERVICES,

      Petitioner,

File No. 19-504-CR

v

Hon. Wanda M. Stokes

PAVONIA LIFE INSURANCE
COMPANY OF MICHIGAN,

**[IN REHABILITATION]**

      Respondent.

_____/

## DEPUTY REHABILITATOR'S SECOND REPORT AND ACCOUNTING
### June, 2021

Pursuant to this Court's July 9, 2019 Stipulated Order Placing Pavonia Life Insurance Company of Michigan into Rehabilitation and the provisions set forth therein (the "Rehabilitation Order"), the Deputy Rehabilitator hereby respectfully submits his second report and accounting to the Court regarding the rehabilitation of Pavonia Life Insurance Company of Michigan ("Pavonia Life") and its wholly-owned subsidiary, Global Bankers Insurance Group, LLC ("Service Company").

### SUMMARY

This report covers significant developments for the period of January 1, 2020 through March 31, 2021.

The main developments covered in this report are as follows:

- Received a release from the Department of Justice ("DOJ") on June 30, 2020 regarding their proof of claim filed on September 18, 2019. The release does not cover any potential claims from the Internal Revenue Service ("IRS").

- The proposed acquisition of Pavonia Life by Aspida Holdco LLC through the Department of Insurance and Financial Services ("DIFS") Form A

process was approved by an order of the Director of DIFS on March 12, 2020.

- Due to COVID-19 concerns, the physical facilities in Durham, North Carolina were closed on March 13, 2020, except for essential personnel necessary to maintain security, the building, and certain operational and financial functions. The overwhelming majority of employees of the Service Company are working remotely through at least the end of June 2021.

- Pavonia Life's Basking Ridge, New Jersey facility, which was leased from an outside party, was eligible for renewal on August 31, 2020. The decision was made to not renew the lease and close this office. All employees formerly working in the Basking Ridge, New Jersey office have transitioned to remote work.

- The Plan of Rehabilitation that was filed on August 8, 2019 received the Court's final approval on June 25, 2020.

- Settled one pending lawsuit with proof of claim exposure of $181,473 for the aggregate amount of $9,500.

- Reduced operating costs of Pavonia Life by, among other things, renegotiating a new legal representation engagement letter with Davis Polk that has already resulted in savings of $120,000 and seeking reimbursement of other legal costs from Pavonia Life affiliates.

- Completed the process of taking physical inventory of all the Service Company's equipment, computers, and furniture.

- On March 5, 2020, Greg Lindberg was convicted by a jury in the United States District Court for the Western District of North Carolina (the "North Carolina Court") for one count of Conspiracy to Commit Honest Services Wire Fraud pursuant to 18 U.S.C. § 1349 and one count of Bribery Concerning Programs Receiving Federal Funds and Aiding and Abetting pursuant to 18 U.S.C. §§ 666(a) and 2. In addition, John Gray, a co-defendant, was found guilty on these two charges. On August 20, 2020, the North Carolina Court sentenced Greg Lindberg to a sentence of seven years and three months for the two charges with the sentences running concurrently. Mr. Gray was sentenced to two years and six months.

- Began the process of obtaining third-party administrator ("TPA") licenses for the Service Company in various states where such a license is required and was not already in place. This has resulted in the Service Company becoming licensed as a TPA in 10 additional states so far.

2

- Addressed other license and regulatory compliance issues of Pavonia Life with certain other state jurisdictions.

This report is divided into several sections. Those sections are as follows: Background, Insurance Products, Legal, Administrative, and Financial.

## BACKGROUND

Pavonia Life was incorporated on December 18, 1980 as Hamilton National Life Insurance Company and received its Michigan certificate of authority on January 1, 1996. Pavonia Life adopted its current name on August 28, 2013. Pavonia Life is licensed to transact life and disability insurance. Pavonia Life's business includes but is not limited to term and whole life insurance policies, corporate-owned life insurance policies, credit life and disability policies, and periodic payment annuities. A majority of Pavonia Life's business consists of assumed reinsurance from other life insurance carriers. As of January 1, 2012, Pavonia Life ceased writing any new insurance business, but does collect renewal insurance premiums and is currently in run-off. Prior to the rehabilitation, in addition to Michigan, Pavonia Life was licensed in 48 states, the District of Columbia, and Canada.

For the year ended December 31, 2020, Pavonia Life received $17.2 million in direct life insurance renewal premiums and $1.7 million in direct accident and health premiums. Pavonia Life also reported $16.6 million in assumed life insurance premiums and $0.2 million in assumed accident and health premiums as of December 31, 2020. The largest direct written premium amounts as of December 31, 2020 were Canada at $4.2 million, California at $1.7 million, Texas at $1.5 million, and Florida at $1.1 million. As of December 31, 2020, Pavonia Life had 49,922 total direct written insurance policies and 350,078 total assumed policies and annuities in force.

Pavonia Life is "Not Rated" by A.M. Best and has a "D" or "Weak" rating by Weiss Ratings.

### _Holding Company Structure_

Pavonia Life was sold by an affiliate of Enstar Holdings (US) Inc. ("Enstar") to GBIG Holdings, Inc. ("GBIG Holdings") on December 29, 2017. GBIG Holdings is affiliated with the Global Growth group of companies (formerly known as Eli Global, hereafter "Global Growth"). Global Growth is a conglomeration of portfolio companies that are ultimately owned and controlled by Greg Lindberg. Global Growth acquires and invests in various sectors including insurance and financial services, healthcare technology, media, market intelligence, certification, and associated businesses. As a result of the acquisition of Pavonia Life by GBIG Holdings, Pavonia Life became an affiliate of four North Carolina regulated and domiciled insurance companies: Colorado Bankers Life Insurance Company, Southland National Insurance Corporation, Bankers Life Insurance Company, and Southland National Reinsurance Corporation (collectively, the "North Carolina Insurance

Companies"). All the North Carolina Insurance Companies are currently in court-supervised rehabilitation in North Carolina. Shortly before Pavonia Life was placed into rehabilitation, another affiliate, Service Company, became a subsidiary of Pavonia Life. Service Company provides executive management, regulatory oversight, and administrative services to Pavonia Life and the North Carolina Insurance Companies through a cost sharing agreement. Service Company also provided limited services to other Global Growth affiliated companies prior to the rehabilitation of Pavonia Life and the four North Carolina Insurance Companies. All systems, furniture, and equipment used by Pavonia Life and the North Carolina Insurance Companies are property of the Service Company, except for certain property owned directly by either Pavonia Life or the North Carolina Insurance Companies.

On June 27, 2019, the North Carolina Commissioner of Insurance (the "North Carolina Commissioner") placed the North Carolina Insurance Companies into court-ordered rehabilitation. Greg Lindberg and the board of directors of the North Carolina Insurance Companies consented to the rehabilitation. The North Carolina Commissioner took this action related to the four North Carolina Insurance Companies because of their investment activity in non-insurance affiliates that made it unclear whether the North Carolina Insurance Companies had sufficient liquidity to meet their financial obligations. On March 12, 2021, the North Carolina Commissioner filed a petition to place Southland National Insurance Corporation, one of the North Carolina Insurance Companies, into liquidation.

