# EXHIBIT 2

In the Matter of the Arbitration Between:
-----------------------------------------------------------x
Universal Life Insurance Company,

                      Petitioner,                  Klaus H. Kunze, Umpire
                                                                  David A. Thirkill, Arbitrator
     v.                                                       Daniel E. Schmidt, IV, Arbitrator

PB Life and Annuity Co., Ltd., f/k/a Private
Bankers Life and Annuity Co., Ltd.,

                      Respondent.
-----------------------------------------------------------x

## ARBITRATION AWARD

This all-neutral Panel was formed on April 21, 2020 pursuant to Section 10.1 of the Coinsurance Reinsurance Agreement ("Reinsurance Agreement") by and between Petitioner Universal Life Insurance Company ("ULICO") and Respondent PB Life and Annuity Co., Ltd., f/k/a Private Bankers Life and Annuity Co., Ltd. ("PBLA").

ULICO is an insurance company domiciled in the unincorporated territory of the United States, Puerto Rico. It is regulated by the Office of the Commissioner of Insurance of Puerto Rico. Its insurance laws, rules and regulations conform to those of the National Association of Insurance Commissioners ('NAIC").

PBLA is a reinsurance company domiciled in Bermuda. It is neither an 'authorized reinsurer' nor a 'certified reinsurer'[1] Rather it is an 'unathorized reinsurer".

Insurance companies, like ULICO, must post ceded reserves (including for expected outstanding claims) on their Finacial Statements in the amount that will be recoverable from a

---

[1] An authorized reinsurer is a reinsurer that is licensed as an insurer or reinsurer in the ceding insurer's state of domicile. An authorized reinsurer may also be licensed as an insurer or reinsurer in a state which employs "substantially similar" credit for reinsurance regulations as the ceding insurer's state of domicile. An insurer or reinsurer may also be considered authorized if it is accredited (or equivalent; e.g. trusteed, qualified, approved, accepted) in the ceding insurer's state of domicile.
http://thoughtleadership.aonbenfield.com/Documents/20150203_ab_guide_to_certified_and_authorized_reinsurers.pdf

1

reinsurer. An authorized reinsurer must make provisions for the sum of those items on its own Financial Statement but otherwise do nothing more. On the other hand, an unauthorized reinsurer would be wise to make the same provisions, but must provide collateral in at least the value of the sum ceded to it and additionally, such additional sum(s) as may be required by the Insurance Regulations in the state of domicile as described in the regulations of the state or domicile of the insurer. Essentially, any collateral asset in the Trust Fund must (i) be equal in value to that required and (ii) conform to the requirements of Puerto Rico regulations.

ULICO's complaint (stated in its Preliminary Statement in its Motion for a Prelimary Award for Collateral), is essentially that an award is necessary because PBLA's controlling owner has drained over $524 million in cash-equivalent assets (assets that conform to Puerto Rican regulations) from the trust account and replaced them with assets that do not conform.

ULICO commenced arbitration on February 24, 2020. Section 10.1 (a) of the Reinsurance Agreement states that the arbitration proceeding shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules"), and Section 10.1 (d) instructs the arbitrators to enter an award that will "do justice" between the parties and that the award shall be supported by a written opinion. That Section also states that the Panel "shall not be bound by legal rules of procedure and may receive evidence in such a way as to do justice between the Parties."

PBLA refused to participate in the formation of the Panel. Mr. Thirkill was appointed by ULICO and Mr. Schmidt by the American Arbitration Association. Messrs. Thirkill and Schmidt then chose Mr. Kunze to be the umpire, in accordance with the terms of the arbitration clause in the Reinsurance Agreement.

Shortly after its formation the Panel noted that "parties that have contracted to arbitrate their disputes are deemed to intend to move expeditiously" and proceeded to organize the arbitration. The Panel requested the parties to submit position statements and to discuss the other agenda items prior to the organizational meeting. PBLA objected on various grounds, advising that it "does not consent to arbitration" and that it had filed suit in the US District of the Southern District of New York ("the Court") to enjoin this arbitration.

After acknowledging PBLA's reservation of rights, the Panel set a telephonic organizational meeting for April 29 to, among other things, set a briefing schedule to hear ULICO's Motion for a Preliminary Award requiring PBLA to post Collateral ("Motion").

On April 27, the Panel was informed that the Court had denied PBLA's emergency motion to enjoin the arbitration proceeding and that the Judge had asked that no Panel ruling regarding the Motion would occur before May 27, to which the Panel agreed. The Court issued its Opinion & Order on May 12 granting ULICO's motion to compel arbitration and denied PBLA's motion for a permanent injunction.

Following the receipt of PBLA's Response to the Motion on May 20 as scheduled, and having noted a reference therein to the issue of arbitrability, the Panel advised the Parties on May 24 that it had determined that "the Reinsurance Agreement, including the arbitration clause and Section 4.2(a), survived the passage of the Trust Agreement and that the present dispute between ULICO and PBLA that implicates both the Trust Agreement and the Reinsurance Agreement comes within the scope of the arbitration clause".

ULICO duly presented its Reply in Support of its Motion and, two days later, on May 29 a telephonic hearing on that motion occurred. Both parties were given a fair opportunity to add by way of argument to that presented in their respective briefs. Both sides had supplied, by way

3

of evidence, many exhibits. ULICO also provided sworn witness statements from ULICO's Chief Actuary and its Chief Investments Officer. Questions were asked by the Panel. The oral argument lasted two hours, and both sides were encouraged to respond to each other's presentations and to answer questions from panel members; oral argument ended only after both sides had the full opportunity to explain their positions and advised they had nothing further to add.

