**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PB LIFE AND ANNUITY CO., LTD., *et al.*,[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 20-12791 (LGB)<br>(Jointly Administered) |
| UNIVERSAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br>v.<br><br>GREG E. LINDBERG, individually, CHRIS HERWIG, individually, AAPC HOLDINGS, LLC, ACADEMY FINANCIAL ASSETS, LLC, AGH PARENT, LLC, ALPINE CAPITAL, LLC, ASIM HOLDINGS, LLC, ASL HOLDINGS, LLC, ATKINSON, LLC, ATLANTIC COAST LIFE INSURANCE COMPANY, ATLAS FINANCIAL INVESTMENTS, LLC, AUGUSTA ASSET MANAGEMENT, INC., BEGONIA EIGHT, LLC, BLH CAPITAL, LLC, BLUE DAFFODIL, LLC, BLUE VIOLET, LLC, CAPITAL ASSETS FUND I, LLC, CAPITAL ASSETS FUND II, LLC, CAPITAL ASSET MANAGEMENT I, LLC, CAPITAL ASSETS MANAGEMENT II, LLC, CAPITAL ASSETS MANAGEMENT III, LLC, CARNATION THREE, LLC, CHATSWORTH ASSET MANAGEMENT, LLC, CHRYSANTHEMUM TWO, LLC, CSI INTERCO, LLC, DAHLIA TEN, LLC, DAISY SEVEN, LLC, DRUMMOND GROUP, LLC, DUNHILL HOLDINGS, LLC, ELI GLOBAL, LLC, ENGLERT HOLDINGS, LLC, EPPING, LLC, ERIE PROPERTIES, LLC, FLAGSHIP HOLDINGS, LLC, FLEET ASSIST INTERCO LIMITED, FLOWERY BRANCH, LLC, FORSYTH, LLC, FORTREX, LLC, | Adv. Proc. No. 21-01169<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

---

[1] PB Life and Annuity Co., Ltd., Northstar Financial Services (Bermuda) Ltd., Omnia Ltd. and PB Investment Holdings Ltd., foreign Debtors, are Bermuda limited companies which each have a registered address in Bermuda c/o Deloitte Ltd., Corner House, 20 Parliament Street, Hamilton HM 12, Bermuda, and are Jointly Administered for procedural purposes, by Order of this Court entered on April 2, 2021, ECF No. 42.

GBIG CAPITAL, LLC, GBIG HOLDINGS, INC., GBI GROUP, LLC, GERANIUM TWO, LLC, GILFORD ASSET MANAGEMENT, LLC, GLOBAL BANKERS INSURANCE GROUP, LLC, GLOBAL GROWTH HOLDINGS, INC., GLOBAL INSURANCE CAPITAL, LLC, GREENFIELD CAPITAL, LLC, HAMPTON ASSET MANAGEMENT, INC., HANSEN AEROSPACE, LLC, HEALTHLINK HOLDINGS, LLC, HOOKSETT, LLC, HUTCHISON LAW GROUP, PLLC, INTEGRITY EMR HOLDINGS, LLC, INTEGRITY EMR, LLC, IRON CITY ASSET MANAGEMENT, INC., ITECH FUNDING, LLC, JACKSON ASSET MANAGEMENT, INC., KITE ASSET MANAGEMENT, INC., LILAC SIX, LLC, MACON, LLC, MORNING MOUNTAIN HOLDINGS, LLC, NETHERLANDS INSURANCE HOLDINGS, INC., NEW ENGLAND CAPITAL, LLC, NIH CAPITAL, LLC, NOM GB 2018 I, LLC, PARADIGM PARK HOLDINGS, LLC, PARALLEL CAPITAL ASSETS, LLC, PERSHING, LLC, RED BEGONIA, LLC, REVOLVERCAP PARTNERS FUND, LP, SATORI WATERS, LLC, SEDWICK, LLC, SENTINEL SECURITY LIFE INSURANCE COMPANY, SOMERSWORTH, LLC, STANDARD ADVISORY SERVICES, LTD, STANDARD FINANCIAL LIMITED, STANDARD INVESTMENT CAPITAL, LTD, TREATMENT RESOURCES OF MARGATE, INC., TRITON FINANCIAL LIMITED, TUX HOLDINGS, LLC, TYBEE ISLAND ASSET MANAGEMENT, LLC, UKAT HOLDINGS, LLC, UKAT INVESTMENT LIMITED, VERDESIAN LIFE SCIENCES, LLC, WEARE, LLC, YELLOW LOTUS, LLC, YELLOW SUNFLOWER, LLC, UBS FINANCIAL SERVICES, INC., GOLDMAN SACHS LENDING PARTNERS, LLC, CREDIT SUISSE AG CAYMAN ISLANDS BRANCH, GOLDMAN SACHS BANK USA, MORGAN STANLEY SENIOR FUNDING, INC., THE BRYN MAWR TRUST COMPANY, and DOES 1 through 10, inclusive

