# Exhibit B

STATE OF MICHIGAN
CIRCUIT COURT FOR THE 30TH JUDICIAL CIRCUIT
INGHAM COUNTY

ANITA G. FOX, DIRECTOR OF THE
MICHIGAN DEPARTMENT OF
INSURANCE AND FINANCIAL SERVICES,

    Petitioner,

v

PAVONIA LIFE INSURANCE
COMPANY OF MICHIGAN,

    Respondent.

_____/

Case No. 19-504-CR

HON. WANDA M. STOKES

[IN REHABILITATION]

## STIPULATED ORDER
## APPROVING SALE OF SUBSIDIARY ENTITY
## AND ENTRY INTO RELATED SERVICES AGREEMENT

At a session of said Court held in the Circuit Courtrooms
for the County of Ingham, State, of Michigan on the
24 day of June 2021.

PRESENT: HONORABLE WANDA M. STOKES, CIRCUIT COURT JUDGE

WHEREAS, Anita G. Fox, Director (the "**Director**"[1]) of the Michigan Department of Insurance and Financial Services ("**DIFS**") and Court-appointed and statutory Rehabilitator (the "**Rehabilitator**") of Pavonia Life Insurance Company of Michigan ("**Pavonia Life**"), and its wholly-owned subsidiary Global Bankers Insurance Group, LLC ("**ServiceCo**" or the "**Company**," and collectively with

---

[1] All initially capitalized terms shall have the meaning(s) ascribed to them in this Order or the Court's Order of June 25, 2020.

Pavonia Life, the "**Pavonia Entities**"), Aspida Holdco LLC ("**Aspida**"), and GBIG Holdings, Inc. ("**GBIG Holdings**") (each of the Rehabilitator, Aspida and GBIG Holdings is a "ISA Party" and are collectively the "**ISA Parties**"), by and through their respective attorneys, have stipulated to the entry of this Order Approving Sale (the "**Sale**") of Subsidiary Entity ServiceCo from the rehabilitation estate as contemplated by and pursuant to this Court's Order (i) Approving Plan of Rehabilitation and Related Closing of Stock Purchase Agreement; (ii) Approving Actions of the Rehabilitator; and Upon Closing of Stock Purchase Agreement (iii) Terminating Rehabilitation; and (iv) Discharging the Rehabilitator and Granting Related Relief (the "**June 25 Order**"); provided that GBIG Holdings does not stipulate to paragraphs 15 and 21 hereof;

WHEREAS, the Court has reviewed this order **("Order")**;

WHEREAS, the Court being otherwise fully advised; and

WHEREAS, if any of the following Findings constitute Conclusions, the Court deems them as such, and *vice versa*.

## FINDINGS & CONCLUSIONS

1.  The Rehabilitator prepared a Plan of Rehabilitation ("**Plan**") to effectuate the reorganization and transformation of the Pavonia Entities for the protection and benefit of the companies, their policyholders, and creditors. The Plan proposed the sale of the Pavonia Entities by GBIG Holdings, Inc. ("**GBIG Holdings**"), as seller, to non-affiliated third party, Aspida, a Delaware holding company that is an affiliate of Ares Management Corporation, as buyer.

2

2. The Plan intended to effect a change in ownership, management, and control of the Pavonia Entities, and implemented a process for resolving claims for "**Unscheduled Liabilities**" as defined in the Plan.

3. The Plan was undertaken as part of and pursuant to the State of Michigan's regulation of the business of insurance, in order to protect the interests of policyholders and to secure their contractual coverage.

4. Following entry of this Court's June 25, 2020 Order and subsequent orders entered on July 9, 2020, and July 14, 2020, Seller sought and was granted leave to appeal the July 9 and 14 orders to the Michigan Court of Appeals, which subsequently issued a stay of all proceedings herein ("**Stay**") and later vacated this Court's July 9 and 14 orders.

5. The Rehabilitator, Aspida and GBIG Holdings have reached a partial resolution of certain disputes between them ("**Interim Settlement**") and entered into an Interim Settlement Agreement ("**Interim Settlement Agreement**"), setting forth the terms of that agreement.

