Peter Friedman (admitted *pro hac vice*)
Nicholas Hendrix (admitted *pro hac vice*)
Lauren M. Wagner
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email:  pfriedman@omm.com
            nhendrix@omm.com
            lwagner@omm.com

*Attorneys for Defendant Morgan Stanley Senior Funding, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PB Life and Annuity Co. Ltd., *et al.*,<br><br>            Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 20-12791 (LGB)<br>(Jointly Administered) |
| Universal Life Insurance Co.,<br><br>            Plaintiff,<br><br>v.<br><br>Global Growth Holdings, Inc., *et al.*,<br><br>            Defendants. | Adv. Proc. No. 21-01169<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

THE SAC'S SINGLE NEW ALLEGATION AGAINST MORGAN STANLEY ........................ 2

ARGUMENT .................................................................................................................................. 3

    I.    AMENDMENT WOULD BE FUTILE BECAUSE EITHER ULICO LACKS STANDING TO BRING THE SAC'S CLAIMS OR THE COURT LACKS JURISDICTION TO ADJUDICATE THEM. ........................... 4

        A.    The Court Lacks Subject Matter Jurisdiction Over ULICO's Claims. ...................................................................................... 5

        B.    Even if the Court Had Jurisdiction, ULICO's Claims Would Violate the Automatic Stay and Recognition Order. .......... 7

    II.    AMENDMENT WOULD BE FUTILE BECAUSE EACH CLAIM AGAINST MORGAN STANLEY FAILS AS A MATTER OF LAW. ................ 8

        A.    The Claims for Voidable Transfer Fail (Counts I–IV). ............................ 9

        B.    The Claims for Unjust Enrichment (Count V) and Constructive Trust (Count VII) Fail. .......................................................... 12

CONCLUSION ............................................................................................................................. 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AEL Fin., LLC v. Tessier*,
   2007 WL 2427867 (S.D. Tex. Aug. 22, 2007) .................................................................. 6

*AEP Energy Servs. Gas Holding Co. v. Bank of A., N.A.*,
   626 F.3d 699 (2d Cir. 2010). ............................................................................................. 3

*Benfield v. Mocatta Metals Corp.*,
   1992 WL 177154 (S.D.N.Y. July 13, 1992) .................................................................... 3

*Christy v. Alexander & Alexander of N.Y., Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*,
   130 F.3d 52 (2d Cir.1997) .............................................................................................. 10

*Delaware Tr. Co. v. Wilmington Tr., N.A.*,
   534 B.R. 500 (S.D.N.Y. 2015) ......................................................................................... 6

*Graham v. Take-Two Interactive Software, Inc.*,
   2020 WL 408408 (S.D.N.Y. Jan. 24, 2020) ............................................................... 9, 12

*Hayden v. County of Nassau*,
   180 F.3d 42 (2d Cir. 1999) ............................................................................................... 3

*In re Harvard Knitwear, Inc.*,
   193 B.R. 389 (Bankr. E.D.N.Y 1996) ............................................................................. 5

*In re Hellas Telecom. (Luxembourg) II SCA*,
   524 B.R. 488 (Bankr. S.D.N.Y. 2015) ....................................................................... 6, 12

*In re Lyondell Chem. Co.*,
   503 B.R. 348 (Bankr. S.D.N.Y. 2014) ............................................................................ 9

*In re Manshul Constr. Corp.*,
   225 B.R. 41 (Bankr. S.D.N.Y. 1998) .............................................................................. 6

*In re Trib. Co. Fraudulent Conv. Litig.*,
   818 F.3d 98 (2d Cir. 2016) ............................................................................................... 9

*Kirschner v. Large Shareholders (In re Trib. Fraudulent Conv. Litig.)*,
   10 F.4th 147 (2d Cir. 2021) ............................................................................................ 11

*Lerman v. Chuckleberry Pub., Inc.*,
   544 F. Supp. 966 (S.D.N.Y. 1982), *rev'd on other grounds*, 745 F.2d 123 (2d Cir. 1984) ................................................................................................................................ 3

# TABLE OF AUTHORITIES
(continued)

Page(s)

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007) ............................................................................................. 3

*Mervyn's LLC v. Lubert-Adler Group IV LLC (In re Mervyn's Holdings LLC)*,
  426 B.R. 96 (Bankr. D. Del. 2010) .................................................................................. 9

*Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*,
  330 F.3d 548 (3d Cir. 2003) ............................................................................................. 5

*Parmalat Capital Fin. Ltd. V. Bank of Am. Corp.*,
  639 F.3d 572 (2d. Cir. 2011) ............................................................................................ 6

*Ramos v. Walmart*,
  2013 WL 4541706 (E.D.Cal. Aug. 27, 2013) ................................................................. 7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff, LLC)*,
  631 B.R. 1 (Bankr. S.D.N.Y. 2021) ............................................................................... 10

*Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*,
  377 F.3d 209 (2d Cir. 2004) ........................................................................................... 12

**Statutes**

11 U.S.C. § 1521(a)(7) ............................................................................................................. 6

11 U.S.C. § 544 ........................................................................................................................ 5

28 U.S.C. § 157(b)(2) ............................................................................................................... 5

**Rules**

Fed. R. Civ. P. 15(a)(2) ............................................................................................................ 3

Morgan Stanley Senior Funding, Inc. ("Morgan Stanley") respectfully submits this Memorandum of Law in Opposition to the Motion for Leave to File Second Amended Complaint (ECF Doc. No. 159, the "Motion"), filed by Universal Life Insurance Company ("ULICO"), under Federal Rule of Bankruptcy Procedure 7015 and Federal Rule of Civil Procedure 15.

## PRELIMINARY STATEMENT[1]

ULICO's proposed Second Amended Complaint (ECF Doc. No. 159-1, the "SAC") is a failed attempt to rehash for a ***third time*** futile claims against Morgan Stanley. Morgan Stanley has already submitted two briefs establishing the numerous procedural and substantive reasons why ULICO cannot state a claim against Morgan Stanley.[2] Permitting ULICO to file the SAC would be futile because nothing in the proposed pleading changes that outcome.

ULICO claims that it seeks leave to file the SAC now because it learned about the deficiencies of its claims "for the first time" after the defendants' "motions to dismiss were filed." (Mot. at 7.) This is untrue. Morgan Stanley articulated the claims' fatal defects nearly ***seven months ago*** in an August 10, 2021 letter to the Court.[3] And while ULICO asserts its "proposed amendment adds significant detail to its Amended Complaint"— and contends (without any supporting evidence) that this detail was "not available to ULICO when the Amended Complaint was filed" — the SAC's scant allegations against Morgan Stanley are effectively unchanged from those in the Amended Complaint.

---

[1] Unless otherwise noted, all emphasis is added and all internal citations and quotations are omitted.

[2] *See* Memorandum of Law in Support of Morgan Stanley Senior Funding, Inc.'s Motion to Dismiss (ECF Doc. No. 124, the "Dismissal Motion"); Reply Memorandum in Further Support of Morgan Stanley Senior Funding, Inc.'s Motion to Dismiss (ECF Doc. No. 141, the "Dismissal Reply," and together with the Dismissal Motion, the "Dismissal Briefs").

[3] *See* ECF Doc. No. 25. Morgan Stanley also articulated to ULICO's counsel in a December 2021 letter Morgan Stanley's belief that the Amended Complaint lacked a good faith legal and factual foundation for any of the claims against Morgan Stanley.

-1-

Like the Amended Complaint, the SAC contains almost no allegations about Morgan Stanley. Like the Amended Complaint, the SAC contains no facts to suggest that Morgan Stanley had any involvement in the alleged fraudulent scheme carried out by Greg Lindberg, let alone benefitted from it.[4] Like the Amended Complaint, the SAC explicitly concedes that at most Morgan Stanley acted as a "conduit," processing transactions between entities in the ordinary course, without retaining any financial or other benefit from any alleged transfers.[5] The SAC also includes no facts supporting unjust enrichment or constructive trust claims. And nothing in the SAC changes the fact that under well-settled law, ULICO has no standing to bring its claims and the Court lacks jurisdiction to adjudicate them.

Because ULICO's proposed amendments in the SAC would be futile and cannot survive dismissal, the Court should deny ULICO's attempt to bring this case back to square one and burden this Court and Morgan Stanley with yet another deficient pleading.

