UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

In re:                                                          Chapter 15

PB LIFE AND ANNUITY CO., LTD., et al.,                          Case No. 20-12791 (LGB)
                                                                (Jointly Administered)

            Debtors in Foreign Proceedings.

------------------------------------------------------------------------X

UNIVERSAL LIFE INSURANCE COMPANY,

            Plaintiff,

                    -v-                                         Adv. Proc. No. 21-01169

GREG E. LINDBERG, individually, CHRIS
HERWIG, individually, AAPC HOLDINGS, LLC,
ACADEMY FINANCIAL ASSETS, LLC, AGH
PARENT, LLC, ALPINE CAPITAL, LLC, ASIM
HOLDINGS, LLC, ASL HOLDINGS, LLC,
ATKINSON, LLC, ATLANTIC COAST LIFE
INSURANCE COMPANY, ATLAS FINANCIAL
INVESTMENTS, LLC, AUGUSTA ASSET
MANAGEMENT, INC., BEGONIA EIGHT, LLC,
BLH CAPITAL, LLC, BLUE DAFFODIL, LLC,
BLUE VIOLET, LLC, CAPITAL ASSETS FUND I,
LLC, CAPITAL ASSETS FUND II, LLC, CAPITAL
ASSET MANAGEMENT I, LLC, CAPITAL
ASSETS MANAGEMENT II, LLC, CAPITAL
ASSETS MANAGEMENT III, LLC, CARNATION
THREE, LLC, CHATSWORTH ASSET
MANAGEMENT, LLC, CHRYSANTHEMUM
TWO, LLC, CSI INTERCO, LLC, DAHLIA TEN,
LLC, DAISY SEVEN, LLC, DRUMMOND GROUP,
LLC, DUNHILL HOLDINGS, LLC, ELI GLOBAL,
LLC, ENGLERT HOLDINGS, LLC, EPPING, LLC,
ERIE PROPERTIES, LLC, FLAGSHIP HOLDINGS,
LLC, FLEET ASSIST INTERCO LIMITED,
FLOWERY BRANCH, LLC, FORSYTH, LLC,
FORTREX, LLC, GBIG CAPITAL, LLC, GBIG
HOLDINGS, INC., GBI GROUP, LLC, GERANIUM
TWO, LLC, GILFORD ASSET MANAGEMENT,
LLC, GLOBAL BANKERS INSURANCE GROUP,
LLC, GLOBAL GROWTH HOLDINGS, INC.,
GLOBAL INSURANCE CAPITAL, LLC,
GREENFIELD CAPITAL, LLC, HAMPTON ASSET

MANAGEMENT, INC., HANSEN AEROSPACE,
LLC, HEALTHLINK HOLDINGS, LLC,
HOOKSETT, LLC, HUTCHISON LAW GROUP,
PLLC, INTEGRITY EMR HOLDINGS, LLC,
INTEGRITY EMR, LLC, IRON CITY ASSET
MANAGEMENT, INC., ITECH FUNDING, LLC,
JACKSON ASSET MANAGEMENT, INC., KITE
ASSET MANAGEMENT, INC., LILAC SIX, LLC,
MACON, LLC, MORNING MOUNTAIN
HOLDINGS, LLC, NETHERLANDS INSURANCE
HOLDINGS, INC., NEW ENGLAND CAPITAL,
LLC, NIH CAPITAL, LLC, NOM GB 2018 I, LLC,
PARADIGM PARK HOLDINGS, LLC, PARALLEL
CAPITAL ASSETS, LLC, PERSHING, LLC, RED
BEGONIA, LLC, REVOLVERCAP PARTNERS
FUND, LP, SATORI WATERS, LLC, SEDWICK,
LLC, SENTINEL SECURITY LIFE INSURANCE
COMPANY, SOMERSWORTH, LLC, STANDARD
ADVISORY SERVICES, LTD, STANDARD
FINANCIAL LIMITED, STANDARD
INVESTMENT CAPITAL, LTD, TREATMENT
RESOURCES OF MARGATE, INC., TRITON
FINANCIAL LIMITED, TUX HOLDINGS, LLC,
TYBEE ISLAND ASSET MANAGEMENT, LLC,
UKAT HOLDINGS, LLC, UKAT INVESTMENT
LIMITED, VERDESIAN LIFE SCIENCES, LLC,
WEARE, LLC, YELLOW LOTUS, LLC, YELLOW
SUNFLOWER, LLC, UBS FINANCIAL SERVICES,
INC., GOLDMAN SACHS LENDING PARTNERS,
LLC, CREDIT SUISSE AG CAYMAN ISLANDS
BRANCH, GOLDMAN SACHS BANK USA,
MORGAN STANLEY SENIOR FUNDING, INC.,
THE BRYN MAWR TRUST COMPANY, and
DOES 1 through 10, inclusive,

                    Defendants.

-------------------------------------------------------------------------------X

**MEMORANDUM OF LAW OF DEFENDANTS ATKINSON, LLC, BEGONIA EIGHT, LLC, BLUE DAFFODIL, LLC, BLUE VIOLET, LLC, CARNATION THREE, LLC, CHRYSANTHEMUM TWO, LLC, DAHLIA TEN, LLC, DAISY SEVEN, LLC, EPPING, LLC, FLOWERY BRANCH, LLC, FORSYTH, LLC, GERANIUM TWO, LLC, LILAC SIX, LLC, MACON, LLC, RED BEGONIA, LLC, WEARE, LLC, YELLOW LOTUS, LLC, AND YELLOW SUNFLOWER, LLC, IN OPPOSITION TO PLAINTIFF'S <u>MOTION SEEKING LEAVE TO FILE A SECOND AMENDED COMPLAINT</u>**

**WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN, LLP**
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
*Counsel to Atkinson, LLC, Begonia Eight, LLC, Blue Daffodil, LLC, Blue Violet, LLC, Carnation Three, LLC, Chrysanthemum Two, LLC, Dahlia Ten, LLC, Daisy Seven, LLC, Epping, LLC, Flowery Branch, LLC, Forsyth, LLC, Geranium Two, LLC, Hookset, LLC, Lilac Six, LLC, Macon LLC, Red Begonia, LLC, Somersworth, LLC Weare, LLC, Yellow Lotus, LLC, and Yellow Sunflower, LLC*

## TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ........................................................................................... ii

Preliminary Statement ................................................................................................... 1

PROCEDURAL BACKGROUND .................................................................................. 3

ARGUMENT .................................................................................................................. 5

   I.   THE ABSENCE OF "RELATED TO" SUBJECT MATTER  JURISDICTION RENDERS THE MOTION TO AMEND FUTILE .................................................. 5

   II.   PLAINTIFF'S CLAIMS ARE BARRED  BY THE APPLICABLE STATUTES OF REPOSE ................................................................................... 8

     A.  Applicable Law ................................................................................................ 8

     B.  Time-Barred Fraudulent Conveyance Claims ........................................... 13

     C.  Time-Barred Unjust Enrichment and Conversion Claims ........................ 14

        (i)  Unjust Enrichment ................................................................................ 14

        (ii)  Conversion .......................................................................................... 15

        (iii) Illustration ......................................................................................... 15

   III.   PLAINTIFF'S CLAIMS DO NOT RELATE BACK ..................................... 17

   IV.   PLAINTIFF HAS FAILED TO AVOID THE UNDERLYING LOANS OR SECURITIES TRANSACTIONS, AND MAY NOT DO SO NOW .............................. 19

   V.   PLAINTIFF HAS STILL FAILED TO SATISFY THE PLEADING STANDARDS OF FED. R. CIV. P. 9(B) AND FED. R. CIV. P. 8(A) .......................... 20

     A.  The PSAC Does Not Plead Fraud With Particularity ................................ 20

     B.  The PSAC Does Not Adequately Allege PBLA's Insolvency .................. 21

Conclusion ................................................................................................................. 24

# TABLE OF AUTHORITIES

Cases                                                                          Page(s)

*Arrieta Gimenez v. Arrieta Negron*,
    672 F. Supp. 46 (D.P.R. 1987) ................................................. 13

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
    813 F.3d 98 (2d Cir. 2016) ..................................................... 13

*Aviles v. S&P Global, Inc.*,
    380 F. Supp.3d 221 (S.D.N.Y. 2019) ................................. 9, 12, 13

*Benefield v. Pfizer*,
    103 F.Supp.3d 449 (S.D.N.Y. 2015) ......................................... 12

*Bianco v. Erkins (In re Gaston v. Snow)*,
    243 F.3d 599 (2d Cir. 2001) ...................................................... 8

*Bird v. White (In re White)*,
    591 B.R. 884 (D. Utah 2018) .................................................... 20

*Boudreau v. Baughman*,
    322 N.C. 331, 368 S.E.2d 849 (1988) ......................................... 9

*Celotex Corp. v. Edwards*,
    514 U.S. 300, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995) ............... 5, 6

*Central Illinois Energy Co-op. v. Nostaw, Inc.*,
    521 B.R. 868 (C.D. Ill. 2014) .................................................. 20

