**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PB LIFE AND ANNUITY CO., LTD., *et al.*,[1] | Case No. 20-12791 (LGB) (Jointly Administered) |
| Debtors in Foreign Proceedings. | |
| UNIVERSAL LIFE INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 21-01169 |
| GREG E. LINDBERG, individually, CHRIS HERWIG, individually, AAPC HOLDINGS, LLC, ACADEMY FINANCIAL ASSETS, LLC, AGH PARENT, LLC, ALPINE CAPITAL, LLC, ASIM HOLDINGS, LLC, ASL HOLDINGS, LLC, ATKINSON, LLC, ATLANTIC COAST LIFE INSURANCE COMPANY, ATLAS FINANCIAL INVESTMENTS, LLC, AUGUSTA ASSET MANAGEMENT, INC., BEGONIA EIGHT, LLC, BLH CAPITAL, LLC, BLUE DAFFODIL, LLC, BLUE VIOLET, LLC, CAPITAL ASSETS FUND I, LLC, CAPITAL ASSETS FUND II, LLC, CAPITAL ASSET MANAGEMENT I, LLC, CAPITAL ASSETS MANAGEMENT II, LLC, CAPITAL ASSETS MANAGEMENT III, LLC, CARNATION THREE, LLC,  CHATSWORTH ASSET MANAGEMENT, LLC, CHRYSANTHEMUM TWO, LLC, CSI INTERCO, LLC, DAHLIA TEN, LLC, DAISY SEVEN, LLC, DRUMMOND GROUP, LLC, DUNHILL HOLDINGS, LLC, ELI GLOBAL, LLC, ENGLERT HOLDINGS, LLC, EPPING, LLC, ERIE PROPERTIES, LLC, FLAGSHIP HOLDINGS, LLC, FLEET ASSIST INTERCO LIMITED, FLOWERY BRANCH, LLC, FORSYTH, LLC, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

---

[1] PB Life and Annuity Co., Ltd., Northstar Financial Services (Bermuda) Ltd., Omnia Ltd. and PB Investment Holdings Ltd., foreign Debtors, are Bermuda limited companies which each have a registered address in Bermuda c/o Deloitte Ltd., Corner House, 20 Parliament Street, Hamilton HM 12, Bermuda, and are Jointly Administered for procedural purposes, by Order of this Court entered on April 2, 2021, [ECF # 42].

FORTREX, LLC, GBIG CAPITAL, LLC, GBIG
HOLDINGS, INC., GBI GROUP, LLC, GERANIUM
TWO, LLC, GILFORD ASSET MANAGEMENT,
LLC, GLOBAL BANKERS INSURANCE GROUP,
LLC, GLOBAL GROWTH HOLDINGS, INC.,
GLOBAL INSURANCE CAPITAL, LLC,
GREENFIELD CAPITAL, LLC, HAMPTON ASSET
MANAGEMENT, INC., HANSEN AEROSPACE,
LLC, HEALTHLINK HOLDINGS, LLC,
HOOKSETT, LLC, HUTCHISON LAW GROUP,
PLLC, INTEGRITY EMR HOLDINGS, LLC,
INTEGRITY EMR, LLC, IRON CITY ASSET
MANAGEMENT, INC., ITECH FUNDING, LLC,
JACKSON ASSET MANAGEMENT, INC., KITE
ASSET MANAGEMENT, INC., LILAC SIX, LLC,
MACON, LLC, MORNING MOUNTAIN
HOLDINGS, LLC, NETHERLANDS INSURANCE
HOLDINGS, INC., NEW ENGLAND CAPITAL,
LLC, NIH CAPITAL, LLC, NOM GB 2018 I, LLC,
PARADIGM PARK HOLDINGS, LLC, PARALLEL
CAPITAL ASSETS, LLC, PERSHING, LLC, RED
BEGONIA, LLC, REVOLVERCAP PARTNERS
FUND, LP, SATORI WATERS, LLC, SEDWICK,
LLC, SENTINEL SECURITY LIFE INSURANCE
COMPANY, SOMERSWORTH, LLC, STANDARD
ADVISORY SERVICES, LTD, STANDARD
FINANCIAL LIMITED, STANDARD
INVESTMENT CAPITAL, LTD, TREATMENT
RESOURCES OF MARGATE, INC., TRITON
FINANCIAL LIMITED, TUX HOLDINGS, LLC,
TYBEE ISLAND ASSET MANAGEMENT, LLC,
UKAT HOLDINGS, LLC, UKAT INVESTMENT
LIMITED, VERDESIAN LIFE SCIENCES, LLC,
WEARE, LLC, YELLOW LOTUS, LLC, YELLOW
SUNFLOWER, LLC, UBS FINANCIAL SERVICES,
INC., GOLDMAN SACHS LENDING PARTNERS,
LLC, CREDIT SUISSE AG CAYMAN ISLANDS
BRANCH, GOLDMAN SACHS BANK USA,
MORGAN STANLEY SENIOR FUNDING, INC.,
THE BRYN MAWR TRUST COMPANY,  and
DOES 1 through 10, inclusive

