**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PB LIFE AND ANNUITY CO., LTD., *et al.*,[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 20-12791 (LGB)<br>(Jointly Administered) |
| UNIVERSAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br>v.<br><br>GREG E. LINDBERG, individually, CHRIS HERWIG, individually, AAPC HOLDINGS, LLC, ACADEMY FINANCIAL ASSETS, LLC, AGH PARENT, LLC, ALPINE CAPITAL, LLC, ASIM HOLDINGS, LLC, ASL HOLDINGS, LLC, ATKINSON, LLC, ATLANTIC COAST LIFE INSURANCE COMPANY, ATLAS FINANCIAL INVESTMENTS, LLC, AUGUSTA ASSET MANAGEMENT, INC., BEGONIA EIGHT, LLC, BLH CAPITAL, LLC, BLUE DAFFODIL, LLC, BLUE VIOLET, LLC, CAPITAL ASSETS FUND I, LLC, CAPITAL ASSETS FUND II, LLC, CAPITAL ASSET MANAGEMENT I, LLC, CAPITAL ASSETS MANAGEMENT II, LLC, CAPITAL ASSETS MANAGEMENT III, LLC, CARNATION THREE, LLC, CHATSWORTH ASSET MANAGEMENT, LLC, CHRYSANTHEMUM TWO, LLC, CSI INTERCO, LLC, DAHLIA TEN, LLC, DAISY SEVEN, LLC, DRUMMOND GROUP, LLC, DUNHILL HOLDINGS, LLC, ELI GLOBAL, LLC, ENGLERT HOLDINGS, LLC, EPPING, LLC, ERIE PROPERTIES, LLC, FLAGSHIP HOLDINGS, LLC, FLEET ASSIST INTERCO LIMITED, FLOWERY BRANCH, LLC, FORSYTH, LLC, | Adv. Proc. No. 21-01169<br><br>**PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT OF DISMISSAL UNDER RULE 9023** |

[1] PB Life and Annuity Co., Ltd., Northstar Financial Services (Bermuda) Ltd., Omnia Ltd. and PB Investment Holdings Ltd., foreign Debtors, are Bermuda limited companies which each have a registered address in Bermuda c/o Deloitte Ltd., Corner House, 20 Parliament Street, Hamilton HM 12, Bermuda, and are Jointly Administered for procedural purposes, by Order of this Court entered on April 2, 2021, [ECF # 42].

FORTREX, LLC, GBIG CAPITAL, LLC, GBIG HOLDINGS, INC., GBI GROUP, LLC, GERANIUM TWO, LLC, GILFORD ASSET MANAGEMENT, LLC, GLOBAL BANKERS INSURANCE GROUP, LLC, GLOBAL GROWTH HOLDINGS, INC., GLOBAL INSURANCE CAPITAL, LLC, GREENFIELD CAPITAL, LLC, HAMPTON ASSET MANAGEMENT, INC., HANSEN AEROSPACE, LLC, HEALTHLINK HOLDINGS, LLC, HOOKSETT, LLC, HUTCHISON LAW GROUP, PLLC, INTEGRITY EMR HOLDINGS, LLC, INTEGRITY EMR, LLC, IRON CITY ASSET MANAGEMENT, INC., ITECH FUNDING, LLC, JACKSON ASSET MANAGEMENT, INC., KITE ASSET MANAGEMENT, INC., LILAC SIX, LLC, MACON, LLC, MORNING MOUNTAIN HOLDINGS, LLC, NETHERLANDS INSURANCE HOLDINGS, INC., NEW ENGLAND CAPITAL, LLC, NIH CAPITAL, LLC, NOM GB 2018 I, LLC, PARADIGM PARK HOLDINGS, LLC, PARALLEL CAPITAL ASSETS, LLC, PERSHING, LLC, RED BEGONIA, LLC, REVOLVERCAP PARTNERS FUND, LP, SATORI WATERS, LLC, SEDWICK, LLC, SENTINEL SECURITY LIFE INSURANCE COMPANY, SOMERSWORTH, LLC, STANDARD ADVISORY SERVICES, LTD, STANDARD FINANCIAL LIMITED, STANDARD INVESTMENT CAPITAL, LTD, TREATMENT RESOURCES OF MARGATE, INC., TRITON FINANCIAL LIMITED, TUX HOLDINGS, LLC, TYBEE ISLAND ASSET MANAGEMENT, LLC, UKAT HOLDINGS, LLC, UKAT INVESTMENT LIMITED, VERDESIAN LIFE SCIENCES, LLC, WEARE, LLC, YELLOW LOTUS, LLC, YELLOW SUNFLOWER, LLC, UBS FINANCIAL SERVICES, INC., GOLDMAN SACHS LENDING PARTNERS, LLC, CREDIT SUISSE AG CAYMAN ISLANDS BRANCH, GOLDMAN SACHS BANK USA, MORGAN STANLEY SENIOR FUNDING, INC., THE BRYN MAWR TRUST COMPANY, and DOES 1 through 10, inclusive