Prior to the North Carolina Insurance Companies being placed into rehabilitation, Greg Lindberg, his consultant John Gray, and two other individuals were indicted on March 18, 2019 by a grand jury in the North Carolina Court and charged with one count of Conspiracy to Commit Honest Services Wire Fraud pursuant to 18 U.S.C. § 1349 and one count of Bribery Concerning Programs Receiving Federal Funds and Aiding and Abetting pursuant to 18 U.S.C. §§ 666(a) and 2.  Subsequently, on March 5, 2020, Greg Lindberg was convicted by a jury in the North Carolina Court on both counts. John Gray, a co-defendant, also was found guilty on both counts. On August 20, 2020, the North Carolina Court sentenced Greg Lindberg to a sentence of seven years and three months for the two charges with the sentences to run concurrently. Mr. Gray was sentenced to two years and six months.

As a result of the criminal charges against Mr. Lindberg and the North Carolina Insurance Companies being placed into rehabilitation, and as contemplated by the proposed acquisition described below, the Director of the Michigan Department of Insurance and Financial Services ("DIFS") placed Pavonia Life into rehabilitation on July 9, 2019. Mr. Lindberg and the board of directors of Pavonia Life consented to the rehabilitation.

### *Proposed Acquisition*

Prior to Pavonia Life being placed into rehabilitation, there were discussions regarding the sale of Pavonia Life between GBIG Holdings and Aspida Holdco LLC ("Aspida Holdco"), which is an affiliate of Ares Management Corporation ("Ares"), a publicly traded company. Ares operates as an alternative asset manager in the United States, Europe, and

4

Asia. GBIG Holdings and Aspida Holdco executed a Stock Purchase Agreement ("SPA")
on July 9, 2019 governing GBIG Holdings' sale of Pavonia Life to Aspida Holdco. As part
of the SPA, the parties agreed that Pavonia Life's sale would be conducted through a court-
ordered rehabilitation and subject to Form A acquisition regulatory review and approval
by DIFS. The SPA has been incorporated into Pavonia Life's Plan of Rehabilitation (the
"Plan") that the Rehabilitator submitted to the Court on August 8, 2019. The Form A was
filed with DIFS on July 24, 2019. On March 12, 2020, the Director issued Order No. 2020-
08-M approving the acquisition. The Court approved the Plan on June 25, 2020 and ordered
the parties to the SPA to begin the closing process. A number of disputes between GBIG
Holdings, as Seller, and Aspida Holdco, as Buyer, arose during the closing process and are
the subject of various legal proceedings that are described in more detail in the "Legal"
section of this report.

## INSURANCE PRODUCTS

Pavonia Life ceased writing new business in 2012. The company has two major business
segments: direct written business and reinsurance assumed business. The following
description of the direct business provides an overview of both the U.S. and Canadian
blocks of business.

The direct business consists of direct life and credit life and disability. The direct life
business consists mainly of term life policies. As of December 31, 2020, there were 17,411
direct life policies, which made up approximately 11% of the company's total December
31, 2020 in-force business. As of December 31, 2020, the credit life and disability line of
business consisted of 36,071 policies, which comprised less than 1% of the company's total
December 31, 2020 in-force business. Most of the credit life and disability business is on
a monthly premium paying basis.

The reinsurance assumed business consists of assumed life, corporate-owned life insurance
("COLI"), accidental death and dismemberment ("AD&D"), and structured payout
annuities.

The assumed life block has approximately six reinsurers. Most of this business is term life
insurance, although there are smaller blocks of ordinary life insurance. Pavonia Life had
59,847 assumed life policies as of December 31, 2020, which made up 9% of the
company's total December 31, 2020 in-force business.

The assumed COLI business is assumed from Lincoln National Life ("Lincoln"). All the
plans were issued between 1994 and 1998 and have a guaranteed minimum rate of 4%.
Pavonia Life had 7,722 assumed COLI policies as of December 31, 2020, which comprised
7% of the company's total December 31, 2020 in-force business.

The assumed AD&D business is assumed from Lincoln and Old Republic Life. There were
277,415 assumed AD&D policies as of December 31, 2020, which made up 1% of the
company's total in-force business as of December 31, 2020.

Pavonia Life's largest assumed block of business is the structured settlement, lottery, and immediate period payment annuities assumed from Lincoln. Pavonia Life had 1,441 assumed annuity contracts as of December 31, 2020, which represented roughly 72% of the company's total December 31, 2020 in-force business.

## LEGAL

Pavonia Life's legal services are primarily handled by the Service Company's legal department. The Service Company's legal department works in three main areas, which include litigation, compliance, and when applicable, policyholder communications.

### Litigation Activities

The July 9, 2019 Rehabilitation Order enjoined all parties with outstanding litigation against Pavonia Life and Service Company from continuing to pursue any legal actions against Pavonia Life and Service Company. The Rehabilitation Order further enjoined the commencement of any new legal actions against Pavonia Life and Service Company. Service Company's internal legal counsel was instructed to work with Pavonia Life's external attorneys to obtain stays or dismissals where appropriate. At the time the Rehabilitation Order was entered, there were several open litigation cases against Pavonia Life and/or Service Company. The following is a brief status on each of the cases handled since the entry of the Rehabilitation Order, both outstanding and newly filed (the state where the action is filed is in parentheses after the case caption):

### Mathis v. Pavonia Life/Service Co (MO)

The plaintiff alleged that Pavonia Life/Service Company breached the terms of a life insurance policy and acted negligently in processing the premiums or providing notice of missed payment resulting in the lapse of the life insurance policy. The plaintiff is representing himself pro se and indicated he was seeking a return of premium paid totaling $4,473.15. In July 2017, Pavonia Life tendered a check to plaintiff for $4,437.15. However, the plaintiff apparently lost the check and discussions are ongoing regarding a release and reissuing the check.

### Mann v. Pavonia Life/Household Finance Corporation (FL)

The plaintiff wife and her deceased husband purchased a home and borrowed the funds for the purchase from Household Finance Corporation. They were offered optional credit life insurance, which they purchased. Plaintiff's husband died and death benefits to pay off the remaining balance of the home loan were denied. Plaintiff claimed that the named insured under the policy should have been both her and her husband, instead of only her. Consequently, plaintiff alleged misrepresentation during the policy application process and sued for benefits equal to the remaining balance of the home mortgage, together with other damages. On September 10, 2019, the plaintiff filed a proof of claim with the estate. The parties agreed to settle this matter and executed a settlement agreement. The Court approved the settlement on March 16, 2020.

6

### *Gendaszek v. Pavonia Life (NJ)*

The plaintiff wife and her deceased husband purchased a home and optional credit life and disability coverage. The plaintiff alleged wrongful denial of death benefits under the credit life and disability policy, together with other damages. A default judgment was entered against Pavonia Life on June 7, 2019, prior to the rehabilitation. The parties agreed to settle the case and executed a settlement agreement. The Court approved the settlement on December 19, 2019.