Following the oral argument, the Panel commenced deliberation. The Panel concluded that the question of the value of the assets in the Trust Fund is, of course, important (ULICO has argued $500M were of no value and PBLA argued the opposite), but if such assets do not conform to the requirements of the Applicable Laws of Puerto Rico then ULICO would not receive full credit in its statutory financial statements as required by Section 4.1 (a) of the Reinsurance Agreement.

After review and discussion, the Panel is persuaded that ULICO's assertions in respect of the assets (both as regards value and conformity) are correct and that ULICO has established an immediate need for the requested relief, so as to protect its policyholders and itself. The Panel is also persuaded that PBLA has had more than ample time to present to this Panel standard financial information to counter ULICO's positions.

More specifically, ULICO through its Chief Investments Officer clearly and convincingly explained that ULICO has raised material issues concerning the type and value of the subject assets since late 2018; that PBLA's responses were neither timely, consistent, nor accurate; and that such responses directly led to ULICO's demand for arbitration in January 2020.

Furthermore, ever since these issues were raised by ULICO over 18 months ago, PBLA had every incentive and opportunity to obtain and present reports to ULICO and then to this

4

Panel that clearly explained the true nature and fair market value of these assets and put forth its position as to whether the assets do conform to regulations..

Instead, PBLA presented outdated information that fails to support its claims and the requirement that these investments (in order of priority) are safe, liquid, and generate investment income, and their exhibits also fail to support its claims regarding control of assets.

This situation alone is sufficient for this Panel to grant ULICO's request. ULICO's complaints have been that PBLA replaced assets that do conform to regulatory requirements with assets that do not comply. PBLA is an 'unauthorized reinsurer' and has been repeatedly requested by ULICO to replace such non conforming assets. Based on the evidence, the Panel concludes that PBLA has singularly failed to 'take such steps as may be required' of it to ensure that ULICO receive full credit on its financial statements, quite the opposite.

The Panel noted that the vast majority of the financial information provided by PBLA predated the March 18, 2019 indictment of Mr. Lindberg and others connected with him. Since this indictment, the North Carolina Insurance Department ("Department") has taken over four domiciliary insurance companies that are affiliates of PBLA, entered into a Memorandum of Understanding in June 2019 with Mr. Lindberg (and others) that has led to litigation between the parties in 2020; furthermore, on March 5, 2020, Mr. Lindberg and a consultant were found guilty of public corruption and bribery and are awaiting sentencing.

The Panel also notes the critical comments and serious actions against ULICO taken by A.M. Best, one of the best known and respected rating agencies of insurance companies, solely as a result of the uncertain status of the subject assets. The Panel is convinced that enforcement of its ruling on the Motion is needed to forestall another downgrade or similar harmful action.

5

In the circumstances, the Panel concluded that ordering PBLA to replace the non-conforming assets with conforming ones would simply cause more delay and obfuscation on the part of PBLA and cause irreparable harm to ULICO. On the other hand, if the assets currently in the Trust Fund were indeed of value (as PBLA continued to assert), but just do not meet the requirements of Puerto Rico Law credit for reinsurance, then no harm would come to PBLA.

The Panel therefore concluded that ULICO's suggestion that cash be paid in to a segregated account under the supervision of the Panel would conform to the meaning and intent of the agreement the Parties had made and expressed in the Reinsurance Agreement "to take such steps as may be required of it to ensure that ULICO receive full credit on its financial statements".

Accordingly, and after deliberation and consideration of all documents, arguments, and evidence submitted by ULICO and PBLA, including but not limited to ULICO's May 6, 2020 motion for preliminary relief, PBLA's May 20, 2020 opposition to ULICO's motion, and ULICO's reply dated May 27, 2020, together with all the exhibits and witness evidence included with the parties' submissions, and after a hearing on May 29, 2020, the Panel hereby renders an Arbitration Award as follows:

1.  PBLA shall pay to ULICO the amount of $524,009,051.26 within ten (10) business days of the date of this Arbitration Award. After such date, interest shall run at 6% per annum.

2.  ULICO shall identify to PBLA a segregated bank account, separate from its other accounts, and provide the relevant account information to PBLA, for the purpose of receiving by wire transfer from PBLA the amount described in Paragraph 1 of this Award (the "Segregated Account").

6

3.   The funds in this Segregated Account shall be used strictly for the purpose of securing PBLA's obligations under the Reinsurance Agreement and, if necessary, for ULICO's payment of any liabilities incurred pursuant to ULICO's obligations as respects business ceded to that Reinsurance Agreement.

4.   The parties are directed to confer and determine with specificity the supervisory role of the panel regarding the segregated bank account. If they should fail to agree, the Panel will make such decision.

5.   ULICO has funded and agreed to continue to fund the fees of the arbitrators while PBLA refuses to pay its 50% share. ULICO has paid administrative cost associated with the April 29 and May 29 hearings. These fees and costs should be equally shared between ULICO and PBLA. ULICO is hereby authorized to charge such costs and fees to PBLA and to send PBLA regular bills and PBLA must pay such bills. If PBLA shall fail to pay such bills, interest may be accrued at the New York statutory rate.

6.   Applications for reimbursement of the parties' legal fees are reserved for further proceedings.

7.   This Award is preliminary to resolution of the remaining disputes between the parties and the Panel expressly reserves jurisdiction to hear those remaining disputes. The Panel directs the parties to meet and confer and propose to the Panel a pleading, discovery and hearing this, stating the time they think is needed for a full hearing on the merits.

Dated:   June 2, 2020

For the Panel:

Klaus H. Kunze, Umpire