Defendants.

# TABLE OF CONTENTS

                                                                                                                                             **Page**

TABLE OF AUTHORITIES ................................................................................................iv

I.     INTRODUCTION ...................................................................................................1

II.    LEGAL STANDARD.............................................................................................3

III.   ARGUMENT..........................................................................................................4

        A.     The Proposed Second Amended Complaint Advances Additional Allegations Stating, With Particularity, Each Defendant's Alleged Wrongful Conduct; Therefore, Granting Leave to Amend Will Allow This Case to be Decided on the Merits. .........................................................................................................4

        B.     ULICO Did Not Engage in Undue Delay, Bad Faith, Or Fail to Cure Deficiencies by Prior Amendments. ..................................................................6

        C.     This Court Should Grant Plaintiff Leave to File Because Amendment is Not Futile. ...............................................................................................................8

IV.   CONCLUSION.....................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbatiello v. Monsanto Co.*,
    571 F.Supp.2d 548 (S.D.N.Y. 2008) ...................................................................................7

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995) .............................................................................................................9

*In re Cuyahoga Equipment Corp.*,
    980 F.2d 110 (2d Cir. 1992) ................................................................................................9

*In re Everfresh Beverages, Inc.*,
    238 B.R. 558 (Bankr. S.D.N.Y. 1999) .................................................................................3

*Foman v. Davis*,
    371 U.S. 178 (1962) .............................................................................................................3

*In re Harvard Knitwear, Inc.*,
    193 B.R. 389 (Bankr. E.D.N.Y 1996) ................................................................................11

*In re Hellas Telecom. (Luxembourg) II SCA*,
    524 B.R. 488 (Bankr. S.D.N.Y. 2015) ...............................................................................11

*Lerman v. Chuckleberry Pub., Inc.*,
    544 F. Supp. 966 (S.D.N.Y. 1982), *rev'd on other grounds*, 745 F.2d 123 (2d
    Cir. 1984) .............................................................................................................................4

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986) ..........................................................................................4, 7, 8

*In re Margulies*,
    476 B.R. 393 (Bankr. S.D.N.Y. 2012) .................................................................................9

*Mills v. Polar Molecular Corp.*,
    1991 WL 280235 (S.D.N.Y. Dec. 23, 1991) .......................................................................8

*Oliver Schools, Inc. v. Foley*,
    930 F.2d 248 (2d Cir. 1991) ..............................................................................................10

*Parmalat Capital Finance Ltd. v. Bank of America Corp.*,
    639 F.3d 572 (2d Cir. 2011) ..........................................................................................9, 10

*Pisello v. Town of Brookhaven*,
    933 F. Supp. 202 (E.D.N.Y. 1996) ......................................................................................3

*Ricciuti v. N.Y.C. Trans. Auth.*,
    941 F.2d 119 (2d Cir. 1991) ...................................................................................... 8

*Samaha v. Presbyterian Hosp. in City of New York*,
    757 F.2d 529 (2d Cir. 1985) .................................................................................... 10

*In re WorldCom, Inc. Securities Lit.*,
    293 B.R. 308 (S.D.N.Y. 2003) .................................................................................. 9

*Yun Chi v. Parajon*,
    2020 WL 6700584 (S.D.N.Y Nov. 13, 2020) ......................................................... 10

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971) .................................................................................................. 7

**Statutes**

28 U.S.C. § 1334(b) ............................................................................................................ 9