6. Pursuant to MCR 7.215(F), the Stay is of no further force or effect.

7. Upon the terms and conditions set forth in the Interim Settlement Agreement, the Rehabilitator, GBIG Holdings and Aspida seek to preserve the ongoing operations of ServiceCo, notwithstanding any delays resulting from pending litigation of disputes between them, and without any prejudice to such litigation and any ISA Party's rights or positions as described in the Interim Settlement Agreement.

8. The terms for a sale of ServiceCo to Aspida are set forth in the Interim Settlement Agreement and have been definitively memorialized in an LLC Unit Purchase Agreement (the "**Sale Agreement**"). Under such terms, and subject to the approval of this Court and the Director, the Rehabilitator shall cause Pavonia Life to sell convey, assign, transfer, and deliver to Aspida, and Aspida shall purchase, acquire, and accept from the Rehabilitator, all of Pavonia's right, title and interest in ServiceCo consisting of all of the outstanding membership units of ServiceCo (the "**Units**"), free and clear of all liens or other encumbrances, and ServiceCo shall resume its operations subject to the applicable "**Scheduled Liabilities**" as defined in the Plan and previously determined during these rehabilitation proceedings.

9. At the closing of the Sale (the "**Closing**"), Aspida shall pay $5.5 million as the "**Purchase Price**" to the Pavonia Life rehabilitation estate, which the Parties agree is a fair and reasonable value for ServiceCo. Aspida will also pay certain long-term incentive agreements to ServiceCo management.

10. Aspida and the Rehabilitator also have negotiated, and Pavonia Life and ServiceCo shall enter into, a services agreement ("**Services Agreement**"), pursuant to which ServiceCo shall provide administrative and operational services for Pavonia Life reasonably necessary for its continued operation in consideration for a monthly fee to be paid to ServiceCo totaling $9.11 million per year.

11. Closing on the Sale will effect the separation of ServiceCo from the "**NC Insurer Affiliates**" (as defined in the Plan) and Greg Lindberg, and will restore the operations of ServiceCo. Closing on the Sale will ensure the protection

4

of Pavonia Life's policyholders, creditors and the public. The separation will be achieved, at least in part: (i) by restoring to ServiceCo its applicable portion of the Scheduled Liabilities (the "**ServiceCo Scheduled Liabilities**") and the ServiceCo Assets (defined below), and (ii) based upon the fact that all Unscheduled Liabilities were adjudicated through the "**Claims Procedure**" as defined in the Plan, regardless whether a "**Claim**" was filed as defined and provided for in the Plan. (ServiceCo's liability or obligation for any Unscheduled Liabilities is "**Unscheduled ServiceCo Liabilities**.")

12. The restoration of its assets and liabilities, along with control of its business, to ServiceCo are express and integral conditions of, and will facilitate, the Sale. The Sale will facilitate the rehabilitation of the Pavonia Entities.

13. The terms and conditions of the Interim Settlement Agreement and the Sale Agreement (the "**Interim Settlement and Sale Agreements**") are consistent with the rehabilitation objectives of the Pavonia Entities and do not have a material adverse effect on the Plan or Pavonia Estate.

14. The Rehabilitator has determined that the Interim Settlement and Sale Agreements will further the purposes of this rehabilitation proceeding. The Rehabilitator has therefore requested that the Court enter this Order approving the Interim Settlement and Sale Agreements and directing that simultaneously with the Closing: (a) the applicable ServiceCo Scheduled Liabilities will be restored to ServiceCo and become the obligations of ServiceCo; (b) no other liabilities will be restored to ServiceCo, except as otherwise provided for herein (*i.e.*, the ServiceCo

Permitted Claims, as defined below); and (c) after Closing ServiceCo will not have any obligations for any other Unscheduled Liabilities. The Rehabilitator has further requested that, based on the adjudication of any and all filed claims for Unscheduled Liabilities, unless otherwise specifically addressed herein, the Court bar the assertion of any further Unscheduled Liabilities that could have been filed, but were not, and forever release, discharge, bar, and extinguish any liability for unfiled claims (if any) for Unscheduled ServiceCo Liabilities.

15. The Rehabilitator has also determined that the Services Agreement will further the purposes of this rehabilitation proceeding. The Rehabilitator has therefore requested that the Court enter this Order approving the Services Agreement.