**THE SAC'S SINGLE NEW ALLEGATION AGAINST MORGAN STANLEY**

The SAC contains exactly *one* "new" allegation concerning Morgan Stanley: that Morgan Stanley "received cash disbursements" on four dates, that were "initiated by PBLA from the PBLA ULICO 2017 bank account at Wilmington Trust totaling at least $825,000.00."[6] (SAC ¶ 125.) The lack of any additional factual allegations against Morgan Stanley is especially telling considering that ULICO had access to bank and financial records related to the alleged transfers before filing the initial Complaint, and claims that it has since received "many more documents"

---

[4] Capitalized terms not defined here have the meanings given to them in the Dismissal Motion.

[5] ULICO also fails to explain why it has filed a single SAC against all defendants with respect to a series of unrelated transactions. If the Court does permit ULICO to file any amendment complaint, it should require it to sue each defendant solely with respect to transfers it received.

[6] The allegation is also not new, as ULICO disclosed these transactions to Morgan Stanley during meet and confers nearly six months ago, in August 2021, and Morgan Stanley addressed the allegation in its Dismissal Reply. (*See* Dismissal Reply at 7–8.)

-2-

through "both formal discovery allowed by the Court and by information ULICO was able to procure in meet and confer sessions with Defendants," including Morgan Stanley. (Mot. at 2.) In other words, whatever excuses for pleading failures ULICO had when it sued Morgan Stanley are gone — and ULICO's claims still fail.

## ARGUMENT

ULICO asserts this Court should not evaluate the merits of the SAC in deciding ULICO's Motion, citing *Lerman v. Chuckleberry Pub., Inc.*, 544 F. Supp. 966, 968 (S.D.N.Y. 1982), *rev'd on other grounds*, 745 F.2d 123 (2d Cir. 1984)). (Mot. at 4.) This is wrong—*Lerman* expressly holds that leave to amend should be denied when a proposed amendment is legally insufficient on its face. *Id.* at 968. This flows from the rule that while a court should grant leave to amend a complaint "when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court has discretion to "deny leave for good reason, including futility." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). Courts therefore deny leave to amend as futile if "the proposed amendment fails to state a legally cognizable claim." *AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 726 (2d Cir. 2010). When considering whether a proposed amendment is "meritless" or "futile," or "legally insufficient" the Court conducts an inquiry comparable to the analysis on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *Benfield v. Mocatta Metals Corp.*, 1992 WL 177154, *1 (S.D.N.Y. July 13, 1992) ("If a proposed amendment would be insufficient to withstand a motion to dismiss, it is futile and leave to amend should be denied.").

As established below, the Court should deny ULICO's Motion because the SAC fails to cure the defects in the Amended Complaint's claims against Morgan Stanley, and amendment would thus be futile.

### I. AMENDMENT WOULD BE FUTILE BECAUSE EITHER ULICO LACKS STANDING TO BRING THE SAC'S CLAIMS OR THE COURT LACKS JURISDICTION TO ADJUDICATE THEM.

Despite ULICO's assertions to the contrary, ULICO's Motion and SAC fail to address the jurisdictional infirmities that Morgan Stanley raised in its Dismissal Motion. These failures would also require dismissal of the SAC if the Court were to grant ULICO leave to amend. In other words, even taking into account ULICO's proposed amendments—which overwhelmingly relate to parties other than Morgan Stanley—the threshold issues that doom ULICO's claims vis-a-vis Morgan Stanley remain. That is, at least one of three things remains true: (i) ULICO lacks standing to bring at least two of the claims in the SAC (specifically, the constructive trust and unjust enrichment claims (Counts V and VII)) because those claims belong to PBLA, (ii) the Court's recognition order in the PBLA chapter 15 case and the Bankruptcy Code foreclose ULICO's claims even if it sought derivative standing, or (iii) this Court lacks jurisdiction to rule on ULICO's claims.[7]

In the SAC, ULICO continues to predicate its right to pursue its claims on its status as a creditor of PBLA, alleging "ULICO, as beneficial and equitable owner of the proceeds within the Trust, was a creditor of PBLA from the time of the initial voidable transfer," and "PBLA . . . siphoned off more than $500 million of funds from the Trust . . . [to] defraud and delay recovery to creditors, including ULICO." (SAC ¶¶ 9, 120.) Based on those allegations, ULICO