*Chartener v. Kice*,
    270 F.Supp. 432 (E.D.N.Y. 1967) .............................................. 9

*Chiste v. Hotels.com L.P.*,
    756 F. Supp.2d 382 (S.D.N.Y. 2010) ......................................... 13

*Comm. of Unsec. Creditors v. Leucadia Nat'l. Corp. (In re Vivaro Corp.*,
    524 B.R. 536 (S.D.N.Y. 2015) ................................................ 24

*Drenis v. Haligiannis*,
    452 F. Supp. 2d 418 (S.D.N.Y. 2006) ....................................... 10

*Estate of Hurst v. Jones*,
    230 N.C.App. 162 (2013) ............................................................................ 20

*Gerloff v. Hostetter Schneider Realty*,
    2014 WL 1099814 (S.D.N.Y. Mar. 20, 2014) ............................................ 11

*Geron v. Robinson & Cole LLP*,
    476 B.R. 732 (S.D.N.Y. 2012) .................................................................... 12

*Housecalls Home Health Care, Inc. v. State, Dep't of Health & Hum. Servs.*,
    200 N.C. App. 66, 682 S.E.2d 741 (N.C. Ct. App. 2009) .................... 14, 15

*Hyman v. New York Stock Exchange, Inc.*,
    46 A.D.3d 335, 848 N.Y.S.2d 51 (Dec. 18, 2007) ..................................... 17

*In re 360networks (USA) Inc.*,
    367 B.R. 428 (Bankr. S.D.N.Y. 2007) ....................................................... 18

*In re Bankr. Est. of Norske Skogindustrier ASA*,
    629 B.R. 717 (Bankr. S.D.N.Y. 2021) ................................................. 10, 11

*In re Caremerica, Inc.*,
    409 B.R. 737 (E.D. N.C. 2009) ............................................................ 23, 24

*In re Carver*,
    144 B.R. 643 (S.D.N.Y. 1992) ...................................................................... 5

*In re Chargit Inc.*,
    81 B.R. 243 (Bankr. S.D.N.Y. 1987) ......................................................... 5, 7

*In re Cuyahoga Equip. Corp.*,
    980 F.2d 110 (2d Cir. 1992) .......................................................................... 6

*In re Dataproducts Corp. Shareholders Litig.*,
    17 Del. J. Corp. L. 1159 (Del. Ch. Aug. 22, 1991) ................................... 17

*In re Enron Corp.*,
    298 B.R. 513 (Bankr.S.D.N.Y.2003) .......................................................... 18

*In re Falchi*,
    1998 WL 274679 (Bankr. S.D.N.Y. May 27, 1998) ..................................... 5

*In re Holland Indus., Inc.*,
    103 B.R. 461 (Bankr. S.D.N.Y. 1989) .......................................................... 5

*In re M. Fabrikant & Sons, Inc.*,
   447 B.R. 170 (Bankr. S.D.N.Y. 2011)................................................................. 19

*In re Margulies*,
   476 B.R. 393 (Bankr. S.D.N.Y. 2012)................................................................... 7

*In re Metzeler*,
   66 B.R. 977 (Bankr. S.D.N.Y. 1986)............................................................... 18, 19

*In re Sagarino*,
   2017 WL 3865625 (Bankr. D. Conn. Aug. 29, 2017) ......................................... 23

*In re WorldCom, Inc. Sec. Litig.*,
   293 B.R. 308 (S.D.N.Y. 2003) ............................................................................. 7

*KB Aircraft Acquisition, LLC v. Berry*,
   249 N.C.App. 74, 790 S.E.2d 559 (2016) ............................................................ 9

*Koreag, Controle et Revision S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision S.A.)*,
   961 F.2d 341 (2d Cir. 1992) ............................................................................. 10

*Licci v. Lebanese Canadian Bank*,
   739 F.3d 45 (2d Cir. 2013) .......................................................................... 10, 11

*Lockerman v. South River Electric Membership Corp.*,
   250 N.C.App. 631 (2016) ................................................................................ 10

*Lung*,
   2014 WL 476307 (S.D.N.Y. Feb. 6, 2014) ......................................................... 11

*Mastellone v. Argo Oil Corp.*,
   46 Del. 102, 82 A.2d 379 (1951) ....................................................................... 15

*Merrell v. Smith*,
   2020 WL 7641053 (N.C. Super. Dec. 22, 2020) ................................................. 17

*Mitchell v. Maurer*,
   293 U.S. 237, 55 S. Ct. 162, 79 L. Ed. 338 (1934)............................................... 8

*Oliver v. Cooper (In re Bateman*,
   2012 WL 1110080 (E.D. N.C. April 2, 2012) ........................................... 21, 22, 24

*O'Toole v. Karnani et al. (In re Trinsum Group, Inc.)*,
   460 B.R. 379 (S.D.N.Y. 2011) .......................................................................... 20

*Padula v. Lilarn Props. Corp.*,
    84 N.Y.2d 519, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994) ............... 10

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011) ............................................... 6

*Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.)*,
    67 B.R. 304 (Bankr. S.D.N.Y. 1986)....................................... 18

*Rabinowitz v. Suvillaga*,
    2019 WL 386853 (N.C. Super. Jan. 28, 2019) ............................. 17

*Radol v. Thomas*,
    772 F.2d 244 (6th Cir. 1985) ............................................ 17

*Ramos v. Bank of America, N.A.*,
    2012 WL 5928732 (D. Md. Nov. 26, 2012) ................................. 21

*Redinger v. Parker-Hanfin Corp.*,
    2022 WL 748248 (W.D. Pa. Mar. 11, 2022) ............................... 17

*Rigby v. Fire-Cured Tobacco Co-op*,
    755 S.E.2d 915 (Ga. App. 2014) ......................................... 17

*Schandler v. New York Life Ins. Co.*,
    2011 WL 1642574 (S.D.N.Y. April 26, 2011) ............................. 10

*Schultz v. Boy Scouts of Am., Inc.*,
    65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985) ................ 11

*See also Glob. Textile All., Inc. v. TDI Worldwide, LLC*,
    2018 WL 2721987 (N.C. Super. June 5, 2018) ............................ 17

*Sokola v. Weinstein*,
    2020 WL 3605578 (S.D.N.Y. July 2, 2020)................................. 8

*Spano v. Morse*,
    2003 WL 22389542 (Del. Ch. Oct. 8, 2003) .............................. 15

*Stratton v. Royal Bank of Canada*,
    211 N.C. App. 78, 712 S.E.2d 211 (N.C. Ct. App. 2011) .............. 14, 15

*Talisman Software, Systems & Services, Inc. v. Atkins*,
    2015 WL 7356336 (N.C. Super. Nov. 18, 2015)........................... 17

*Tanges v. Heidelberg N. Am., Inc.*,
  93 N.Y.2d 48, 687 N.Y.S.2d 604, 710 N.E.2d 250 (1999) ...................... 13

*Terry v. Terry*,
  302 N.C. 77, 273 S.E.2d 674 (N.C. 1981) ........................................ 21

*Tipton & Young Constr. Co. v. Blue Ridge Structure Co.*,
  116 N.C.App. 115, 446 S.E.2d 603 (1994) ......................................... 9

*Town of Belhaven, NC v. Pantego Creek, LLC*,
  250 N.C. App. 459, 793 S.E.2d 711 (N.C. Ct. App. 2016) .................... 21

*Trustee of Rowan Tech. v. Hammond Assoc.*,
  313 N.C. 230, 328 S.E.2d 274 (1985) .............................................. 9

*U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas*,
  944 F.2d. 253 (5th Cir. 1991) ........................................................ 7

*VGS, Inc. v. Castiel*,
  2003 WL 723285 (Del. Ch. Feb. 28, 2003) ...................................... 17

*Vichi v. Koninklijke Philips Elecs. N.V.*,
  62 A.3d 26 (Del. Ch. 2012) .......................................................... 15

*Whittaker v. Todd*,
  176 N.C.App. 185, 625 S.E.2d 860 (2006) ......................................... 9

Statutes

28 U.S.C. § 157(b) ....................................................................... 5

28 U.S.C. § 157(c) ....................................................................... 5

28 U.S.C. § 1334(b) ................................................................... 5, 7

31 L.P.R.A. secs. 3408 and 3512 .................................................. 13

31 L.P.R.A. §§ 3028, 3492, and 3512 ............................................. 13

Bankruptcy Code § 1520 .............................................................. 3

N.C. Gen. Stat. §1-52 ............................................................. 14, 15

N.C. Gen. Stat. § 39–23.9 ............................................................. 9

N.C. Gen. Stat. § 39-23.4 .......................................................... 22, 23

N.C. Gen Stat. §1-52(4) ........................................................................................ 15

Title 10, Section 8106 of the Delaware Code ...................................................... 15

Rules

Fed. R. Bankr. P. 7015 ............................................................................................ 1

Fed. R. Civ. P. 8(a), (ii) ......................................................................................... 4

Fed. R. Civ. P. 15 ................................................................................................... 1