       Defendants.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................ii

INTRODUCTION .............................................................................................................1

ARGUMENT ...................................................................................................................2

I.   MOTION FOR LEAVE TO AMEND SHOULD BE "FREELY GIVEN" UNDER THE
     APPLICABLE LEGAL STANDARD IN THE SECOND CIRCUIT. ................................2

II.  THE SECOND AMENDED COMPLAINT IS NOT FUTILE AND THEREFORE ULICO'S
     MOTION FOR LEAVE SHOULD BE GRANTED. ...........................................................5

III. THIS COURT HAS JURISDICTION OVER THIS CASE. .................................................6

     A.  There is Federal Court Jurisdiction Over This Case Both Under "Related To"
         Jurisdiction and Diversity Jurisdiction........................................................................6

     B.  ULICO Has Standing under Voidable Preference Statutes. ......................................9

IV. DEFENDANTS' ADDITIONAL FUTILITY ARGUMENTS SIMILARLY FAIL.............10

     A.  The Proposed SAC Clearly Meets the Liberal Pleading Standards under Rule 8(a) and
         Rule 9(b) to State a Claim.........................................................................................10

     B.  None of ULICO's Claims Are Barred by Any Statute of Limitations .....................11

     C.  ULICO's Claim for Breach of Fiduciary Duty is Properly Alleged and Therefore, the
         SAC Is Not Futile......................................................................................................12

     D.  Defendant Morgan Stanley's Arguments Concerning ULICO's Constructive Trust
         Claim Similarly Do Not Support a Finding of Futility. ...........................................14

CONCLUSION...............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Block v. First Blood Associates*,
  988 F.2d 344 (2d Cir. 1993)...............................................................................................3, 5

*Bretillot v. Burrow*,
  2015 WL 6455155 (S.D.N.Y. Oct. 26, 2015) ..........................................................................14

*In re British Am. Ins. Co. Ltd.*,
  488 B.R. 205 (Bankr. S.D. Fla. 2013).......................................................................................8

*In re Cohen*,
  98 B.R. 179 (Bankr. S.D.N.Y. 1989) .......................................................................................2

*In re Commodore Int'l, Ltd.*,
  262 F.3d 96 (2d Cir. 2001).....................................................................................................10

*In re Crazy Eddie Sec. Litig.*,
  747 F.Supp. 850 (E.D.N.Y. 1990) ..........................................................................................12

*In re Falchi*,
  No. 97 B 43080 (JLG), 1998 WL 274679 (Bankr. S.D.N.Y. May 27, 1998)...........................8

*Foman v. Davis*,
  371 U.S. 178 (1962)..................................................................................................................3

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019)........................................................................................................4

*In Re Hellas Telecommunication (Luxembourg) II SCA*,
  535 B.R. 543 (Bankr. S.D.N.Y. 2015)....................................................................................11

*In re Hellas Telecommunications (Luxembourg) II SCA*,
  524 B.R. 488 (Bankr. S.D.N.Y. 2015)......................................................................................7

*In re Holland Indus., Inc.*,
  103 B.R. 461 (Bankr. S.D.N.Y. 1989) .....................................................................................8

*Iannuzzi v. Washington Mut. Bank*,
  2008 WL 3978189 (E.D.N.Y. Aug. 21, 2008).......................................................................13

*In re Koreag, Controle et Revision S.A.*,
  961 F.2d 341 (2d. Cir. 1992)...................................................................................................14

*Milanese v. Rust-Oleum Corp.*,
    244 F.3d 104 (2d Cir. 2001)..................................................................................5

*In re Norske Skogindustrier ASA*,
    629 B.R. 717 (Bankr. S.D.N.Y. 2021)...................................................................8

*Northbrook Nat. Ins. Co. v. J & R Vending Corp.*,
    167 F.R.D. 643 (E.D.N.Y. 1996)...........................................................................3

*Panther Partners Inc. v. Ikanos Communications, Inc.*,
    347 Fed.Appx. 617 (2d Cir. 2009).........................................................................5

*Parmalat Capital Finance Limited v. Bank of America Corporation*,
    639 F.3d 572 (2d Cir. 2011)..............................................................................7, 8

*Redinger v. Parker-Hanifin Corp.*,
    2022 WL 748248 (W.D. Pa. Mar. 11, 2022) .......................................................13

*In re White*,
    591 B.R. 884 (D. Utah 2019)...............................................................................13

**Statutes**

11 U.S.C. § 1521(a)(7)..............................................................................................7

28 U.S.C. § 1332(a) ..................................................................................................6

28 U.S.C. § 1334.....................................................................................................7, 8

Bermuda Conveyancing Act of 1983 Section 36A..................................................10

N.Y. C.P.L.R. § 202.................................................................................................12

N.C. Stat. Ann. §§ 39-23.1(4) & 39-23.4 ...............................................................10

N.C. Stat. Ann. § 39-23.9.........................................................................................12