        Defendants.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................ ii

INTRODUCTION ........................................ 1

LEGAL STANDARD ........................................ 4

ARGUMENT ........................................ 4

I. This Court Lacks the Authority to Enter a Final Order Under the Prevailing Authority in Stern v. Marshall. ........................................ 5

II. This Proceeding Is In Fact Related To PBLA's Bankruptcy. ........................................ 9

III. The District Court Has Jurisdiction Over This Case Under 28 U.S.C. § 1332(a). .......... 12

CONCLUSION ........................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arbco Cap. Mgm't, LLC*,
479 B.R. 254 (S.D.N.Y. 2012)....................8

*Black v. Ryder/P.I.E. Nationwide, Inc.*,
15 F.3d 573 (6th Cir. 1994)....................10

*In re British Am. Ins. Co. Ltd.*,
488 B.R. 205 (Bankr. S.D. Fla. 2013)....................11

*In re Coudert Bros. LLP*,
2011 WL 5593147 (S.D.N.Y. Sept. 23, 2011)....................9

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989)....................8, 11

*In re Hellas Telecommunications (Luxembourg) II SCA*,
524 B.R. 488 (Bankr. S.D.N.Y. 2015)....................11

*In re Hellas Telecoms. (Luxembourg) II SCA*,
526 B.R. 499 (Bankr. S.D.N.Y. 2015)....................4

*Kirschner v. Agoglia*,
476 B.R. 75 (S.D.N.Y. 2012)....................8, 9, 11, 12

*In re Norske Skogindustrier ASA*,
629 B.R. 717 (Bankr. S.D.N.Y. 2021)....................11

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*,
458 U.S. 50 (1982)....................8

*Omega Tool Corp. v. Alix Partners, LLP*,
416 B.R. 315 (E.D. Mich. 2009)....................10

*Parmalat Capital Finance Ltd. v. Bank of Am. Corp.*,
639 F.3d 572 (2d Cir. 2011)....................9, 10

*PB Life & Ann. Co. v. Univ. Life Ins. Co.*,
20-cv-2284 (JL), 2020 WL 4369443 (S.D.N.Y. Jul. 30, 2020)....................2

*Randall & Blake, Inc. v. Evans (In re Canion)*,
196 F.3d 579 (5th Cir. 1999)....................11

*Salveson v. J.P. Morgan Chase & Co.*,
166 F. Supp. 3d 242 (E.D.N.Y. 2016) ....................4

*Stern v. Marshall*,
564 U.S. 462 (2011).................... *passim*

*Wellness Intern. Network, Ltd. v. Sharif*,
575 U.S. 665 (2015)....................8