### *U.S. Bank Trust, N.A. v. Plymales v. Pavonia Life (OH)*

The plaintiff brought this action for past due mortgage payments against the defendant Plymales. Pavonia Life was joined in the matter as a third-party defendant for unpaid benefits under a credit disability policy. A default judgment was entered against Pavonia Life and in favor of the Plymales on November 2, 2018, prior to the rehabilitation. The parties agreed to settle the case and executed a settlement agreement. The Court approved the settlement on December 19, 2019.

### *Charles Schwab & Co., et al. v. Pavonia Life, et al. (CA)*

The plaintiffs in this matter seek to recover death benefits, accrued interest, and other damages related to two COLI policies reinsured by Pavonia Life from Lincoln. There are several co-defendants including Enstar, as the former owner of Pavonia Life, Andesa Services, which administered the Schwab policies on behalf of Pavonia Life, and Lincoln. The parties continue to discuss potential settlement of this matter.

### *Cox et al v. Pavonia Life (NC)*

This is a claim for injunctive relief regarding the change of a policy beneficiary, which Pavonia Life asserts is due to the incompetence of the policy owner. The benefit amount has been interpled to the court and Pavonia Life has no additional involvement in the proceedings of the case.

### *In the Marriage of Lager, et al. (CA)*

This involves a Colorado Bankers Life Insurance Company annuity and the disposition of that annuity in a family matter. The Service Company is a named party and has secured a stay of further proceedings against it pursuant to the Rehabilitation Order.

### *Thorpe v. Castle Cook, et al. (UT)*

The Service Company is a named defendant. We are working with plaintiff's counsel to have Service Company dismissed from the case in compliance with the Rehabilitation Order.

### United States Proof of Claim

On September 18, 2019, the United States Government, through the Department of Justice ("DOJ"), filed a proof of claim in an unknown amount with the Pavonia Life rehabilitation estate. An attachment to the filed proof of claim indicated that any claim of the federal government would be entitled to first priority treatment pursuant to federal law. Pavonia Life submitted a request for release from Federal Priority Statute liability on November 18, 2019, along with the requested materials supporting the release request. The Deputy Rehabilitator received confirmation of receipt of Pavonia Life's release request from the assigned DOJ attorney on November 22, 2019. The DOJ granted Pavonia Life and the Service Company a release on June 30, 2020. The release does not include any potential liabilities with the IRS. The release resolves the DOJ proof of claim and this matter is now closed.

### Securities Exchange Commission ("SEC")

On August 6, 2019, the SEC issued various subpoenas to the North Carolina Insurance Companies in conjunction with an investment management agreement between the companies and Standard Advisory Services Limited, a Global Growth affiliated company. At or around the same timeframe, the SEC made several written inquiries related to Pavonia Life. The Deputy Rehabilitator and Michigan Attorney General's Office voluntarily responded to these written inquiries. As of the date of this second annual report, the SEC has not issued any additional written inquiries and/or subpoenaed Pavonia Life or the Service Company for additional information and/or documents.

### Department of Justice Investigation

Once Pavonia Life was placed into rehabilitation on July 9, 2019, the Deputy Rehabilitators became aware that Pavonia Life was expending significant funds related to the DOJ investigation of Mr. Lindberg, Mr. Gray, and others along with numerous inquiries into affiliated investments related to the North Carolina Insurance Companies in rehabilitation. Pavonia Life was being allocated between 29-32% of these expenses through the group cost sharing agreement with the Service Company, which governs the cost allocation among Service Company, Pavonia Life, and the North Carolina Insurance Companies.

In August 2018, the North Carolina Insurance Companies became aware of an investigation by the U.S. Attorney's Office for the Western District of North Carolina ("USAO") related to matters which are the subject of two grand jury subpoenas issued: *(i)* to the custodians of records for Eli Global, LLC (now known as Global Growth) and the Service Company by an Assistant United States Attorney for the Western District of North Carolina on August 20, 2018; and *(ii)* to the custodians of records for the Service Company by an Assistant United States Attorney for the Western District of North Carolina on November 6, 2018. The USAO subpoenaed information from the North Carolina Insurance Companies, the Service Company, and Pavonia Life, and all these entities continue to

8

cooperate with the USAO. As discussed above, in March 2019 the USAO investigation resulted in a grand jury indictment of Mr. Lindberg and three other individuals, including John Gray, a former director for several of the North Carolina Insurance Companies. Subsequently, on March 5, 2020 Greg Lindberg was convicted by a jury in the North Carolina Court for one count of Conspiracy to Commit Honest Services Wire Fraud pursuant to 18 U.S.C. § 1349 and one count of Bribery Concerning Programs Receiving Federal Funds and Aiding and Abetting pursuant to 18 U.S.C. §§ 666(a) and 2. In addition, John Gray, a co-defendant, was found guilty on both of these counts. On August 20, 2020, the North Carolina Court sentenced Greg Lindberg to a sentence of seven years and three months for the two corruption charges with the sentences to run concurrently. Mr. Gray was sentenced to two years and six months. As far as we are aware, the USAO is continuing its investigation and more indictments could follow.

Prior to his indictment, Mr. Lindberg was an officer and director of Pavonia Life and the manager of Service Company. Mr. Gray was neither an officer nor director of Pavonia Life or Service Company. The Deputy Rehabilitators reviewed Pavonia Life's bylaws and articles of incorporation. Pavonia Life's bylaws and articles of incorporation do not contain any officer and/or director indemnification or advancement provisions. In addition, the Deputy Rehabilitators discovered that Pavonia Life's directors and officers ("D&O") liability insurance carrier had refused to cover Mr. Lindberg and Mr. Gray following their March 18, 2019 indictments due to exclusions within the underlying policy.

Pavonia Life and the North Carolina Insurance Companies advanced $2,385,529 in legal fees to Mr. Lindberg prior to his indictment, which was all reimbursed by the D&O carrier. Following the indictment, Pavonia Life and the North Carolina Insurance Companies advanced an additional $4,000,000 retainer to Mr. Lindberg's criminal defense counsel, Cadwalader, Wickersham and Taft LLP ("Cadwalader"), on June 26, 2019. Cadwalader represented Mr. Lindberg in the DOJ criminal proceeding. The engagement agreement provided that any excess retainer would be paid back to Pavonia Life and the North Carolina Insurance Companies. Following Pavonia Life being placed into rehabilitation, the Deputy Rehabilitator requested Cadwalader to provide an accounting of the unused retainer balance and demanded repayment of these funds to Pavonia Life. The Deputy Rehabilitator also declined to fund any future defense costs for Mr. Lindberg. Cadwalader informed the Deputy Rehabilitator that approximately $2,924,000 of the retainer remained unused. Once Mr. Lindberg hired new legal counsel, Cadwalader returned these remaining retainer funds to Pavonia Life, the Service Company, and the North Carolina Insurance Companies on September 23, 2019. Pavonia Life recovered $882,880 as its share of the $2,924,000. Pavonia Life elected not to pursue Cadwalader for the net $1,185,898 that Pavonia Life had already paid the firm, both prior to and as part of the expended $4,000,000 retainer. Because the North Carolina Insurance Companies had previously agreed to indemnify and/or advance these funds to Mr. Lindberg, Pavonia Life similarly elected not to seek recovery of this $1,185,898 from Mr. Lindberg at this time. However, the Deputy Rehabilitator has requested that the four North Carolina Insurance Companies reimburse Pavonia Life the $1,185,898. To date, the North Carolina Insurance Companies have not reimbursed Pavonia Life this amount.