N.C. Gen. Stat. § 39-23.4 ................................................................................................. 10

N.Y. Debt. & Cred. Law § 273(a) .................................................................................... 10

**Other Authorities**

Fed. R. Bankr. P. 7015 ....................................................................................................... 3

Fed R. Civ. P. 9(b) ......................................................................................................... 5, 8

Fed R. Civ. P. 8(a) ......................................................................................................... 4, 7

Fed R. Civ. P. 15 ................................................................................................................ 3

Fed R. Civ. P. 19(a)(1)(A) ............................................................................................. 3, 7

Fed R. Civ. P. 12(b)(6) ...................................................................................................... 8

Fed. R. Bankr. P. 7008 ....................................................................................................... 4

Fed. R. Bankr. P. 7019 ....................................................................................................... 7

I.      INTRODUCTION

This complaint was filed by PBLA's largest creditor, by far, Universal Life Insurance Company ("ULICO") to avoid numerous transactions by PBLA. At the core of the case is a scheme designed and implemented by Greg Lindberg — the ultimate owner of the equity of PBLA. Beginning in June of 2017 Lindberg embarked on a business strategy that was intended to strip assets held by insurance companies in relatively low-risk investments then "loan" them to entities that were under his ownership and control. He began to buy sleepy insurance companies, first involved in burial insurance, to supercharge his grandiose scheme to become a billionaire "entrepreneur" with other peoples' money. Insurance in the United States is primarily regulated by States. The States regulate the sort of investments that insurance companies are allowed to make and place strict limits on investments in affiliates. The reason is obvious. Those investments, at best, concentrate, rather than diversify risk. They also allow, as in this case, for a wrongdoer to create an impenetrable knot of complexity that keeps regulators and policyholders from understanding whether their right to receive payments is protected by the investments.

Unfortunately for everyone but Lindberg and his co-conspirators, Lindberg found one state — North Carolina — that provided virtually no enforcement of its rule limiting investments in affiliates. Soon Lindberg moved all of his insurance companies to that State so that he could continue with his scheme. Then things changed. A new Insurance Commissioner was elected in North Carolina, who was not willing to go along with Lindberg's violation of that State's law. Soon Lindberg was being told to reduce the amount his North Carolina insurance companies were investing in affiliates, and in a hurry. Lindberg had two responses to this. First, a federal district court jury found that he tried to bribe the new Insurance Commissioner with illegal political contributions. That is why he is in federal prison on an 87-month sentence. Second, he sought out other jurisdictions that might give him the ability to shift the affiliate investments that

1

he could no longer pursue in North Carolina. He also came up with a strategy to create special purpose vehicles ("SPVs") without economic substance -- that were supposedly not affiliated enough with Lindberg to be "affiliates" – that PBLA loaned money, which the SPV then loaned to the "affiliates." That is what led him to create a Bermuda insurance company to reinsure risks underwritten by a Puerto Rican insurance company. It also explains the urgency he had to shift the affiliate investments from the North Carolina entities to the SPV structure involved in the PBLA transactions shortly after the reinsurance transaction came into being.

The net effect of all of this was hundreds of millions of dollars in cash and securities were taken out of the PBLA/ULICO trusts, transferred to PBLA, and then fraudulently conveyed to transferees, including a great many Lindberg affiliates. Many of those transactions are very complex, and a great deal of the documents that should have recorded them are not available. That is particularly true for ULICO, which was a stranger to those transactions other than to be the beneficiary of the trusts and a massive creditor of PBLA.

At the inception of this case, ULICO was presented with concerns that defendants would argue for very short limitations periods and an urgent need for it to plead its claims based on its ability to obtain documents without any formal discovery. Since filing its initial complaint, ULICO has been able to obtain many more documents than it had at the time that it pled its original complaint. That information came both from formal discovery allowed by the Court and by information that ULICO was able to procure in meet and confer sessions with Defendants. That information in large part corroborated ULICO's original contentions. In many cases the information allowed ULICO to expand on its allegations contained in both its initial Complaint as well as its Amended Complaint. It is also the case that many of the Defendants argued that they did not believe that the allegations contained in the complaints were sufficient to state a

claim. That is the reason that ULICO has unilaterally sought leave to amend the complaint here (referred to as the "SAC")[2].