16. The Rehabilitator has further requested that this Order provide for the release and discharge from, and extinguishment of, any pre-rehabilitation and pre-Closing liability or responsibility for ServiceCo, GBIG Holdings, Aspida, and their respective past, present and future parents, owners, members, equity holders, subsidiaries, affiliates, directors, officers, managers, employees, successors, agents or assignees in such capacities (collectively, "**Affiliates**"), and their representatives in the transaction for any Unscheduled ServiceCo Liabilities; and include injunctions issued in favor of ServiceCo, GBIG Holdings, their Affiliates, and their representatives in the transaction precluding the assertion against them of any claims for Unscheduled ServiceCo Liabilities by any and all "**Unscheduled Liabilities Claimants**" and "**Unscheduled Liabilities Potential Claimants**,"

except for such Permitted Claims as are described or defined in the Plan and in the Court's June 25 Order <u>and</u> are applicable to ServiceCo (the "**ServiceCo Permitted Claims**").

17. Aspida has represented that it would not enter into the Interim Settlement or Sale transactions or proceed with the Closing without the restoration provisions, releases, discharges and extinguishment of liability, and injunctive relief that are set forth in this Order. Such restoration provisions, releases, discharges and extinguishment of liability, and injunctions are provided for in MCL 500.8105(1) and 500.8121, are narrowly tailored to effectuate the Sale transaction and further the rehabilitation, and are fair, equitable, and just under the facts and circumstances of this case where a plan of rehabilitation has been approved and a claims procedure effected.

18. The Sale is proposed in partial achievement of the Plan, and the balance of the Plan remains subject to further ruling by this Court.

19. Pursuant to MCL 500.8104(3), the Court has the power to enter this Order related to the rehabilitation of Pavonia Life.

20. Upon Closing, neither Greg Lindberg nor any other "**Global Group**" controlling person (as defined in the Plan) will have, nor may they exercise, any control whatsoever over ServiceCo.

21. Aspida has represented, and the Rehabilitator believes, that Aspida acted in good faith in the Sale transaction.

22. No evidence has been presented to the Rehabilitator or the Director that the Sale will render either of the Pavonia Entities insolvent.

23. The Sale does not involve payments on account of antecedent debt and is not made with intent to hinder, defraud, or delay any creditor of GBIG Holdings, the Pavonia Entities, or the Estate. Upon Closing, ServiceCo will have been acquired in compliance with applicable law.

24. The consideration that Aspida is providing is (a) fair and constitutes reasonably equivalent value for the Units it is acquiring in ServiceCo from the Rehabilitator; and (b) good, valid, and valuable and allows for the transaction to close and protects the Estate which receives the Purchase Price.

25. The release, discharge, and extinguishment of Aspida's liability from all Unscheduled ServiceCo Liabilities, reinforced by injunctive relief, are necessary and appropriate to facilitate and protect the transaction.

26. Restoration of the ServiceCo Assets (as defined below) to ServiceCo effective upon the Closing will not violate any applicable fraudulent transfer, voidable preference, voidable transaction, or other avoidance statute under federal (including title 11 of the United States Code) or state law.

27. The Rehabilitator has requested that the Court declare, order, and decree that upon Closing, Aspida shall be the owner of legal and beneficial title to the acquired Units, and that such Units be free and clear of any liens, claims, interests, charges, and any other encumbrances, including but not limited to Unscheduled ServiceCo Liabilities.

28. The terms and conditions of the Sale Agreement and the relief requested by the Rehabilitator in the Motion are consistent with, further and enforce the terms of this Court's June 25 Order.

29. The Sale will accomplish the restoration of ServiceCo within the meaning of MCL 500.8116(1).

30. This rehabilitation, the Interim Settlement, the Sale transaction, and this Order are all undertaken as part of and pursuant to the State of Michigan's regulation of the business of insurance, and thus to protect the interests of policyholders to secure their contractual coverage, and to protect the interests of creditors and the public.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

A. The Court ACCEPTS this Stipulation.

B. The Court approves the Services Agreement as requested by the Rehabilitator in Paragraph 15 above.

C. The Court authorizes the Parties to enter into and execute the termination of intercompany agreements as described by Section 2.07 of the Interim Settlement Agreement.