---

[7] Each of these gating issues is explained at length in the Dismissal Motion at pages 4 through 15 and the Dismissal Reply at pages 2 through 6. Morgan Stanley will not rehash each of those arguments at length, but incorporates them here.

concludes, "as the beneficial owner of the proceeds within the Trust, and PBLA's sole creditor with respect to the trust, [ULICO] has standing to pursue the voidable transfer claims, among others, at issue in this case." (*Id.* ¶ 10.) Yet, those allegations are no different from the allegations in the Amended Complaint, which fail to articulate a particularized harm suffered by ULICO, but rather describe pre-petition transfers by PBLA that allegedly harmed each and every one of PBLA's pre-petition creditors. On that point the law is clear: common law claims asserted against Morgan Stanley in the SAC (Counts V and VII) belong solely to PBLA, and may only be pursued by the JPLs for the benefit of all of PBLA's creditors. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 565 (3d Cir. 2003) ("[The court] cannot conceive of a situation in which a creditor has independent standing which would allow it to pursue the recovery of property transferred or concealed by the debtor."). For the reasons stated in the Dismissal Briefs, ULICO has not sought to obtain (and indeed, could not obtain) derivative standing to pursue the unjust enrichment and constructive trust claims on behalf of the JPLs.

      A.      **The Court Lacks Subject Matter Jurisdiction Over ULICO's Claims.**

The proposed SAC is also futile because no subject matter jurisdiction exists here. ULICO cites several cases for the proposition that a creditor can pursue state law fraudulent transfer claims and that doing so gives rise to "related to" jurisdiction under federal law. While that state law provides creditors with the right to pursue fraudulent transfer claims, ULICO is misreading its cases. For example, *Harvard Knitwear* did not involve a creditor bringing claims at all: that case involved claims brought by a trustee under 11 U.S.C. § 544. *In re Harvard Knitwear, Inc.*, 193 B.R. 389, 400 (Bankr. E.D.N.Y. 1996). Claims under that statute are core proceedings for which federal jurisdiction necessarily exists. *See* 28 U.S.C. § 157(b)(2); *Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 513 (S.D.N.Y. 2015). ULICO's claims

-5-

are not brought under § 544, because 11 U.S.C. § 1521(a)(7) precludes that relief in chapter 15 cases. Meanwhile, *Hellas* addressed an attempt by a foreign representative (not a creditor) to bring fraudulent conveyance claims. The court there concluded that the foreign representative *could not* pursue those causes of action. *See In re Hellas Telecom. (Luxembourg) II SCA*, 524 B.R. 488, 495, 527–29 (Bankr. S.D.N.Y. 2015). Moreover, the *Hellas* court's conclusion regarding "related to" jurisdiction relied on the fact that if a foreign representative succeeded on its claims, it would have recovered assets for distribution to all creditors. *See id.* at 515. Here, ULICO is pursuing claims solely for its own benefit. The same was true in *Parmalat*. There, the foreign representatives pursued claims under Illinois state law which, if successful, would have recovered funds for the "benefit [of] the respective bankruptcy estates." *Parmalat Capital Fin. Ltd. V. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d. Cir. 2011). *Parmalat* says nothing about the Court's jurisdiction to adjudicate claims brought by a creditor solely for its own personal gain.

Because ULICO is seeking to recover assets that it has a unique claim to, this case is nothing more than a dispute between non-debtors with no impact on PBLA's property. *See AEL Fin., LLC v. Tessier*, 2007 WL 2427867, at *1 (S.D. Tex. Aug. 22, 2007) ("A third party action does not create 'related to' jurisdiction when the asset in question is not a property of the estate."); *In re Manshul Constr. Corp.*, 225 B.R. 41, 45 (Bankr. S.D.N.Y. 1998) ("[A] proceeding involving non-debtors will not be found to be related solely on the ground that it will affect a distribution to creditors unless that proceeding also involves property in which the debtor has a legally cognizable interest."). In the Motion, ULICO again points to a settlement agreement between itself and the JPLs as evidence of the impact on PBLA's bankruptcy estate. (Mot. at 10 n.6.) Morgan Stanley addressed this misguided argument in its Dismissal Reply,[8]

---

[8] *See* Dismissal Reply at 4–6.