N.Y. C.P.L.R. § 202 ............................................................................................. 13

Rule 8 ............................................................................................................. 23, 24

Rule 9(a) .............................................................................................................. 23

Defendants Atkinson, LLC ("Atkinson"), Begonia Eight, LLC ("Begonia"), Blue Daffodil, LLC ("Blue Daffodil"), Blue Violet, LLC ("Blue Violet"), Carnation Three, LLC ("Carnation"), Chrysanthemum Two, LLC ("Chrysanthemum"), Dahlia Ten, LLC ("Dahlia"), Daisy Seven, LLC ("Daisy"), Epping, LLC ("Epping"), Flowery Branch, LLC ("Flowery Branch"), Forsyth, LLC ("Forsyth"), Geranium Two, LLC ("Geranium"), Hookset, LLC ("Hookset"), Lilac Six, LLC ("Lilac"), Macon, LLC ("Macon"), Red Begonia, LLC ("Red Begonia"), Weare, LLC ("Weare"), Yellow Lotus, LLC ("Yellow Lotus"), and Yellow Sunflower, LLC ("Yellow Sunflower" and together with Atkinson, Begonia, Blue Daffodil, Blue Violet, Carnation, Chrysanthemum, Dahlia, Daisy, Epping, Flowery Branch, Forsyth, Geranium, Hookset, Lilac, Macon, Red Begonia, Weare, and Yellow Lotus, collectively the "Defendants") respectfully submit this memorandum of law in opposition to the motion (the "Motion") by plaintiff Universal Life Insurance Company ("Plaintiff" or "ULICO") for leave to file a proposed, second amended complaint (the "PSAC") pursuant to Fed. R. Civ. P. 15, as incorporated by Fed. R. Bankr. P. 7015.[1]

## PRELIMINARY STATEMENT

Plaintiff's Motion should be denied as futile for *at least* five (5) reasons:

*First*, Plaintiff has not satisfied its obligation to establish "related to" jurisdiction, as previously briefed and argued by several defendants, including Defendants herein, in their respective motions to dismiss the first amended complaint (the "First Amended Complaint"). Indeed, ULICO's contention that recovery on its judgment would "inure to the benefit of the [Joint Provisional Liquidators]" or the Debtor's estate by "reducing the amount PBLA owed to ULICO" is unsupported any by evidence of any existing creditor claims against PB Life and Annuity Co.,

---

[1] Although previously named as a defendant, Somersworth, LLC, has been omitted from the PSAC. Accordingly, this opposition is not submitted on behalf of that entity and all rights are reserved with respect to the same.

Ltd. ("PBLA" or the "Debtor") *other than* ULICO's alleged claim.  Accordingly, ULICO's claims herein are brought for its *own* benefit, and not that of PBLA's creditors.

**Second**, Plaintiff's claims are barred by the applicable statutes of repose[2] with respect to (i) the fraudulent conveyance claims against (a) Atkinson, (b) Chrysanthemum, (c) Epping, (d) Hookset, and (e) Weare, because the purported transfers occurred more than four (4) years *before* Plaintiff's initial, fraudulent conveyance complaint (the "Complaint") was hastily filed on July 6, 2017; and (ii) the unjust enrichment and conversion claims against all Defendants because the purported transfers occurred more than three (3) years *before* Plaintiff filed its initial, July 6, 2021 Complaint.[3]

**Third**, and in that regard, the transactions that form the basis for Plaintiff's fraudulent conveyance and other claims set forth in the PSAC with respect to (i) Blue Daffodil, (ii) Blue Violet, (iii) Dahlia, (iv) Daisy (in part),[4] (v) Geranium, (vi) Lilac, (vii) Macon, (viii) Red Begonia, (ix) Yellow Lotus, and (x) Yellow Sunflower, are set forth *for the first time*.  As a matter of law, Plaintiff's claims cannot and do not relate back to those entities and/or the alleged transactions in the PSAC.

**Fourth**, importantly, for each of the transactions set forth in the PSAC, Plaintiff *still* has not sought to avoid the underlying notes and/or securities that were given in exchange for the money transfers, and may not do so now.  Because those notes and/or securities cannot now be

---

[2] Plaintiff seeks to hedge its bets by asserting fraudulent transfer claims under both North Carolina and New York law in the PSAC, without specifying *which* defendant is liable under *which* law.  However, as set forth herein, North Carolina law (and, in certain instances, Delaware law) applies to Plaintiff's claims against Defendants herein.

[3] Of course, as explained in Defendants' prior dismissal motion, and again below, the constructive trust claim for relief must be dismissed as a matter of law since it is not recognized as a cause of action.

[4] The allegation against Daisy in the First Amended Complaint sought the return of a singular transfer in the sum of $15,779,788.30.  The PSAC now seeks to recover two (2) transfers of $15,779,788.30 **and** $1,753,309.81, respectively.  But because Plaintiff never asserted a claim for the separate, second transfer of $1,753,309.81, that claim does not relate back.

avoided based upon the applicable statutes of repose, and because they therefore constitute valid consideration, Plaintiff cannot avoid the money transfers as a matter of law.

*Finally*, Plaintiff has still failed to plead fraud with particularity under Fed. R. Civ P. 9(b), and has failed to properly plead insolvency under Fed. R. Civ. P. 8(a), and, as such, the fraud and constructive fraudulent transfer claims fail as a matter of law.

## PROCEDURAL BACKGROUND

On September 18, 2020, the Bermuda Monetary Authority presented a petition to the Supreme Court of Bermuda to, among other things, wind up PBLA and appoint joint provisional liquidators (the "JPL's"). By Order dated September 25, 2020, the Supreme Court of Bermuda appointed the JPLs as duly authorized foreign representatives of PBLA.

On December 3, 2020, the JPL's filed a petition under chapter 15, title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court") (ECF Doc. No. 1). On December 17, 2020, the Court entered an Order Granting Provisional Relief (EFC Doc. No. 20), and, on January 5, 2021, the Court entered an Order recognizing the Bermuda proceeding as a foreign main proceeding under Bankruptcy Code § 1520. (ECF Doc. No. 33).

On July 6, 2021, Plaintiff commenced the within adversary proceeding by filing the Complaint and alleging fraudulent conveyance and related claims against certain Defendants herein, as follows: (i) Begonia, (ii) Carnation, (iii) Dahlia, (iv) Daisy, (v) Flowery Branch, (vi) Forsyth, and (vii) Macon (the "Initial Defendants").

On July 30, 2021, Plaintiff filed its First Amended Complaint, alleging fraudulent conveyance and related claims against the Initial Defendants and the following, additional Defendants: (i) Atkinson, (ii) Blue Daffodil, (iii) Blue Violet, (iv) Chrysanthemum, (v) Epping,

(vi) Geranium, (vii) Hookset, (viii) Lilac, (ix) Red Begonia, (x) Somersworth, (xi) Weare, (xii) Yellow Lotus, and (xiii) Yellow Sunflower.

On October 1, 2021, Defendants filed a motion to dismiss the First Amended Complaint based upon, among other things: (i) Plaintiff's failure to comply with Fed. R. Civ. P 9(b) and Fed. R. Civ. P. 8(a), (ii) the lack of "related to" jurisdiction, and (iii) statute of repose grounds. Defendants' dismissal motion coincided with the filing of similar motions from several other defendants who asserted similar grounds for dismissal.

On December 6, 2021, Plaintiff filed its "Omnibus Opposition" to the dismissal motions, along with a request to amend the First Amended Complaint. (ECF Doc. No. 111).  On January 14, 2022, Defendants filed reply papers in response to Plaintiff's Omnibus Opposition and objected to Plaintiff's request to amend as futile based upon, among other things, the expiration of the applicable statutes of repose regarding the fraudulent conveyance, unjust enrichment, and conversion claims, and the inability of Plaintiff's claims to relate back to the Complaint or First Amended Complaint as a matter of law.  (ECF Doc. No. 134).  On January 19, 2022, Plaintiff wrote to the Court to advise of Plaintiff's intention to request permission at the January 20, 2022 conference on the dismissal motions, to file a motion to amend the First Amended Complaint. (ECF. Doc. No. 142).   At the January 20, 2022 conference, the Court granted Plaintiff leave to file its motion to amend the First Amended Complaint.  On February 25, 2022, Plaintiff filed the instant Motion and annexed the PSAC thereto.

As set forth below, the Motion should be denied as futile, and Defendants' dismissal motion granted.

**ARGUMENT**

**I.**

**THE ABSENCE OF "RELATED TO" SUBJECT MATTER
JURISDICTION RENDERS THE MOTION TO AMEND FUTILE**

Under 28 U.S.C. § 1334(b) federal district courts have

original jurisdiction of all cases under title 11 and all civil proceedings arising under
title 11, or arising in or related to cases under title 11.  Under 28 U.S.C. § 157(b),
bankruptcy judges may hear and determine all cases under title 11 and all core
proceedings arising under title 11, or arising in a case under title 11.  Additionally,
Bankruptcy Judges are empowered by 28 U.S.C. § 157(c) to hear a proceeding that
is not a core proceeding if it is otherwise related to a bankruptcy case.