N.Y. Debtor & Creditor Law §§ 270 & 278 (2010) ................................................10

N.Y. C.P.L.R. § 213.................................................................................................12

**Other Authorities**

Fed. R. Bankr. P. 7015...............................................................................................3

Fed.R.Civ.P. 56(c).....................................................................................................5

Fed. R. Civ. Pro. Rule 15(c)..................................................................................3, 12

Federal Rule of Civil Procedure 15(a)(2) ........................................................................................2

## **<u>INTRODUCTION</u>**

As the Court knows, this is a case arising out of a complex business relationship between the Plaintiff, Universal Life Insurance Company ("ULICO") and the Debtor, PB Life and Annuity Co, Ltd. ("PBLA").  PBLA agreed to reinsure ULICO for certain of its liabilities to policyholders in exchange for, among other things, the right to manage a portfolio of assets held as collateral to pay claims.  If PBLA was able to invest those assets in a manner that resulted in a value of more than 102% of ULICO's reserving obligations, PBLA got to keep the overage.  If its investment strategy resulted in something less than 102%, PBLA was obliged to top up the amount held in trust.  At the inception of the relationship, ULICO caused hundreds of millions of dollars in assets to be transferred to a trust account and invested with the input of PBLA. Initially those funds were held by Wilmington Trust Company, then by BNY Mellon Trust Company, and now by TMI Trust Company as trustee.

The First Amended Complaint ("FAC") alleges that PBLA, at the direction of its ultimate owner, Greg Lindberg, caused hundreds of millions of dollars to be transferred first from the trust account to PBLA and then from PBLA to downstream transferees.  Most, but not all, of those transferees were entities ultimately controlled by Lindberg.  At the time that PBLA transferred those assets it did so: (1) to defraud, hinder, or delay its creditors (including ULICO); and (2) at a time that it was insolvent and did not receive reasonably equivalent value in return. Because PBLA was ultimately responsible for maintaining the adequacy of the assets held in trust, it took the lead in making those investment decisions.  ULICO was only involved in, and kept apprised of, those investment decisions collaterally as the beneficiary of the trust and cedent of the reinsured risks.  Accordingly, it had relatively little information about the mechanics of each of the transfers.  That information was in the hands of the former management of PBLA and

- 1 -

was supposed to be in the hands of the former trustees.  The JPLs have been seeking those documents for more than a year, with scant success.

When ULICO filed its initial complaint in this case, it was hampered in investigating matters related to the transfers of assets that should have been held in trust for its benefit because Lindberg was covering up his fraudulent scheme.  Moreover, the JPLs themselves have not been able to acquire the relevant documents.  Since that time, ULICO has been able to acquire additional information, as a result of discovery allowed by this Court and otherwise.  Several of the Defendants objected to the FAC as supposedly pleaded with insufficient specificity.  In response to those objections, ULICO filed its motion for leave to amend to provide the specificity demanded by the Defendants.  The Defendants acknowledge, as they must, that the standard for amendment is exceedingly liberal and in favor of allowing amendment, but they still object to the amendment to provide the additional information that they themselves had demanded.  Instead, they seek to have a premature fight about whether the claims should be dismissed under Rule 12.  The Court should grant the motion for leave to amend and let the parties move forward on whether the Second Amended Complaint ("SAC") should proceed under an orderly Rule 12 briefing schedule.

## **ARGUMENT**

## I.    **MOTION FOR LEAVE TO AMEND SHOULD BE "FREELY GIVEN" UNDER THE APPLICABLE LEGAL STANDARD IN THE SECOND CIRCUIT.**

The Defendants concede, as they must, that the applicable standard within the Second Circuit is that a motion for leave to amend should be "freely given." *In re Cohen*, 98 B.R. 179, 182 (Bankr. S.D.N.Y. 1989) ("In general, even if the proposed amendment will substantially change the claim or defense, or add a different claim or defense, leave to amend will not be denied on such grounds alone.")  Federal Rule of Civil Procedure 15(a)(2), which governs

amendments to pleadings, provides that "[t]he court should *freely* give leave when justice so

requires" (emphasis added).[2]  Further, the Supreme Court has held that Rule 15(a)'s "mandate"

to give leave to amend "freely" "is to be heeded" by courts.  *Foman v. Davis*, 371 U.S. 178, 182

(1962).  Indeed, the Second Circuit has expressly held that "the rule in this circuit has been to

allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice

or bad faith."  *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993).

Notwithstanding the very clear admonition that motions for leave to amend should be granted

freely except in exceptional circumstances, several of the defendants have opposed the motion on

the grounds of "futility."  Those arguments are nothing more than an attempt to have the Court

prematurely resolve Rule 12 motions to dismiss on an incomplete record.

   Application of the controlling standard for a motion to dismiss does not require an

extensive and probing analysis of the merits of the claims set forth in the proposed amended

pleading.  The Defendants' own authority makes this clear.  For example, *Lerman v.