**Statutes**

9 U.S.C. §§ 9, 207....................9

11 U.S.C. § 548(a)(2)....................8

28 U.S.C. § 151....................3

28 U.S.C. § 151(a) ....................3

28 U.S.C. § 157....................5, 6

28 U.S.C. § 157(a) ....................3, 4, 5

28 U.S.C. § 157(b) ....................5

28 U.S.C. § 157(b)(1) ....................5, 6

28 U.S.C. § 157(b)(2)(C) ....................7

28 U.S.C. § 157(b)(2)(H)....................1, 6, 12

28 U.S.C. § 157(c)(1)....................6

28 U.S.C. §§ 157(c)(1), (2)....................6

28 U.S.C. § 1332....................3, 4

28 U.S.C. § 1332(a) ....................1, 12

28 U.S.C. § 1334(b) ....................1

**Other Authorities**

Federal Bankruptcy Rule 5011 ....................1

Federal Rule of Bankruptcy Procedure 9023....................4

Federal Rule of Civil Procedure 59 ....................4

General Order M-431 .......... 3, 5

Local Rule 5011-1 .......... 1

Local Rule 9023-1 .......... 4

**INTRODUCTION**

This motion comes before the Court in the context of its order dismissing this case entered on the docket on April 15, 2022 [ECF 172] (the "Order"), thirteen days ago. This motion respectfully asks the Court to vacate that Order and proceed with this case. Plaintiff Universal Life Insurance Company ("ULICO") is also filing a motion to withdraw the reference of this case and return it to a district judge. Pursuant to Federal Bankruptcy Rule 5011 and Local Rule 5011-1, that motion will be addressed to a district judge, which will result in the clerk providing an assignment to that judge.

The grounds for this motion are that: (1) the Court lacks the power to enter and determine a final order over this case pursuant to the Supreme Court's interpretation of the interaction between Articles I and III of the Constitution as set forth in *Stern v. Marshall*, 564 U.S. 462 (2011), and its progeny; (2) the district court (and this Court as a unit of it) has subject matter jurisdiction over this case under 28 U.S.C. § 1334(b), as it is "related to" to a case under title 11; and (3) the district court has jurisdiction over this case under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between ULICO, as a citizen of the United States commonwealth of Puerto Rico, and all of the defendants (none of which are citizens of Puerto Rico), with the amount in controversy vastly exceeding $75,000.

This case deals with claims for voidable transfer and related common law tort remedies pleaded under state law. It is true that fraudulent conveyance claims are included in 28 U.S.C. § 157(b)(2)(H) as "core proceedings" that "Bankruptcy Judges may hear and determine" under that statute. However, following *Stern*, numerous courts in this circuit and elsewhere have held that state law voidable transfer claims are exclusively within the Judicial Branch's Article III powers to hear and determine for numerous reasons. Among those reasons is the fact that the

parties have a right to trial by jury for these claims. The right to an Article III judge is even stronger in the context of the state common law tort causes of action, where again the parties also have a right to a trial by jury. Because ULICO asserts that there is jurisdiction in the district court under Section 1334, the case was properly referred to a bankruptcy judge under this district's order of reference. However, that does not mean that ULICO has been divested of its right to have any final determination of the case made by a district judge. ULICO does not deny that this Court has the power to make a report and recommendation to the district judge, which is what it should do in the event that it believes that jurisdiction is lacking under Section 1334.

That is an academic point here because there is, in fact, "related to" jurisdiction over this case under Section 1334. The standard for such jurisdiction is exceedingly broad. There is subject matter jurisdiction under that statute where there can be a "conceivable effect" on a case under title 11. There can be no doubt that standard is met here. The simplest way to show a "conceivable effect" is to show that the claims at issue here will reduce ULICO's claims against the debtor, PB Life and Annuity Co, Ltd. ("PBLA"). The basis for the voidable transfer claims is that ULICO is a creditor of PBLA's arising out of breaches of the Reinsurance Agreement between those parties. Judge Liman entered a final and unappealable judgment in ULICO's favor confirming an arbitral award on that theory.[2] The bottom line of that judgment is that an arbitral panel found that PBLA was required to make good on its contract to place enough assets in trust to support ULICO's reserving requirements under the risks ceded to PBLA under the Reinsurance Agreement. The reason that PBLA is in default under that agreement is because, among other things, it improperly exchanged high quality assets initially placed in trust for lower-quality assets associated with entities owned or controlled by Greg Lindberg, PBLA's

---

[2] Please see *PB Life & Ann. Co. v. Univ. Life Ins. Co.*, 20-cv-2284 (JL), 2020 WL 4369443 (S.D.N.Y. Jul. 30, 2020), for a description of the facts related to those proceedings.

ultimate owner. It is those transactions that are at the core of the voidable transfer claims in this case in addition to the common law tort claims. To the extent that ULICO recovers those sums in this case, it will necessarily mean that it has "recaptured" those assets that were held in trust to support PBLA's reinsurance obligations. Since the assets are then available to pay ceded claims, they will necessarily reduce ULICO's judgment against PBLA and ULICO's bankruptcy claims. The effect on the debtor is not just "conceivable," but immediate and direct. It is also of great practical consequence since the judgment itself is for more than a half a billion dollars. It would be difficult to imagine something that could have a stronger and more direct effect on the PBLA estate.