9

Pavonia Life and the North Carolina Insurance Companies advanced legal fees to Mr. Gray in the amount of $238,970.72 prior to his indictment, which was all reimbursed by the D&O carrier. Following the indictment, Pavonia Life and the North Carolina Insurance Companies advanced an additional $2,500,000 retainer, exclusive of associated costs, to Winston & Strawn LLP ("Winston & Strawn") as Mr. Gray's defense counsel in the DOJ criminal proceeding. The amount of legal fees advanced to Mr. Gray exclusive of costs was capped at $2,500,000, and this retainer was fully expended so the Deputy Rehabilitator could not demand its return from Winston & Strawn. Pavonia Life's share of Mr. Gray's total defense costs through June 2019, i.e., both prior to and as part of the $2,500,000 retainer, was $773,905. As previously stated, Mr. Gray was never an officer and/or director of Pavonia Life or Service Company. Moreover, Pavonia Life's bylaws and articles of incorporation do not contain any officer and/or director indemnification or advancement provisions. Because the North Carolina Insurance Companies had previously agreed to indemnify and/or advance these funds to Mr. Gray, Pavonia Life has elected not to seek recovery of this $773,905 from Mr. Gray at this time. However, the Deputy Rehabilitator has requested that the four North Carolina Insurance Companies reimburse Pavonia Life the $773,905. To date, the North Carolina Insurance Companies have not reimbursed Pavonia Life this amount.

The Deputy Rehabilitator received a demand for indemnification and advancement of Mr. Lindberg's criminal defense costs in the amount of $500,000 from Mr. Lindberg's current defense counsel, Katten Muchin Rosenman LLP. The demand was addressed to the Service Company. On January 9, 2020, the Deputy Rehabilitator sent a written response denying the demand for reasons including, but not limited to: (1) Pavonia Life's articles of incorporation and bylaws do not provide for any advancement or indemnification of either officers or directors; (2) the DOJ's indictment against Mr. Lindberg relates solely to a North Carolina-related matter and not to Michigan or Pavonia Life; (3) Mr. Lindberg's alleged criminal acts do not constitute conduct that is subject to indemnification under Michigan law, even if Pavonia Life's articles and bylaws did provide for advancement or indemnification of officers and directors; and (4) the Service Company has the option whether to advance funds in its sole discretion, and the Michigan Rehabilitator elects to deny this request. There have been no further developments in this matter.

The Deputy Rehabilitators also discovered that the law firm Davis Polk & Wardwell LLP ("Davis Polk") had been engaged by Service Company on behalf of a Joint Special Committee of Pavonia Life and the North Carolina Insurance Companies in order to respond to the DOJ subpoenas involving the North Carolina Insurance Companies and Pavonia Life, as well as handling legal defense on behalf of the Joint Special Committee of Pavonia Life and the North Carolina Insurance Companies. Davis Polk engaged FTI, a forensic accountant, as part of this work. FTI was mainly involved with researching affiliated investments within the North Carolina Insurance Companies. Pavonia Life and the North Carolina Insurance Companies paid a total of $2,739,872 to Davis Polk through December 31, 2018 and $7,600,000 through July 31, 2019. Pavonia Life's allocated portion of these expenses was $3,101,961, which represented approximately 30% of the total. Pavonia Life has since renegotiated and signed a separate engagement letter with Davis Polk effective September 1, 2019 (fully executed on December 16, 2019), which caps the

allocation of future legal expenses to 20% and restricts billing of FTI's fees to Pavonia Life without the Deputy Rehabilitator's prior approval. The Court approved the new engagement letter on April 6, 2020. Pavonia Life paid a total of ~$800,000 representing Pavonia Life's allocation from August 1, 2019 through September 30, 2020. Any future inquiry from the DOJ regarding information related to Pavonia will be forwarded to the Michigan Attorney General's Office who will then evaluate Davis Polk's involvement in responding to the inquiry. The rehabilitator of the North Carolina Insurance Companies terminated its engagement with Davis Polk in September 2020 and a majority of the $1 million retainer held by Davis Polk was returned to Pavonia Life and the North Carolina Insurance Companies. Pavonia Life still maintains a $100,000 retainer with Davis Polk for a final document review that they completed earlier this year in connection with the DOJ investigation.

*Rehabilitation Proceedings*

Shortly after the Rehabilitation Order was entered on July 9, 2019, the Deputy Rehabilitators notified the National Association of Insurance Commissioners ("NAIC") of the rehabilitation. A letter was sent by DIFS Director Anita G. Fox, as Rehabilitator, to all 49 state departments where Pavonia Life was licensed with a reference to the Rehabilitation Order on the DIFS website. As required by the NAIC Accreditation guidelines, an all-states telephone conference call was held on July 10, 2019. An electronic notice with an attachment of the Rehabilitation Order was sent to the Office of Superintendent of Financial Institutions ("OFSI"), Pavonia Life's Canadian regulator, on July 10, 2019. The Deputy Rehabilitators sent an electronic copy of the Rehabilitation Order to the North Carolina Insurance Department and the North Carolina deputy rehabilitator on July 10, 2019. Also, on July 10, 2019, DIFS posted the rehabilitation petition, Rehabilitation Order, and frequently asked questions ("FAQs") on the Department's website. The National Organization of Life and Health Insurance Guaranty Associations ("NOLHGA") and the Michigan Life and Health Insurance Guaranty Association ("MLHIGA") were informed of the Rehabilitation Order on July 10, 2019. The Deputy Rehabilitators also informed all banks, financial institutions, and treasury departments holding Pavonia Life deposits of the Rehabilitation Order on July 10 and July 11, 2019. Plaintiffs' counsel and defense lawyers representing Pavonia Life involved in pending litigation were informed about the Rehabilitation Order and its injunction provisions on July 10, 2019. As provided by statute, the Rehabilitation Order was filed with certain Register of Deeds offices. The Rehabilitation Order was filed in Oakland County, Michigan because that is where Pavonia Life's registered corporate office is located. The Rehabilitation Order was also filed in Somerset County, New Jersey on July 17, 2019, which is where Pavonia Life's principal business office is located. The Rehabilitation Order was also filed in Durham County, North Carolina on July 18, 2019, which is where the Service Company is located. The Rehabilitation Order also stated that a proposed procedural order including a claims procedure and the Plan would be filed in the future.