The additional allegations in the SAC make clear that ULICO's only option in pursuing complete relief relative to this complex fraudulent scheme is to advance this action against *all* Defendants.[3] Additionally, the SAC both removes and adds Defendants parties in response to the information ULICO has gathered to date and clarifies the applicable state laws under which ULICO brings its fraudulent transfer claims. Accordingly, this Court should grant ULICO's Motion for Leave to File a Second Amended Complaint to allow ULICO to pursue complete relief for the vast fraud committed by Defendant Lindberg, PBLA, and the other Defendants.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2), which governs amendments to pleadings, provides that "[t]he court should freely give leave when justice so requires."[4] Fed. R. Civ. P. 15(a)(2). Rule 15(a)'s "mandate" to give leave to amend "freely" "is to be heeded" by courts. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The rule in this this Circuit has been to allow a party to amend its pleadings in the absence of a showing of prejudice or bad faith." *Pisello v. Town of Brookhaven*, 933 F. Supp. 202, 219 (E.D.N.Y. 1996) (quoting *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993), and granting the plaintiffs' motion for leave to file a second amended complaint). Motions for leave to amend should only be dismissed if the party opposing amendment can establish that the moving party engaged in undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies, undue prejudice by virtue of the amendment, or futility. *Foman*, 371 U.S. at 182; *see also In re Everfresh Beverages, Inc.*, 238

---

[2] ULICO attaches, as exhibits to this motion, both a clean and a redlined version of the proposed SAC.
[3] Pursuant to Federal Rule of Civil Procedure 19(a)(1)(A), all Defendants must be joined because, in their absence, this Court cannot accord complete relief among the parties.
[4] Federal Rule of Civil Procedure 15 applies in adversary proceedings. Fed. R. Bankr. P. 7015.

3

B.R. 558, 569-71 (Bankr. S.D.N.Y. 1999) (stating that a party opposing amendment must meet a heavy burden because denying amendment "run[s] contrary to the strong institutional bias in American jurisprudence to have matters decided on their merits.").

In cases where leave to file an amended complaint is not granted, the court usually granted a prior request for leave to file an amended complaint advancing new allegations with greater specificity. *Luce v. Edelstein*, 802 F.2d 49, 56-57 (2d Cir. 1986) (dismissal without granting leave to amend was abuse of discretion where plaintiff specifically sought leave to amend to allege facts with particularity). Moreover, on a motion for leave to file an amended complaint, the merits of an opposing party's defense should not be considered unless the movant's amendment is "clearly frivolous or legally insufficient on its face." *See Lerman v. Chuckleberry Pub., Inc.*, 544 F. Supp. 966, 968 (S.D.N.Y. 1982), *rev'd on other grounds*, 745 F.2d 123 (2d Cir. 1984)).

### III.    ARGUMENT

#### A. The Proposed Second Amended Complaint Advances Additional Allegations Stating, With Particularity, Each Defendant's Alleged Wrongful Conduct; Therefore, Granting Leave to Amend Will Allow This Case to be Decided on the Merits

While ULICO maintains that its Amended Complaint is sufficient to state claims against all parties under Federal Rule of Civil Procedure 8(a) (applicable to this proceeding under Rule 7008), ULICO recognizes that both Defendants and the Court have raised questions about its sufficiency. *See* ECF Nos. 65, 68, 71, 75, 80, 84, 99, 111, 124 (the various motions to dismiss). Accordingly, ULICO's proposed amendment adds significant detail to its Amended Complaint— detail that was not available to ULICO when the Amended Complaint was filed. Specifically, ULICO adds allegations stating, with particularity, each Defendant's respective involvement in each transaction comprising PBLA and Defendant Lindberg's fraudulent scheme. The proposed

4

allegations include facts with particularity, including the date of each transaction, the entities and individuals involved, the dollar amount at issue, the type of transaction (*e.g.*, loan agreement, sale and repurchase agreement, etc.) and, to the extent possible, the signatories to each executed transaction. ULICO added these allegations with respect to each of the hundreds of transactions that comprised the fraudulent scheme, substantially clarifying the alleged wrongdoing as to each Defendant.