D. Upon Closing, the terms of the Sale Agreement are and forever will be binding on and enforceable against the Estate, the Rehabilitator, Pavonia Life's policyholders, all actual and potential creditors of the Pavonia Entities, GBIG Holdings, Aspida, all other potentially interested persons, and their respective

parents, owners, members, equity holders, subsidiaries, affiliates, directors, officers, managers, employees, successors, agents or assignees in such capacities, even if: (i) the transaction, the Sale Agreement, the Plan or this rehabilitation proceeding is later deemed to have affected or impaired any rights or claims of such person; or (ii) such person makes a later demand for payment of any claim or has made (or attempted to make) an appearance in this rehabilitation proceeding at any time.

E. For purposes of Closing and effective prior to Closing, and with this Court's express approval, ServiceCo liabilities and assets will be restored to the Company, such that, effective upon Closing:

> ServiceCo's **"Post-Closing Liabilities"** shall include only ServiceCo Scheduled Liabilities and ServiceCo Permitted Claims, if any.
>
> ServiceCo shall be restored with, and vested in, and hold all right, title and interest in and to its respective properties and assets, including, without limitation, all of the rights, title, and interest in any and all: (i) owned and leased real property; (ii) accounts and notes receivable; (iii) all tangible personal property; (iv) contracts to which ServiceCo is a party; (v) intellectual property; (vi) licenses, permits, franchises, approvals, registrations, authorizations, and consents; (vii) books and records, ledgers, files, documents, correspondence, and business and accounting records of every kind (including all financial, business, and marketing plans), all advertising, marketing, and promotional materials, all invoices, bills of sale, and other instruments and documents; (viii) claims (including insurance benefits), causes of action, choses in action, rights of recovery, rights of recoupment, and rights of set-off; (ix) guarantees, warranties, indemnities, and similar rights in favor of ServiceCo; (x) goodwill as going concerns and all other intangible property; (xi) all prepaid expenses, credits, advance payments, security, deposits, charges, sums, and fees; (xii) cash, cash equivalents, securities, and investments; (xiii)

10

prepayments, prepaid expenses (including, without limitation, prepaid insurance premiums), deferred charges, advance payments, and security deposits; (xiv) insurance, reserves, and deposits; and (xv) all other property not referred to above which is either represented on ServiceCo's balance sheets or acquired by ServiceCo thereafter (collectively, "**ServiceCo Assets**").

F.  Effective upon Closing, the restoration of the ServiceCo Assets to ServiceCo and the sale of the Units to Aspida shall be made free and clear of all Unscheduled Liabilities (including, but not limited to, liens, encumbrances, claims, charges, and other interests of any nature, type, or kind whatsoever, whether arising under any contract, common law, statute, law, in equity, or otherwise) that have or could have been asserted against ServiceCo at any time before or during the Rehabilitation or when such company and its assets and liabilities were within the title, possession, or control of the Rehabilitator or were part of the Estate, except for the ServiceCo Permitted Claims.

G.  Upon Closing, ServiceCo shall be vested with good, valid, and marketable title in and to all ServiceCo Assets, free of any and all liens, security interests, or encumbrances of whatever kind or nature, adverse claims, defenses (including, without limitation, rights of setoff and recoupment), and interests of third parties of any kind or nature, other than the Scheduled ServiceCo Liabilities and ServiceCo Permitted Claims, if any.

H.  Effective upon Closing, ServiceCo, GBIG Holdings, Inc., Aspida, their Affiliates, and their representatives in the transaction shall be fully and unconditionally released and discharged from, and have absolutely no responsibility

11

or liability whatsoever for any Unscheduled ServiceCo Liabilities, except as provided herein in relation to any ServiceCo Permitted Claims, and the assets of the Pavonia Entities shall not be chargeable for any Unscheduled ServiceCo Liabilities. No person or entity shall have a valid claim or cause of action against the ServiceCo Assets, GBIG Holdings, Aspida, their Affiliates, or their representatives in the transaction for any claim related to, or arising in connection with, directly or indirectly, any Unscheduled ServiceCo Liabilities, except as provided herein in relation to any ServiceCo Permitted Claims, and neither ServiceCo, GBIG Holdings, Aspida, their Affiliates, or their representatives in the transaction shall have any future responsibility or liability whatsoever for Unscheduled ServiceCo Liabilities, and are hereby fully released and discharged therefrom, except as provided herein in relation to any ServiceCo Permitted Claims.