-6-

and, as the Court recognized at the status conference, the Settlement Agreement cannot be used to manufacture subject matter jurisdiction.[9] And while ULICO is correct that courts will typically grant litigants leave to amend in order to allege facts to establish subject matter jurisdiction (Mot. at 10), the additional allegations proffered in the proposed SAC do not allege facts that cure jurisdictional deficiencies. *See Ramos v. Walmart*, 2013 WL 4541706, at *3 (E.D. Cal. Aug. 27, 2013) (dismissing without leave to amend where court lacked jurisdiction over action and amendment could not cure defect).

### B. Even if the Court Had Jurisdiction, ULICO's Claims Would Violate the Automatic Stay and Recognition Order.

Finally, if this dispute involves PBLA's property and the Court has jurisdiction, the Motion and SAC again provide no explanation as to why ULICO's claims do not violate the automatic stay and Recognition Order. Despite its muddled attempts to recast its claims as not seeking to recover the debtor's property, ULICO's Motion confirms that "ULICO seeks to use statutory remedies from both New York and North Carolina to void the many transactions between PBLA, Defendants, and the ULICO trust, thus p*utting the trust back into the position it was in before* it was looted by Lindberg and his co-conspirators." (Mot. at 10.) By highlighting that its goal is to restore funds to the Trust (i.e., before PBLA caused the funds to be transferred away), ULICO's Motion confirms that ULICO is seeking to step into the JPLs' shoes to recover PBLA's property (or property that was subject to PBLA's control) for the benefit of ULICO and other creditors. But the automatic stay and Recognition Order forbid anyone other than the JPLs from taking that course of action. And, of course, ULICO cannot (even with the JPLs' purported consent) unilaterally sidestep the automatic stay and Recognition Order.

---

[9] *See* January 20, 2022 Hr'g Tr. at 38:2–10.

In sum, since the SAC fails for the same reasons Morgan Stanley and other defendants have explained in multiple briefs over the last several months, amendment would be futile and the Court should deny the Motion on this basis alone.

## II. AMENDMENT WOULD BE FUTILE BECAUSE EACH CLAIM AGAINST MORGAN STANLEY FAILS AS A MATTER OF LAW.

Even if the SAC remedied the threshold jurisdictional and standing failings, amendment would still be futile because ULICO's claims still fail on the merits. (*See* Dismissal Mot. at 23–35; Dismissal Reply at 6–13.) ULICO claims the "alleged deficiencies asserted in the pending motions to dismiss are mooted by ULICO's SAC," and argues the Court should permit the SAC because "it is extremely rare for a court not to grant leave to amend at least once following a dismissal for failure to state a claim, particularly when the defendant did not argue that the plaintiff could not state a claim, but only that the plaintiff's complaint as written did not state a claim." (Mot. at 8.) ULICO is wrong. Morgan Stanley's argument has always been that ULICO cannot state claims against Morgan Stanley under any circumstance.

The SAC simultaneously fails to allege facts about Morgan Stanley sufficient to support any viable claims, and includes allegations that doom claims against Morgan Stanley. ULICO still fails to allege a single fact in the SAC to support that Morgan Stanley benefited from Lindberg's scheme, or even in the transfer of property at issue in this case other than as a mere conduit. ULICO alleges that "for each transfer," "Greg Lindberg . . . directed and facilitated each of the transfers to other Lindberg Affiliated Defendants;" "at all relevant times, PBLA, Lindberg, or one of the Lindberg Affiliate Defendants, retained possession or control of the Trust Proceeds that were transferred from the Trust;" and "[Morgan Stanley] acted as a conduit and received funds transferred from the Trust before such funds were transferred to various Lindberg Affiliates and other entities or individuals." (SAC ¶¶ 33, 322, 318, 331.) This defeats all of