*In re Carver*, 144 B.R. 643, 646 (S.D.N.Y. 1992).

"It is the burden of the party alleging Bankruptcy Court jurisdiction to establish the

existence of that Court's jurisdiction over the matter in dispute. " *In re Chargit Inc.*, 81 B.R. 243,

247–48 (Bankr. S.D.N.Y. 1987) (internal citations omitted).

In the present case, Plaintiff has not met its burden to establish "related to" jurisdiction,

nor can it.  Aside from the fact that the PBLA bankruptcy case is a liquidation and not a

reorganization (thus compelling a more restrictive application of "related to" jurisdiction – *see e.g.*

*Celotex Corp. v. Edwards*, 514 U.S. 300, 310, 115 S. Ct. 1493, 1500, 131 L. Ed. 2d 403 (1995)),

Plaintiff has not and cannot establish that its claims are anything ***other than*** personal to ULICO

and that the Debtor has no interest in the property Plaintiff seeks to recover.  *See In re Holland*

*Indus., Inc.*, 103 B.R. 461, 469 (Bankr. S.D.N.Y. 1989) ("… a proceeding involving non-debtors

will not be found to be related solely on the ground that it will affect a distribution to creditors

***unless*** that proceeding also involves property in which the debtor has a legally cognizable

interest.") (Emphasis supplied).  *See also In re Falchi*, No. 97 B 43080 (JLG), 1998 WL 274679,

at *7 (Bankr. S.D.N.Y. May 27, 1998) ("Likewise, if Yashiro succeeds against the Non–Debtor

Defendants on its breach of contract and fraud claims, its recovery will not effect debtor's estate because it will be payable to Yashiro, and Yashiro does not allege or demonstrate otherwise. Non–Debtor Defendants are correct that because Yashiro's claims against them will not impact Falchi's estate, they are not "related to" his chapter 11 case and must be dismissed pursuant to Rule 12(b)(1).").

The cases Plaintiff relies upon are all inapposite because those cases involve some direct impairment to a debtor's interest in property or a direct benefit that would inure to the debtor's estate, thereby conferring "related to" jurisdiction. *See e.g. Celotex Corp. v. Edwards*, 514 U.S. 300, 310, 115 S. Ct. 1493, 1500, 131 L. Ed. 2d 403 (1995) (…."allowing respondents—and 227 other bonded judgment creditors—to execute immediately on the bonds would have a direct and substantial adverse effect on Celotex's ability to undergo a successful reorganization … [I]f the Section 105 stay were lifted to enable the judgment creditors to reach the sureties, the sureties in turn would seek to lift the Section 105 stay to reach Debtor's collateral, with corresponding actions by Debtor to preserve its rights under the settlement agreements."); *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) ("In the Illinois state law actions at issue here, Bondi and PCFL are attempting to recover damages that they contend are due the respective bankruptcy estates in Italy and the Grand Caymans. If either Bondi or PCFL is successful in their claims against Grant Thornton, the funds they recover will benefit the respective bankruptcy estates."); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (settlement agreement among the debtor, its lender, and the United States resolving competing bankruptcy and environmental claims brought "into question the very distribution of the estate's property and its allocation between a party asserting the status of a constructive trustee and a first priority secured creditor … In light of Freedom Savings' claim to the option proceeds under § 502 and the

6

government's claim under § 506(c), the district court possessed jurisdiction over them pursuant to 28 U.S.C. § 1334(b) as claims related to the bankruptcy action."); *In re Margulies*, 476 B.R. 393, 399–400 (Bankr. S.D.N.Y. 2012) ("A suit by a third-party insured against the insurer asserting derivative rights based on the conduct of the debtor-insured is inseparable from the debtor's own coverage and 'well within the Bankruptcy Court's jurisdiction over [the debtor's] assets.'"); and *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 318 (S.D.N.Y. 2003) ("… potential claims by third party defendants against the debtor for either indemnification or contribution give rise to "related to" jurisdiction over litigation to which the debtor is not a party.").

Based on the foregoing, Plaintiff has not shown and cannot establish

that the outcome of the suit will have an impact on the administration of the case so as to confer jurisdiction upon this Court. The Plaintiff[] [has] shown no real jurisdictional hold on the slim coat-tails of this bankruptcy case to bring [it] within the "otherwise related to a case under title 11" jurisdictional prong. *See Official Creditors Comm. v. Fidelity Bank (In re Honeycomb, Inc.)*, 72 B.R. at 374 (bankruptcy court jurisdiction does not exist 'where purely unrelated state law claims are asserted against parties uninvolved in the bankruptcy case and who do not derive any rights from the bankruptcy proceeding.'). Instead this is a plain dispute between non-bankruptcy parties, ex involvement of the estate or its trustee, involving non-title 11 matters solely initiated for Plaintiff's benefit.

*In re Chargit Inc.*, 81 B.R. 243, 247–48 (Bankr. S.D.N.Y. 1987). *See also U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas*, 944 F.2d 253, 260 (5th Cir. 1991) ("American brings this suit solely to advantage itself, not to benefit all of Elder's creditors. We reject American's assertion that any recovery it obtains in this suit would benefit Elders's creditors by reducing the entire amount of the estate's debt. Just as any recovery by a debtor ordinarily 'vest[s] solely in the debtor,' any recovery by American in this suit would vest solely in American.").

The claims Plaintiff has asserted are personal to it, and are brought solely to enforce a judgment ULICO obtained against PBLA after arbitration. There is no intent to return those funds to the Debtor's estate for distribution to unsecured creditors, and no purported agreement by the

JPL's and ULICO concerning some unidentified "benefit" to the estate can alter that reality, or create "related to" jurisdiction. *See Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S. Ct. 162, 165, 79 L. Ed. 338 (1934) ("… lack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties."); and *Sokola v. Weinstein*, No. 20-CV-0925 (LJL), 2020 WL 3605578, at *16 (S.D.N.Y. July 2, 2020) ("Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization.").

Based on the foregoing, there is no "related to" subject matter jurisdiction.

The Motion is futile.

## II.

## PLAINTIFF'S CLAIMS ARE BARRED
## BY THE APPLICABLE STATUTES OF REPOSE

Plaintiff's PSAC, on its face, requires the dismissal of claims against several Defendants on the fraudulent conveyance claims under North Carolina or Delaware law[5] and, further, requires the dismissal of the unjust enrichment and conversion claims against all Defendants.[6]

### A. Applicable Law

"[A] federal court exercising bankruptcy jurisdiction must apply the conflict of laws rules of the state in which the federal court sits to determine the applicable limitations period for fraudulent transfer claims." *See Bianco v. Erkins (In re Gaston v. Snow)*, 243 F.3d 599, 605-07 (2d Cir. 2001). In the present case, an actual conflict exists because under the laws of North Carolina and Delaware the statutes of repose relative to fraudulent transfers is four (4) years, and under New

---

[5] Defendants will cite to Delaware law in an abundance of caution because the PSAC identifies certain Defendants as Delaware entities; *e.g.* Atkinson (¶ 57), Hookset (¶85), and Weare (¶105), without identifying whether they are residents of Delaware or North Carolina.

[6] To the extent Plaintiff's claims (i) do not seek avoidance of the notes or securities, and/or (ii) do not relate back to the original pleading, all as described below, then the North Carolina and/or Delaware statutes of repose serve to defeat additional claims asserted against all, or additional, Defendants herein.

York law fraudulent transfers are governed by a six (6) year statute of limitations.  *See e.g. Aviles v. S&P Global, Inc.*, 380 F. Supp.3d 221 (S.D.N.Y. 2019) (actual conflict existed where Delaware law contained statute of repose that extinguished fraudulent conveyance claims that were not brought within four years after transfer was made, while New York law imposed a six-year statute of limitations).  *See also KB Aircraft Acquisition, LLC v. Berry*, 249 N.C.App. 74, 84, 790 S.E.2d 559, 566 (2016), analyzing the North Carolina fraudulent conveyance statutes and holding:

> A second issue of first impression presented in this case is whether N.C. Gen. Stat. § 39–23.9 functions as a statute of limitations or as a statute of repose. The function of Section 39–23.9, the language of the statute, and a comparison of this language to other statutes leads us to hold that it is a statute of repose. A statute of limitations functions to limit the amount of time that a claimant has to file an action. *Tipton & Young Constr. Co. v. Blue Ridge Structure Co.*, 116 N.C.App. 115, 117, 446 S.E.2d 603, 604 (1994). The limitations period begins to run on the date the cause of action accrues, which is generally 'the time of an injury or the discovery of the injury.' *Id.* Statutes of limitation are purely procedural bars to the bringing of claims; they 'affect only the remedy and not the right to recover.' *Id.*  By contrast, statutes of repose function as more rigid stops. The time limitations imposed by statutes of repose are usually not measured from the accrual of the cause of action. *Boudreau v. Baughman*, 322 N.C. 331, 340, 368 S.E.2d 849, 856 (1988). Instead, they often run from the 'defendant's last act giving rise to the claim.' *Id.* (quoting *Trustee of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 234 n.3, 328 S.E.2d 274, 276–77 n.3 (1985)). While statutes of limitation are classified as affirmative defenses, a statute of repose need not be pled as an affirmative defense. *Whittaker v. Todd*, 176 N.C.App. 185, 187, 625 S.E.2d 860, 862 (2006). Rather, statutes of repose are more appropriately pled as a condition precedent to the bringing of an action at all. *Id.* This elemental nature makes the time span imposed by a statute of repose 'so tied up with the underlying right that ... the limitation clause is treated as ***a substantive rule of law***.' *Boudreau*, 322 N.C. at 341, 368 S.E.2d at 857 (quoting *Chartener v. Kice*, 270 F.Supp. 432, 436 (E.D.N.Y. 1967)).