Chuckleberry Pub., Inc.*, which Defendant Morgan Stanley argues "expressly holds that leave to

amend should be denied when a proposed amendment is legally insufficient on its face" [ECF

# 165, at 7] actually holds that *"[u]nless a proposed amendment is clearly frivolous or legally

insufficient on its face*, the substantive merits of a claim or defense *should not* be considered on a

motion to amend"  544 F. Supp. 966, 968 (S.D.N.Y. 1982) (emphasis added), *rev'd on other

grounds,* 745 F.2d 123 (2d Cir. 1984).  In other words, the insufficiency must be egregious, as

consideration of any substantive merits on a motion for leave to amend is the exception, and not

the rule.  Other authority cited by Defendants is consistent and stands for the proposition that

only where an amendment adds "no colorable merit" will it be denied as futile.  *See Northbrook*

---

[2] Federal Rule of Civil Procedure 15 applies in adversary proceedings.  Fed. R. Bankr. P. 7015.

*Nat. Ins. Co. v. J & R Vending Corp.*, 167 F.R.D. 643, 647 (E.D.N.Y. 1996). Here, ULICO has

proposed a SAC that is significantly longer and more detailed than its previous pleadings, setting

forth allegations as to each Defendant under specific state laws. In addition to the allegations

previously included in the FAC, the SAC asserts, with regard to each Defendant, detailed

information regarding the fraudulent transfers applicable to that Defendant. There is clearly

nothing about the SAC that is deficient on its face, and thus this Court need not undertake an

analysis of ULICO's ability to state a claim with regard to each Defendant.

　　　To the extent the Court determines it must resolve whether the SAC would survive a

motion to dismiss, it must also accept as true all facts pleaded in the SAC. *See Force v.

Facebook, Inc.*, 934 F.3d 53, 62 (2d Cir. 2019) (noting that "[w]e accept as true all alleged facts

in both the First Amended Complaint and the proposed second amended complaint" in reviewing

the district court's determination that amendment would be futile). ULICO has now alleged

pages upon pages of allegations which, when accepted as true, unquestionably state a claim for

relief against each individual Defendant. Some of the Defendants complain that ULICO has

only added "one paragraph" as to them as though that somehow shows that the SAC is deficient.

It does not. Those paragraphs state exactly what Defendants previously complained was missing

from the FAC: date, amount, bank account information, and parties to the fraudulent transfer(s).

It is the substance of the allegations, not the number of paragraphs, that matter.

　　　In other places the Defendants seem to be arguing that ULICO has not come forward

with all of the evidence it would need to prove its case right now. Those arguments confuse the

standard ULICO must meet for leave to amend with those it would need to meet to be entitled to

summary judgment. ULICO is not required to show it is entitled to summary judgment at this

juncture, as argued by Defendant Hutchinson Law Firm. [ECF # 166, at 18]. In fact, the Second

Circuit has expressly held that:

> [T]he rule is different where, as here, the cross-motion is made in response to a
> Fed.R.Civ.P. 56 motion for summary judgment, and the parties have fully briefed the
> issue whether the proposed amended complaint could raise a genuine issue of fact and
> have presented all relevant evidence in support of their positions. In the latter situation,
> even if the amended complaint would state a valid claim on its face, the court may deny
> the amendment as futile when the evidence in support of the plaintiff's proposed new
> claim creates no triable issue of fact and the defendant would be entitled to judgment as a
> matter of law under Fed.R.Civ.P. 56(c).

*Milanese v. Rust-Oleum Corp.,* 244 F.3d 104, 110 (2d Cir. 2001). Of course, ULICO's motion

has not been made in response to any motion for summary judgment pursuant to Rule 56(c), nor

has any such motion been filed by any Defendant. Accordingly, leave should be freely granted

for ULICO to file its SAC.

## II.    THE SECOND AMENDED COMPLAINT IS NOT FUTILE AND THEREFORE ULICO'S MOTION FOR LEAVE SHOULD BE GRANTED.

The Second Circuit is explicit that a complaint is futile only when it *clearly* cannot

survive a motion to dismiss. *See Block v. First Blood Associates*, 988 F.2d at 350. "Although

courts commonly look to proposed amendments to determine futility, courts need not determine

futility based only on an assessment of the proposed amendments – that is, the complaint

presented to the court for its consideration. Instead, courts may consider all possible amendments

when determining futility." *Panther Partners Inc. v. Ikanos Communications, Inc.,* 347 Fed.

App'x. 617, 622 (2d Cir. 2009) (holding that "because it seems to us possible that plaintiff could

allege additional facts," further amendments may not be futile and therefore leave to amend

should be granted) (internal citations omitted).

Defendants raise numerous arguments that have previously been addressed in ULICO's

omnibus response. Accordingly, ULICO directs this Court to its prior brief. There are, however,

two threshold issues that bear particular mention on the issue of "futility." The first is subject

matter jurisdiction.  As explained more thoroughly below, this court unquestionably has subject

matter jurisdiction.  The second is standing.  ULICO, as a creditor with a final and unappealable

judgment against PBLA of more than half a billion dollars, has explicit standing to pursue

fraudulent transfer claims under the statutory scheme cited within the SAC.  Accordingly, it is

indisputable that the SAC is not futile and thus ULICO's motion for leave should be granted.