In the event that the Court does not accept jurisdiction over this case based on Section 1334, precedent is less available for guidance. First, Section 1332 confers jurisdiction on the "district courts." Section 151 of title 28 provides that, "[i]n each judicial district, the bankruptcy judges in regular active service shall constitute *a unit of the district court* to be known as the bankruptcy court for that district." 28 U.S.C. § 151 (emphasis added). Section 157(a) of title 28 provides the basis for the district court to refer cases to bankruptcy judges, as a unit of the district court. 28 U.S.C. § 151(a). That power is limited to, "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . ." *Id.* General Order M-431 is the Amended Standing Order of Reference in this district. It provides, consistent with Section 157(a), that "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 are referred to the bankruptcy judges for this district."

If the Court finds that this case is not "related to a case under title 11," then the order of reference is simply inapplicable. The order of reference does not say that the case should be

referred to a bankruptcy judge if the case is *alleged* to be related to a case under title 11, but if it *is* such a case. The same is true of Section 157(a) which confers the referral power on the district court in the first place. The result is simple: if jurisdiction does not exist under Section 1334, the case has not been, and may not be, properly referred to a bankruptcy judge. In that event, the clerk should provide an assignment to a district judge like any other case arising in diversity. Regardless, there is plainly diversity jurisdiction present here. Indeed, no party has argued otherwise. Respectfully, this Court lacks the power to dismiss this case where subject matter jurisdiction is present under 28 U.S.C. § 1332.

## LEGAL STANDARD

Litigants in proceedings before bankruptcy courts may move those courts to reconsider prior decisions under Federal Rule of Bankruptcy Procedure 9023. Likewise, Local Rule 9023-1 also governs procedures related to such motions. Rule 9023 specifies that any motion brought under Rule 9023 is subject to the same standard as Federal Rule of Civil Procedure 59. "A motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Hellas Telecoms. (Luxembourg) II SCA*, 526 B.R. 499, 507 (Bankr. S.D.N.Y. 2015). "Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Salveson v. J.P. Morgan Chase & Co.*, 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016).

## ARGUMENT

### I. This Court Lacks the Authority to Enter a Final Order Under the Prevailing Authority in *Stern v. Marshall.*

Respectfully, the Order both exceeded this Court's constitutionally permissible jurisdiction and exceeded the limits of the power of the Court to "hear and determine" proceedings under Section 157(b) and (c) of title 28. The Order claimed more power (that is, the power to dismiss a case outright) than 28 U.S.C. § 157 gives a court with "related to" jurisdiction, even though the Court's decision was based on the premise that even that jurisdiction was lacking. Furthermore, even if the Court had statutory authority to enter such an order, the type of claims brought here—mainly, though not entirely, fraudulent transfer claims under state statutory law—are not ones that Article III allows a bankruptcy judge (an Article I judge) to adjudicate, absent the parties' consent.

Bankruptcy courts, even more than Article III federal courts, are courts of limited jurisdiction: they only may hear cases "arising under title 11" and proceedings "arising under" title 11, "arising in" cases under title 11, or "related to" cases brought under title 11. 28 U.S.C. § 157(b)(1). Even more, they may only hear those cases after a district court refers them to the bankruptcy court. 28 U.S.C. § 157(a). As is common, this district has a standing order referring all cases and proceedings allowed by statute to this district's bankruptcy court. *See* General Order M-431, Amended Standing Order of Reference dated Feb. 1, 2012. As ULICO claimed "related to" jurisdiction, this proceeding was automatically referred to this court.