On August 8, 2019, this Court entered an Order Preliminarily Approving Plan of Rehabilitation (the "Procedural Order") that contained the following procedural elements:

11

- A bar date and mandatory procedures for submitting claims for unscheduled liabilities;
- Procedures for notice, comment, and a hearing concerning final approval of the Plan; and
- A combined notice for the bar date, mandatory claims procedures, and comments to the proposed Plan.

The Plan was also filed with the Court on August 8, 2019. Notice packages were prepared that included: (1) a copy of the Procedural Order; (2) the combined notice advising of the rehabilitation and the procedures/schedules applicable to the submission of claims and comments/objections to the Plan; (3) a Proof of Claim form and instructions; and (4) a copy of the Plan. These notice packages were mailed to reinsurers, suppliers, and certain Greg Lindberg affiliates on August 14, 2019. Notice packages were also sent to those parties with pending litigation against Pavonia Life and/or the Service Company, as well as to lenders of certain Pavonia Life affiliates, on August 15, 2019. The combined notice was published in the national editions of USA Today on August 19, 2019, August 27, 2019, and September 4, 2019. For Canadian policyholders and creditors, the combined notice was published in the national editions of the Toronto Globe & Mail on August 20, 2019, August 28, 2019, and September 5, 2019.

The rehabilitation estate received seven proofs of claim prior to the November 6, 2019 bar date. Some of the filed proofs of claim involve claims in litigation as previously discussed. Three of the proofs of claim involving pending litigation have already been settled with the Court's approval. As noted in the following paragraph, the DOJ proof of claim has also been settled. The Deputy Rehabilitators also denied one proof of claim and that decision was not appealed. All seven proofs of claims have been or are in the process of being adjudicated, settled/released, and/or have been denied. A claims report and recommendations will be submitted to the Court for its review and approval at a later date.

As discussed above, one of the proofs of claim received was from the United States Government for an unknown amount. An attachment to this proof of claim indicated that any claim of the federal government would be entitled to first priority treatment under federal law (also known as "super priority"), prior to administrative expenses of the estate and policyholder liabilities. Chapter 81 of the Michigan Insurance Code, specifically MCL 500.8142(1)(c), designates claims of the federal government as Class 3 claims that can be paid only after payment in full of all Class 1 administrative expenses and Class 2 policyholder and guaranty fund related claims. At the federal government's suggestion, the Deputy Rehabilitators requested a release for Pavonia Life from Federal Priority Statute liability, which was submitted to the assigned DOJ attorney who filed the proof of claim. The release request and accompanying materials were sent to the DOJ on November 18, 2019. The assigned DOJ attorney confirmed receipt of the release request on November 22, 2019. The DOJ provided a written release on June 30, 2020. The release does not include any potential claims from the IRS.

Due in part to the United States Government's unresolved claim at that time, the hearing on objections/comments and for final approval of the Plan, which was scheduled for December 5, 2019, was adjourned and rescheduled for January 16, 2020.

There were two objections filed to the Plan.

The first objection to the Plan was filed by Independent Insurance Group, LLC ("Independent"). A response to Independent's objection was filed by the Rehabilitator, GBIG Holdings as the current parent of Pavonia Life, and Aspida Holdco as the proposed buyer of Pavonia Life. These responses were filed with the Court on November 1, 2019. There were supplemental materials filed with the Court by Independent, the Rehabilitator, and the parties to the SPA. The Court held a hearing on January 16, 2020 to hear Independent's objection to the Plan. On January 28, 2020, the Court issued an Order Permitting Responses and Setting a Preliminary Briefing Schedule. Numerous other materials and briefs were filed by Independent, the Rehabilitator, and the parties to the SPA. On March 9, 2020, the Court denied Independent's objection to the Plan.

The second objection to the Plan was filed by Charles Schwab & Co., Inc. and the Charles Schwab Corporation ("Schwab"). This objection was withdrawn by Schwab on November 1, 2019.

On May 18, 2020, the Rehabilitator filed the Rehabilitator's Motion for Final Order: (i) Approving the Plan of Rehabilitation and Related Closing of the Stock Purchase Agreement; (ii) Terminating the Rehabilitation; (iii) Approving the Actions of the Rehabilitator; and (iv) Discharging the Rehabilitator, Closing the Case, and Granting Related Relief (the "Termination Motion"). The Termination Motion scheduled a hearing date on May 26, 2020. The May 26, 2020 hearing was adjourned to June 16, 2020 at the request of GBIG Holdings' legal counsel to give the parties to the SPA an opportunity to settle some closing related issues. On June 11, 2020 GBIG Holdings' legal counsel filed a Response to the Rehabilitator's Termination Motion. The Rehabilitator's legal counsel then adjourned the hearing on the Termination Motion a second time to June 25, 2020. On June 19, 2020, the Rehabilitator's legal counsel filed the Rehabilitator's Reply to GBIG Holdings' Response to the Rehabilitator's Termination Motion. On June 22, 2020, Aspida Holdco's legal counsel filed an Objection to Adjournment or in the Alternative, Motion for Specific Performance. On June 24, 2020, GBIG Holdings' legal counsel filed a Response to Aspida Holdco LLC's Motion for Specific Performance and Reply to the Rehabilitator's Reply. A hearing was held by the Court on June 25, 2020. As a result of that hearing, the Court issued a June 25, 2020 Order (i) Approving Plan of Rehabilitation and Related Closing of Stock Purchase Agreement; (ii) Approving Actions of the Rehabilitator; and Upon Closing of Stock Purchase Agreement (iii) Terminating Rehabilitation; and (iv) Discharging the Rehabilitator and Granting Related Relief. On June 29, 2020, the Court issued an Amended Order Extending the Deadline for Closing the Stock Purchase Agreement to July 31, 2020.

On July 1, 2020, Aspida Holdco filed a Motion for Emergency Relief in the Form of Specific Performance regarding the closing of the SPA. The Rehabilitator also filed the

Rehabilitator's Brief Supporting Aspida Holdco LLC's Motion for Emergency Relief in the Form of Specific Performance on July 1, 2020. Also, on July 1, 2020, Aspida Holdco filed an additional Motion to Seal Confidential Materials.

On July 10, 2020, the Court held a hearing on both the Motion to Seal Confidential Materials and the Motion for Emergency Relief in the Form of Specific Performance. As a result of the hearing, the Court issued an Order Granting In-Part Buyer Aspida Holdco, LLC's Motions for Emergency Relief in the Form of Specific Performance and to Seal Confidential Materials. The Court ordered the closing of the SPA by 5:00 pm on July 14, 2020. The Court affirmed the Rehabilitator's authority to execute all necessary documentation and take all necessary actions on behalf of GBIG Holdings to consummate the closing on the transaction as soon thereafter as possible. On July 11, 2020, the Rehabilitator filed her Brief in Support of the Court's July 10, 2020 Order Affirming the Rehabilitator's Authority to Execute All Necessary Documentation and Take All Necessary Actions on Behalf of the Seller to Consummate the Closing on the Transaction in the Event the Parties to the Stock Purchase Agreement Do Not Close on the Transaction by 5:00 P.M. on July 14, 2020.