Further, as the result of the extensive fact gathering ULICO has been able to accomplish since the filing of its previous pleadings, the SAC removes certain Defendants included in the First Amended Complaint, including UKAT Holdings, GBI Group, LLC, Integrity EMR Holdings, Integrity EMR, LLC, Hansen Aerospace, Atlantic Coast Life Insurance, Sentinel Security Life Insurance Company, Erie Properties, Somersworth, LLC, and Paradigm Park Holdings[5]. Similarly, ULICO has since identified parties not named in the First Amended Complaint that it seeks to include as Defendants in the SAC including Christa Miller, who is upon information and belief the Chief Financial Officer of several Lindberg affiliate entities, Bankers Life Insurance Company, Summerville Asset Management, LLC, BRC Holdings, Inc., Capital Assets Fund III, LLC and Paradise Asset Management, LLC. Allegations against the newly-named Defendants are pled with specificity as to the exact transactions they were associated with.

To the extent possible, ULICO has also specified the applicable law with respect to each count, and particularly with respect to its fraudulent transfer counts. These amendments to the allegations, pled with particularity, satisfy the requirements of Fed R. Civ. P. 9(b) and provide

---

[5] Hansen Aerospace, Atlantic Coast Life Insurance, and Sentinel Security Life Insurance Company have filed motions to dismiss ULICO's First Amended Complaint that are currently pending. In the event ULICO is granted leave to file its SAC, those motions will be moot.

5

each Defendant with notice of their alleged wrongful conduct. Accordingly, leave to file is warranted because ULICO's Second Amended Complaint advances amendments alleging facts, with particularity, stating a claim upon which relief may be granted. Thus, this court should grant ULICO's Motion for Leave to File a Second Amended Complaint.

**B. ULICO Did Not Engage in Undue Delay, Bad Faith, Or Fail to Cure Deficiencies by Prior Amendments.**

ULICO did not unduly delay or engage in bad faith in requesting leave to file its Second Amended Complaint; instead, ULICO proposed this course of action directly to the Court and all Defendants, and the court agreed it promoted efficiency. The Court is distinctly aware of the difficulties posed in gathering documents or information from PBLA and its affiliates (*see, e.g.,* ECF No. 149 (Transcript of December 7, 2021 hearing)). While ULICO had a good-faith basis to believe that all of the Defendants were liable for their involvement in the fraudulent scheme, it took filing this lawsuit for some of those parties to turn over information regarding fraudulent transactions between the PBLA/ULICO Trust and Lindberg's shell companies. Thus, to the extent any delay occurred, it was the natural result of obtaining information from over 90 Defendants.

Moreover, the parties are not even at issue and no pre-trial deadlines or trial dates have been set. While it is true that all Defendants have fully-briefed motions to dismiss pending before the Court, this amendment adds more detail to ULICO's claims, which may resolve any purported issues raised by Defendants in their motions. This would have the effect of actually *improving* judicial economy, as the case could simply move forward without the Court having to decide many motions to dismiss.

Additionally, ULICO did not fail to cure deficiencies by prior amendments. This is especially true because ULICO's complaint has never been dismissed, and no deficiencies were

6

asserted before the sole prior amendment. ULICO filed an original complaint and then amended as of right to add more defendants. ULICO added these Defendants not to cure any asserted deficiencies in its complaint, but because adding all Defendants is the *only* way for ULICO to plead a claim that fully encompasses the breadth of Lindberg's fraud and therefore gain complete relief. The parties were, and still are, *required* to be joined under Federal Rule of Civil Procedure 19(a)(1)(A) (made applicable to this action by Rule 7019).

Following that amendment, the motions to dismiss were filed, alleging deficiencies in ULICO's complaint for the first time. ULICO maintains that its Amended Complaint is sufficient to state claims against all parties under Federal Rule of Civil Procedure 8(a), and is otherwise not deficient. Notwithstanding that, to the extent alleged deficiencies exist, the Court provided guidance with respect to such deficiencies at the January 20, 2022 hearing—the very hearing in which ULICO proposed filing a motion for leave to file its Second Amended Complaint. Therefore, ULICO had no reason or prior opportunity to cure any alleged deficiency in its complaint.