I. Effective upon Closing, to protect the transaction and in support of the rehabilitation of the Pavonia Entities, and consistent with MCL 500.8105(1)(c), (f), and (k), the Court issues the following injunctions, which complement the Rehabilitation Order's injunctions and the injunctions in the Court's June 25, 2020 Order entered previously in these proceedings:

> All persons and entities, including, but not limited to, Estate creditors, contract counterparties, and other interested persons, and without limitation their respective parents, owners, members, equity holders, subsidiaries, affiliates, directors, officers, managers, employees, successors, agents or assignees in such capacities, and all persons in active concert or participation with any of them, whether in the State of Michigan or elsewhere, except as permitted by this Order, are permanently restrained and enjoined from: (i)

pursuing in any manner any claim or commencing or continuing in any manner or in any place any suit, action, or other proceeding, whether legal, equitable, administrative, or otherwise, whatsoever relating directly or indirectly to Unscheduled ServiceCo Liabilities (except for any ServiceCo Permitted Claims) as defined or described in the Rehabilitator's Plan, submissions to the Court, and this Court's Orders, against GBIG Holdings, the acquired Units, the Assets of the Pavonia Entities, the Pavonia Entities, Aspida, any of their respective Affiliates, or their respective representatives in the transaction; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the acquired Units, the Seller, the Assets of the Pavonia Entities, the Pavonia Entities, Aspida, or their respective Affiliates or representatives in the transaction relating directly or indirectly to Unscheduled ServiceCo Liabilities (except for the Permitted Claims) as defined in the Rehabilitator's Plan, submissions to the Court, and this Court's Orders; or (iii) creating, perfecting, or enforcing any lien or encumbrance with respect to the acquired units or the Assets of the Pavonia Entities relating directly or indirectly to Unscheduled ServiceCo Liabilities (except for any Permitted Claims) as defined or described in the Rehabilitator's Plan, submissions to the Court, and this Court's Orders.

All persons and entities are hereby forever prohibited and enjoined from taking any action or omitting to act that would adversely affect or interfere with the ability of the Rehabilitator to effect this Sale transaction or that would interfere with the transaction in any way.

Any person or entity attempting to pursue a claim or commence or continue any action or proceeding in violation of these injunctions in this Order shall cause such persons and/or entities to be subject to contempt proceedings before this Court, applicable fines, and other sanctions.

J.  Effective upon Closing, each of Aspida and GBIG Holdings, for itself and its respective Affiliates, shall be deemed to have released all claims, rights, or causes of action that any of them have or could have asserted, or that could in the

future be asserted, against GBIG LLC, the Rehabilitator, the Director, the Department of Insurance and Financial Services ("DIFS"), or any of their respective officers, employees, attorneys, or agents, including Unscheduled Liabilities, to the extent relating to or arising from GBIG LLC.

K.    Effective upon Closing, Aspida shall hold harmless and indemnify the Rehabilitator and her officers, employees, attorneys, or agents, from and against all losses arising from or related to the assertion of any claim that is the subject of the release provided in the foregoing Paragraph (I).

L.    The Sale Agreement (and each of the instruments or agreements contemplated by it and delivered pursuant to it) may be modified, amended, or supplemented in a writing signed by the parties to the Sale Agreement and in accordance with its terms and with notice to the Director, but without notice to or order of this Court; <u>provided, however,</u> that any such modification, amendment, or supplement will not have a material adverse effect on the Plan or the Estate unless such modification, amendment or supplement is submitted to and approved by separate order of this Court.

M.    The Court will retain exclusive jurisdiction over this matter for all purposes necessary to effectuate and enforce its orders, including this Order. Without limiting the generality of the above, the Court's continuing jurisdiction will include:

> The right to hear and determine all claims, controversies, disputes, and demands arising out of or relating to this Order and the Pavonia Entities' rehabilitation proceedings; and

14

        The taking of any action necessary to ensure the continued vitality and legality of the Sale Agreement, the transaction, the Plan, and this Order.