-8-

ULICO's claims against Morgan Stanley because it confirms that Morgan Stanley never possessed or obtained funds for its own benefit. *See In re Lyondell Chem. Co.*, 503 B.R. 348, 382 (Bankr. S.D.N.Y. 2014) (dismissing fraudulent transfer claim and explaining that "under federal and state law alike, an allegedly fraudulent transfer may not be recovered from a defendant who was a mere conduit in the transfer"), *abrogated on other grounds by In re Trib. Co. Fraudulent Conv. Litig.*, 818 F.3d 98 (2d Cir. 2016); *Mervyn's LLC v. Lubert-Adler Group IV LLC (In re Mervyn's Holdings LLC)*, 426 B.R. 96, 103–104 (Bankr. D. Del. 2010) (holding that a "financial intermediary," that held funds "only for the purpose of fulfilling an instruction to make funds available to a third party," received no benefit from the transfer that passed through it and was thus not a "transferee" from whom plaintiff could recover under fraudulent transfer law); *Graham v. Take-Two Interactive Software, Inc.*, 2020 WL 408408, at *2 (S.D.N.Y. Jan. 24, 2020) (dismissing unjust enrichment claim where no "specific and direct benefit" was "conferred upon Defendants"). The lone additional allegation in the SAC identifying "cash disbursements," "that were initiated" from the PBLA ULICO 2017 account at Wilmington Trust, does not make ULICO's claims viable. (SAC ¶ 125.) The allegation identifies what moneys were purportedly transferred to Morgan Stanley, but does not even overcome the SAC's more pertinent allegation that only Lindberg and his affiliates benefitted from these transfers.

A.    **The Claims for Voidable Transfer Fail (Counts I–IV).**

ULICO attempts to repackage its voidable transfer claim (Count I in the Amended Complaint) by alleging claims in the SAC for both intentional and constructive voidable transfer under each of North Carolina and New York state law. ULICO ignores applicable choice of law rules and fails again to identify under which jurisdiction's law it purports to bring its claims against each Defendant (despite the Court's explicit directive to do so at the January 20, 2022 hearing). However, as Morgan Stanley established in its Dismissal Briefs, ULICO's voidable

-9-

transfer claims fail under both North Carolina and New York law for numerous independent reasons. (*See* Dismissal Mot. at 17–22; Dismissal Reply at 6–11.)

The SAC's identification of four "cash disbursements" totaling $825,000 "that were initiated from the PBLA ULICO 2017 account at Wilmington Trust," does nothing to save the claims from dismissal for a variety of reasons. (SAC ¶ 125.) First, while the SAC alleges that Morgan Stanley received "cash disbursements," as noted, SAC also alleges that Morgan Stanley was simply a conduit that received funds from a trust per Lindberg's direction and then, at Lindberg's direction transferred them on to another Lindberg affiliate. Thus, the SAC concedes that Morgan Stanley did not receive any benefit or interest in the funds purportedly fraudulently transferred—and affirmatively pleads that Morgan Stanley "acted as a [mere] conduit." (*Id.* ¶ 33.) This dooms the fraudulent transfer claim. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff, LLC)*, 631 B.R. 1, 13 (Bankr. S.D.N.Y. 2021) ("[O]ne who merely facilitates the transfer of funds from the debtor to a third party does not exercise sufficient dominion and control and is not an initial transferee [that can be held liable for fraudulent transfer]."); *See also Christy v. Alexander & Alexander of N.Y., Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 59 (2d Cir.1997) ("[A] commercial entity that, in the ordinary course of its business, acts as a mere conduit for funds and performs that role consistent with its contractual undertaking in respect of the challenged transaction, is not an initial transferee."). Second, the SAC has no allegations that the transfers ULICO identifies were made for less than reasonably equivalent value, an essential element of any fraudulent transfer claims. *See Kirschner v. Large Shareholders (In re Trib. Fraudulent Conv. Litig.)*, 10 F.4th 147, 173, 175 (2d Cir. 2021) (explaining that "courts have dismissed constructive fraudulent transfer claims where the complaint does not plausibly allege

-10-

that the debtor received less than reasonably equivalent value," and affirming lower court's denial of request for leave to amend fraudulent transfer claims where the plaintiff "gave no clue as to how the complaint's defects would be cured").  And third, in any event, the allegation does not come close to overcoming (and in some cases exacerbates) the other dispositive legal issues Morgan Stanley identified in the Dismissal Briefs:

- The SAC further conflates the "Trust" and PBLA, and fails to clarify which entity is alleged to have made the transfers, and whether the transfers were of the Trust's property or of debtor's (i.e., PBLA's) property.  For example, the SAC defines the "Trust," as "a trust created to reinsure claims made by people who purchased annuities and life insurance policies from . . . ULICO." (SAC ¶ 1.)  The SAC states that the Trust was allegedly established at Bank of New York Mellon.  (*Id.* ¶ 118.)  But according to the SAC, the transfers Morgan Stanley allegedly received were made from a Wilmington Trust Account, not the Bank of New York Mellon "Trust."  (*Id.* ¶ 125.)