(emphasis supplied).

Based on the foregoing, there is a clear conflict between the laws of North Carolina and Delaware, on the one hand, and the laws of New York, on the other, relative to fraudulent conveyance claims.[7]

"Once an actual conflict has been shown to exist, 'the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.'" *In re Bankr. Est. of Norske Skogindustrier ASA*, 629 B.R. 717, 735–36 (Bankr. S.D.N.Y. 2021) *citing Koreag, Controle et Revision S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision S.A.)*, 961 F.2d 341, 350 (2d Cir. 1992).

According to the *Norske* Court:

'[T]he interest analysis is applied differently depending on whether the rules in question are conduct-regulating rules that people use as a guide governing their primary conduct, or loss-allocating rules that prohibit, assign, or limit liability after the tort occurs.' *Licci v. Lebanese Canadian Bank*, 739 F.3d 45, 49 (2d Cir. 2013) (internal quotation marks omitted). The New York Court of Appeals has provided examples of each type of rule, stating that 'rules of the road' are conduct-regulating, while 'charitable immunity statutes, guest statutes, wrongful death statutes, vicarious liability statutes, and contribution rules' are loss-allocating. *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 620 N.Y.S.2d 310, 644 N.E.2d 1001, 1002–03 (1994) (internal quotation marks and citations omitted) … As this Court explained in *Hellas*, fraudulent transfer statutes are conduct-regulating laws, for which 'courts generally follow the *lex loci* rule' and 'the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.' *Hellas*, 535 B.R. at 573 (quoting *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 427 (S.D.N.Y. 2006)).

*In re Bankr. Est. of Norske Skogindustrier ASA*, 629 B.R. at 735.

---

[7] Similarly, a conflict exists relative to *at least* the claims concerning unjust enrichment. The period of repose for unjust enrichment in North Carolina is three (3) years, and the limitations period for unjust enrichment in New York is six (6) years. *Compare Lockerman v. South River Electric Membership Corp.*, 250 N.C.App. 631, 641 (2016) ("A claim for unjust enrichment must be brought within three years of accrual under subsection 1 of [N.C. Gen. Stat. §] 1–52"), with *Schandler v. New York Life Ins. Co.*, 2011 WL 1642574 at *9 (S.D.N.Y. April 26, 2011) ("The statute of limitations in New York for a claim of unjust enrichment is six years…."). As set forth below, Delaware law is in accord with North Carolina law.

"New York choice of law rules do not require an uncompromising adherence to the *lex loci* rule." *Hosking v. TPG Cap. Mgmt., L.P. et al. (In re Hellas Tellecoms. (Lux.) II SCA*, 535 B.R. 543, 574 (Bankr. S.D.N.Y. 2015). "But when the allegedly wrongful conduct occurs in a place different from the place of injury, the Second Circuit dictates that 'it is the place of the allegedly wrongful conduct that generally has superior interests in protecting the reasonable expectation of the parties who relied [on the laws of that place] to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future'." *Id. citing Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 739 F.3d 45, 50–51 (2d Cir.2013) ("*Licci II*") (quoting *Schultz v. Boy Scouts of Am., Inc.,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679, 684–85 (1985), and *Lyman Com. Sols., Inc. v. Lung*, No. 12-CV-4398, 2014 WL 476307, at \*3 (S.D.N.Y. Feb. 6, 2014) ("concluding that for fraudulent conveyance claims, 'the location of injury does not control; instead, it is the location of the defendant's conduct that controls.'"). *See also Norske, supra,* at 736 ("The Second Circuit recently suggested that the choice of law inquiry for avoidance actions should ***focus on the location of the debtor's transfer***.") (emphasis supplied).[8]

In the present case, the alleged transfers to Defendants were purportedly caused to be made by defendant Greg Lindberg, a "North Carolina entrepreneur"[9] and the owner of Global Growth Holdings, Inc., a company located in North Carolina.[10] Lindberg was allegedly assisted by defendant Chris Herwig, a North Carolina resident and the Chief Investment Officer of Eli Global LLC, an alleged "alter ego" of Global Growth Holdings, Inc.[11] Those transfers were allegedly

---

[8] Similarly, when unjust enrichment claims are based upon a fraudulent conveyance, "the choice of law inquiry follows the interest analysis as applied to conduct-regulating rules." *Gerloff v. Hostetter Schneider Realty*, 2014 WL 1099814, at \*9 (S.D.N.Y. Mar. 20, 2014).

[9] *See* Plaintiff's Omnibus Opposition (ECF Doc. No. 111), at p. 5.

[10] *See* PSAC at ¶81.

[11] *See* PSAC at ¶¶ 28 and 313.

11

made to "Lindberg Affiliates," purportedly including Defendants, in North Carolina (and, perhaps, Delaware).[12]    Further, Lindberg's conduct was alleged to be governed by the North Carolina insurance department and/or other North Carolina regulators.[13]

Based on the foregoing, North Carolina (and/or Delaware) has a superior interest in regulating the allegedly wrongful conduct that forms the basis for Plaintiff's claims.  Based upon the allegations in the PSAC, New York has **absolutely no interest** in the purported transfers at issue and, therefore no reason to apply its laws to any alleged fraudulent conveyance(s).  *See e.g.* *Benefield v. Pfizer*, 103 F.Supp.3d 449, 458 (S.D.N.Y. 2015) ("Where, as here, the relevant rule is conduct-regulating, 'the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.'").  *See also* *Geron v. Robinson & Cole LLP*, 476 B.R. 732, 738 (S.D.N.Y. 2012) (noting that "[a] fraudulent conveyance statute is conduct regulating rather than loss allocating" and that "[w]here, as here, regulation of conduct is at issue, the state where the alleged tort took place has the greater interest.").

Based on the foregoing, North Carolina fraudulent conveyance law (and, with respect to Atkinson, Hookset, and Weare, perhaps Delaware law) applies and the statute is one of repose (and therefore substantive in each instance) and not one of limitations (and, therefore, decidedly ***not*** procedural).  Accordingly, the substantive four (4) year statute of repose of North Carolina

---

[12] *See* Complaint at ¶¶45, 46, 47, 60, 61, 62, 68, 69, 70, 74, 79, 88, 89, 95, 106, and 107.  Although certain of the transfers appear to have been made to certain Defendants that are Delaware entities, *e.g.* Atkinson (¶ 57), Hookset (¶85), and Weare (¶105), Delaware law also has a four (4) year statue of repose.  *See* *Aviles v. S&P Global, Inc.*, 380 F.Supp.3d 221, 272 (S.D.N.Y. 2019) ("The Court therefore concludes that … 'there is indeed a conflict between New York and Delaware fraudulent conveyance law,' that Delaware's four-year timeline represents a statute of repose that New York courts would apply in cases governed by Delaware law[,] … [that] statutes of repose [are] 'substantive law' for conflict-of-laws purposes, and that this statute of repose would be fatal to Plaintiffs' fraudulence-conveyance claims.").  (Internal citations omitted).

[13] *See* PSAC at ¶¶ 5-7, and Plaintiff's Omnibus Opposition (ECF Doc No. 111, at pp. 5 & 6 and Exhibits B and C thereto).