### III.    THIS COURT HAS JURISDICTION OVER THIS CASE.

#### A.    There is Federal Court Jurisdiction Over This Case Both under "Related To" Jurisdiction and Diversity Jurisdiction.

The Defendants' arguments on the related issues of subject matter jurisdiction and

standing seek to whipsaw ULICO.  On the one hand, they argue that there is no subject matter

jurisdiction over this case because it does not involve claims that belong to the Debtor.  At the

same time, they argue that the claims actually belong to the Debtor, and not ULICO, so ULICO

does not have standing.  In fact, both of those arguments are wrong.

There is federal court jurisdiction over this case for two reasons.  In the first instance,

there is federal jurisdiction over the claims under 28 U.S.C. § 1332 (diversity).  That is, because

there is a claim vastly larger than $75,000, and there is complete diversity between ULICO — a

Puerto Rican corporation with its principal place of business in Puerto Rico — and Defendants

— none of which was either formed under the law of Puerto Rico or with a principal place of

business there.  *See* 28 U.S.C. § 1332(a).  Not one of the Defendants challenged the basis of

diversity jurisdiction here.  Instead, they argued that there is not "related to" jurisdiction because

the claims in this Adversary Proceeding are not sufficiently related to the main Chapter 15 case

to come under bankruptcy jurisdiction.  That argument is wrong.  In any case, if it were right, it

would only mean that this case should be assigned to a district judge, and not a bankruptcy

judge, since this district's order of reference would be inapplicable.  *See* 28 U.S.C. § 157 (c) (1).

The jurisdictional question here is relatively unusual because of the structure of Chapter 15. Unlike other chapters of the Code, Congress specifically precluded granting relief "under sections 522, 544, 545, 547, 548, 550, and 724(a) [of the Code]" in Chapter 15 proceedings. 11 U.S.C. § 1521(a)(7). That means that the Debtor does not have the usual avoidance powers of a trustee. That leaves the Debtor with whatever non-bankruptcy remedies it may have under the law of one of the States or of a foreign sovereign and creditors with whatever rights of that nature they may have under similar laws. Not surprisingly, debtors do not have standing to try to undo their own voidable transfers outside of the bankruptcy context. Those rights belong to aggrieved creditors. As a practical matter, the jurisdictional issue presented here will only occur in Chapter 15 cases or matters under Section 301 prior to the enactment of Chapter 15. Those cases uniformly show that the Court has jurisdiction.

First, the Second Circuit made clear in *Parmalat Capital Finance Limited v. Bank of America Corporation*, 639 F.3d 572 (2d Cir. 2011), that the traditional, expansive analysis of "related to" jurisdiction was applicable in the context of a Section 301 case supporting a foreign proceeding. The Court of Appeals affirmed the removal of a state court professional malpractice claim on the basis of "related to" jurisdiction under 28 U.S.C. § 1334. It applied the familiar "conceivable effect" test and found that there was jurisdiction because "the funds . . . recover[ed] will benefit the respective bankruptcy estates." *Id.* at 579. The "conceivable effects" test was applied in the same way for a case with a foreign proceeding as it would be in a domestic case under the Code. *Id.*

Courts have followed *Parmalat* in allowing avoidance claims to be pursued in Chapter 15 cases under Section 1334 "related to" jurisdiction. *See In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. 488, 515 (Bankr. S.D.N.Y. 2015); *see also In re Norske*

*Skogindustrier ASA*, 629 B.R. 717 (Bankr. S.D.N.Y. 2021); *In re British Am. Ins. Co. Ltd.*, 488 B.R. 205, 223-24 (Bankr. S.D. Fla. 2013) (finding that "[t]here is no question" that fraudulent conveyance claims in a Chapter 15 case invoked Section 1334 "related to" jurisdiction because, among other things, they "could augment the recoveries of creditors of the debtor."). The amounts that will be recovered in this case will clearly augment the recovery of ULICO, as a creditor of PBLA. Accordingly, this case fits squarely within the scope of "related to" jurisdiction recognized in the Second Circuit and elsewhere.

The Defendants, including Aspida Financial Services, LLC, ("Aspida"),[3] cite cases from the 80's and 90's for the proposition that only claims held directly by the Debtor qualify under the "conceivable effect" test. [ECF # 163, at 13]; *see In re Holland Indus., Inc.*, 103 B.R. 461, 469 (Bankr. S.D.N.Y. 1989); *In re Falchi*, No. 97 B 43080 (JLG), 1998 WL 274679 (Bankr. S.D.N.Y. May 27, 1998). Both of those cases predate controlling law from the Second Circuit showing that the "conceivable effect" test is met when where a claim could increase recoveries to creditors in a foreign proceeding. They also do not deal with the circumstances present here where recovery by the creditor, ULICO, will *reduce* its claim (a final and unappealable judgment) against the Debtor. Reducing that claim will increase the assets that can be used to satisfy other creditors, to the extent any exist. Under those circumstances, there can be no doubt that there will be a "conceivable effect" on the main case.