The statutory scheme does not merely limit the types of cases over which the district court (and a bankruptcy judge by order of reference) has jurisdiction in connection with title 11. It also provides limits over what sort of proceedings a bankruptcy judge may "hear and determine." 28 U.S.C. § 157(b). In "core proceedings" "arising under" or "arising in" title 11,

the court may "enter appropriate orders and judgments," subject to constitutional limits discussed below. 28 U.S.C. § 157(b)(1). Section 157(b)(2)(H) provides that, "proceedings to determine, avoid, or recover fraudulent conveyances" are among those matters that may be "core proceedings." 28 U.S.C. § 157(b)(2)(H). However, in proceedings "related to" cases under title 11, a bankruptcy judge may not enter a final judgment without the consent of the parties, consent that was not given here. *See* 28 U.S.C. §§ 157(c)(1), (2).

The statutory language has caused considerable confusion about the powers of bankruptcy judges to "hear and determine" fraudulent conveyance claims where jurisdiction is "related to" a case under title 11. The proper reading of the statue, confirmed by the Supreme Court's rulings on the limitations of the powers of an Article I Court to enter final judgment on claims where jurisdiction is based on a case being "related to" another case under title 11—is that a bankruptcy judge may not enter final judgment on fraudulent conveyance claims under state law where jurisdiction is based on "related to" jurisdiction. *See Stern v. Marshall*, 564 U.S. 462, 487-95 (2011). Section 157 mandates (with the use of "shall" twice) that a district judge must enter a final judgment—"[i]n such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

The statutory scheme is, therefore, a limited grant of authority to the bankruptcy courts. If a proceeding is not "core," and does not "arise under" title 11 or "arise in" a case brought under title 11, the court lacks authority to enter final judgments. This proceeding arose entirely under state statutory or common law. Moreover, the Court did not find that it was "core" or

arose under or in title 11—to the contrary, the Court found that this proceeding was not even "related to" PBLA's bankruptcy case. Accordingly, the Court's findings precluded it from entering a final judgment. Put slightly differently, if the Court *had* found that this proceeding was "related to" PBLA's bankruptcy, it would not have had the power to enter a final judgment: any opinion of the Court would have had to been reviewed by a district court. It is inconsistent with the statute's limited grant of authority for the Court to claim *more* power (namely, the power to enter a final order of dismissal) in a proceeding it believes to be not even "related to" a bankruptcy than it would have were the proceeding subject to "related to" jurisdiction. The Court's judgment must, therefore, be amended to make it clear that it is merely a recommendation to a district court subject to *de novo* review.

Even if the Court's judgment were consistent with the statute granting it authority, which it is not, it still would have to be consistent with the Constitution. It fails in this regard also. In *Stern v. Marshall*, the Supreme Court held that Section 157's reference to "core" proceedings was not dispositive on whether a bankruptcy judge, as an Article I judge, could hear and determine proceedings consistent with the Constitution. Instead, the Court explained, "[w]hen a suit is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789 and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Stern v. Marshall*, 564 U.S 462, 484 (2011) (internal quotation marks and citation omitted). The Court went on to decide that a counterclaim brought by the estate against a creditor of the estate, a "core" proceeding according to 28 U.S.C. § 157(b)(2)(C), could not be decided by a bankruptcy judge where the counterclaim was based in state common law. *Id.* at 487.

Previously, the Court had distinguished between cases involving "public rights," that is, cases "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments," and "matters of private right, that is, of the liability of one individual to another under the law as defined." *Id.* at 489 (internal quotation marks omitted). Only if a matter involves "public rights" can Congress delegate the authority to decide that matter away from an Article III court, as such a matter is one that could be "conclusively determined" by either the executive or legislative branches. *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 68 (1982).[3]

Notably, the Court decided in a later case that actions by bankruptcy trustees to recover fraudulent conveyances under 11 U.S.C. § 548(a)(2) implicated *private rights*, not public rights. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55-56 (1989). The Court reasoned that fraudulent conveyance actions were "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id.* at 56. This case, which also involves unwinding fraudulent transfers with the result of augmenting the bankruptcy estate, is even more so one of private rights, because here, the trustee is not involved in the case.