On July 12, 2020, GBIG Holdings filed a Brief in Support along with its Emergency Motion for Reconsideration, to Revise the Court's July 10, 2020 Order to Remove the Authority of the Rehabilitator, Findings of Non-Compliance with the SPA, and Threats of Sanctions or, in the Alternative, to Stay the Effect of its Order ("Motion for Reconsideration").

On July 12, 2020, Aspida Holdco filed a Brief Joining the Rehabilitator's Brief in Support of Rehabilitator's Authority.

On July 12, 2020, GBIG Holdings also filed its Brief in Response to Court Order Providing Rehabilitator Authority to Act on GBIG Holdings' Behalf in Selling Pavonia.

On July 13, 2020, GBIG Holdings sent notice to the Court that it had terminated the July 9, 2019 SPA. GBIG Holdings indicated that the SPA could be reinstated dependent on the Court rulings on its Motion for Reconsideration.

On July 13, 2020, the Court issued an Order Denying GBIG Holdings' Motion for Reconsideration.

On July 13, 2020, GBIG Holdings filed a Claim of Appeal with the Michigan Court of Appeals. On July 14, 2020, the Michigan Court of Appeals dismissed GBIG Holdings' Claim of Appeal for lack of jurisdiction, without prejudice to GBIG Holdings' ability to file an application for leave to appeal. Later that day, GBIG Holdings filed its Emergency Application for Leave to Appeal with the Michigan Court of Appeals, along with an Emergency Motion for Stay of Lower Court Order Pending Appeal ("Stay Motion").

On July 14, 2020, Aspida Holdco filed its Response to GBIG Holdings' Stay Motion with the Michigan Court of Appeals.

On July 14, 2020, the Rehabilitator filed her Response to GBIG Holdings' Stay Motion with the Michigan Court of Appeals.

On July 14, 2020, the Michigan Court of Appeals issued an Order granting immediate consideration of the matter and granting the Stay Motion. The Michigan Court of Appeals also stayed Greg Lindberg and GBIG Holdings from taking any action to dispose or otherwise encumber the stock of Pavonia Life subject to the SPA or the assets of the insurance company. The Michigan Court of Appeals further noted that the application remained pending and the parties had until July 21, 2020 to file answers to the application.

On July 17, 2020, Aspida Holdco sent a letter to the Supreme Court of New York in New York County regarding a potential action filed by GBIG Holdings against Aspida Holdco. On that same date, Aspida Holdco sent a Notice of Event of Default and Reservation of Rights ("Default Notice") under a loan granted to GBIG Holdings as part of the transactions contemplated under the SPA.

On July 21, 2020, the Rehabilitator and Aspida Holdco filed their respective Briefs in Opposition to GBIG Holdings' Emergency Application for Leave to Appeal.

On July 21, 2020, counsel for GBIG Holdings sent a letter to Aspida Holdco disputing various points raised in Aspida Holdco's July 17, 2020 Default Notice.

On July 21, 2020, the Rehabilitator became aware that GBIG Holdings had filed a formal Amended Complaint against Aspida Holdco in the Supreme Court of New York in New York County.

On July 23, 2020, GBIG Holdings filed its Reply Briefs to both the Rehabilitator's and Aspida Holdco's Briefs in Opposition to GBIG Holdings' Emergency Application for Leave to Appeal.

On July 23, 2020, GBIG Holdings filed in support of its second application for a temporary restraining order and preliminary injunction with the Supreme Court of New York in New York County. Aspida Holdco filed a July 27, 2020 letter and accompanying exhibits preliminarily responding to GBIG Holdings' second application.

On August 3, 2020, the Michigan Court of Appeals granted GBIG Holdings' Emergency Application for Leave to Appeal. The Michigan Court of Appeals also expedited the appeal and provided a briefing schedule. Further, the Michigan Court of Appeals ordered that the stay provisions in the Court's July 14, 2020 order remained in effect.

On August 3, 2020, the Rehabilitator sent a letter to Judge Sherwood of the Supreme Court of New York in New York County advising the Judge that it was the Rehabilitator's position that the Michigan Rehabilitation Court has sole jurisdiction related to any disputes between Aspida Holdco and GBIG Holdings regarding the SPA. GBIG Holdings, as Seller, responded to the letter on August 7, 2020.

On August 13, 2020, Aspida Holdco filed its Motion to Clarify or Modify Stay with the Michigan Court of Appeals.

On August 20, 2020, GBIG Holdings filed its own Motion to Clarify or Correct Order Granting Stay with the Michigan Court of Appeals.

On August 20, 2020, the Rehabilitator filed her Concurrence in Relief Sought by Aspida Holdco's and GBIG Holdings' Requests to Clarify or Modify Stay.

On August 20, 2020, GBIG Holdings filed its Answer in Opposition to Aspida Holdco's Motion to Clarify of Modify Stay. On August 24, 2020, Aspida Holdco filed its Response to GBIG Holdings' Motion to Clarify or Correct Order Granting Stay.

On September 4, 2020, the Michigan Court of Appeals denied both Aspida Holdco's and GBIG Holdings' motions regarding the stay.

On September 8, 2020, GBIG Holdings filed its Brief on Appeal. On September 29, 2020, both the Rehabilitator and Aspida Holdco filed their respective Briefs on Appeal. On October 20, 2020, GBIG Holdings filed its Reply Briefs to both the Rehabilitator's and Aspida Holdco's Briefs on Appeal.

Due to delay by the Michigan Court of Appeals in scheduling the appeal for oral argument, on December 14, 2020, the Rehabilitator filed her Motion to Schedule the Case on the Court's Next Session Calendar. On December 18, 2020, Aspida Holdco filed its Joinder in the Rehabilitator's Motion to Schedule the Case on the Court's Next Session Calendar. On December 21, 2020, GBIG Holdings filed its Response to the Rehabilitator's Motion to Schedule the Case on the Court's Next Session Calendar. On December 23, 2020, the Michigan Court of Appeals granted the Rehabilitator's motion.

On February 5, 2020, GBIG Holdings, Aspida Holdco, and the Rehabilitator argued the appeal before the Michigan Court of Appeals. On March 25, 2021, the Michigan Court of Appeals issued its opinion and order reversing the decision of the trial court granting specific performance, vacating the July 10, 2020 and July 14, 2020 orders memorializing the trial court's rulings, lifting the Court of Appeals stay of the trial court proceedings, and remanding the matter to the trial court for further proceedings to resolve certain issues raised in the appeal.