Finally, no undue prejudice would result to Defendants by granting the motion—the case is in its procedural infancy, and Defendants have not waived any discovery or defenses because of Plaintiff's operative complaint. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971) (finding prejudice where the plaintiff sought leave to amend its complaint during trial to change its theory of recovery). As such, ULICO should be given at least this chance to plead its allegations with particularity and resolve any alleged deficiencies. *Luce*, 802 F.2d at 56-57 (where plaintiff specifically sought leave to amend to allege facts with particularity, dismissal without granting leave to amend was abuse of discretion); *Abbatiello v. Monsanto Co.*, 571 F. Supp. 2d 548, 552, 555 (S.D.N.Y. 2008) (granting plaintiffs' motion for

leave to file a second amended complaint to "augment its factual allegations"); *Mills v. Polar Molecular Corp.*, 1991 WL 280235, at *2-3 (S.D.N.Y. Dec. 23, 1991) ("The Plaintiffs have not yet been afforded an opportunity to have their pleadings conform with Rule 9(b). The prior amendments to both complaints were merely supplemental. The Plaintiffs' motion to amend is therefore granted. . . .").

While ULICO's complaint has not been dismissed, the alleged deficiencies asserted in the pending motions to dismiss are mooted by ULICO's SAC. Even in instances where a court has dismissed a complaint for a failure to state a claim, it is extremely rare for a court not to grant leave to amend at least once following a dismissal for failure to state a claim, particularly when the defendant did not argue that the plaintiff *could* not state a claim, but only that the plaintiff's complaint as written *did* not state a claim. *See, e.g., Ricciuti v. N.Y.C. Trans. Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[W]hen a complaint is dismissed pursuant to Rule 12(b)(6) and the plaintiff requests permission to file an amended complaint, that request should ordinarily be granted. . . it is rare that such leave should be denied. . . . (citations omitted); *Luce,* 802 F.2d 49 at 56 ("In cases where [leave to amend] has not been granted, plaintiffs have usually already had one opportunity to plead fraud with greater specificity"). Based on the foregoing, ULICO did not engage in any undue delay, bad faith, or failure to cure deficiencies in its prior amended complaint; therefore, this Court should grant ULICO's Motion for Leave to File a Second Amended Complaint.

**C. This Court Should Grant Plaintiff Leave to File Because Amendment is Not Futile.**

The proposed Second Amended Complaint contains allegations that definitively establish this Court's subject matter jurisdiction over this matter; thus, Defendants' anticipated argument that amendment would be futile for lack of subject matter jurisdiction is without merit. This

8

Court possesses "related to" subject matter jurisdiction, pursuant to 28 U.S.C. § 1334(b), which holds that federal courts have jurisdiction over "all civil proceedings … arising in or related to cases under title 11." 28 U.S.C. § 1334(b); *see Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (holding that the court had "related to" jurisdiction to hear a dispute over a supersedeas bond that the debtor "ha[d] no present or future interest in" because it would allow for the debtor's bankruptcy reorganization to proceed in a more orderly way); *Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572, 579 (2d Cir. 2011); *see also In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (an adversary proceeding is "related to" a bankruptcy case "if the action's outcome might have any conceivable effect" or "any significant connection" to the bankrupt estate.).

At this moment, ULICO has a final and unsatisfied judgment in its favor against PBLA in the amount of $524,009,051.26 plus interest, and is therefore PBLA's single largest creditor. The new allegations in the Second Amended Complaint state a meritorious claim against the Defendants and demonstrate, in significant detail, the existence of Lindberg and his associates' fraudulent scheme through PBLA. The new allegations substantiate ULICO's claims and demonstrate that this Court possesses "related to" jurisdiction because this proceeding, if successful, will significantly reduce the total liabilities of PBLA's bankruptcy estate. As a result, this action has a real, direct effect on PBLA's liabilities as it relates to PBLA's bankruptcy estate. *See, e.g., In re Margulies*, 476 B.R. 393, 399 (Bankr. S.D.N.Y. 2012) ("Thus, '[a]n action is related to the bankruptcy case if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'); *In re WorldCom, Inc. Securities Lit.*, 293 B.R. 308, 323 (S.D.N.Y. 2003) ("The potential alteration of the liabilities of the estate and

change in the amount available for distribution to other creditors is sufficient to find that litigation among non-debtors is 'related to' the bankruptcy proceeding.").[6]