## Authorization of Service

N.     The Court authorizes the Rehabilitator's service of this Order upon:

- GBIG Holdings, Inc., c/o counsel Zachary Larsen
- Aspida Holdco LLC, c/o counsel Stephen Schwab
- Any other potentially interested individuals or entities by posting electronic copies on the DIFS website www.michigan.gov/difs, under the section "Who We Regulate," the subsection "Receiverships," and the sub-subsection "Pavonia Life Insurance."

O.     The Court finds that service in the foregoing manner is reasonably calculated to give the listed individuals and entities, together with any other potentially interested individuals or entities, actual notice of the Order and is otherwise reasonable under the circumstances.

## Additional Provisions

P.     This Order shall be binding on all persons that may have an interest in the Pavonia Entities and all persons that received actual or constructive notice of the Motion, and while specifically excepting claims by the U.S. Internal Revenue Service, include without limitation the United States and its agencies (other than the U.S. Internal Revenue Service), all parties in interest, all federal, state, and local governmental entities and fiscal intermediaries thereof, and any other holders of Unscheduled Liability claims of any kind, whether known or unknown, asserted or unasserted, disputed or undisputed, matured or unmatured, liquidated or unliquidated, fixed or contingent, arising in law or equity. This Order and the foregoing terms hereof shall bind each and every one of the foregoing persons or

entities, without limitation, regardless of whether or not: (a) this Order is later deemed to have impaired any rights or claims of such persons or entities; (b) such persons or entities have responded to the Motion or participated in any hearing thereon; and/or (c) such persons or entities make a later demand for payment of any claim or have made (or attempted to make) an appearance in the rehabilitation proceeding at any time.

Q.    This Order is without any prejudice to the ongoing litigation between the parties concerning the disposition of Pavonia and any ISA Party's rights or positions in that litigation as described in the Interim Settlement.

R.    GBIG Holdings, Aspida, and the Rehabilitator have fully participated through counsel in the drafting of this Order and hereby waive any right to appeal this Order once entered.

16

IT IS SO ORDERED.

This Order does not resolve the last pending claim and does not close this case.

_____
Honorable Wanda M. Stokes
Circuit Court Judge

STIPULATED AND AGREED this 16th day of June 2021, by:

Pavonia Life Insurance Company of Michigan, in Rehabilitation

By: *Jim Gerber*
Name: Jim Gerber
Title: Special Deputy Rehabilitator

GBIG Holdings, Inc.

By: _____
Name:
Title:

Aspida Holdco, LLC

By: _____
Name:
Title:

IT IS SO ORDERED.

> This Order does not resolve the last pending claim and does not close this case.

_____
Honorable Wanda M. Stokes
Circuit Court Judge

STIPULATED AND AGREED this 16th day of June 2021, by:

Pavonia Life Insurance Company of Michigan, in Rehabilitation

By: /s/ Jim Gerber
Name: Jim Gerber
Title: Special Deputy Rehabilitator


GBIG Holdings, Inc.

_____
Peter R. Kupelian (P31812)
Clark Hill PLC
151 S. Old Woodward Avenue, Suite 200
Birmingham, MI 48009
(248) 530-6336
pkupelian@clarkhill.com

Ronald A. King (P45088)
Zachary C. Larsen (P72189)
Clark Hill PLC
212 E. Cesar E. Chavez Ave.
Lansing, MI 48906
(517) 318-3015
rking@clarkhill.com
zlarsen@clarkhill.com
Counsel for GBIG Holdings, Inc.

DocuSign Envelope ID: A699322E-B351-49AF-8CB3-3EF367304597

**IT IS SO ORDERED.**

This Order does not resolve the last pending claim and does not close this case.

_____
Honorable Wanda M. Stokes
Circuit Court Judge

**STIPULATED AND AGREED** this 16th day of June 2021, by:

Pavonia Life Insurance Company of Michigan, in Rehabilitation

By:_____
Name:
Title:

GBIG Holdings, Inc.

By:_____
Name:
Title:

Aspida Holdco, LLC

By: _/s/ Anton Feingold_____
Name:   Anton Feingold
Title:   Authorized Signatory

17