- The SAC states that PBLA was insolvent at the time of each transfer because "the Trust did not have sufficient funds to meet the minimum reserve requirement as required by the Reinsurance Agreement." (*Id.* ¶ 317.)  The SAC gives no justification for treating the Trust and PBLA as the same entity for the purpose of determining solvency.

- The two voidable transfer claims under New York law fail because to allege an actual fraudulent transfer under New York law, a plaintiff must show that both the transferor and the transferee had intent to defraud, which ULICO does not do. (*See* Dismissal Reply at 8–9.)

- The SAC continues to lump Morgan Stanley with other defendants, and does not plead facts with specificity to support the heightened standard to plead intentional fraudulent transfer claims under Federal Rule of Civil Procedure 9(b). (*See* Dismissal Mot. at 19–20.)

Since the arguments necessitating the dismissal of the voidable transfer claims in the Amended Complaint apply equally to the voidable transfer claims in the SAC, amendment would be futile.

-11-

### B. The Claims for Unjust Enrichment (Count V) and Constructive Trust (Count VII) Fail.

Since the SAC's claims for unjust enrichment (Count V) and constructive trust (Count VII) are identical to the claims in the Amended Complaint, the arguments in the Dismissal Briefs apply equally here. (*See* Dismissal Mot. at 22–27; Dismissal Reply at 11–12.) Most notably, the SAC's central theory—which remains unchanged from the Amended Complaint—defeats any claim against Morgan Stanley for unjust enrichment and the imposition of a constructive trust. Like the Amended Complaint, the SAC alleges that the transfers were all made for the "sole benefit of Lindberg and his affiliated entities and partners" for the purpose of "enriching Lindberg and his co-conspirators," and that Morgan Stanley did not retain any transfers. (SAC ¶¶ 5, 33, 335, 336.) An amended claim for unjust enrichment that is unsupported by any facts showing that Morgan Stanley received a benefit (let alone an unjust benefit) from any transfer, is futile. *See Graham v. Take-Two Interactive Software, Inc.*, 2020 WL 408408, at *2 (S.D.N.Y. Jan. 24, 2020) (dismissing unjust enrichment claim where no "specific and direct benefit" was "conferred upon Defendants"). Moreover, for an unjust enrichment claim to survive dismissal, "there must exist a relationship or connection between the parties that is not too attenuated." *Graham v. Take-Two Interactive Software, Inc.*, 2020 WL 408408, at *2 (S.D.N.Y. Jan. 24, 2020). The SAC does not add any facts to establish ULICO had any relationship, communications, or dealings with Morgan Stanley such that could have caused reliance or inducement. *See In re Hellas Telecomms. (Luxembourg) II SCA*, 524 B.R. 488, 536 (Bankr. S.D.N.Y 2015). Contrary to ULICO's assertion in its Motion, the SAC does nothing to "moot" that critical pleading failure. And since the unjust enrichment claim fails, any purported amended claim for constructive trust is futile, too. *See Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 212 (2d Cir. 2004) (unjust enrichment is a required element of

-12-

constructive trust). Finally, ULICO's constructive trust claim makes no sense: a constructive trust claim is predicated on recovering the exact property transferred to the defendant, but ULICO alleges that the property it seeks to recover only passed through Morgan Stanley on its way to Lindberg-related entities.

## CONCLUSION

For the above reasons, the Court should deny ULICO's Motion as futile, and dismiss the case against Morgan Stanley with prejudice.

Dated: March 18, 2022

        Respectfully submitted,

        */s/ Peter Friedman*
        Peter Friedman (admitted *pro hac vice*)
        Nicholas Hendrix (admitted *pro hac vice*)
        Lauren M. Wagner
        O'MELVENY & MYERS LLP
        Seven Times Square
        New York, NY 10036
        Telephone: (212) 326-2000
        Facsimile: (212) 326-2061
        Email: pfriedman@omm.com
               nhendrix@omm.com
               lwagner@omm.com

        *Attorneys for Defendant Morgan Stanley Senior Funding, Inc.*