(and, with respect to Atkinson, Hookset, and Weare, perhaps Delaware law) applies. *See Aviles v. S&P Global, Inc.*, 380 F. Supp.3d 221, 272 (S.D.N.Y. 2019) (*citing Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48, 687 N.Y.S.2d 604, 710 N.E.2d 250 (1999), in which the New York Court of Appeals "characterize[ed] statutes of repose as 'substantive law' for conflict-of-laws purposes") and holding that the Delaware statute of repose "would be fatal to Plaintiff's fraudulent-conveyance claims."[14]

## B. <u>Time-Barred Fraudulent Conveyance Claims</u>

Under the foregoing circumstances, and as set forth in the chart below, the fraudulent conveyance claims for the following transfer(s) that Plaintiff seeks to avoid are time-barred:

| Alleged Transferee | Date of Alleged Transfer | Date of Complaint |
|---|---|---|
| Atkinson | 5/19/2017 | 7/30/2021 |
| Chrysanthemum | 6/28/2017 | 7/30/2021 |
| Epping | 5/19/2017 | 7/30/2021 |
| Hookset | 5/19/2017 | 7/30/2021 |

---

[14] Even in the unlikely event this Court finds the North Carolina (or Delaware) statutes of repose are procedural rather than substantive, under New York's "borrowing statute" the fraudulent conveyance claims would still be time-barred. "For causes of action that accrued outside of the state, New York applies its borrowing statute, N.Y. C.P.L.R. § 202. The borrowing statute requires that a court, when presented with a cause of action accruing outside New York apply whichever statute of limitations is shorter -- New York's or that of the state where the cause of action accrued." *Chiste v. Hotels.com L.P.*, 756 F. Supp.2d 382, 410 (S.D.N.Y. 2010).[14] *See also Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 110 (2d Cir. 2016) ("New York's 'borrowing statute' provides that claims arising in another state are governed by that state's statute of limitations if it is shorter than New York's."). The *Chiste* Court held that "a cause of action accrues at the time and in the place of the injury" and that "[f]or purely economic injuries, 'the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss'." That holding, however, would still not inure to Plaintiff's benefit. Indeed, even presuming that the laws of Puerto Rico applied here (where Plaintiff is domiciled, *see* PSAC at ¶26), under Puerto Rican law the statute of limitations relative to fraudulent transfers is also four (4) years and is also one of repose. *See* 31 L.P.R.A. §§ 3028, 3492, and 3512. *See also Arrieta Gimenez v. Arrieta Negron*, 672 F. Supp. 46, 49 (D.P.R. 1987) ("The applicable Puerto Rico statutes, articles 1221 and 1253 of the Civil Code, 31 L.P.R.A. secs. 3408 and 3512, govern actions for nullification of a contract [rendered voidable by deceit]. Under those standards, such an action cannot be brought once four years have passed since the execution of the contract. No reasonable period for discovery is given, nor will any other event toll the statute of limitations. Simply put, we are faced with a civil law caducity term (period of extinguishment) that cannot be extended.").

| Alleged Transferee | Date of Alleged Transfer | Date of Complaint |
|---|---|---|
| Weare | 5/19/2017 | 7/30/2021 |

As can be readily observed, Plaintiff's claims against *at least* five (5) Defendants are time-barred under the North Carolina (or Delaware) statute of repose.[15]

In addition to the foregoing, Plaintiff's unjust enrichment and conversion claims against all Defendants are time-barred under applicable three (3) year limitations periods under North Carolina and/or Delaware law, as applicable.

### C.  Time-Barred Unjust Enrichment and Conversion Claims

### (i)      Unjust Enrichment

Unjust enrichment claims asserted against Defendants are barred by the applicable three (3) year statute of limitations under N.C. Gen. Stat. §1-52.  Specifically, "[u]nder [N.C. Gen. Stat. § 1-52], the statute of limitations for bringing a cause of action for breach of contract, conversion, or unjust enrichment is three years … [and for] tort claims, 'the period of the statute of limitations begins to run when the plaintiff's right to maintain an action for the wrong alleged accrues. The cause of action accrues when the wrong is complete, even though the injured party did not then know the wrong had been committed.'"  *Housecalls Home Health Care, Inc. v. State, Dep't of Health & Hum. Servs.*, 200 N.C. App. 66, 70–71, 682 S.E.2d 741, 744 (N.C. Ct. App. 2009), *writ denied, review denied*, 363 N.C. 802, 690 S.E.2d 697 (N.C. 2010) (internal citations omitted).  *See also Stratton v. Royal Bank of Canada*, 211 N.C. App. 78, 85, 712 S.E.2d 211, 228 (N.C. Ct. App.

---

[15] The fraudulent conveyance claims against Chrysanthemum and Epping are time-barred under applicable North Carolina law, while the claims against Atkinson, Hookset, and Weare are time-barred under wither applicable North Carolina or Delaware law.

2011) ("A claim for unjust enrichment must be brought within three years of accrual under subsection 1 of section 1-52.").[16]

### (ii) Conversion

Like the unjust enrichment claims, the conversion claims are also time-barred. *See Housecalls Home Health Care, Inc. v. State, Dep't of Health & Hum. Servs.*, 200 N.C. App. 66, 70–71, 682 S.E.2d 741, 744 (N.C. Ct. App. 2009), *writ denied, review denied*, 363 N.C. 802, 690 S.E.2d 697 (N.C. 2010) (internal citations omitted), and *Stratton v. Royal Bank of Canada*, 211 N.C. App. 78, 83, 712 S.E.2d 211, 227 (N.C. Ct. App. 2011) ("Conversion claims are subject to a three-year limitation period under subsection 4. N.C. Gen Stat. §1-52(4). As a general rule, the claim accrues, and the statute of limitations begins to run, when the unauthorized assumption and exercise of ownership occurs – ***not*** when the plaintiff discovers the conversion.") (emphasis supplied).[17]

### (iii) Illustration

As set forth in the chart below, the unjust enrichment and conversion claims based on the transfer(s) sought to be recovered are time-barred because they are all outside the three (3) year

---

[16] Delaware law is in accord. *See e.g. Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 42 (Del. Ch. 2012) (the "statute of limitations under Title 10, Section 8106 of the Delaware Code for both unjust enrichment and fraud is three years … [and] [a] 'cause of action 'accrues' under Section 8106 at the time of the wrongful act, even if the plaintiff is ignorant of that cause of action.").

[17] Once again, Delaware law is in accord. *See Spano v. Morse*, No. CIV.A. 20121, 2003 WL 22389542, at *1 (Del. Ch. Oct. 8, 2003) ("The court agrees that the gravamen of the petition is a legal claim for conversion that is subject to the three-year limitations period found in 10 *Del. C.* § 8106."); and *Mastellone v. Argo Oil Corp.*, 46 Del. 102, 109–10, 82 A.2d 379, 383 (1951) ("ignorance of a conversion does not impede the operation of the Statute of Limitations.").

statutes of repose:

| Alleged Transferee | Date of Alleged Transfer | Date of Complaint |
|---|---|---|
| Atkinson | 5/19/2017 | 7/30/2021 |
| Begonia | 12/28/2017 | 7/6/2021 |
| Blue Daffodil | 1/8/2018 | 7/30/2021 |
| Blue Violet | 6/11/2018 | 7/30/2021 |
| Carnation | 7/7/2017 | 7/6/2021 |
| Chrysanthemum | 6/28/2017 | 7/30/2021 |
| Dahlia | 11/3/2017 | 7/6/2021 |
| Daisy Seven | 11/3/2017 | 7/6/2021 |
| Epping | 5/19/2017 | 7/30/2021 |
| Flowery Branch | 7/7/2017 | 7/6/2021 |
| Forsythe | 7/7/2017 | 7/6/2021 |
| Geranium | 9/5/2017 | 7/30/2021 |
| Hookset | 5/19/2017 | 7/30/2021 |
| Lilac | 8/23/2017 | 7/30/2021 |
| Macon | 12/21/2017 | 7/6/2021 |
| Red Begonia | 3/27/2018 | 7/30/2021 |
| Weare | 5/19/2017 | 7/30/2021 |
| Yellow Lotus | 12/28/2017 | 7/30/2021 |
| Yellow Sunflower | 5/29/2018 | 7/30/2021 |

Based on the foregoing, the statutes of repose on the unjust enrichment and conversion claims expired well before Plaintiff asserted any such claims against Defendants.[18, 19]

### III.

### PLAINTIFF'S CLAIMS DO NOT RELATE BACK

The transactions that allegedly support Plaintiff's fraudulent conveyance and other claims set forth in the PSAC with respect to (i) Blue Daffodil, (ii) Blue Violet, (iii) Dahlia, (iv) Daisy (in part), (v) Geranium, (vi) Lilac, (vii) Macon, (viii) Red Begonia, (ix) Yellow Lotus, and (x) Yellow Sunflower, are set forth *for the first time*.  As a matter of law, Plaintiff's claims cannot and do not relate back to those purported transactions with those entities.

"Rule 15(c), made applicable by Bankruptcy Rule 7015, provides in relevant part:

---

[18] Under North Carolina law, a claim for the imposition of a constructive trust is not recognized as a distinct cause of action and, therefore, that claim for relief should be dismissed, as well.  "A constructive trust is not a standalone claim for relief or cause of action." *Rabinowitz v. Suvillaga*, 2019 WL 386853, at *12 (N.C. Super. Jan. 28, 2019).  *See also Glob. Textile All., Inc. v. TDI Worldwide, LLC*, 2018 WL 2721987, at *10 (N.C. Super. June 5, 2018) ("A claim for a constructive trust is not an independent cause of action …").  Delaware law is, once again, in accord.  *See VGS, Inc. v. Castiel*, 2003 WL 723285 (Del. Ch. Feb. 28, 2003)(noting that a claim for a constructive trust is a remedy and not a cause of action and, therefore, does not provide an independent basis for recovery).