---

[3] Aspida also continues to argue that ULICO's claims against it are barred by the Michigan Court's Sale Order in Pavonia Life Insurance Company of Michigan's rehabilitation proceeding. [ECF # 163, at 14-21]. Aspida argues that the Sale Order is preclusive as a matter of *res judicata* and that this Court should abstain from interfering in Michigan's insurance regulation under the *Buford* Doctrine. *Id.* at 16, 19. However, as explained in ULICO's opposition to Aspida's motion to dismiss, *res judicata* requires that the two actions in question involve the same parties. [ECF # 131, at 11]. ULICO was not a party to the Michigan proceedings. More to the point, the Michigan Court utterly lacks the subject matter or personal jurisdiction to provide the relief that Aspida claims. Those issues are also explained in ULICO's opposition to Aspida's motion to dismiss [*Id.* at 5-9].

B.     **ULICO Has Standing under Voidable Preference Statutes.**

Some of the oppositions to the motion for leave to amend continue to assert that ULICO

does not have standing to pursue the avoidance claims arising out of the transfers.  That is

because Defendants insist on viewing this case through the frame of a traditional Chapter 7 or 11

case where the trustee is given standing to pursue the Code's avoidance powers.  As explained

above, Congress has precluded that possibility.  That leaves applicable non-bankruptcy theories

of recovery.  All of the avoidance claims asserted here belong to aggrieved *creditors*, like

ULICO, and not to PBLA.

The Lindberg Defendants inaccurately frame ULICO's fraudulent conveyance claim by

stating that ULICO cannot recover against the Lindberg Defendants because ULICO alleges that

the Reinsurance Trust was "the only entity that made allegedly improper transfers." [ECF # 168,

at 12].  This is simply incorrect.  Paragraph 5 of the SAC alleges that, "[t]he centerpiece of the

conspiracy set forth in this complaint was the monetization of valuable assets held in the trust,

then the transfer of cash from the trust first to the Debtor, PBLA, and then to other entities . . . ."

[ECF # 159-1, at ¶5].  Though the Reinsurance Trust was the *initial* transferor to PBLA, PBLA

then made the voidable transfers to the Lindberg Defendants.  [ECF # 159-1, at ¶¶ 5, 6, 27, 119].

For example, ULICO explicitly alleges that "monies were transferred out of the Trust ***by PBLA***

to affiliates owned by Lindberg and his various other corporate entities . . . ." [ECF # 159-1, at ¶

119].  (emphasis added).  Thus, the standing argument fails.

Elsewhere, other Defendants contend that it is the Debtor, and not ULICO, that has the

right to assert voidable transfer claims.  That is also wrong.  As explained above, the

conventional avoidance remedies available to a trustee under either Chapters 7 or 11 are

explicitly excepted from relief available to a debtor under Chapter 15.  Therefore, the authority

related to whether creditors have a *derivative* right to assert the Code's avoidance remedies is

simply inapposite.  *See. e.g.*, *In re Commodore Int'l, Ltd.*, 262 F.3d 96, 100 (2d Cir. 2001).

Rather, it is the language of the relevant voidable transfer statutes that provides which party has

the claim.  In each case, it is the aggrieved *creditor* that has the claim, and not the debtor, who

engaged in the voidable transfer.  *See* N.Y. Debtor & Creditor Law §§ 270 & 278 (2010) (giving

the right to avoid transfers to "a creditor" and defining a "creditor" as "a person having any

claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent");

N.C. Stat. Ann. §§ 39-23.1(4) & 39-23.4 (providing that transfers are "voidable as to a creditor"

and defining a "creditor" as "[a] person that has a claim").  The same would be true in the event

that the Court applied the law of Bermuda.  Section 36A of the Bermuda Conveyancing Act of

1983 also provides that "dispositions" of property with the requisite intent of trying to place

property "beyond the reach" of creditors "shall be voidable *at the instance of an eligible creditor*

thereby prejudiced."  (emphasis added).

## IV.    DEFENDANTS' ADDITIONAL FUTILITY ARGUMENTS SIMILARLY FAIL.

As noted above, the only plausible issues related to a futility analysis here are subject

matter jurisdiction and standing, both of which are clearly present.  Nevertheless, the Defendants

raise numerous arguments previously asserted in their motions to dismiss in support of their

futility argument.  ULICO does not want to further bloat this record with another rehash of the

arguments on the motions to dismiss.  Instead, it respectfully refers the Court to the summary

below and the papers already filed on the motions to dismiss:

### A.    The Proposed SAC Clearly Meets the Liberal Pleading Standards under Rule 8(a) and Rule 9(b) to State a Claim.

Despite many hurdles, ULICO has been able to retrieve at least some documentation that

sheds more light on the specific nature of the transfers at issue in the SAC.  The Defendants have

repeatedly demanded that ULICO provide greater detail on the transfers in its complaint.