Following *Stern*, district courts have held that fraudulent conveyance actions could not be resolved by bankruptcy courts. *See, e.g., Kirschner v. Agoglia*, 476 B.R. 75, 81 (S.D.N.Y. 2012) (claims for fraudulent conveyance brought under New York statute must be decided by Article III judges (citing *Stern* and *Granfinanciera*)); *In re Arbco Cap. Mgm't, LLC*, 479 B.R.

---

[3] While a later decision held that the litigants may consent to a bankruptcy judge deciding their case, much like litigants may consent to a magistrate judge in federal civil matters, the parties did not so consent here. *See Wellness Intern. Network, Ltd. v. Sharif*, 575 U.S. 665, 679 (2015).

254, 263-64 (S.D.N.Y. 2012) (finding that a final order on fraudulent conveyance claims and state common law claims for breach of fiduciary duty and negligence would require an Article III judge); *In re Coudert Bros. LLP*, 2011 WL 5593147, at *8 (S.D.N.Y. Sept. 23, 2011) ("quintessential fraudulent conveyance claim" implicated private rights and so must be decided by an Article III judge). Nor are courts receptive to a breed of "no harm, no foul" argument, where litigants argue that there is no "real" difference between an order of a bankruptcy court and a R&R issued by a bankruptcy court because both are reviewed *de novo* by a district court: "This reasoning is flawed. It confuses the power to enter final judgment with the right to appeal. If there is no appeal, the grant of the motion to dismiss for failure to state a claim is a final judgment dismissing the claim and is given *res judicata* and collateral estoppel effect. But this cannot be proper unless the bankruptcy court had the power to render final judgment in the first place." *Kirschner*, 476 B.R. at 79 (citations omitted). In short, the Constitution must be followed, and the Court's order, for which it did not have Constitutional authority to enter, must be amended to state that it is a Report & Recommendation to a district court.

## II. This Proceeding Is *In Fact* Related To PBLA's Bankruptcy.

As this Court is aware, "related to" jurisdiction is expansive: a proceeding is related to a bankruptcy case if it has "any conceivable effect" on the bankruptcy case. This test is the same regardless of whether the debtor is domestic, bringing their case under chapters 7 or 11, or foreign, bringing their case under chapter 15. *See Parmalat Capital Finance Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011). This proceeding which, if successful, would have the effect of reducing the debtor's overall liabilities, has such an effect.

Indeed, on July 30, 2020, Judge Liman entered an opinion and order confirming the June 2, 2020, interim award issued by an arbitration panel pursuant to 9 U.S.C. §§ 9, 207 noting that

the "Panel conclude[ed] that PBLA ha[d] singularly failed to take such steps as may be required of it to ensure that ULICO receive full credit on its financial statements." *See* Case No. 1:20-cv-02284, ECF No. 47. On August 11, 2020, Judge Liman entered a final judgment stating, in pertinent part: "for the reasons set forth in the July 30, 2020 Opinion & Order, that ULICO is granted final judgment against PBLA in *the* amount of $524,009,051.26, plus any applicable interest in accordance with the Award, and has execution thereon." Case No. 1:20-cv-02284, ECF No. 52. As the Court stated in its July 30, 2020 Opinion & Order, the Award was to be transferred via wire payment to a segregated bank account (referred to as the "Segregated Account") and the "the funds in [the] Segregated Account shall be used strictly for the purpose of securing PBLA's obligations under the Reinsurance Agreement and, if necessary, for ULICO's payment of any liabilities incurred pursuant to ULICO's obligations as respects business ceded to that Reinsurance Agreement." It is this provision in the Opinion & Order specifically that addresses how payment of the Award shall be treated. In this respect, any recovery ULICO receives—regardless of the source—must "be used strictly for the purpose of securing PBLA's obligations under the Reinsurance Agreement." Thus, in order for ULICO to be compliant with the Opinion & Order, any recovery from the fraudulent transfer claims shall be used to satisfy and secure PBLA's obligations under the Reinsurance Agreement which, necessarily reduces PBLA's outstanding liabilities. Surely, reducing PBLA's liabilities has a "conceivable effect" on the Chapter 15 case. *Parmalat,* 639 F.3d at 579. It also necessarily prevents ULICO from receiving a double recovery. *See, e.g. Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 581 (6th Cir. 1994) (ruling a double recovery impermissible, under the "common wisdom that an injured party may recover damages only for the actual loss he suffered and no more") (internal quotation marks omitted); *Omega Tool Corp. v. Alix Partners, LLP,* 416