_Compliance Activities_

The following is a brief summary of compliance related activities:

### State Licenses

Shortly after the Rehabilitation Order was issued, the Deputy Rehabilitators received inquiries from other state insurance departments regarding the order. The following is a listing of states that suspended Pavonia Life's certificate of authority/licenses:

| State | Effective Date of Suspension |
|-------|------------------------------|
| Alaska | July 17, 2019 |
| South Dakota | October 2, 2019 |

Each of these suspensions prohibits Pavonia Life from writing any new business but allows Pavonia Life to continue to renew existing business. On October 29, 2019, we received notice from the Louisiana Department of Insurance ("LDI") of a proposal to suspend Pavonia Life's certificate of authority as a result of the rehabilitation. No action was taken after Pavonia Life responded to LDI. Louisiana then provided Pavonia Life with an additional notice of intent to suspend or revoke Pavonia Life's license on December 21, 2020 in connection with a pending policyholder complaint. Pavonia Life has engaged outside counsel to assist with this matter and we have requested a hearing related to the threatened suspension or revocation.

### TPA Licensing

As stated previously, the Service Company provides all the administrative personnel and systems to Pavonia Life and the North Carolina Insurance Companies in rehabilitation. This includes policyholder services, adjudication and payment of policyholder claims, and other administrative functions. A review indicated that some state jurisdictions require the Service Company to obtain a TPA license to provide these services after the Pavonia Life sale transaction closes. The Deputy Rehabilitators of Pavonia Life and the North Carolina Insurance Companies in rehabilitation sent a joint letter informing the various state jurisdictions about the intent to apply for a TPA license in their respective states as well as the rationale for doing so. Pavonia Life and the North Carolina Insurance Companies hired a third-party vendor to assist in the licensing process. Since the process began in August 2019, the Service Company filed 24 new or pending applications and has received approval for 20 of those applications so far in AZ, CA, CT, DE, GA, HI, ID, KY, LA, ME, MI, MN, MS, ND, NE, NH, OH, OK, PA, and WY.

There are four states where applications are still pending the closure of the acquisition of Pavonia Life by Aspida Holdco.

### Regulatory Filings

DIFS completed its financial examination of Pavonia Life for the year ending as of December 31, 2018. DIFS released the financial examination report as a public document on May 6, 2020.

Pavonia Life has escheated the following funds as of December 31, 2020: Alabama $13, Colorado $230, Florida $61, Louisiana $44, Maryland $18, Michigan $3,019, Nebraska $34, North Carolina $203, South Carolina $24, Texas $2,202, Virginia $564, and West Virginia $304.

## ADMINISTRATIVE

### *Agent Commissions*

For Pavonia Life's direct non-credit business, there are no commissions. At the time Pavonia Life was sold to a previous owner, a lump sum was paid to agents to buy out future commissions.

Pavonia Life pays commissions to lenders on its Canadian credit life and disability of which 42.5% goes to HSBC Finance Company and 47.5% to HSBC Bank, dependent on which financial institution made the loan to the borrower.

Pavonia Life pays 5% of premium for U.S. credit life and disability as a servicing fee to OneMain, the entity that owns/services the underlying loans.

### *Expenses*

The Service Company had 173 employees when the rehabilitation began. The Service Company had 149 employees as of December 31, 2020. All of the Service Company's ~32 employees that formerly were located in the Company's Basking Ridge, New Jersey office are now working remotely in perpetuity. The remaining Service Company employees are based in Durham, North Carolina. As of March 2021, all non-essential employees are working remotely due to the pandemic. A date for a full return to the office has not been set at this time.

At the request of both GBIG Holdings and Aspida Holdco, a number of retention agreements and schedules were agreed to by the parties after entry of the Rehabilitation Order. Employees were required to sign a written understanding of the retention program. A brief summary of these programs and the Pavonia Life cost allocations are listed below:

- Retention Bonus paid to 37 employees on 12/7/2019: $340,500
- Retention Bonus paid to 3 employees on 1/1/2020: $45,000
- Executive Retention Bonus for 7 officers on 4/7/2020: $1,826,775
- Retention Bonus paid to 53 employees on 1/21/2021: $75,600
- Retention Bonus to be paid to 8 employees in June 2021: $39,000

The retention bonuses have been paid as Class 1 administrative expenses under Section 8142(1)(a) of the Michigan Insurance Code, MCL 500.8142(1)(a). The Court approved payment of the Executive Retention Bonus for the 7 officers totaling $1,826,775 by order dated April 6, 2020.

The Service Company utilizes merit bonuses to retain employees. The merit bonus program was in place prior to entry of the Rehabilitation Order and, in some cases, the merit bonus was included in signed offer sheets and employment contracts with individual employees. The Service Company paid $1,067,048 as Pavonia Life's allocation of the merit bonus program in February 2021. The merit bonuses are considered Class 1 administrative expenses under MCL 500.8142(1)(a).

The Deputy Rehabilitators paid $41,465 in severance benefits to seven employees since the entry of the Rehabilitation Order through December 31, 2020. The severance benefits were considered Class 1 administrative expenses under MCL 500.8142(1)(a).

All retention, severance, and merit bonuses are allocated by the Service Company to Pavonia Life and the North Carolina Insurance Companies. Pavonia Life's allocation would be approximately 30% of these total costs, which is reflected in the retention, severance, and merit bonus figures used above in this report.

Pavonia Life and the four North Carolina Insurance Companies in rehabilitation outsourced certain administrative functions to a Global Growth affiliate, GBIG Business Solutions Private Limited ("GBIG Business Solutions") based in India. This agreement was terminated effective August 31, 2019 and replaced by an agreement with a non-affiliated company, Cognizant Worldwide Limited based out of the United Kingdom. A final termination payment of $451,371 was paid to GBIG Business Solutions. The $451,371 total payment was allocated between Pavonia Life and the four North Carolina Insurance Companies in rehabilitation.

The Service Company offers health, vision, dental, group life, AD&D, and short-term and long-term disability benefits to its employees. An open enrollment period was held from November 9, 2020 through November 22, 2020. The effective date for coverages was January 1, 2021. Prior to 2018, all benefit offerings were made through Global Growth, but in 2019 the benefit offerings were separated for and between individual Global Growth companies, with Service Company being the party that offered benefits to Pavonia Life and the North Carolina Insurance Companies' employees.

The Service Company has a 401 (k) profit sharing plan. The plan was audited for 2019 and the audit report was released on October 13, 2020.

The Service Company filed its Form 5500 for 2019 with the Internal Revenue Service on October 13, 2020.

## FINANCIAL

### *Home Office Building/Real Estate Leases*

The Service Company leases the current home office building located in Durham, North Carolina from Colorado Bankers Life Insurance Company, one of the North Carolina Insurance Companies in rehabilitation. The lease agreement was dated January 1, 2019 and

the monthly rent is $38,080. The initial term was through January 1, 2020, which was subsequently extended, and may be extended for successive one-year terms. The monthly rent is allocated to Pavonia Life and the four North Carolina Insurance Companies, as are any maintenance related expenses. Under the SPA and subject to regulatory approval, Pavonia Life intended to purchase the home office building from Colorado Bankers Life Insurance Company after the Aspida Holdco purchase closed.