Further, to the extent Defendants argue that this Court lacks subject matter jurisdiction to rule on the instant motion, a federal court may grant leave for a plaintiff to amend a complaint in order to allege facts clearly establishing that the court possesses subject matter jurisdiction over the action. *See Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252-53 (2d Cir. 1991) (reversing district court to the extent it denied request for leave to amend to cure defects related to subject matter jurisdiction). *Samaha v. Presbyterian Hosp. in City of New York*, 757 F.2d 529, 531 (2d Cir. 1985) (same); *Yun Chi v. Parajon*, 2020 WL 6700584, at *1 (S.D.N.Y Nov. 13, 2020) (dismissing plaintiffs' action due to a lack of subject matter jurisdiction only after "the Court granted plaintiffs leave to file an amended complaint under [Fed. R. Civ. P. 15(a)(2)], to . . . allege the citizenships of all members of [the defendants]. . . .").

Finally, ULICO has standing to bring this case. ULICO seeks to use statutory remedies from both New York and North Carolina to void the many transactions between PBLA, Defendants, and the ULICO trust, thus putting the trust back into the position it was in before it was looted by Lindberg and his co-conspirators[7]. These statutes give standing to creditors like ULICO. *See* N.C. Gen. Stat. § 39-23.4 ("A transfer made or obligation incurred by a debtor is voidable *as to a creditor. . .*") (emphasis added); N.Y. Debt. & Cred. Law § 273(a) (same). Creditors are also allowed to bring state law actions against third-parties so long as those actions relate to the bankruptcy case. *See Parmalat Capital Finance*, 639 F.3d at 579 (allowing a

---

[6] Specifically, ULICO stands to collect on its $524,009,051.26 judgment from PBLA, and PBLA's JPLs agreed with ULICO that any funds recovered by ULICO in this action would "inure to the benefit of the JPLs," thus reducing the amount PBLA owed to ULICO under the judgment. See ECF 111-1 ¶ 2. Even if this Court determines that the settlement agreement between ULICO and the JPLs, in isolation, does not confer jurisdiction, it does bolster ULICO's position that this adversary proceeding more than "conceivably impacts" PBLA's estate.
[7] Note that the SAC contains counts specifically brought under both North Carolina and New York law.

10

creditor to bring, among other things, a fraudulent transfer claim under state law against the debtor's accountants in a Section 304 proceeding); *In re Hellas Telecom. (Luxembourg) II SCA*, 524 B.R. 488, 515 (Bankr. S.D.N.Y. 2015) (allowing a creditor to bring a series of fraudulent transfer actions under New York state law in an adversary proceeding related to a Chapter 15 case); *In re Harvard Knitwear, Inc.*, 193 B.R. 389, 400 (Bankr. E.D.N.Y 1996) (permitting adversary proceeding against defendants where creditor sought to pursue state law constructive fraudulent conveyance claim). Consequently, Defendants' anticipated argument that amendment would be futile for lack of subject matter jurisdiction is without merit, and this Court should grant ULICO's Motion for Leave to File a Second Amended Complaint.

## V.    CONCLUSION

For the reasons stated, this Court should grant ULICO's Motion for Leave to File a Second Amended Complaint.

Dated: New York, New York
February 25, 2022

Respectfully submitted,

**CLYDE & CO US LLP**

/s/ Clinton E. Cameron
Clinton E. Cameron (*pro hac vice*)
Meghan C. Dalton (*pro hac vice*)
Clyde & Co US LLP
55 W. Monroe
Suite 3000
Chicago, IL 60603
Tel: 312-635-7000
Clinton.Cameron@clydeco.us
Meghan.Dalton@clydeco.us

Christopher Carlsen
Clyde & Co US LLP
405 Lexington Avenue
16th Floor
New York, NY 10174

Tel: 212-710-3900
Christopher.Carlsen@clydeco.us

*Counsel for Plaintiff ULICO*