[19] The breach of fiduciary duty claim also fails:

> Courts have commonly recognized that a corporation does not owe a fiduciary duty to its shareholders. *See, e.g.*, *Radol v. Thomas*, 772 F.2d 244, 258 (6th Cir. 1985) ('There is not, and could not conceptually be any authority that a corporation as an entity has a fiduciary duty to its shareholders'); *Rigby v. Fire-Cured Tobacco Co-op*, 755 S.E.2d 915, 925 (Ga. App. 2014) ('a corporation does not have a fiduciary relationship with stockholders'); *Hyman v. New York Stock Exchange, Inc.*, 46 A.D.3d 335, 337, 848 N.Y.S.2d 51, 53 (Dec. 18, 2007) ("it is well settled that a corporation does not owe fiduciary duties to its members or shareholders"); *In re Dataproducts Corp. Shareholders Litig.*, 17 Del. J. Corp. L. 1159, 1170 (Del. Ch. Aug. 22, 1991) ('a corporation *qua* corporate entity is not a fiduciary of, and thus cannot owe a fiduciary duty to, its shareholders'); *Merrell v. Smith*, 2020 WL 7641053, at *8 (N.C. Super. Dec. 22, 2020) (agreeing that, "in accordance with well-established corporate law principles, [an LLC] did not owe [a fiduciary duty] to its members"). *Cf. Talisman Software, Systems & Services, Inc. v. Atkins,* 2015 WL 7356336, at *5 (N.C. Super. Nov. 18, 2015) ("In North Carolina, while directors and officers of a corporation generally owe a fiduciary duty to the corporation, a corporation does not owe a reciprocal fiduciary duty to its directors and officers") (internal citations omitted).

*Redinger v. Parker-Hanfin Corp.*, No. 21-12 ERIE, 2022 WL 748248, at *3 (W.D. Pa. Mar. 11, 2022). Accordingly, Defendants cannot and do not owe any fiduciary duties to Plaintiff as a purported creditor for any "breach of duty."

An amendment of a pleading relates back to the date of the original pleading when ...

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....

*In re 360networks (USA) Inc.*, 367 B.R. 428, 433 (Bankr. S.D.N.Y. 2007). "'[T]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities,' however, a court must not 'undermine the purpose of repose for which statutes of limitations were designed.'" *Id.* (internal citations omitted). "The moving party who asserts the relation back bears the burden of proof." *Id. citing In re Enron Corp.,* 298 B.R. 513, 522 (Bankr.S.D.N.Y.2003).

In the present case, Plaintiff cannot satisfy its burden. "On a motion for leave to serve an amended pleading, the movant has the burden of persuasion. Leave to amend is to be freely granted as Rule 15(a) provides… But it is to be denied where the additional claims sought to be asserted by the amendment would be barred by the statute of limitations unless the amendment relates back under Rule 15(c)." *In re Metzeler*, 66 B.R. 977, 981 (Bankr. S.D.N.Y. 1986) (denying motion to file an amended complaint setting forth additional transactions). "To permit amendment for the purpose of alleging claims barred by a statute of limitations is a nullity and only increases the heavy costs of litigation." *Id.* As the *Metzeler* Court held:

> This issue of whether the averment of a proposed amended petition alleging fraudulent transfers in addition to those originally alleged, may relate back to the original petition is comparable to the issue recently addressed by this Court in *Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.),* 67 B.R. 304 (Bankr. S.D.N.Y. 1986). There, the trustee sought permission of this Court to add several additional preference claims to the one originally alleged. Indeed, it is the same issue. Neither party suggests that fraudulent transfer claims are to be treated differently from preference claims under Rule 15(c) … [T]he mere allegation that all of the transactions are fraudulent transfers does not make them part of the same conduct…. Courts, however, have held that the mere pleading of a statute offers nothing to relate back to and that relation back under Rule 15(c) is not permitted.

18

*Id.* at 982-83. *See also In re M. Fabrikant & Sons, Inc.*, 447 B.R. 170, 182 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55 (2d Cir. 2013) ("an amended complaint will not relate back if it is based on new facts and different transactions ... ***In avoidance litigation, each transfer is treated as a separate transaction for purposes of applying the 'relation back' doctrine.***") (internal citations omitted) (emphasis supplied).

In this case, there was not a single allegation against any of Blue Daffodil, Blue Violet, Dahlia, Daisy (in part), Geranium, Lilac, Macon, Red Begonia, Yellow Lotus, or Yellow Sunflower in either the original Complaint or the First Amended Complaint. It was not until Plaintiff put forth the PSAC that those entities were apprised, for the first time, of the transaction(s) Plaintiff seeks to avoid. But because there was not a single transaction identified in the Complaint or First Amended Complaint with respect to any of those entities, there is simply nothing to "relate back" to and, accordingly, the applicable periods of repose now preclude Plaintiff's claims as time-barred.

**IV.**

**PLAINTIFF HAS FAILED TO AVOID THE UNDERLYING
LOANS OR SECURITIES TRANSACTIONS, AND MAY NOT DO SO NOW**

When seeking to avoid transfers relating to loans or similar transactions under a fraudulent conveyance theory, it is incumbent upon a plaintiff to first avoid the underlying obligations as fraudulent. Failure to do so necessarily results in the conclusion that the transfers were supported by consideration and, therefore, those transfers may not be avoided as a matter of law. *See e.g. In re M. Fabrikant & Sons, Inc.*, *supra*, at 189 ("Viewing the first transfer alone, the Lending Banks gave value, and the advances created valid obligations owed to the Lending Banks by the debtors. If those obligations are valid, the liens granted to secure those obligations would not be avoidable

constructive fraudulent transfers."); *Bird v. White (In re White)*, 591 B.R. 884 (D. Utah 2018) ("It is widely recognized by courts that where a debtor makes prepetition payments on a contractual debt, in order for those to be avoidable as constructively fraudulent, it is necessary for the trustee to first avoid the underlying contract as a fraudulently incurred obligation.  Absent avoidance of the underlying contract, the payments discharge the obligation and are, by definition, for reasonably equivalent value.").  *See also Estate of Hurst v. Jones*, 230 N.C.App. 162 (2013) (listing a variety of unperformed promises that constitute value, including "a transfer in consideration of a negotiable note…"); *Central Illinois Energy Co-op. v. Nostaw, Inc.*, 521 B.R. 868 (C.D. Ill. 2014) (failure to avoid note rendered payments made thereunder for "value"); and *O'Toole v. Karnani et al. (In re Trinsum Group, Inc.)*, 460 B.R. 379 (S.D.N.Y. 2011) (failure to avoid promissory notes defeated Distributing Agent's ability to seek to avoid the obligations owed pursuant to those notes).[20]

And because the applicable statutes of repose have expired, as set forth above, it is now too late for Plaintiff to avoid the loan agreements and/or securities transactions.  Accordingly, under applicable North Carolina (and Delaware) law, any claim seeking to avoid the underlying loans and/or securities transactions are time-barred.

## V.

## PLAINTIFF HAS STILL FAILED TO SATISFY THE PLEADING STANDARDS OF FED. R. CIV. P. 9(B) AND FED. R. CIV. P. 8(A)

### A.  The PSAC Does Not Plead Fraud With Particularity

In addition to the fraudulent transfer allegations, the claims for common law fraud against Defendants are wholly lacking and should also be dismissed.

---

[20] The validity of the Loan and Security Agreements has been specifically recognized by the JPLs.  *See* ECF Doc. No. 135-1.

Once again, the PSAC fails to allege any particulars concerning Defendants' purported fraud, including the "time, place, or content of [any of their] allegedly deceptive actions." *Ramos v. Bank of America*, N.A. 2012 WL 5928732 at *4 (D. Md. Nov. 26, 2012).  *See also Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678–79 (N.C. 1981) ("In pleading actual fraud, the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations…"), and *Town of Belhaven, NC v. Pantego Creek, LLC*, 250 N.C. App. 459, 469–70, 793 S.E.2d 711, 718 (N.C. Ct. App. 2016) ("the well-recognized elements of fraud are 1) a false representation or concealment of a material fact, 2) reasonably calculated to deceive, 3) made with intent to deceive, 4) which does in fact deceive, and which 5) results in damage to the injured party … Dismissal of a claim for failure to plead with particularity is proper where there are no facts whatsoever setting forth the time, place, or specific individuals who purportedly made the misrepresentations.").

The PSAC is completely devoid of any such fraud allegations against any Defendants.

### B.  The PSAC Does Not Adequately Allege PBLA's Insolvency

As to the constructive fraudulent conveyance claims, the  PSAC *still* fails to set forth any facts that tend to show PBLA was insolvent at the time any purported transfer was made.  "To avoid a transfer [as fraudulent], the debtor must be insolvent on the date that such transfer was made."  *Oliver v. Cooper (In re Bateman)*, 2012 WL 1110080 at *2 (E.D. N.C. April 2, 2012).  "'To fully satisfy N.C. Gen. Stat. § 39-23.4,[21] the plaintiff must … show that the transaction left the debtor undercapitalized.'"  *Id*. at *3.