Yet, ULICO has provided *even more* detail than what was requested. ULICO has identified the date of each transfer in question, any related agreements to the transfer, the amount of the transfer, the specific bank accounts involved, and those Defendants in receipt of such transfers. The level of detail asserted in the SAC without question meets the liberal standard of Rule 8(a).

Moreover, Defendants continue to insist that ULICO is asking this Court to eliminate the heightened pleading standard of Rule 9(b) rather than relax it as has often been the practice when the plaintiff, like ULICO, was not a party to the transactions at issue. *See In re Hellas Telecommunication (Luxembourg) II SCA*, 535 B.R. 543, 561-62 ("courts relax, but do not eliminate, the particularity requirement for pleading fraud where the plaintiff is a bankruptcy trustee or a third party who is pleading fraud on secondhand information.") [ECF # 111, at 20]. This relaxed standard does not require specificity as to the mental element of the intent to defraud, acknowledging the difficulty of proving intent when the plaintiff has only second-hand knowledge of the transactions. *Id*. Indeed, as ULICO as previously argued, courts have allowed allegations of "badges of fraud" to suffice as a matter of pleading. The elements of those "badges of fraud" include: a close associate relationship between the parties to the transaction, the retention of the property in question, the financial condition of the party sought to be charged before and after the transaction, the timeline of the transactions under inquiry, questionable transfers not in the usual course of business, and the unusualness of the transaction. *Id*. at 20-21. The SAC includes ample allegations for each Defendant to establish such badges of fraud against them.

**B.      None of ULICO's Claims Are Barred by Any Statute of Limitations.**

Defendants continue to rely on incorrect statutes to determine the applicable limitations periods for ULICO's claims. Under Section 213 of the New York Civil Practice Law and Rules ("C.P.L.R."), the statute of limitations for an action to "procure a judgement on the ground of

fraud" is six years. N.Y. C.P.L.R. 213; [ECF # 111, at 18].  This six-year period applies not only

to ULICO's avoidance claims, but to each of its other claims for relief as well, as they are all

grounded in allegations of fraud. *Id.*  If the Court were to apply the New York borrowing statute,

N.Y. C.P.L.R. § 202, the claims are also timely.  Much of the relevant conduct here took place in

North Carolina.[4]  That State has a four-year statute of limitations, and none of the voidable

transfer claims are outside of that window. *See* N.C. Stat. Ann. § 39-23.9. *Id.*  Notably, among

the earliest transactions ULICO alleges take place on July 7, 2017.  ULICO filed its adversary

proceeding on July 6, 2021 [ECF # 1] — well within the four-year limitations period.[5]

### C.    ULICO's Claim for Breach of Fiduciary Duty is Properly Alleged and Therefore, the SAC Is Not Futile.

Defendants' assertion that ULICO's claim for breach of fiduciary duty makes the SAC

futile does not meet this Circuit's high standard for futility, which does not allow a Defendant to

short circuit Rule 12.  Defendants assert that they owe no fiduciary duty to ULICO because

corporations have been held to have no fiduciary duty to their stockholders, members, directors,

or officers. [ECF # 169, at 27].  However, the nature of ULICO's relationship to the Lindberg-

controlled Defendants is not one of stockholders or members.  PBLA, under the direction of

---

[4] The Lindberg Defendants allege that because ULICO is a non-resident of North Carolina, Puerto Rican law applies.  [ECF # 168, at 11].  There is nothing in the SAC that suggests that any of PBLA's conduct related to the voidable transfers took place in Puerto Rico, because it did not.  Instead, the SAC raises claims under New York and North Carolina law because that is where the trust assets were located, and where PBLA's staff managed the assets.
[5] The Flowery Defendants and the Lindberg Defendants also assert that the SAC cannot relate back to the initial complaint for purposes of complying with the applicable statutes of limitations, as it concerns: (i) Blue Daffodil; (ii) Blue Violet; (iii) Dahlia; (iv) Daisy; (v) Geranium; (vi) Lilac; (vii) Macon;(viii) Red Begonia; (ix) Yellow Lotus; (x) Yellow Sunflower; and (xi) all of the Lindberg Defendants.  This argument is unfounded.  Under Fed. R. Civ. Pro. Rule 15(c), an amendment relates back so long as it provides fair notice to the defendant of the nature of the claims asserted against it.  *See In re Crazy Eddie Sec. Litig.,* 747 F.Supp. 850, 858 (E.D.N.Y. 1990).  In that instance the court looks to multiple factors including whether the Defendants named in the amended pleading are the same as those named in the initial pleading – or in this instance the FAC – and were on notice within the limitations period.  In this instance, the Flowery Defendants and the Lindberg Defendants that raise this argument were either named in the initial complaint or FAC (filed July 30, 2021), and any such transfers involving those Defendants were well within the applicable limitations period.  In any case, the issue of whether a complaint should, or should not relate back at this time, is not relevant to the Rule 15 standard applicable here.