B.R. 315, 320 (E.D. Mich. 2009) (finding "related to" jurisdiction where a plaintiff's claim against the bankruptcy estate would be reduced by any amount recovered against a third-party defendant for the same injuries); *Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 586-87 (5th Cir. 1999) (citing several cases for the proposition that "a claim between non-debtors that will potentially reduce the bankruptcy estate's liabilities produces an effect on the estate sufficient to confer 'related to' jurisdiction").

Simply because the proceeding may not involve the traditional ordering of assets among creditors does not mean that it is not "related to" PBLA's bankruptcy. In *Granfinancera, S.A. v. Nordberg*, discussed above, the Supreme Court decided that a fraudulent transfer claim was the sort of "private action" that must be ultimately decided by a district judge, but it did not decide that such an action did not belong in bankruptcy court at all. Since *Granfinancera*, bankruptcy courts have continued to handle fraudulent transfer claims, both brought under the bankruptcy code and, like here, under state law. *See In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. 488, 515 (Bankr. S.D.N.Y. 2015); *In re Norske Skogindustrier ASA*, 629 B.R. 717 (Bankr. S.D.N.Y. 2021); *In re British Am. Ins. Co. Ltd.*, 488 B.R. 205, 223-24 (Bankr. S.D. Fla. 2013) (finding that "[t]here is no question" that fraudulent conveyance claims in a Chapter 15 case invoked Section 1334 "related to" jurisdiction because, among other things, they "could augment the recoveries of creditors of the debtor.").

Even in *Kirschner*, a case where a district court judge held that a bankruptcy judge did not have the authority to enter a final order regarding fraudulent transfer claims, the judge still recognized the utility of the claims *beginning* in bankruptcy court: "While it will now have to issue a report and recommendation, rather than a final judgment, and the district court will have to review the matter *de novo*, experience strongly suggests that having the benefit of the report

and recommendation will save the district court and the parties an immense amount of time." *Kirschner*, 476 B.R. at 83. In an opinion devoted to the jurisdiction and authority of the bankruptcy court, the judge never questioned the ability of that court to hear the case in the first instance. It would be a perverse outcome, antithetical to the structure and expertise of the bankruptcy courts, to have claims that are statutorily recognized as "core proceedings" (*see* 28 U.S.C. § 157(b)(2)(H)) be held to not even "relate to" a bankruptcy case. Respectfully, there *is* "related to" jurisdiction here, and the Court should vacate the Order and proceed with this case.

**III. The District Court Has Jurisdiction Over This Case Under 28 U.S.C. § 1332(a).**

Nevertheless, the District Court unquestionably has subject matter jurisdiction over ULICO's adversary proceeding under 28 U.S.C. §1332(a). There is complete diversity amongst ULICO and each of the defendants named in the adversary proceeding, and the amount in controversy far exceeds the jurisdictional prerequisite. While this Court explicitly did not opine on whether diversity jurisdiction existed, the entry of a final order in this matter exceeds this Court's authority. Accordingly, this Court's judgment should be reconsidered and reversed.

**CONCLUSION**

For the reasons discussed above, this Motion should be granted, and the Court should vacate its Order, overrule the objections to the Plaintiff's motion for leave to amend, and proceed with the case.

Dated: New York, New York
April 28, 2022

Respectfully submitted,

**CLYDE & CO US LLP**

/s/ Clinton E. Cameron
Clinton E. Cameron (*pro hac vice*)
Meghan C. Dalton (*pro hac vice*)
Clyde & Co US LLP

55 W. Monroe
Suite 3000
Chicago, IL 60603
Tel: 312-635-7000
Clinton.Cameron@clydeco.us
Meghan.Dalton@clydeco.us