Bankers Life Insurance Company, another one of the North Carolina Insurance Companies in rehabilitation, had a lease to rent office space in Clearwater, Florida from Harbourside Grande Crossings, LLC. This lease was assigned to the Service Company on August 28, 2018. The space was not occupied. The term of the lease was from November 2017 through August 31, 2023 and the monthly rent was $6,273. After some discussion, the Deputy Rehabilitator decided that the Service Company would offer the landlord either: (1) a discounted lump sum to terminate the lease's remaining term; or (2) a deal with the landlord to sub-lease the space to reduce the monthly rent obligation. If neither of the two options was accepted, the Deputy Rehabilitator would disavow the lease. On September 11, 2019, the Deputy Rehabilitator sent the landlord a letter indicating that the Service Company would like to discuss a mutually satisfactory way to end the lease. Numerous phone calls were exchanged over the next 30 days without any progress on resolution of the matter. On October 21, 2019, the Deputy Rehabilitator mailed a certified letter to both the landlord and the lease broker indicating that the Deputy Rehabilitator was disavowing the lease, which enclosed a Proof of Claim form and instructions in case they wished to file a claim with the rehabilitation estate for any unpaid obligations under the lease. As of the date of this report, the Deputy Rehabilitator has not received any correspondence and/or a timely proof of claim. The Service Company stopped making rent payments effective with the November 2019 lease payment. The $6,273 monthly rent was an allocated expense between Pavonia Life and the four North Carolina Insurance Companies in rehabilitation. This action was discussed with the Deputy Rehabilitator of the North Carolina Insurance Companies prior to the disavowal letter being sent.

The Service Company previously leased space for Pavonia Life's Basking Ridge, New Jersey offices; the monthly rent was $15,571. The lease expired on August 31, 2020 and was not renewed. Pavonia Life's Basking Ridge employees are either working remotely or transferred to the Durham, North Carolina facility.

*Investments*

Pavonia Life has an investment management agreement with Goldman Sachs Asset Management L.P. that was signed October 29, 2018.

Pavonia Life's IC bond quality as of December 31, 2020 is as follows:

Class 1 and Class 2:  99.9%
Class 3:              0.1%

Class 1 bonds are considered high investment grade securities. Class 3 bonds are considered below investment grade.

Regions Bank was Pavonia Life's custodial bank but terminated that relationship on January 11, 2020. Pavonia Life replaced Regions Bank with Bank of America as its custodial bank in January 2020.

*Reinsurance*

Major reinsurance contracts involving Pavonia Life assuming risks from other insurance companies is discussed in the "Insurance Products" section of this report above. This section discusses those insurance risks that Pavonia Life cedes to other insurance companies.

Pavonia Life cedes 100% of its ordinary life insurance policies assumed from Renaissance Life and Health to Americo Financial Life and Annuity Insurance Company.

Pavonia Life cedes 10% of certain term life policies with face amounts under $250,000 and 25% of certain term life policies over $250,000 to Munich American Reassurance Company.

Pavonia Life cedes 50% of its Canadian credit life and disability policies with insured amounts over $350,000 with SCOR Global Life Canada.

Pavonia Life cedes 100% of a block of single premium individual annuities assumed from Renaissance Life and Health to American General Life Insurance Company.

Pavonia Life cedes 100% of a block of small group health policies assumed from Renaissance Life and Health to Union Fidelity Life Insurance Company.

*Federal Income Taxes*

For the period January 1, 2018 through November 30, 2018, Form 1120L for Pavonia Life was prepared by Deloitte and filed on October 14, 2019. Pavonia Life joined the consolidated 2018 GBIG Holdings group on December 1, 2018 and filed as part of the 2018 GBIG Holdings consolidated return for the period December 1, 2018 through December 31, 2018. The Service Company was consolidated into the 2018 consolidated federal tax return of GBIG Holdings, which filed its federal return on October 15, 2019.

The Consolidated 2019 Form 1120L for GBIG Holdings, which included Pavonia Life and Service Company for the 12-month tax year, was filed on October 14, 2020, reflecting a refund of $2,500,000 for the group. Additionally, as a result of the CARES Act, a Consolidated Form 1139 2019 Carryback Return was filed on December 15, 2020, in which the 2019 consolidated group losses were carried back against the 2018 income taxes paid, resulting in a refund of $11,728,583 for the group. Following December 31, 2020, Pavonia Life received $2,697,582 for its portion of the $11,728,583 refund, but it has yet to receive

the $774,960 that represents its portion of the $2,500,000 from GBIG Holdings. Additionally, Pavonia Life has an additional intercompany receivable of $1,671,306 from GBIG Holdings for utilization of Pavonia's losses in the 2018 and 2019 tax returns, which has yet to be paid.

### State and Local Taxes

Pavonia Life filed its 2019 corporate tax filings on October 15, 2020 with the states of Alabama, Florida, Illinois, Louisiana, Mississippi, Nebraska, and Oregon. Deloitte prepared the returns.

### Auditing and Actuarial

The Service Company provides the actuarial support for Pavonia Life and the North Carolina Insurance Companies. The appointed actuary for Pavonia Life is Christopher Motta, Vice-President, Valuation Actuary. There is an internal Service Company actuarial staff that performs modeling, valuation, reinsurance, and pricing functions. There are several outside actuarial firms and consultants that provide product development, valuation, and actuarial state filing support. Pavonia Life also provided actuarial support for Pavonia Life Insurance of New York ("PLICNY"), a former affiliate. Pavonia Life transitioned that actuarial support directly to PLICNY prior to December 31, 2019.

Pavonia Life's 2019 audit was conducted by JohnsonLambert LLP and was released on May 29, 2020. The Service Company audit was conducted by JohnsonLambert LLP and released on July 1, 2020. JohnsonLambert LLP has been engaged to perform the 2020 audit of both Pavonia Life and Service Company.

The Deputy Rehabilitators inquired about a listing of the Service Company's assets and were informed a physical inventory of the Service Company's computers, equipment, and furniture had not been performed. Since then, a physical inventory of the Service Company's computers, equipment, and furniture was undertaken along with tagging the equipment and this is now complete.

Pavonia Life provides certain administrative services to PLICNY, a subsidiary of Enstar, under the terms of a Transition Service Agreement dated December 29, 2017, which has been extended through the closing of Enstar's sale of PLICNY to a third party. That sale is currently undergoing Form A review by the New York State Department of Financial Services.

### EXHIBITS

The following exhibits are attached to this Court Report:

Exhibit A     Pavonia Life Annual Statement – January 1, 2020 to December 31, 2020
Exhibit B     Pavonia Life Quarterly Statement – January 1, 2021 to March 31, 2021
Exhibit C     Professional Services Paid – January 1, 2020 to March 31, 2021

## CONCLUSION

The major goal for 2021 is to close the sales transaction of Pavonia Life with Aspida
Holdco and/or another qualified buyer as outlined in the Court-approved Plan of
Rehabilitation or pursuant to an amended Plan of Rehabilitation.

The Deputy Rehabilitator would like to thank all the dedicated employees for their
professionalism and efforts during the rehabilitation process.

Respectfully submitted,

*James Gerber*

James E. Gerber
Deputy Rehabilitator
Pavonia Life Insurance Company of Michigan and
Global Bankers Insurance Group, LLC
Dated: June 23, 2021