---

[21] North Carolina General Statute § 39–23.4 provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

The *Oliver* case is particularly instructive because there, as here, the complaint baldly alleged that: (i) the transfer was intended to hinder, delay, or defraud creditors; (ii) the debtor became insolvent as a result of the transfer to the defendants; (iii) the transfer represented a transfer by the debtor to insiders; and (iv) the debtor received less than the reasonable equivalent value in exchange for the transfer and as a result debts were incurred beyond the debtor's ability to pay as they became due. *Id*. at *3.

As the *Oliver* Court correctly held:

> Although the complaint recites the elements [of fraudulent conveyance], it fails to provide factual support of these allegations … The complaint does not provide sufficient facts showing the Debtor's actual assets and liabilities as they stood on the date the Property was transferred or shortly thereafter. These are the facts the Trustee should have pled in regard to the essential element of insolvency. Here, the statement that "the Debtor became insolvent as a result of the transfer of the Property to the Defendants" is a "conclusory statement [that] 'fail[s] to satisfy the requirements under *Iqbal*." (Internal citations omitted).

The Oliver Court went on to conclude that:

> [T]he complaint fails to allege sufficient facts to draw a reasonable inference that the Debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer. Further, the complaint fails to set forth sufficient facts supporting the allegation that the transfer was intended to hinder, delay or defraud creditors. Accordingly, the allegations made with respect to N.C. Gen. Stat. § 39–23.4 fail to satisfy the pleading requirements of Fed. R. Civ. Pro. 8(a).

*See also* In re Caremerica, Inc., 409 B.R. 737, 756 (E.D. N.C. 2009), where the Court held:

> Under *Iqbal,* it follows that claims to avoid constructively fraudulent transfers must assert factual allegations which show that relief is plausible. The Amended Complaint alleges that, with respect to transfers alleged to be

---

(1) With intent to hinder, delay, or defraud any creditor of the debtor; or
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
b. Intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

> fraudulent, the transferors 'received less than reasonably equivalent value in exchange from the defendant for such fraudulent transfer.' The Amended Complaint also alleges that these transferors were 'insolvent on the date of each fraudulent transfer or became insolvent as a result of the fraudulent transfer.' The court finds that the trustee's allegations mirror the elements of [a fraudulent conveyance]. However, the trustee fails to support such allegations with factual assertions other than dates, amounts, and names of transferees included in Exhibit B. Missing from the Amended Complaint is an identification of the consideration received by each transferor, information as to why the value of such consideration was less than the amount transferred, *and facts supporting the debtors' insolvency at the time of the transfer*. In the absence of such factual assertions, the trustee's claims based on constructive fraud fail to meet the Rule 8 pleading standard.

(Emphasis supplied).

"While courts have generally agreed that a claim for constructive fraud need only be pleaded according to the more lenient requirement of Rule 8, as opposed to the heightened particularity required by Rule 9(a), the application of Rule 8 is nevertheless subject to the standard outlined in *Twombly* and *Iqbal* which conclusively determined that a complaint must provide facts - distinct from legal conclusions and labels - that give rise to a plausible entitlement to relief. While a complaint must surely include the language of the statutory elements of a cause of action, the pleading falls short of the requirement of Rule 8(a) when it is bereft of any facts supporting those elements." *In re Sagarino*, 2017 WL 3865625, at \*3 (Bankr. D. Conn. Aug. 29, 2017). In *Sagarino*, as here:

> The Complaint alleges, 'During the entire period from August, 2014 through May, 2016, the Debtor was insolvent or became insolvent in consequence of the transfers described following; and/or was engaged in or about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or intended to incur, or then believed that he would incur, debts that would be beyond his ability to pay as such debts matured.'

And as the *Sagarino* Court properly held:

> These bare assertions 'amount to nothing more than a formulaic recitation of the element' of insolvency. *Iqbal*, 129 S. Ct. at 1951. Setting these allegations aside, a reading of the remainder of the Complaint readily reveals that the Trustee failed to

plead any subordinate facts showing that the Defendant was insolvent under any of the financial tests under Section 548(a)(1)(B) or CUFTA. As the Trustee has alleged no facts supporting the element of insolvency, he cannot show that avoidance of the transfers under a theory of constructive fraud is plausible.[22]

## CONCLUSION

The Motion is futile.

Plaintiff has not satisfied its obligation to establish "related to" jurisdiction, as previously briefed and argued by several defendants, including Defendants herein, in their respective motions to dismiss the First Amended Complaint.   Accordingly, subject matter jurisdiction is lacking.

Moreover, Plaintiff's claims are barred by the applicable statutes of repose with respect to (i) the fraudulent conveyance claims against (a) Atkinson, (b) Chrysanthemum, (c) Epping, (d) Hookset, and (e) Weare, because the purported transfers occurred more than four (4) years before Plaintiff's July 6, 2017 Complaint; and (ii) the unjust enrichment and conversion claims against all Defendants because the purported transfers occurred more than three (3) years before Plaintiff's July 6, 2021 Complaint.

---

[22] *See also Oliver v. Cooper (In re Bateman)*, 2012 WL 1110080 at *2 (E.D. N.C. April 2, 2012) ("Although the complaint recites the elements [of fraudulent conveyance], it fails to provide factual support of these allegations … The complaint does not provide sufficient facts showing the Debtor's actual assets and liabilities as they stood on the date the Property was transferred or shortly thereafter. These are the facts the Trustee should have pled in regard to the essential element of insolvency. Here, the statement that "the Debtor became insolvent as a result of the transfer of the Property to the Defendants" is a "conclusory statement [that] 'fail[s] to satisfy the requirements under *Iqbal.*" (Internal citations omitted); *In re Caremerica, Inc.*, 409 B.R. 737, 756 (E.D. N.C. 2009) ("The Amended Complaint alleges that, with respect to transfers alleged to be fraudulent, the transferors 'received less than reasonably equivalent value in exchange from the defendant for such fraudulent transfer.' The Amended Complaint also alleges that these transferors were 'insolvent on the date of each fraudulent transfer or became insolvent as a result of the fraudulent transfer.' The court finds that the trustee's allegations mirror the elements of [a fraudulent conveyance]. However, the trustee fails to support such allegations … Missing from the Amended Complaint … [are] facts supporting the debtors' insolvency at the time of the transfer. In the absence of such factual assertions, the trustee's claims based on constructive fraud fail to meet the Rule 8 pleading standard."); and *Comm. of Unsec. Creditors v. Leucadia Nat'l. Corp. (In re Vivaro Corp.)*, 524 B.R. 536, 551 (S.D.N.Y. 2015) (With respect to insolvency allegations: "to evaluate the sufficiency of a complaint's insolvency allegations, the court looks for some sort of balance sheet test or information that the Court can infer that corporation's liabilities exceeded their assets at the time the transfers took place … Additionally, there should be information as to the level of liquidity of the transferor's assets." And with respect to allegations of unreasonably small capital: "[t]he relevant factors include the transferor's debt to equity ratio, historical capital cushion, and the need for working capital in the transferor's industry.").

In addition, the transactions that form the basis for Plaintiff's fraudulent conveyance and other claims set forth in the PSAC with respect to (i) Blue Daffodil, (ii) Blue Violet, (iii) Dahlia, (iv) Daisy (in part), (v) Geranium, (vi) Lilac, (vii) Macon, (viii) Red Begonia, (ix) Yellow Lotus, and (x) Yellow Sunflower, are set forth for the first time.  As a matter of law, Plaintiff's claims cannot and do not relate back to the Complaint or First Amended Complaint.

Further, for each of the transactions set forth in the PSAC, Plaintiff has not sought to avoid the underlying notes and/or securities that were given in exchange for the money transfers, and may not do so now.  Because those notes and/or securities cannot now be avoided based upon the applicable statutes of repose, they constitute valid consideration and Plaintiff cannot avoid the money transfers as a matter of law.

Finally, Plaintiff has still failed to plead fraud with particularity under Fed. R. Civ P. 9(b), and has failed to properly plead insolvency under Fed. R. Civ. P. 8(a).  Accordingly, the actual fraud and constructive fraudulent transfer claims fail as a matter of law.

The Motion should be denied, and Defendants' dismissal motion granted.

Dated: Uniondale, New York
       March 18, 2022

> **WESTERMAN BALL EDERER**
> **MILLER ZUCKER & SHARFSTEIN, LLP**
>
> By____*/s/ Jay S. Hellman*_____
>       Jay S. Hellman, Esq.
>       1201 RXR Plaza
>       Uniondale, New York 11556
>       (516) 622-9200
>       *Counsel to Atkinson, LLC, Begonia Eight, LLC,*
>       *Blue Daffodil, LLC, Blue Violet, LLC, Carnation*
>       *Three, LLC, Chrysanthemum Two, LLC, Dahlia*
>       *Ten, LLC, Daisy Seven, LLC, Epping, LLC, Flowery*
>       *Branch, LLC, Forsyth, LLC, Geranium Two, LLC,*
>       *Hookset, LLC, Lilac Six, LLC, Macon, LLC, Red*
>       *Begonia, LLC, Somersworth, LLC, Weare, LLC,*
>       *Yellow Lotus, LLC, and Yellow Sunflower, LLC*

2548065