- 12 -

Lindberg, had a fiduciary duty to ULICO under the terms of the trust agreement. *Id*. at 26. This fiduciary duty flowed through the affiliates created and directed by Lindberg and was breached when he engaged in self-dealing transactions with the Defendants at the expense of ULICO. *Id*. at 26-27.

Similarly, the Flowery Defendants assert that they *cannot* owe any fiduciary duty to ULICO because a corporation cannot owe a fiduciary duty to its shareholders. [ECF # 169, at 27]. This assertion distorts the holdings in the string citation in footnote 19 of the Flowery Defendants' response brief. Those citations pertain to cases in which the plaintiff was a shareholder of the defendant corporation. *See Redinger v. Parker-Hanifin Corp.*, 2022 WL 748248, at *1 (W.D. Pa. Mar. 11, 2022) ("Plaintiff and [defendant's predecessor] entered a Stock Purchase Agreement in May 2004 . . . which gave Plaintiff the opportunity to purchase shares of [the defendant's predecessor's] Class B stock during his employment.") Here, ULICO is not asserting a breach of fiduciary duty claim as a shareholder of the Flowery Defendants. Therefore, the case law cited in footnote 19 of the Flowery Defendants' response brief is inapposite. *See Iannuzzi v. Washington Mut. Bank*, 2008 WL 3978189, at *9 (E.D. N.Y. Aug. 21, 2008) (denying motion to dismiss claim for breach of fiduciary duty against corporation).

The Flowery Defendants also argue that by not attempting to avoid the underlying loans or securities transactions, ULICO may not now avoid the fraudulent conveyances as a matter of law. [ECF # 169, at 29-30]. In support of this assertion, the Flowery Defendants cite *In re White*, 591 B.R. 884 (D. Utah 2019), for the proposition that, absent avoidance of any underlying obligations, ULICO lacks the ability to seek avoidance of the fraudulent conveyances. [ECF # 169, at 30]. This is not a case like *In re White*. There the trustee was seeking to avoid payment under a note, where the statute of limitations had run on the ability to void the note itself. *Id.* at

591. Because of that, and the fact that the debtor had *already* received the consideration

supporting the note at the time of signing, the debtor, and the trustee derivatively, waived the

ability to avoid the payments. That is nothing like this case. Here, ULICO is timely seeking to

avoid the transfers, and the related transactions, and its rights are not derivative of PBLA.

> **D.    Defendant Morgan Stanley's Arguments Concerning ULICO's Constructive Trust Claim Similarly Do Not Support a Finding of Futility.**

Without any citation to authority, Defendant Morgan Stanley asserts that ULICO's

constructive trust claim fails merely because the property it seeks to recover passed through

Morgan Stanley. [ECF # 165, at 17]. This argument fails because Morgan Stanley offers no

authority in support of this position. *Bretillot v. Burrow*, 2015 WL 6455155, at *2 (S.D.N.Y.

Oct. 26, 2015) (citing *Watkins v. Smith*, 561 Fed. App'x 46, 47-58 (2d Cir. 2014), stating "[s]uch

[o]bjections are the equivalent of no [o]bjections and fail for their own lack of substance.")

To the extent it argues that some aspect of a constructive trust claim is not satisfied, Morgan

Stanley's bare argument still fails. The Second Circuit recognizes that, in the interest of equity,

New York courts need not strictly impose the general requirements of constructive trust claims.

*See In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 353 (2d Cir. 1992) ("[A]rguable lack

of a transfer would not prevent the imposition of a constructive trust when the other conditions

were met and equitable considerations warranted this resolution.").

Morgan Stanley also continues to insist that ULICO cannot bring claims against it as a

transferee or conduit. [ECF # 165, at 6, 12-14]. However, as previously stated in ULICO's

opposition to Morgan Stanley's motion to dismiss, an initial transferee can be held liable in a

fraudulent conveyance action. [ECF # 130, at 12]. The proof that Morgan Stanley demands that

it acquired dominion and control over these transferred funds is not required at the pleading

stage. *Id*. Morgan Stanley has been provided with sufficient notice to defend against ULICO's

allegations, which is all that the Federal Rules of Bankruptcy Procedure require. *Id*.

Accordingly, at this stage, the Court should permit ULICO to move forward with its

constructive trust claim against Morgan Stanley, as such a claim is clearly sufficient and not

futile.

### **CONCLUSION**

For the reasons stated, this Court should grant ULICO's Motion for Leave to File a

Second Amended Complaint.

Dated: New York, New York
       March 28, 2022

Respectfully submitted,

**CLYDE & CO US LLP**

/s/ Clinton E. Cameron
Clinton E. Cameron (*pro hac vice*)
Meghan C. Dalton (*pro hac vice*)
Clyde & Co US LLP
55 W. Monroe
Suite 3000
Chicago, IL 60603
Tel: 312-635-7000
Clinton.Cameron@clydeco.us
Meghan.Dalton@clydeco.us