```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK
```

In re:

PB LIFE AND ANNUITY CO., LTD. AND
RACHELLE FRISBY AND JOHN JOHNSTON,
AS JOINT PROVISIONAL LIQUIDATORS,

                                    Debtor.

Case No. 20-12791-lgb
New York, New York
April 14, 2022
10:05 a.m. - 12:01 p.m.

AP: 21-01169-LGB - UNIVERSAL LIFE INSURANCE COMPANY VS.
GLOBAL GROWTH HOLDINGS, INC. ET AL

MOTION FOR LEAVE TO AMEND THE COMPLAINT

- A P E A R A N C E S -

For Universal Life            CLINTON CAMERON, ESQ.
Insurance Company:            MEGHAN DALTON, ESQ.
                              COURTNEY LOGLI, ESQ.
                              Clyde & Co LLP
                              55 West Monroe Street
                              Chicago, Illinois 60603
                              (312) 635-7000; 312-635-6950 fax

For Global Growth Holdings,   JARED PACE, ESQ.
Inc., et al.:                 Condon Tobin Sladek Thornton
                              Nerenberg PLLC
                              8080 Park Lane, Suite 700
                              Dallas, Texas 75231
                              (214) 265-3800; (214) 691-6311 fax

For Atlantic Coast Life       LUIGI ORENGO, JR., ESQ.
Insurance & Sentinel          Carlton Fields, P.A.
Security Life Insurance:      4221 W. Boy Scout Blvd., Suite 1000
                              Tampa, Florida 33607-5780
                              (813) 223-7000; (813) 229-4133 fax

For Joint Provisional         NICHOLAS F. KAJON, ESQ.
Liquidators:                  CONSTANTINE DEAN POURAKIS, ESQ.
                              Stevens & Lee
                              485 Madison Avenue, 20th Floor
                              New York, New York 10022
                              (212) 319-8500; (212) 319-8505 fax

```
                        - A P P E A R A N C E S -                          2

 1  For Aspida Financial      PETER J. HALEY, ESQ.
    Services LLC f/k/a Global  Nelson Mullins Riley & Scarborough LLP
 2  Bankers Ins. Grp LLC:     One Financial Center, Suite 3500
                              Boston, Massachusetts 02111
 3                            (617) 217-4714

 4
    For Morgan Stanley Senior  PETER M. FRIEDMAN, ESQ.
 5  Funding, Inc.:            LAUREN WAGNER, ESQ.
                              O'Melveny & Myers LLP
 6                            1625 Eye  Street, NW
                              Washington, DC 20006
 7                            (202) 383-5300; (202) 383-5414 fax

 8  For the 20 flowers        JAY HELLMAN, ESQ.
    defendants and Hansen     Westerman Ball Ederer Miller Zucker…
 9  Aerospace LLC:            1201 RXR Plaza
                              Uniondale, New York 11556
10                            (516) 622-9200

11  For Hutchison Law Group:  LIAM O'BRIEN, ESQ.
                              McCormick & O'Brien, LLP
12                            9 East 40th Street
                              New York, New York 10016
13                            (212) 320-8972 x700

14  For Colorado Bankers      NORMAN KINEL, ESQ.
    Life…:                    Squire Patton Boggs
15                            1211 Avenue of the Americas, 26th Fl
                              New York, New York 10036
16                            (212) 407-0130; (212) 872-9815 fax

17
    For Colorado Bankers      WES CAMDEN, ESQ.
18  Life…:                    Williams Mullen
                              301 Fayetteville Street, Suite 1700
19                            Raleigh, North Carolina 27601
                              (919) 981-4000
20
              (Proceedings recorded by electronic sound recording)
21

22

23

24

25
```

PB Life and Annuity Co., Ltd. - 4/14/22                    3

1    THE COURT:  Good morning, this is Judge Beckerman.

2    Court is now in session.  I'm going to go ahead and call the

3    case and when I do, I'm going to ask for attorneys to please put

4    their appearances on the record.  And when they're speaking, I

5    will also ask you to please identify yourself for the record.

6    May I have appearances of counsel, please?

7        MR. CAMERON:  Good morning, Your Honor, this is

8    Clinton Cameron on behalf of the plaintiff, Universal Life

9    Insurance Company.  I'm here today with my colleagues, Meghan

10   Dalton and Courtney Logli.

11       MR. PACE:  Good morning, Your Honor, this is Jared

12   Pace of Condon Tobin Sladek, on behalf of Greg Lindberg and

13   other defendants.  They're all identified in our filing at ECF

14   168.

15       THE COURT:  Thank you.

16       MR. FRIEDMAN:  Good morning, Your Honor, it's Peter

17   Friedman of O'Melveny & Myers, on behalf Morgan Stanley Senior

18   Funding, joined by my colleague Lauren Wagner.

19       MR. HALEY:  Good morning, Your Honor, Peter Haley for

20   defendant, Aspida Financial Services LLC.

21       THE COURT:  Okay.  Next?

22       MR. O'BRIEN:  Good morning, Your Honor, Liam O'Brien

23   of McCormick & O'Brien on behalf of defendant, Hutchison LLC.

24       THE COURT:  Okay.

25       MR. HELLMAN:  Good morning, Your Honor, Jay Hellman,

PB Life and Annuity Co., Ltd. - 4/14/22                    4

1   Westerman Ball, Ederer Miller Zucker & Sharfstein on behalf of

2   the 20 flowers defendants.

3          THE COURT:  Next?

4          MR. ORENGO:  Good morning, Your Honor, Luis Orengo,

5   Jr., with Carlton Fields, P.A., on behalf of Atlantic Coast Life

6   Insurance Company, and Sentinel Security Life Insurance Company.

7          THE COURT:  Okay.

8          MR. KAJON:  Good morning, Your Honor, Nicholas F.

9   Kajon of Stevens & Less on behalf of the joint provisional

10  liquidators for the debtors.

11         THE COURT:  Any additional appearances of counsel?

12         (No response.)

13         THE COURT:  Okay.  So, the way that we're going to

14  proceed this morning is a little different than the way I

15  normally conduct hearings, but it has to do with a couple of

16  things.  One, we have a lot of parties.  And second of all, I

17  have some time constraints on my time because I have other

18  hearings this afternoon.  I normally put limitations on

19  arguments, but today I'm actually going to.  So, counsel for the

20  plaintiff is going to have 30 minutes for the opening argument.

21  Each of the defendants and those are the only parties I'm going

22  to hear from today, the plaintiff and the defendants who filed

23  papers.

24         So, each of the defendants who filed papers will have

25  10 minutes each for their arguments, and then the plaintiff will

PB Life and Annuity Co., Ltd. - 4/14/22                5

1   have 20 minutes for their response.  So, that's how we're going

2   to proceed.  And if parties who are defendants want to cede time

3   to each other, I'm okay with that.  It's just in total, we're

4   not going to have more than 50 minutes of argument from the

5   defendants in total.  I know there is some cross referencing of

6   arguments, and I'm completely okay with that.  I just want to

7   make sure the parties understand.  And with that, I'm going to

8   turn the podium over to Mr. Cameron again.

9        MR. CAMERON:  Thank you very much, Your Honor.  I will

10   do my best to be succinct and less than 30 minutes.  The motion

11   before the Court today, Your Honor, is a motion for leave to

12   amend to file a second amended complaint on behalf of my client,

13   Universal Life Insurance Company.  Generally speaking, motions

14   for leave to amend do not result in a lot of briefing and that's

15   because it's a fairly simple one.  The controlling standard is

16   set forth at Rule 15(a)(2), which says that leave to amend is to

17   be freely given.  Likewise, the 2d Circuit (inaudible) to the

18   same affect that the Court should not make a probing inquire

19   into the merits of the case in deciding whether or not leave to

20   amend is proper.

21        So, if you look at our papers as an example, we cite

22   the Court to the 2d Circuit's decision in the **Block** case that

23   talks about that leave should be given except in extraordinary

24   circumstances where there is either undue prejudice or bad

25   faith.  Unless I'm mistaken, I didn't see anyone alleging that

PB Life and Annuity Co., Ltd. - 4/14/22                    6

1   we were engaging in bad faith.  And so, really the standard then

2   is, is there undue prejudice.  I would submit that that's simply

3   not the case.  The reason that we are filing a second amended

4   complaint in the first place is that the defendants complain

5   that they did not have adequate information about the nature of

6   the claim against them in the facts that were pled in the first

7   amended complaint in order to formulate their arguments.  So, we

8   took that (inaudible).  I respectfully do not agree that that

9   was the case with respect to that first amended complaint, but

10  then worked very diligently with counsel for the other

11  defendants to try to collect information, so that we could

12  supplement and be more specific with respect to the transactions

13  that are involved here.  That is the core of what the amendments

14  are in this case.  We have dropped some parties; we have added

15  some parties on the basis of the information that we were

16  provided.  And I think the prejudice issue has to be viewed to

17  the prism of the particular circumstances of this case.

18         My client is a beneficiary of a trust that is created

19  in order to have its reinsurer, PBLA, have assets available to

20  secure the payment of its obligations under a reinsurance

21  agreement.  Shortly after the time that we entered into the

22  contract with PBLA in 2017, there was a burst of activity of

23  taking assets out of the trust account and reinvesting it.  That

24  burse of activity principally took place by taking the money

25  that was held in the trust account where there was legal title

PB Life and Annuity Co., Ltd. - 4/14/22                    7

1   on the part of the trustee, which initially was Wilmington

2   Trust, and subsequently, became BNY Mellon, and now is TMI.  The

3   trustee then transferred the assets for the purposes of making

4   investments to PBLA, and then PBLA took that money and engaged

5   in a whole litany of different corporate transactions.

6          Principally, those transactions involved taking money

7   that came from the trust, then was transferred to PBLA, and then

8   PBLA took that money and invested it in special purposes

9   vehicles that were created by Lindberg as an intermediary

10   between those entities and what I have referred to in this case

11   as the OPCO or the operating companies, which were the actual

12   recipients downstream of the funds, and then used them for

13   whatever corporate purpose they have.

14          So, what we have is a circumstance where the money

15   leaves the trust, goes to PBLA, goes to a (inaudible) SPB that

16   is created with -- ultimately to an operating company.  My

17   client had very limited information about those transactions

18   because it was simply overseeing what was going on from afar as

19   the cedent in a reinsurance transaction where it expected PBLA

20   to pay its claims.  Then said to PBLA, you can invest funds in

21   the way that you see fit as long as you understand that if you

22   don't meet certain reserving requirements, usually 102 percent

23   of what we have to hold to protect our policyholders, we'll

24   watch what you're doing, but we aren't intimately involved in

25   it.  We're not directly involved in the transactions.

PB Life and Annuity Co., Ltd. - 4/14/22                    8

1          So, the information that we had at the outset of this

2    matter was quite limited and remains quite limited today because

3    we're simply in the role of a beneficiary of the trust and

4    cedent in a reinsurance transaction.  We took the information

5    that we were able to get without discovery and assembled it to

6    the best of our ability to identify where this money went.

7          Now, the reason that we have claims against all these

8    parties is that what was going on in this case is that the money

9    was being funneled out of the trust into PBLA, and then sent off

10   to these other entities beyond the reach of my client.  And so,

11   what we have here today is we're chasing hundreds of millions of

12   dollars that have gone around the globe as a part of a scheme in

13   order to enrich Mr. Lindberg and his corporate entities.

14   Hundreds of which are involved in this transaction, or the

15   (inaudible) transactions, if you will.

16         So, what we did initially was to identify where those

17   funds went to the best of our ability to take those defendants

18   and name them as recipients of fraudulent transfers.  And then

19   provide the information now in our second amended complaint that

20   we have from the bank records and other corporate records to

21   identify who received what, where, and when.  That's exactly

22   what the defendants said they wanted us to do.  And now, we find

23   ourselves having done what they said they wanted us to do,

24   confronting a whipsaw of them saying, well, yes, we told you,

25   you needed more information, but now we don't want you to

PB Life and Annuity Co., Ltd. - 4/14/22                    9

1   provide it.  Now, we don't want to give you the opportunity to

2   amend your complaint to put the very information in it that we

3   said it lacked.  That's simply not equitable.  Moreover, it

4   certainly doesn't defeat the right in effect to amend as long as

5   it doesn't do so in bad faith or creating undue prejudice for

6   defendants. The circumstance that I just described can't

7   possibly be understood to be creating undue prejudice to the

8   defendants.

9           Now, many of them who have filed papers have said,

10  well, the reason you shouldn't allow this amendment is that it

11  is futile.  It is true that futility is one of the things that

12  the Court should look to in determining whether or not to grant

13  leave to amend.  The caselaw in this area that's been cited

14  typically comes from cases where plaintiffs have had numerous

15  opportunities to plead their case, have lost on a Rule 12

16  motion, and then seek leave from the court to get another try

17  after they've lost a Rule 12 motion.  That's not the

18  circumstance here.  What we're doing is trying to take into

19  consideration what people said, put in the specifics that we

20  have, and then if they want to file a Rule 12 motion, that is

21  certainly their right, and I expect we'll see them.  But that

22  isn't a reason not to give us a try at it.

23          Now, there are some issues that have been raised that

24  could possibly constitute futility.  As an example, the question

25  of whether this Court has subject matter jurisdiction is

1    obviously a threshold issue that all courts, all federal courts

2    have to take cognizance of all the time, indeed, sua sponte, if

3    necessary.

4           The circumstances here though are that this Court has

5    subject matter jurisdiction plainly.  So, firstly, there is

6    subject matter jurisdiction in this case on the basis of

7    diversity of citizenship under Section 1332.  I haven't seen a

8    single paper from anybody challenging the diversity jurisdiction

9    of federal courts over this dispute.  My client is a Puerto

10   Rican Insurance Company with its principal place of business in

11   Puerto Rico.  It's self-evident that the amount of dispute here

12   exceeds the requisite jurisdictional sum.  And none of the

13   defendants are citizens of Puerto Rico.  Therefore, there is

14   diversity jurisdiction, which begs the question then, are we in

15   the right court.

16          Well, if there isn't subject matter jurisdiction under

17   Section 1334 of the Bankruptcy Code, well, there is under 1332,

18   and if there isn't subject matter jurisdiction under 1334, then

19   the answer is that we shouldn't be in this court because the

20   order of reference doesn't apply, and we should be transferred

21   to the District Court.  Now, I don't think that's the case

22   because I think that we do in fact have related-to jurisdiction

23   in this case under 1334 and that the order of reference was

24   properly used in this case to assign the matter to the

25   bankruptcy court.

PB Life and Annuity Co., Ltd. - 4/14/22                    11

1      Why is there is here subject matter jurisdiction under

2   1334?  Well, the standard in this circuit under the **Cuyahoga**

3   case is that there has to be a conceivable effect on the estate.

4   Now, the term "estate" in this case is a bit slippery in a sense

5   that chapter 15 cases don't involve estates, so I think the

6   proper way to understand it, which is explain further in the 2d

7   Circuit in the **Parmalat** case is the effect on the foreign

8   proceeding, the equivalent of an estate in that case.  In this

9   case, it's in Bermuda.  And the bottom line under the

10  conceivable effect test is, is there going to be something that

11  matters in Bermuda in a way that money is distributed to

12  creditors.  And the answer here is plainly, yes.

13      So, we have an agreement with the debtor.  Well, let's

14  back up a little bit from there.  We have a final unappealable

15  judgment against the debtor in the Southern District for over a

16  half a billion dollars.  The debtor has agreed and dropped its

17  appeal.  So, there's no question that we have an allowed claim

18  for over a half a billion dollars.  So, it is self-evident that

19  we are a very large creditor in this case and probably, unless

20  something very unusual happens, by far and a way, the largest

21  creditor.  We have agreed that the amounts that we obtain as a

22  result of the fraudulent transfer litigation will reduce that

23  claim because of the way the mechanics of the reinsurance

24  agreement works.  The reason we have that claim for half a

25  billion dollars is for breaches of the reinsurance agreement and

PB Life and Annuity Co., Ltd. - 4/14/22                    12

1   the failure to put in enough money into the trust.  So, there is

2   a relationship between these things so that when we recover

3   money that should have been in this, that reduces our claim.  If

4   our claim is reduced, and nothing would make me happier than

5   having our claim reduced to zero, there will be money to

6   distribute to other creditors of PBLA in Bermuda.  That self-

7   evidently meets the conceivable effect test.

8          And the **Parmalat** case explains the way we should go

9   about it to look at it the way we just talked about.  **Parmalat**,

10  you had a foreign debtor that had a 304 case before chapter 15

11  where it was pursuing claims against its auditor in the United

12  States.  In this case, Grant Thornton.  One of the cases was

13  filed in Illinois state court and removed, and then transferred

14  to the Southern District.  The 2d Circuit found that the court

15  below had erred in remanding the case, and found in the course

16  of that, that there was subject matter jurisdiction, because the

17  amounts that would be recovered from that professional

18  negligence would inure to the benefit of creditors.  Likewise,

19  in this case, the amounts that we recover in the fraudulent

20  conveyance litigation will inure to the benefit of creditors.

21  It's the exact same issue, the exact same effect.

22         Now, we find that there's an even more particular body

23  of caselaw in this district and elsewhere showing that

24  fraudulent conveyance claims in a chapter 15 case meet this

25  standard.  So, the cases that we have cited to the Court are the

1   **Hellas Telecommunications** case and the **Norske Skogindustrier**

2   case, also in this district, and another case from Miami, the

3   **British American Insurance Company** case.  In each one of those

4   cases, fraudulent conveyance claims were asserted in the context

5   of a chapter 15 case.  In each one of those cases, there were

6   questions raised about whether subject matter jurisdiction was

7   present.  And in each one of those cases, the court properly

8   found that there was subject matter jurisdiction.  Because the

9   amounts that could be recovered in connection with the

10  fraudulent conveyance claims would inure to the benefit of the

11  estate and to creditors.  That's our exact circumstance here.

12        Now, some people have said, well, those cases are

13  different because they involve circumstances where the foreign

14  representative is pursuing the claims on behalf of the foreign

15  debtor, and that's not what's going on here.  And this feeds

16  into the issue of whether or not there is standing.  There is

17  standing here and the way we know that is by looking at the

18  operative law under which we are proceeding.  One of the things

19  the Court asked us to do and that we have done in the second

20  amended complaint is to specify the potential state law that

21  could apply with respect to our claims.

22        So, the two groups of statutes that we've pled come

23  from North Carolina and from New York.  Now, the reason that

24  North Carolina could conceivably be applicable is that a lot of

25  these transactions took place in North Carolina; Mr. Lindberg's

PB Life and Annuity Co., Ltd. - 4/14/22                14

1    companies are rooted in North Carolina; and so there's a clear

2    nexus to that state for a lot of the claims.  The reason that

3    New York would apply is that the trust in this case was in New

4    York for some part of the time because it was held at BNY

5    Mellon.  Moreover, a lot of the transactions obviously involved

6    entities that have operations in New York and use the financial

7    markets in New York.  In each one of those cases, what the law

8    says is that the party that has the claim, is the aggrieved

9    creditor, not the debtor.  Why would the debtor have the claim?

10   So, if you think about the pedestrian kind of fraudulent

11   transfer case where somebody sells their car or their boat to

12   their friend or their brother or their sister, of course that

13   party is not the one who's going to seek to avoid that

14   transaction when the creditors are aggrieved.  That's the reason

15   the statutes that are applicable here give that right to the

16   creditor.  That's the party that cares that there has been a

17   fraudulent conveyance by the debtor to take assets outside of

18   the reach of creditors.  So, if you look at the New York State

19   Debtor-Creditor Law, what it says is that the right to assert

20   the claim is on behalf of a creditor.  Likewise, under the North

21   Carolina version of the UVTA, the right to assert the claim is

22   on behalf of the creditor.

23        Now, in some circumstances people have talked about

24   Bermuda and that gets us into some exotica that probably we'd

25   all prefer not to be involved in.  But even if we look at

PB Life and Annuity Co., Ltd. - 4/14/22                    15

1   Bermuda, Section 36(a) of the Bermuda Conveyancing Act says that

2   dispositions, their term for transfer can be set aside "at the

3   instance of an eligible creditor thereby prejudiced."  So, it's

4   my client, the aggrieved creditor, that has the right to pursue

5   these fraudulent transfers.  Indeed, I would submit it's

6   probably the only party that has the right to pursue them

7   because the debtor itself doesn't have the usual avoidance power

8   that would be applicable in a chapter 7 or a chapter 11 case.

9   And this failure to get out of the mindset of the usual chapter

10  7 or 11 case is the real issue here in standing.  People act

11  like we're in a circumstance where we're acting in the role of a

12  committee and the debtor has the right in the first instance to

13  pursue 548 claims.  That's not the case where we are here.  The

14  Congress has forbidden PBLA from going and trying to use the

15  Bankruptcy Code avoidance powers.  That leaves it to us to have

16  to do it.  I wish I could rely on the debtor to go after these

17  fraudulent transfer claims, but I cannot.  So, that's the reason

18  that we have standing.

19          Now, those are the two principal issues about futility

20  that make sense for the Court to look at because, of course, you

21  need to understand that you have subject matter jurisdiction,

22  and of course, you need to understand that there's some reason

23  that my client should be the party proceeding here and looking

24  at claims.  Then we really get into the weeds after that on the

25  futility arguments.

1          The principal argument that's made by some parties in

2     different ways is that our claims are not within the statute of

3     limitations or stature of repose, or you pick which one that

4     they wanted to argue.  The fact of the matter is the applicable

5     statute of limitations (inaudible) New York CPLR 213, which is a

6     six-year statute.  Nobody has argued that we have claims that

7     accrue more than six years prior to the time that we filed

8     either the first amended complaint or now, the second amended

9     complaint.

10          There is a lot of talk in the papers about using the

11    borrowing statute or whether or not there's a substantive

12    statute of repose provided by another jurisdiction.  This is

13    really in the weeds and stuff that honestly probably will have

14    to rely on discovery in any case because it turns on choices of

15    law and where things happened that are simply not in the

16    complaint.  But let's assume for the sake of our discussion that

17    the borrowing statute applies, and you use the statute in North

18    Carolina.  It's four-year statute for fraudulent transfer

19    claims.  We're well within it for the vast, vast majority of

20    these (inaudible) regardless of whether or not the Court were to

21    apply any discovery rule.  If the Court were to apply a

22    discovery rule, those very few transactions that took place

23    earlier than four years from the time we filed our complaint,

24    would also be within the statute.

25          Then there's some discussion about whether we pled the

PB Life and Annuity Co., Ltd. - 4/14/22                    17

1   claims with adequate specificity, the Rule 9 issue.  What we did

2   is what people asked us to do, was to plead the time, place, and

3   amount of the transactions.  So, for most of the defendants that

4   means we have a paragraph or two that describes what happened.

5   Some people take issue with the fact that it's done in a

6   paragraph or two.  I don't understand that.  I don't know what

7   we would have to add to that.  If we say a transfer took place

8   on this date, in this amount to this party, what more could we

9   provide?  What more would be relevant?

10          We're not talking about the fraud on behalf of a

11  defendant, we're talking about fraud, in this case is a term of

12  art because we're talking about fraudulent conveyances, on

13  behalf of the transferor.  And so, the courts in this circuit

14  have said, well, in circumstances where we're talking about

15  fraudulent conveyance and we're talking about claims that are

16  being asserted by somebody who wasn't involved in the

17  transaction, usually a trustee, we're not going to require the

18  kind of specific pleading that some people want.  And we're

19  certainly not going to require specific pleading as to the

20  mental state of the transferor.  I don't even know what it would

21  be other than to say that the transfers were made with the

22  intent to defraud, hinder, or delay creditors, which is exactly

23  what the complaint says.

24          I think that covers what I'd like to.  And I am

25  mindful of the Court's time issues, and I think I have about

PB Life and Annuity Co., Ltd. - 4/14/22                    18

1   nine minutes left which I would reserve for reply if I may.

2   Obviously if the Court has questions, I'm happy to answer them.

3        THE COURT:  And I do, but that's fine, you can reserve

4   your nine minutes, I'm fine with that.

5        MR. CAMERON:  Thank you very much, Your Honor.

6        THE COURT:  Okay.  So, first question, how do you

7   differentiate between argument about whether the trustee on

8   behalf of the trust should actually be the party bringing this

9   action versus ULICO?  What's the basis for ULICO having that

10  standing as opposed to the trustee on behalf of the trust since

11  it's the trust that was defrauded?  I understand your judgment

12  is based on your contract with PBLA, and that's clear why ULICO

13  would have a right because there's a signatory to the agreement,

14  and then it was breached, and the arbitrator found that.  I

15  understand that.  But in terms of this action, why is it ULICO

16  that's bringing this and not the trust?  And how does ULICO have

17  standing to do that?

18       MR. CAMERON:  Of course.  So, as I know the Court is

19  aware, the trustee itself is not a juridical entity, it's simply

20  an account.  So, the trustee holds legal title to the assets in

21  the trustee, but only in a ministerial-type capacity.  The

22  equitable title to the assets is held by the beneficiary.  In

23  this case, my client.  So, even if we start with the premise

24  that it was the trust, the assets or the -- well, this gets back

25  to the problem of, it's not a juridical entity.  Who was

PB Life and Annuity Co., Ltd. - 4/14/22                    19

1   actually injured?  The party that owned the assets is who was

2   injured in the context.  And my client is the beneficiary of the

3   trust, it has equitable title to the assets, and legal title is

4   held in the name of the trustee only.

5          Now, in any case, we're the creditor here of PBLA, not

6   the trustee and not the trust.  Because the trustee doesn't have

7   a claim against PBLA, it's my client that does because we're the

8   aggrieved party.  Which is why, when we go back to the language

9   in the statutes in the New York State Debtor-Creditor Law and

10   the North Carolina UVTA it says, it's the aggrieved creditor

11   that is the only party that has the right to bring a claim, and

12   that is my client.

13          THE COURT:  Okay.  With respect to the subject matter

14   jurisdiction issue, if I discount the settlement agreement,

15   which I think I have to under the rules of what I'm allowed to

16   look or under conceivable effect, explain to me how there's any

17   offset rights or otherwise?  We've taken a look at both U.S. law

18   and Bermuda law in this and don't see it in the court, so the

19   way that I'm looking at this, which might be wrong, and

20   certainly is probably informed by my chapter 11 experience, I'm

21   sure, in addition to my chapter 15 experience, is that while we

22   have a statute that requires that no one can get paid more than

23   100 cents, the way I'm looking at this is, I can't consider your

24   agreement, there wasn't anything under the statute that would

25   allow for offset, either U.S. statute or Bermuda under the set-

PB Life and Annuity Co., Ltd. - 4/14/22                    20

1   off rules, and therefore, the only way I can get conceivable

2   effect is if I posit that the recoveries will be such that I get

3   into the issue of your client being paid more than 100 cents on

4   its claim, where you'd have a cutback occurring in the Bermuda

5   estate.  What am I missing?

6           MR. CAMERON:  Okay.  So, I understand the Court's

7   point about the settlement agreement and so for the purpose of

8   my answer, we'll disregard that all together.  So, the nature of

9   our claim, which is set forth in the judgment in the Southern

10  District and in the reported cases about it, is that my client

11  brought an arbitration claim saying that PBLA had breached the

12  reinsurance agreement by not providing adequate assets in the

13  trust.  A panel found that we were entitled to a provisional

14  remedy of having money deposited, and that didn't happen.  We

15  took that arbitration award, had it confirmed, and it became a

16  final judgment, and that it's no longer appealable.  I'm sorry

17  if I'm going through things you already know.

18          The nature of our claim then is that there is an

19  inadequate amount of money in the trustee.  Well, if we succeed

20  in clawing back this money, and go back to the state of affairs

21  as it was as of July 6, 2017, that won't be the case anymore,

22  because there was an adequate amount of money in the trust when

23  PBLA got it.  What happened is that there had been a prior

24  reinsurer where we had put these good quality assets into a

25  trust.  That arrangement ceased because the parties wished to

                    PB Life and Annuity Co., Ltd. - 4/14/22              21

1    discontinue it.  We found a new reinsurer in the context of

2    PBLA.  We took the assets that were already in the trust and

3    transferred them pursuant to the new reinsurance agreement and

4    the trust agreement and said, okay, here's where you guys start,

5    manage it well, and you'll do well.  You can take the money

6    that's in excess of the amounts, that we need to have our

7    reserve and requirements.  If you don't manage it well, you're

8    going to have to put more money into it.

9            So, the circumstance that we had here when we went to

10   arbitration is that they hadn't managed well and that there

11   weren't enough assets in the trust and that's what the panel

12   found.  And so, they needed to put more money in.  They didn't

13   do that.  Now, that's all because of these fraudulent transfers.

14   That they took these perfectly good assets that we had,

15   liquidated them, turned them into cash.  PBLA took that cash

16   then and invested it in things called "Flowery Branch" and

17   Yellow Lotus, SPB's that had no economic substance whatsoever,

18   some operating company, often offshore with opaque financials.

19   So, if we undo all that and put the money back in the trust

20   where it should be, our claim will obviously go down.  Because

21   our claim is based on the fact that there is insufficient amount

22   of money in the trust.

23           THE COURT:  Okay.  Mr. Cameron, I'm going to stop you

24   there.  Technically, this action is not filed by the trust, it's

25   filed by ULICO in its capacity as a creditor.  If you get a

PB Life and Annuity Co., Ltd. - 4/14/22                22

1   judgment, that money goes to ULICO.  There's nothing about a

2   judgment that would happen in this that will require that money

3   to then go into the trust but for your stipulation of settlement

4   agreement with the debt with the foreign debtors.  So, if I

5   can't look at the stipulation of settlement, which I don't

6   believe I can because it was entered into after the date when

7   this action was commenced, what's the basis for me thinking that

8   that's going to end up in the trust?  No disrespect, but ULICO

9   is a large insurance company; there's nothing about it that will

10  require that if it was able to bring fraudulent transfer action,

11  having to put that in the trust.

12          It true it might trigger a similar type of statute if

13  it exists in Bermuda to the one that we have in the United

14  States, that you can't get paid more than 100 cents on a claim,

15  and I get that, but there's nothing else about this action that

16  will require those funds to go back into the trust if you're

17  successful.  Because this is a fraudulent transfer action not

18  being brought on behalf of the trust but being brought on behalf

19  of ULICO.  So, explain to me why that's going to end up in the

20  trust and what's the basis for that at all in connection with

21  the fact that this action isn't brought on behalf of the trust.

22          MR. CAMERON:  Sure.  So, no one is contending that we

23  would have the right to get $524 million, plus interest and have

24  all of the trust assets adequately in the trust.  That would be

25  a double recovery.  That is not permitted under the law of

PB Life and Annuity Co., Ltd. - 4/14/22          23

1   Bermuda as I understand it.  It certainly wouldn't be permitted

2   under the laws of the United States or any other jurisdiction

3   I'm familiar with.  So, our judgment amount will necessarily be

4   reduced to the extent that there's more money in the trust.  So,

5   by getting the money to us, our claim goes down.  That means

6   there's more money to go to creditors.  That's why there is a

7   conceivable effect here.  That's really the bottom line of it

8   because we can't both collect on the judgment and insist on the

9   full amount of the trust monies being present because that would

10  in fact be a double recovery.

11          THE COURT:  So, let's talk about your diversity of

12  citizenship argument.

13          MR. CAMERON:  Sure.

14          THE COURT:  So, let's just hypothetically say, I don't

15  find that I have subject matter jurisdiction, or I do not have

16  it, what you're suggesting to me, I think, if I understand what

17  you're arguing, is that this could proceed in the District

18  Court.  As you know, when something is filed by me, if I find I

19  don't have jurisdiction, I don't get just to transfer the matter

20  to the District Court.  There would have to be a motion to

21  withdraw the reference and the District Court would have to

22  decide if it thinks there's diversity jurisdiction such that it

23  would remove it in light of the fact that I found that there's

24  not subject matter jurisdiction based on § 1334.  So, is that

25  what you're saying would happen here?  Because I don't get to

PB Life and Annuity Co., Ltd. - 4/14/22                24

1  just send things to the District Court.  Sometimes I would

2  really love to do that, but that's not what our statute says.

3        MR. CAMERON:  Sure.  Well, if there's not subject

4  matter jurisdiction under 1334, then this district's order of

5  referenced was never implicated.  And I made a mistake when I

6  put the caption on it that I did.  Which would certainly be my

7  mistake for that, for which I would apologize.  But the order of

8  reference is simply then inapplicable then.  Because § 157 only

9  allows orders of reference in circumstances where jurisdiction

10 is based --

11        THE COURT:  And that would require me to dismiss this

12 action, and you would have to reconstitute it in the District

13 Court, correct?  Because you're pointing out that there's no

14 reference to be withdrawn in that circumstance, which is the way

15 I was looking at it too.  I don't disagree with that.  I don't

16 think there is a reference if it doesn't fall within the

17 language of the reference.  To me that means that this

18 litigation would have to be dismissed before the Court and you

19 would be free to file it anywhere else, North Carolina, state

20 court in New York, the District Court on diversity.  But it

21 isn't something that can go back up on a withdrawal of the

22 reference.  That's why I was asking the question because I don't

23 see that either.

24        MR. CAMERON:  I agree that you wouldn't withdraw the

25 reference because I think that the order of reference in the

PB Life and Annuity Co., Ltd. - 4/14/22                    25

1  first instance would be inapplicable, and so, it simply would

2  have been filed in the District Court, we'd put a new caption on

3  it, the clerk would put us on the wheel, and we would get an

4  assignment in the District Court.  That's what I think would be

5  the right thing to do.

6              THE COURT:  Okay.  Understood.  So, let's talk about

7  some of the other arguments that were raised with respect to the

8  pleading.  I appreciate that you have provided no particularity

9  with respect to the statutes in your pleading, but I note that

10 there are still some claims, where the statute wasn't specific,

11 where it is really a matter of state law that would have to be

12 applied.  So, specifically I'm focused on unjust enrichment and

13 conversion claims.  constructive trust is a little dicey because

14 that can be a state law claim, or we actually do have some

15 federal rules on constructive trust technically.  I was involved

16 many years ago, early in my career, on one of the main cases on

17 that one, with somebody had to look at, how does that happen.

18 So, it does exist under federal common law, a concept of

19 constructive trust, in addition to state court.  So why have you

20 not pled with more particularity as to what states those claims

21 would apply because the facts that you're using are similar,

22 they're all the same facts that you've alleged with respect to

23 at least many of the things that are the constructive fraudulent

24 transfers.  I understand there are differences with the actual

25 fraud claim and the actual fraudulent conveyance claims, hinder,

PB Life and Annuity Co., Ltd. - 4/14/22                26

1   delay, defraud creditor claims, but why is there no statute,

2   estate law applied with particularity on those?

3        MR. CAMERON:  Sure.  So, those claims arise under the

4   common law, and as a consequence, there's no particular statute

5   that you would point to.  we understood why people wanted to

6   understand what statute we were talking about with the right

7   emanates from a particular statute within New York and North

8   Carolina.  You know, I hoped that that would be the limit of the

9   potentials, but unfortunately, it may be broader than that.

10       When we start talking about the estate common law, and

11  as you rightly point out, federal common law doctrines, I think

12  it's not conventional to plead choice of law in a complaint for

13  a variety of reasons.  Now, as a practical matter, what I think

14  would make sense is that, to the extent you should you choose

15  the law of New York or North Carolina, say for a transaction

16  with respect to fraudulent conveyance, I think you probably

17  would also get the same law of estate applicable.  That is,

18  let's say that you had a New York State Debtor-Creditor Law

19  statute applicable to a particular transaction, I think the law

20  you would likely look to in that event for the unjust enrichment

21  or the constructive trust or claims of similar ilk would

22  probably be the law of New York.  However, the reality is that

23  choice of law is a complex area, and it turns on the facts of

24  each individual transaction.  So, I think it would be very

25  difficult to plead the choice of law issue with respect to each

PB Life and Annuity Co., Ltd. - 4/14/22                    27

1    of these defendants at this juncture of the case.  And I

2    respectfully, do not think that that's what's required under

3    Rule 8.

4            THE COURT:  Okay.  All right, those are my questions.

5    Thank you for answering them.  All right.  Who would like to go

6    first among the defendants?

7            MR. FRIEDMAN:  Your Honor, it's Peter Friedman, may I

8    start my 10 minutes for Morgan Stanley?

9            THE COURT:  You may.

10           MR. FRIEDMAN:  Thank you, Your Honor.  So, Your Honor,

11   I want to start by pointing to our opposition to the motion to

12   amend and the four cases we cite from the 2d Circuit that say

13   futility absolutely is an appropriate basis to deny leave to

14   amend.  And there has been prejudice to Morgan Stanley.  We

15   identified the deficiencies in August of last year in a letter

16   to the court, and were forced to wait through a full round of

17   motions to dismiss briefings Before the last minute.  Our issues

18   were obvious, and the plaintiff did nothing to correct those

19   deficiencies at any time before, what I would describe, as the

20   very last minute on the eve of the last year.

21           Your Honor, I want to identify a few other important

22   issues with respect to subject matter jurisdiction.  In effect,

23   I think what they're saying is, that anytime a claim against the

24   estate could be reduced, that claim can give rise to related

25   jurisdiction, but that's clearly not the law, otherwise, any

PB Life and Annuity Co., Ltd. - 4/14/22                28

1   claim against a third party where there's contribution would

2   give rise to related jurisdiction, which just isn't correct.

3         On the standing issue, Your Honor, I want to make the

4   point that there are two standing issues.  One is the statutory

5   standing issue for fraudulent transfer, which I understand that

6   they assert an independent right.  But with respect to unjust

7   enrichment and constructive trust, those are not claims that a

8   third party can bring.  Those belong to either PBLA or the

9   trust.  They have not cited a single case that gives the right

10  to a third party to bring those, and I think the traditional

11  rules of STN standing do apply there, and they've completely

12  failed to comply with that.

13        Your Honor, the next point I would make is with

14  respect to fraudulent transfer.  And the prospective fraudulent

15  transfer, and specifically with respect to Morgan Stanley, the

16  initial complaint both said too little and too much.  It said

17  too little because there is nothing in it about what Morgan

18  Stanley had done.  But what it said that was too much, Your

19  Honor, really, if at all times, it's been in the complaint,

20  first amended complaint, and the proposed second amended

21  complaint.  it says, Morgan Stanley received funds transferred

22  from the trust, not PBLA, before such funds were transferred to

23  various Lindberg affiliates, entities, or individuals.  And

24  then, at all times, PBLA, a known affiliate of Lindberg,

25  retained possession or control of the trust proceeds that were

PB Life and Annuity Co., Ltd. - 4/14/22                29

1   transferred from the trust.  So, I guess now, by identifying

2   something, have cured the too little issue.  But they've just

3   pled too much.  They've pled themselves into a corner they can't

4   get out of by saying that Lindberg retained possession and

5   control of the trust proceeds that were transferred from the

6   trust.  And even what you heard this morning, that all of those

7   funds were part of a scheme that the money wound back up outside

8   the hands of any of the defendants.  Morgan Stanley never

9   possessed or obtained funds for its own benefit under **Lyondell**,

10  under **Mervyn's** from Delaware.  Those cases establish that if

11  you're a mere conduit, **Kristy v. Alexander** in 2d Circuit, one

12  who facilitates the transfer of funds, does not exercise

13  sufficient dominion and control, and is not an initial

14  transferee that can be held liable for fraudulent transfers.

15          They claim, oh, we've alleged you're an initial

16  transferee, but **Kristy v. Alexander and Alexander** and the

17  **Finley, Kumble** bankruptcy demonstrates that my client is not an

18  appropriate initial transferee who can be alleged to be liable

19  for a fraudulent transfer.  So, I don't think that's so "in the

20  weeds" that that can't be addressed now.  On its face, it's

21  glaring and it's fatal and there's no way to remedy it.

22          I would also note we allege, certainly for New York

23  law purposes, Mr. Cameron may be unfamiliar with it, but there

24  is substantial caselaw that says, where you're pleading actual

25  fraud, the intent of the transferee is important.  It has to be

PB Life and Annuity Co., Ltd. - 4/14/22                    30

1    alleged and there actually is no such allegation.  And I think

2    that leaves into the unjust enrichment issue.

3           When the Court (inaudible) in January, I don't want to

4    over presume, but the Court certainly expressed skepticism with

5    respect to intent-based claims as to our client, and those were

6    not remedied in any way.  Unjust requires a fiduciary or other

7    close relationship, it requires bad conduct, it requires

8    something unjust.  And there's just nothing even remotely like

9    that in these allegations.

10          I think the remaining point I would make with

11   constructive trust is that it is a federal doctrine, certainly

12   one that we've all dealt with extensively.  What I would say it,

13   it's a remedy, it's not a cause of action.  Second, it has

14   specific elements.  It's flexible, but it's not so flexible that

15   you can't note the glaring absence of any of them here.  ULICO

16   says Morgan Stanley waived the right to address this, which is

17   not true.  In our opposition, we specifically referred to our

18   motion to dismiss briefing, pages 22 through 26.  And our

19   proposition in our opposition to the motion to amend was, you

20   can't have a constructive trust where you acknowledge in your

21   complaint that there is no race in the hands of the defendant.

22          The allegation here is that the money went to Lindberg

23   and his affiliates, not Morgan Stanley.  By definition, you

24   can't have a trust race in that circumstance then, because the

25   money isn't with the purported defendant.  And we actually cited

PB Life and Annuity Co., Ltd. - 4/14/22                    31

1   a case in our initial motion to dismiss, the **Dreyer** case, from

2   Mark Dreyer's bankruptcy.  And so, the idea that we waived it is

3   wrong, and the idea that they can meet any of the elements of a

4   constructive trust is equally wrong.  So, Your Honor, in our

5   view, this is an absolutely futile complaint.

6           The last point I would make though, we can proceed to

7   an additional argument on the motion to dismiss if necessary.

8   Frankly, I think the Court can address the issues on the papers,

9   it's been briefed so many times.  I would request that we

10  actually be spared having to expend more money on the motion to

11  dismiss.  What I would say is, in the hopefully very unlikely

12  event that there is permission to amend, that any amendment come

13  in the form of separate complaints against each defendant.  I

14  don't know whether ULICO didn't want to pay fees for filing

15  separate adversary proceedings, but I've never seen anything

16  like this where there's not a common nucleus of facts for

17  recipient of transfers, but you just lump them all together.  If

18  there is an amended complaint, and the Court reserves on the

19  futility issue, we would obviously motion to dismiss it, and we

20  don't want to have to wait for everybody else to be dismissed,

21  for them to appeal it if we prevail on that.  So, I guess that

22  should be ordered, like I said, in the hopefully very unlikely

23  event that are permitted to amend, that they file separate

24  complaints.  That's all I have, unless the Court has any

25  questions for us, Your Honor.

PB Life and Annuity Co., Ltd. - 4/14/22                    32

1      THE COURT:  No, thank you, Mr. Friedman, I appreciate

2  that.  I don't have any questions.

3      MR. FRIEDMAN:  Thank you.

4      THE COURT:  Who would like to go next?

5      MR. PACE:  Your Honor, may I go?  Jared Pace from

6  Condon Tobin?

7      THE COURT:  Yes, Mr. Pace.

8      MR. PACE:  Thank you, Your Honor.  I'll set my timer

9  here.  We make a lot of arguments in our brief about why this

10 case his futile, and why it should be dismissed, I just want to

11 focus on why for the sake of time, and that's the standing issue

12 that the Court brought up in its questions to Mr. Cameron.  As

13 the Court correctly pointed out that this is a case to pursue

14 trust assets, the trustee has the right to do that, not the

15 beneficiary of the trust.  I heard Mr. Cameron say that the

16 trust isn't an actual entity, it's an account.  And I didn't see

17 any reply to our argument on this point in ULICO's report, but I

18 don't think there's any basis for that.  I don't think there's

19 any basis to disregard the trust as an entity, and I think Mr.

20 Cameron even admitted that it holds legal title to the assets

21 that they're trying to recover here.

22      The law is clear under trust law that the trustee has

23 to bring a claim to recover trust assets.  I think that they

24 make the argument on the other side that this isn't necessarily

25 a recovery of trust assets; I think the problem that runs into

PB Life and Annuity Co., Ltd. - 4/14/22                    33

1  is the language of their second amended complaint itself.  We

2  can't go beyond the complaint at this point, we're constrained

3  to the four corners of it, and whatever documents are referred

4  to it.  And it says very clearly in the opening paragraph that

5  "this case arises out of … the transfer of hundreds of millions

6  of dollars of assets from a trust."  That's it.

7          Paragraph 315 also says, each of the voidable transfer

8  defendants received transfers at the direction of PBLA from the

9  trust.  There's simply no escaping the conclusion that they're

10  trying to recover and trying to avoid transfers from the trust.

11  Claims asserted to recover those have to be brought by the

12  trustee.  There are occasions under the law where a beneficiary

13  could bring those claims, but you've got to plead that you may

14  demand on the trustee to bring the claims and the trustee

15  improperly refused.  it's like a derivative suit.  We explain

16  that on pages 3 to 5 about brief.  They didn't do that, and if

17  they did, they didn't plead it, and we're constrained to the

18  pleadings here.  They didn't plead their standing, so it's got

19  to get kicked out on that basis alone.

20          There's another component to the standing argument

21  though, and that is under the fraudulent conveyance statutes

22  that they're trying to recover under.  Under those statutes, you

23  have to be a creditor of the transferor.  All right?  They're

24  conflating the trust with PBLA.  The trust is not PBLA.  ULICO

25  is a creditor, by its admission, of PBLA.  The transferor in

PB Life and Annuity Co., Ltd. - 4/14/22                    34

1  this circumstance is the trust.  ULICO has not pled that it's a

2  creditor of the trust.  And therefore, under the fraudulent

3  conveyance statutes it's trying to recovery under, it doesn't

4  have standing a creditor.  And I'll just quote one of the many

5  cases we cited in our brief out of the Southern District of New

6  York.  It's **Lippe v. Bairnco Corp.**, 225 B.R. 846 (SDNY. 1998),

7  and it says, " … only creditors of the transferor are entitled

8  to assert claims under the NYDCL for fraudulent conveyances."

9  North Carolina has the same statute essentially as New York.

10         And to illustrate this point, a problem with this

11 conflation, and that's what it is, it's a disregard by ULICO,

12 the trust, as a separate and distinct entity that the law

13 recognizes it is.  In some cases, they conflate the trust with

14 themselves.  In some cases, they conflate the trust with PBLA,

15 but they're distinct.  They're different.  And to illustrate the

16 problem, I think you can look at one of the defendants in this

17 case, Sedgwick LLC.  So, in this case, ULICO is trying to avoid

18 a loan to Sedgwick LLC owned by the trust.  All right?

19 Separately, the JPLs on behalf of, first the trustee, and then o

20 behalf PBLA of the grantor of the trust by seeking to enforce

21 that same loan against Sedgwick LLC in a different jurisdiction.

22 That's happening.  So, you've got all three parties to the

23 trust, ULICO is the beneficiary, the trustee, as the trustee,

24 and PBLA as the grantor, pursuing different remedies in

25 different jurisdictions against the same defendant on the same

PB Life and Annuity Co., Ltd. - 4/14/22                35

1  loan transaction.  They cannot all have standing to do that.

2  That just can't be the case.  And I think the law is clear that

3  ULICO does not.

4         There are a lot of other arguments as to why this case

5  needs to go away now, the standard, I don't think is really in

6  dispute.  What's going to happen is, if the Court allows them to

7  amend their motion, you're going to see a bunch of motions to

8  dismiss again, and the only question of the standard at this

9  point is, would that be a waste of time?  Do we know enough at

10  this point, based on their current draft of the pleading, to

11  know that that would be a big waste of time?  I think on this

12  issue in particular, the standing issue, we know that would be a

13  waste of time.  The jurisdiction issue as the Court noted as

14  well, I think is another obvious one to kick this out.  I'll

15  stand on our brief as to all other arguments.  I'm happy to try

16  to answer any questions the Court may have?

17         THE COURT:  Thank you, Mr. Pace.  No, I don't have any

18  questions for you.

19         MR. PACE:  Thank you, Your Honor.

20         THE COURT:  Right.  Who would like to go next?

21         MR. HALEY:  Your Honor, Peter Haley for the defendant,

22  Aspida.  With the permission of the Court?

23         THE COURT:  Mm-hmm.

24         MR. HALEY:  Your Honor, much like crying in baseball,

25  there is no diversity jurisdiction in bankruptcy.  And although,

PB Life and Annuity Co., Ltd. - 4/14/22                36

1   the Court's earlier colloquy with plaintiff's counsel and their

2   concession seems to have resolved that matter, the fact that the

3   plaintiffs leads with that in their reply memorandum, I think

4   bespeaks the weakness of the subject matter jurisdiction

5   arguments in this case, which seem to provide overall, the

6   easiest past to the exit for all concerned.  The plaintiff is

7   then left with the argument that this is a related-to matter

8   under 1334 and its reliance on the conceivable effect arguments

9   first articulated by the 3rd Circuit in **Pacor.**

10          This is an adversary complaint that's nine months old

11  relating to a chapter 15 proceeding that's now more or less two

12  years old filed initially in 2020.  In concluding the argument

13  about the conceivable effect, the plaintiff ends on page 8 of

14  its memorandum with the sentence, "If it should recover

15  something under those circumstances, reducing the claim will

16  increase the assets that can be used to pay other creditors to

17  the extent any exists."  It seems apparent, I believe, to all

18  concerned and hopefully to the Court that the reduction of this

19  $5 million claim, even if it could be legally reduced, as the

20  Court has observed is likely not the case, isn't going to have a

21  conceivable effect on other creditors.

22          This is a liquidation proceeding; there is no corpus

23  that's going to be diminished; there is no likelihood that there

24  will be distributions to other creditors that will be materially

25  improved by either the whole or partial reduction of this claim.

PB Life and Annuity Co., Ltd. - 4/14/22                    37

1   Subject matter jurisdiction is something that the plaintiff

2   bears the burden on.  And now nine months in, the plaintiff must

3   demonstrate to the Court and to the defendants that such

4   jurisdiction exists.  The fact that one could construe a

5   hypothetical isn't sufficient.  The 2d Circuit is clear that in

6   cases where the connection is so small or tenuous, the court can

7   appropriately elect not to exercise subject matter jurisdiction

8   where there's nothing real going on here, and that's certainly

9   the case.  The one exception to that that the Court alluded to

10  in an earlier status conference is, if the property that the

11  plaintiff is pursuing is somehow property of the estate or has

12  some connection to the estate, then perhaps subject matter

13  jurisdiction can be established.

14       Here, where the plaintiff is clear that the funds that

15  it seeks to recover are funds that were distributed from the

16  corpus of the trust, in paragraph 122 of the second amended

17  complaint, they articulate the accounts from which these amounts

18  were distributed.  They're all trust accounts.  The debtor

19  doesn't have any interest in these funds, and the plaintiff is

20  clearly not pursuing them in a way that's going to inure to the

21  benefit of any party, other than the plaintiff.  That being the

22  case, there is no benefit either in reality or either under any

23  conception by which the other parties to this bankruptcy

24  proceeding, this foreign proceeding will benefit from the

25  plaintiff's actions here.  And as such, the matter fails the

PB Life and Annuity Co., Ltd. - 4/14/22                    38

1    related-to test under 1334, and the Court lacks subject matter

2    jurisdiction.

3            On a defendant-specific argument, Your Honor, Aspida

4    has also raised the fact that in its case, this asset, the

5    entity that's the defendant here, now known as Aspida Financial,

6    was something that was acquired through a Michigan

7    rehabilitation proceeding that was started in 2019.  Aspida paid

8    $5.5 million to acquire the asset.  When it did so, it received

9    a free and clear order from the Michigan court in which the

10   Michigan court said that it was receiving this asset free and

11   clear of all claims in interest.  The plaintiff's only response

12   to that is, well, maybe the Michigan court didn't have

13   jurisdiction.  Or maybe we didn't get notice.  But respectfully,

14   those are all arguments that belong in the Michigan court.

15   1334(c), which allows a court to exercise permissive abstention

16   and the Federal Common Law Doctrine, known as the Burford

17   Extension Doctrine, makes it clear that in instances where there

18   is a state regulatory scheme, the court is called upon to

19   construe state law and subject matter jurisdiction traditionally

20   lies with the state court, that the court should abstain from

21   exercising jurisdiction.

22           The plaintiff itself on the first page of its motion

23   for leave to amend says, insurance is something that is a

24   subject of state regular law.  The defendant, Aspida, would

25   concur and argue as it has in its papers in this instance, that

PB Life and Annuity Co., Ltd. - 4/14/22                    39

1   this is a matter in which the Court should properly exercise its

2   rights of abstention and as such, there's no reason for the

3   second amended complaint to proceed against Aspida, even if the

4   Court should find subject matter jurisdiction on the larger

5   issues.

6          I would note that with respect to the connection of

7   the trust corpus to the foreign estate, that the position of the

8   joint provisional liquidators seems to have changed a little bit

9   in a recently filed pleading in the so-called second sale motion

10  in the main proceeding, Docket Number 173 at pages 19 to 20.

11  The joint provisional liquidators seeking to avoid the court's

12  constant supervision over the disposition of certain classes of

13  assets makes it clear that the court doesn't have jurisdiction

14  over assets which are not directly held by PBLA, and as such,

15  cites **Parmalat** to the effect that there's no conceivable effect

16  to the bankruptcy estate for the disposition of affiliates,

17  including trust assets.  So, the subject matter jurisdiction

18  which were articulated in our papers and have been argues by

19  others as well, we believe should led the court to conclude that

20  allowing a complaint to proceed further would be futile in this

21  instance, and as such, deny the motion for leave to amend and

22  dismiss the first amended complaint as it exists.

23         THE COURT:  Thank you, Mr. Haley.  I will just note

24  for you, chapter 15 has some unique aspects.  One of them is,

25  there's no permissive abstention in adversary proceedings that

PB Life and Annuity Co., Ltd. - 4/14/22          40

1   relate to a 15 case.  I just had to rule on this very recently.

2   There's a bunch of caselaw on this.  There's only mandatory

3   abstention or no abstention in the context of adversary

4   proceeding that's related to a 15.  So, if I did find I had

5   related-to jurisdiction, I wouldn't be able to access or to

6   utilize the permissive abstention, just so you're aware of that.

7   It's a unique thing about chapter 15 and there were a bunch of

8   issues about whether that also applies to adversary proceedings.

9   But the majority of the caselaw says it does, that it related to

10  a 15 and I have previously ruled to that effect as well in

11  connection with Mobi litigation that was before me recently.

12          MR. HALEY:  I apologize to the Court for that.  I was

13  aware of the first sentence of 1334(c) but was construing it to

14  mean that it applied to the main proceeding and not the

15  adversary proceeding.

16          THE COURT:  No, there's actually caselaw on this in

17  the 2d Circuit on this as well and other circuits.  It's an

18  interesting issue.  I never encountered it myself in practice

19  even though I did a lot of chapter 15's.  And there's not a ton

20  of caselaw, but there is some and a bunch in our district as

21  well, including my own ruling recently.

22          MR. HALEY:  Thank you, Your Honor.

23          THE COURT:  All right.  Mr. O'Brien would you like to

24  go next?

25          MR. O'BRIEN:  Sure.  Thank you, Your Honor.  Liam

1    O'Brien of McCormick & O'Brien for Hutchinson.  I'm not going to

2    address a lot of the jurisdictional issue because I think that's

3    been very adequately covered, but I will start by saying that

4    the plaintiff has not directly addressed the arguments

5    specifically to Hutchinson that are set forth in our brief.  he

6    proposed 2nd amended complaint doesn't specifically allege any

7    actual wrongdoing by Hutchinson which supports the legal claims

8    that they're asserting against Hutchinson.  It merely adds one

9    substantive allegation regarding two separate cash transfers,

10   while at the same time failing to actually note that the

11   transfers occurred in the context of Hutchinson's involvement as

12   legal counsel and Eli Global, entities purchased of an

13   unaffiliated software business.  The funds that were used to

14   finance that acquisition of the unaffiliated business that were

15   temporarily remitted to Hutchinson's trust account, and then

16   they were distributed in accordance with the agreement of the

17   parties to that transaction.

18         So, there's no specific wrongdoing alleged against

19   Hutchinson.  Hutchinson is not alleged to have shared any

20   functions or affiliations or control with or by any of the other

21   defendant entities.  And as a result of that, the fatal pleading

22   defects highlighted in Hutchinson's prior motion to dismiss

23   still remain.  The single allegation doesn't satisfy the

24   requirements of a well-pleaded claim and we believe, just as

25   stated n our prior motions, that they'll withstand a motion to

PB Life and Annuity Co., Ltd. - 4/14/22                42

1  dismiss pursuant to the various rules.  And I guess we should

2  point out, even though I'm sure it's obvious to the Court, that

3  ULICO has had ample time to gather information needed to

4  substantiate their claims against Hutchinson and apparently has

5  not been able to do so.

6         Turning to futility, given that the proposed second

7  amendment complaint fails to state or include any allegations of

8  wrongdoing with respect to Hutchinson, it will be subject to a

9  motion to dismiss if leave is granted to amend and according to

10 the law cited in our brief, the Court is not abusing its

11 discretion if it denies leave to amend when it determines that

12 the amended complaint, even as amended, would fail to state a

13 cause of action.  I will recite the caselaw that we identified

14 in our brief, but just in summary on that argument, leave to

15 amend should therefore be denied because it's futile.

16        Turning my attention briefly to the statute of

17 limitations arguments, we argue that under CPLR 202, the courts

18 are obliged to bar statute of limitations for a foreign

19 jurisdiction where that statute of limitations period is shorter

20 than the one under New York law.  With regard to the voidable

21 transfer claims that are asserted against Hutchinson under New

22 York and North Carolina law, there's a shorter four-year statute

23 of limitations under the North Carolina law, and so the deadline

24 to file those claims against Hutchinson was in September of

25 2021.

PB Life and Annuity Co., Ltd. - 4/14/22                43

1          Under the unjust enrichment, there's a three-year

2     statute of limitations, both in New York and in North Carolina,

3     so those unjust enrichment claims were required to have been

4     filed on August 23, 2020 and September 6, 2020, respectively,

5     with regard to the two transfers, and so leave to amend should

6     be denied on that claim as well.  And then with respect to the

7     constructive trust, while the New York statute of limitations is

8     six years, under North Carolina it's three years, and again, the

9     time to file a claim is well passed as against Hutchinson.

10         So, for those arguments and the others articulated in

11    our brief and that we referenced, the arguments made in other

12    opposition briefs, we ask the Court to deny the motion to amend,

13    at least with respect to Hutchinson.  To the extent I have any

14    additional time, I'll cede my time to any of the other

15    respondents that need the time.

16         THE COURT:  Thank you, Mr. O'Brien.  Mr. Helman?

17         MR. HELLMAN:  Yes, judge.  Thank you.  I'm just going

18    to set my timer here.  For the record, Jay Hellman, Westerman

19    Ball, for the 20 flower defendants.  Although now, it seems

20    based on the proposed second amended complaint, 19 defendants

21    because Somersworth has been omitted from the complaint.

22         I don't want to repeat everything that everybody else

23    has said with respect to jurisdiction, but I do want to note two

24    points.  One is that it seems to me that ULICO has argued its

25    way out of jurisdiction in this court.  Despite the contention

PB Life and Annuity Co., Ltd. - 4/14/22                44

1   that the reduction or potential reduction in the claim against

2   the estate has some affect on the estate, the fact is and the

3   law is, under **In re Holland** in the Southern District, and I

4   can't believe I'm going to say this, dating back to 1989, way

5   back, that in a proceeding involving non-debtors won't be found

6   to be related on the ground that it will affect the

7   distributions of creditors, unless that proceeding also involves

8   property in which the debtor has a legally cognizable interest.

9   We've heard from counsel today for ULICO that the legal title is

10  held by the trust, and the equitable title is held by ULICO,

11  which means that the debtor has no interest in those funds.

12         The second point, I want to make judge is the

13  contention that this case is on all fours with **Parmalat**, which

14  it's clearly not because here, ULICO is bringing the claim

15  solely on behalf of itself.  In **Parmalat**, the claim was brought

16  in an attempt to recover damages that the plaintiffs contended

17  were due to the respective bankruptcy estates in Italy and in

18  Grand Caymans.  It's not the case here, there's no contention

19  that they're bringing this claim for the benefit of all

20  creditors to bring money back into the estate for inequitable

21  distribution, they want to bring the claim on behalf of

22  themselves, so that they can keep all that money, and there are

23  other cases that are consistent with denying related to

24  jurisdiction on that basis.  And I've recited those in my

25  briefing, and I stand on the pleadings there.

PB Life and Annuity Co., Ltd. - 4/14/22                    45

1          I don't think it's getting into the weeds to argue

2    statute of limitations because -- and I don't disagree with

3    counsel on the Rule 15 standards, but courts have held that

4    permitting amendments for the purpose of alleging claims that

5    are barred by statute of limitations would be a nullity, and it

6    only increases the cost of litigation.  And that's really what

7    we see here.  First off, I set forth a couple of charts in my

8    memo.  The first one is the pleadings themselves with respect to

9    at least five of the entities, that being Atkinson,

10   Chrysanthemum, Epping, Hookset, and Ware have allegations that

11   the transfers occurred more than four years before the complaint

12   was filed.

13          With respect to which law applies, again, I think the

14   complaint doesn't necessarily stand on any particular law.  I

15   don't think New York is proper, especially with respect to my

16   client's law or North Carolina, who were affected by a transfer

17   that was alleged inspired by or commissioned by Mr. Lindberg who

18   is in North Carolina, who's subject to the North Carolina

19   insurance regulations.  And where the entity was residing in

20   North Carolina, the transfer entities resided in North Carolina.

21   So, I think North Carolina law applies.  I think it's a statute

22   of repose not one of limitations, therefore substantive

23   therefore applies.  But even if it didn't, as counsel for other

24   defendants have raised with the court today, the borrowing

25   statute under New York CPLR would apply, the shorter limitations

PB Life and Annuity Co., Ltd. - 4/14/22                46

1  period.  So, clearly, I think that those claims are outside not

2  only the four-year limitations period under fraudulent

3  conveyance claims, but also obviously for the three-year

4  statutory periods for unjust enrichment and conversion.  And

5  thar probably holds true actually with respect to all

6  defendants.  There's a chart again in my brief which reflects

7  all of those entities against whom claims for unjust enrichment

8  and conversion were asserted.  And the reasons why, based on the

9  timing, those are outside the limitation periods.

10       There was an effort to add claims against certain of

11 the other flowery defendants, if you will.  That includes Blue

12 Daffodil, Blue Violet, Dahlia, one transfer with respect Daisy,

13 Geranium, Lilac, Macon, Red Begonia, Yellow Lotus, and 21 Yellow

14 Sunflower.  There were never any allegations with respect to any

15 transfers as to those entities within either the first complaint

16 or the first amended complaint.  And as argued in my brief,

17 judge, there is no basis to relate those back to anything

18 because, under the law, each transfer is viewed as its own

19 separate transfer.  Its own separate claim that has to be made

20 with respect to dollar amount, timing, and there's simply

21 nothing in the first amended complaint that would allow a

22 relation back in the second amended complaint with respect to

23 those specific entities.

24       One point I wanted to mention that nobody has

25 mentioned, which I find interesting, is that these claims are

PB Life and Annuity Co., Ltd. - 4/14/22                    47

1   all fraudulent conveyance claims, transfers of money where they

2   say, no consideration, or bad actors, or what have you, but the

3   bottom line is that all of these transactions, as I think is

4   recognized by the JPLs, were subject to notes or securities

5   transactions that were related to the transfers and there's been

6   no effort to avoid those.  I don't see how, and in my experience

7   representing trustees for a long period of time, I've been

8   subject to this.  I don't see how one can avoid as fraudulent a

9   monetary transfer without avoiding the underlying obligations

10  that form the basis for those transfers.

11         And again, I cite in my brief applicable caselaw.  I

12  think counsel for ULICO tried to distinguish one of them, but

13  they don't distinguish the rest of them which all hold, unless

14  you avoid the initial underlying documentary evidence as

15  fraudulent, the resulting monetary transfers cannot be avoided.

16         With respect to breach of fiduciary duty, I just want

17  to clarify for the court with the position was there.  I'm not

18  sure if I made it entirely clear, and counsel may have been

19  confused with respect to the argument.  The point is that a

20  company doesn't have a fiduciary duty to anybody.  A company

21  acts based on the conduct of its officers and directors, and

22  those are the folks who have the fiduciary obligations.  But

23  those fiduciary obligations run initially to shareholders.  It's

24  only upon the insolvency of an entity that there's some

25  obligation perhaps to creditors, but that requires a claim

PB Life and Annuity Co., Ltd. - 4/14/22                    48

1    brought on a derivative basis by those creditors.  So, the point

2    is twofold:  (1) The companies here, my flowery defendants,

3    don't have a fiduciary obligation to anybody.  Perhaps officers

4    and directors of those entities would, but the entities

5    themselves do not.  (2) The obligations of those officers and

6    director to creditors would only come into play upon insolvency

7    of the entities.

8            Now, that gets me two other points and then, I'm

9    almost done.  But one point is on insolvency.  So, we assert,

10   judge in our brief, and I don't see any allegations that

11   rectified everybody's arguments before, which is, there's

12   nothing in the complaint that talks about insolvency to support

13   constructive fraudulent claims.  There's nothing about books

14   value, asset values.  There's nothing except that these

15   transfers created the insolvency situation, but there's no

16   financial information to back that up.  It's just a flat-out

17   unsupported claim, which the Court doesn't have to take as

18   gospel in connection with this motion or these motions.

19           Lastly, judge, I just want to make a distinction

20   between the claims for actual fraudulent conveyance and fraud.

21   There's nothing in the complaint, the who, what, where, why,

22   when, how that deals with actual fraud under 9(b), so those

23   claims should also be dismissed if the Court is inclined to

24   exercise jurisdiction.  I see my time is up and I appreciate the

25   Court's patience.  If the Court has any questions --

PB Life and Annuity Co., Ltd. - 4/14/22                    49

1        THE COURT:  Mr. Hellman, I have a question for you.

2        MR. HELLMAN:  Sure.

3        THE COURT:  So, with respect to your second to last

4   argument on the insolvency issue and the failure to plead

5   without particularity, I guess my question is, is the judgment

6   sufficient itself that was entered on behalf of ULICO against

7   PBLA?  Because what the arbitrator had to find and then the

8   court had to confirm is that they had breached the agreement.

9   And the agreement was that they had to keep a certain percentage

10  of assets in the trust agreement in order to reinsure.  And the

11  arbitrator had to find that that was breached in order to then

12  order them to put the money back, or to pay them that money

13  because they hadn't complied with the reinsurance agreement.

14       So, I thought what you said, but I thought that, at

15  least vis-à-vis the trust, which I guess gets into the whole

16  trust-ULICO issue, I understand.

17       MR. HELLMAN:  Correct.

18       THE COURT:  But at least with respect to ULICO, I

19  guess, the Court found confirmed the arbitration order finding

20  there had been a breach.  And presumably, the breach was that

21  there wasn't sufficient collateral in the trust to support all

22  of the claims of ULICO policyholders.  And that's what had been

23  breached and that's why there's a judgment ordering them to put

24  in sufficient funds.  That was what was breached.  And that gets

25  a little dicey because the claims here might be on behalf of the

PB Life and Annuity Co., Ltd. - 4/14/22                    50

1  trust, not on behalf of ULICO, although the action is brough by

2  ULICO and not the trust.  So, it gets a little dicey, I can

3  understand.  But at least with respect to ULICO itself, I

4  suppose there is some evidence of the fact that there was -- and

5  even with the trust, arguably, I suppose that there were

6  insufficient funds in the trust and that was the breach.  And

7  that's why there had to be additional funds put in.

8       I think you can, at least, construe some kind of

9  insolvency under the trust.  I'm not sure that's true for ULICO

10  itself though.

11       MR. HELLMAN:  For PBLA or --

12       THE COURT:  Yes.

13       MR. HELLMAN:  I see where the Court is going.  I think

14  that is the issue that Mr. Pace had raised where they're trying

15  to blur the lines between the trust and the debtor.  Who made

16  the transfer; where did it come from.  Well, if it came from the

17  trust, I guess we'd have to take a closer look at the decision

18  in terms of what was in the trust at the time.  Is there's

19  insufficient funds to pay creditor claims -- were there creditor

20  claims?  Were there any insured claims?  Or is it just, they

21  found out that the investments were being made to entities that

22  were related and they have an objection to that?  It's not

23  entirely clear in terms of the trust, but it's certainly clear

24  in terms of PBLA, which again, I think the lines are being

25  blurred between the trust and PBLA.

PB Life and Annuity Co., Ltd. - 4/14/22                    51

1          THE COURT:  Okay.  Thank you for that answer.  All

2     right.  Mr. Cameron, I think it's your turn for a reply.

3          MR. CAMERON:  Thank you very much, Your Honor.  I want

4     to actually start with this issue about the identify of what

5     entity (inaudible).  And what entities exist as juridical

6     persons and don't.  Okay?  The concept of trust is an outgrowth

7     of the common law of property.  It is not a juridical person

8     anymore than an estate is an juridical person.  The trust cannot

9     act on its own behalf in any way.  That's why there's a trustee.

10     The trustee holds legal title to the assets that are held in

11     trust and is the only party then that can act in relation to the

12     trust assets in relation to that specific trust.  But the

13     trustee has only a very limited property right in those assets.

14     The trustee holds legal title, but the beneficiary holds the

15     equitable title.  So, it's the real party in interest for all

16     practical purposes for the things that happen with the assets

17     that are held in trust.

18          In this case, ULICO is the beneficiary of the trust,

19     PBLA has a very scant property interest in those assets in that

20     it has the right to take the overage of the amount of the assets

21     to the extent their fair market value exceeds the threshold of

22     what is required for the reserving on the reinsurance.  My

23     client has equitable title to some of the assets and PBLA has a

24     highly contingent theoretical equitable title over and above us.

25     Yet, in this case, I would submit, as a practical matter, is

PB Life and Annuity Co., Ltd. - 4/14/22                    52

1  nonexistent because there's no chance that we're ever going to

2  get over 102 percent of the reserving requirements that my

3  client held in assets in trust by the trustee.

4           So, the reality of the situation is that my client has

5  the property interest in the trust assets.  It also is an

6  aggrieved creditor with respect to PBLA because PBLA guaranteed

7  that there would be a requisite amount of assets in the trust,

8  which is why we sought arbitration and obtained an award, and a

9  judgment.  So, that's how these parties all relate.

10          Now, if what people are concerned about with respect

11 to subject matter jurisdiction is that the money first has to go

12 into the trust before it goes to us, that's fine.  The court can

13 make that reservation if it wants.  Then I think there would be

14 no doubt, according to what I've heard here, that there's

15 subject matter jurisdiction.  I don't think that's necessary for

16 the reasons we've already specified because my client cannot

17 recover twice.  And I think if you view it through that prism,

18 there is no question that there is a conceivable effect and that

19 is the standard here under **Cuyahoga** that originated in Pacor.

20 It is an exceedingly lenient standard.  That's what all the

21 cases say.  Now, often defendants in adversary proceedings don't

22 like that it's exceedingly lenient, but it is what it is.  This

23 Court has very expansive jurisdiction over this matter.

24          Now, with respect to issues about whether somebody was

25 pass-through entity.  They just got the assets for a while, and

PB Life and Annuity Co., Ltd. - 4/14/22                    53

1  they want to argue that went someplace else.  This really sounds

2  like a 546(e) argument to me, that they're arguing about safe

3  harbor and this is a hotly contested issue in this district and

4  elsewhere. I haven't heard anyone come forward with the

5  arguments for why it is they'd be subject to the safe harbor, by

6  546(e) would apply at all.  Particularly, with respect to state

7  law claims like we have going on here.

8           With respect to the issues of standing, again, I think

9  this is a function of a lot of things we've talked about already

10 in terms of the identity of the parties.  We are an aggrieved

11 creditor of PBLA.  We have a judgment for over a half a billion

12 dollars against PBLA.  The fraudulent transfer here came from

13 PBLA to transferees because what happened is that the trustee

14 transferred the assets that had been held in trust first to

15 PBLA, and PBLA transferred them to someone else.

16          Now, it's also true that in many circumstances, the

17 evidence appears to show that that initial transferee

18 transferred it again to someone else.  And perhaps again and

19 again and again.  But that doesn't mean that our claim as a

20 creditor of PBLA against that initial transferee is not valid.

21 I'm sorry to say that I'm afraid we're going to have to continue

22 to chase these monies down the chain, just like they had to do

23 in Madoff and a bunch of other cases in this district that on

24 the same ilk.  I wish it weren't so, but it is.

25          With respect to the issues about applying the statute

PB Life and Annuity Co., Ltd. - 4/14/22                    54

1   of limitations, I'm reluctant to head down the path of talking

2   about Rule 12, but I guess I have to.  Statute of limitations is

3   an affirmative defense.  It can only be asserted in a motion to

4   dismiss where all of the facts that are relevant are plain on

5   the face of the complaint.  What we've heard today from a

6   variety of the arguments are facts that are absolutely not in

7   the record, and certainly, not pled in the complaint.  That's

8   just not how Rule 12 works, let alone, Rule 15.  So, what you're

9   being invited to do is to engage in a very complex analysis

10  about choice of law based upon facts that are not in the record,

11  let alone pled.  Then apply some state law, perhaps North

12  Carolina, to come to the conclusion that North Carolina law

13  would bar a claim.  But in fact, if you look at North Carolina,

14  North Carolina is very likely to apply a discovery rule.

15       There's nothing pled in our complaint about when we

16  discovered these problems, because we don't think we need to

17  plead that.  And in any case, somebody would have to show that

18  in order to show that he North Carolina statute would bar the

19  claim.  And in any case, if you apply the New York statute of

20  six years, I don't think there's a single claim in this case

21  that anyone is arguing would be barred.

22       With respect to the arguments made by Aspida on the

23  Michigan proceedings, what we said in our prior brief and our

24  motion to dismiss about that is that that circuit court in

25  Ingham County, Michigan, Michigan Insurance Co., absolutely did

PB Life and Annuity Co., Ltd. - 4/14/22                55

1   not have subject matter jurisdiction to strip our claims out of

2   a noninsurance company that was apparently owned by an insurance

3   company.  That would be a controversial remedy in this district

4   under the Code today given the current state of affairs about

5   third-party releases.  Let alone in an insurance case in Ingham

6   County State Court where the statute at issue there doesn't

7   purport to give the Court anything like that power.  It does not

8   have fraud avoidance powers.  It does not have the right to give

9   third party releases to entities who are creditors against the

10  company in liquidation, let alone an affiliate of a company in

11  liquidation.  Moreover, we didn't get adequate notice and an

12  opportunity to be heard.  There's no personal jurisdiction over

13  my client in the State of Michigan, and there's no question that

14  the constitutional limitation of personal jurisdiction applies.

15  So, there's a whole litany of reasons why that order doesn't

16  have the effect that Aspida argues.

17         The issue there also raised about subject matter

18  jurisdiction, we say in our papers that creditors, to the extent

19  they exist, will be benefited by the (inaudible) of our claim.

20  And Aspida is arguing, well, see, that doesn't matter here

21  because there won't be any claims.  We don't have any idea

22  whether that's true, and we don't have any idea whether there

23  will be a liquidation in Bermuda.  The current proceedings in

24  Bermuda are for a joint provisional liquidation.  There has not

25  been a filing by the JPLs to start the actual liquidation of

PB Life and Annuity Co., Ltd. - 4/14/22          56

1   PBLA.  Moreover, there has not been a time for creditors to come

2   forward and articulate whether thy have a claim.  So, I don't

3   know whether there are creditors or there aren't.  Or how much

4   their claim would be or wouldn't be.  So, that's all

5   speculation.  What I do know is that if anybody shows up and our

6   claim for half a billion dollars is reduced, they'll benefit

7   from it.  And again, that's the conceivable effect test in

8   **Cuyahoga** and in **Parmalat**, and I think there's no question that

9   the creditors will benefit by us clawing back these monies that

10  were conveyed in fraudulent conveyances.

11        Those are the issues that I remember being raised, and

12  I'm mindful of the Court's patience and time and that lawyers

13  talking longer than they should is usually not a good thing.

14  So, I'm happy to take any questions that you have, Your Honor.

15  And I'm very grateful for your time and attention.

16        THE COURT:  I actually don't have any questions for

17  you, Mr. Cameron.  I got your reply.  Okay.  All right.  I think

18  I'm going to go ahead and provide a ruling.

19        So, I note, Universal Life Insurance Company which I'm

20  going to refer to as the plaintiff or ULICO file a motion for

21  leave for a second amended complaint.  And I'm going to refer to

22  that as the motion.  Plaintiff filed it's original complaint on

23  July 6, 2021 and filed it's first amended complaint on July 30,

24  2021.  And I'm going to refer to the first amended complaint as

25  the FAC.  Motions to dismiss were filed by various defendants.

1    The motions to dismiss raised various issues, including this

2    Court's subject matter jurisdiction, the failure to plead with

3    sufficient particularity, and the applicable statutes of

4    limitation by ULICO from seeking certain relief against certain

5    defendants.

6         This Court held a conference on the motion to dismiss

7    in January of 2022 where ULICO informed the Court that it would

8    be filing this motion, seeking leave to filed a second complaint

9    to cure defects in the FAC identified in the motions to dismiss.

10   This Court entered a scheduling order on January 22, 2022 with

11   respect to the motion.  Objections to the motion have been filed

12   by five different defendants or groups of defendants as

13   applicable.  And a reply pleading was filed by ULICO.  The Court

14   has reviewed all of the pleadings filed by the parties in the

15   adversary proceeding, the cases cited therein, and considered

16   the arguments made by the parties in today's hearing.

17        This Court must first address the issue as to whether

18   the Court has subject matter jurisdiction with respect to the

19   adversary proceeding.  At set forth in the FAC, Private Bankers

20   Life and Annuity Co., Ltd., which I'll refer to as PBLA, entered

21   into reinsurance and trust agreements with ULICO on June 30,

22   2017, under which PBLA was to reinsure life insurance and

23   annuities that ULICO provided to third parties.  Under the

24   agreement, ULICO provided the trust with sufficient assets to

25   meet the statutory reserve requirements for the reinsured

PB Life and Annuity Co., Ltd. - 4/14/22                    58

1    policies.  PBLA, under the agreements, had the right to manage

2    the investment of the trust assets.

3          In the FAC, ULICO alleges that Greg Lindberg and his

4    co-conspirators stripped the trust by monetizing its assets and

5    transferring the cash from the trust first to PBLA, and then to

6    other entities in the guise of debt instruments.  See FAC,

7    paragraph 9.  ULICO and PBLA engaged in arbitration.  The

8    arbitration panel declared the PBLA had breached its contractual

9    obligations and ordered PBLA to pay ULICO in excess of $524

10   million.  ULICO petitioned the District Court for the Southern

11   District of New York to confirm the arbitration award.  The

12   District Court confirmed the arbitration award and a judgment

13   was issued on August 11, 2020.

14         PBLA filed a chapter 15 petition with this Court and

15   this Court granted recognition of the Bermuda winding up

16   proceeding pending in the Supreme Court of Bermuda.  Also called

17   joint provisional liquidation.  PBLA is not a party to this

18   adversary proceeding.

19         On October 5, 2021, ULICO and PBLA entered into a

20   settlement agreement, which I'm going to reference as the

21   settlement agreement.  29 USC §1334(b) provides that district

22   court may exercise subject matter jurisdiction only over those

23   cases arising under Title 11, arising in, or related to cases

24   under Title 11.  28 USC §157(a) provides that the district

25   courts may refer any and all proceedings arising in or related

PB Life and Annuity Co., Ltd. - 4/14/22                59

1   to a case under Title 11 to the bankruptcy judges for the

2   district.  Plaintiff bears the burden of proving that this Court

3   has subject matter jurisdiction over this action.  See **Merhav**

4   **Ampal Grp., Ltd. v. Merhav Ltd. (In re Ampal-American Israel**

5   **Corp.**), 14-02385 2015 Bankr. LEXIS 2934 at *23 (Bankr. SDNY

6   Sept. 2, 2015).  Plaintiff asserts that this Court has related-

7   to subject matter jurisdiction.  In the 2d Circuit, a proceeding

8   is related to a bankruptcy case where the outcome of that

9   proceeding might have any conceivable effect on the bankruptcy

10  estate.  See **SPV Osus Ltd. v. UBS AG**, 882  F. 3d 339, 340 (2d

11  Cir. 2018).  See also, **Parmalat Capital Finance Ltd. v. Bank of**

12  **America Corp.**, 639 F. 3d 572, 579 (2d Cir. 2011).

13          A chapter 15 case as has been previously noted in

14  argument, does not create a bankruptcy estate at the time of

15  filing, as it constitutes process that is ancillary to a primary

16  proceeding brought in a foreign nation and concerning a foreign

17  estate.  Therefore, in a chapter 15 case, the conceivable effect

18  test is applied to the foreign estate.  See **Fairfield Sentry**

19  **Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Ltd. Inc.**), 10-

20  03496 2018 Bankr. LEXIS 2324 at *18 (Bankr. SDNY Aug. 6, 2019).

21  See also the **Parmalat** case previously cited at page 578.  "There

22  is no need to distinguish between estates administered

23  principally in foreign forums and those administered principally

24  in domestic forums."

25          A court may exercise related-to jurisdiction over a

PB Life and Annuity Co., Ltd. - 4/14/22                    60

1   proceeding that could alter the debtor's rights, liabilities,

2   options or freedom of action and impact the handling or

3   administration of the estate in any way.  See **Celotex Corp. v.**

4   **Edwards,** 514 US 300, 308, note 6 (1995).  See also, **In re Ampal-**

5   **American Israel Corp.** 14-02385 2015 Bankr. LEXIS 2934 at *21

6   (Bankr. SDNY Sept. 2, 2015).  However, related-to jurisdiction

7   is not without limits.  Applying conceivable effect tests

8   typically give rise to related-to jurisdiction in three

9   circumstances in this district.  See **Worldview Entertainment**

10  **Holdings v. Woodrow**, 611 B.R. 10, 17 (Bankr. SDNY 2019).

11          First, when the outcome of a case would directly

12  impact distribution to creditors.  See **In re Fairfield Sentry**

13  **Ltd.,** 218 Bankr. LEXIS 2324 at *19.  Finding, related-to

14  jurisdiction in adversary proceedings in which any recovery

15  would directly increase the size of the foreign estate.  Second,

16  when third-.party non-debtor claims are enjoined because the

17  claims might directly affect the results of the bankruptcy

18  estate.  See **In re Ditech Holding Corp.**, 606 B.R. 544, 626

19  (Bankr. SDNY 2019).  Finding, related-to jurisdiction to grant

20  third party releases of certain claims with litigation of the

21  claims could impact the value of the estate.  Third, when the

22  case involves a third party with a reasonable legal basis for an

23  indemnification or a contribution claim against the debtor.  See

24  **SPV Osus Ltd.,** 882  F. 3d 340-342.  Finding, a potential

25  contribution claim against the debtor gave rise to related to

PB Life and Annuity Co., Ltd. - 4/14/22                61

1    jurisdiction over third party litigation.

2            none of the three factors described above which the 2d

3    Circuit has found related jurisdiction present in this

4    proceeding.  PBLA is not a party to this action and PBLA's

5    property it's not the subject of this action.  A judgment in

6    this adversary proceeding would have no effect on the value of

7    PBLA's foreign estate assuming that the settlement agreement

8    does not affect the analysis of the subject matter jurisdiction,

9    which I'll address shortly.  Nor will it impact the foreign

10   bankruptcy race.  Finally, none of the parties in this

11   proceeding argue that there are any grounds for an

12   indemnification what contribution plan against PBLA.

13           Resolution of ULICO's claims in this action would have

14   no direct effect on PBLA foreign assets because PBLA is not a

15   party to this action.  PBLA's property is not the subject of

16   this adversary proceeding.  the connection between the main

17   bankruptcy case and this action is diminished first and foremost

18   by the fact that PBLA is not a named party.  See Worldview

19   Entertainment holdings, 611 B.R. 17.  Finding, non-debtor claims

20   are not related to the main bankruptcy proceeding because the

21   outcome of non-debtor claims will not directly affect the

22   bankruptcy race because the debtor is not a party to those

23   claims.  Moreover, but for the settlement agreement, there is

24   nothing that requires ULICO to offset any funds recovered in

25   this adversary proceeding against its claim and bring an

PB Life and Annuity Co., Ltd. - 4/14/22                    62

1   insolvency proceeding.

2          In addition, the property sought by ULICO in this

3   action is property of the trust.  See FAC at paragraphs 144,

4   152, 155, 157, 158, 162, 166.  And therefore, the affect of a

5   judgment would alter the liabilities of and relationship between

6   ULICO and the defendants rather than between ULICO and PBLA.

7   Thus, because PBLA is not a party to this action, and the

8   property sought is that of the trust, no outcome of this

9   proceeding will likely have a direct affect on PBLA's foreign

10  estate.

11         ULICO argues that if it were to recover funds from the

12  defendants in this action, then PBLA will not have to pay ULICO

13  as much on its claim and will have more money to distribute to

14  the other creditors.  However, ULICO has a judgment for a

15  specific amount, which is the amount of its allowed claim in the

16  PBLA Bermuda insolvency proceeding.  PBLA is liable to ULICO for

17  that amount.  The Court has reviewed both U.S. and Bermuda law

18  regarding setoff and there does not appear to be a basis under

19  either law for a triangular setoff.  This is because ULICO does

20  not owe PBLA a pre-petition debt.  To be eligible for a setoff

21  under Section 553 of the Bankruptcy Code, the owed by a debtor

22  must be a pre-petition debt.  The debtor's estate against the

23  creditor must also be pre-petition, and the debtor's claim

24  against the creditor and the debt owed to the creditor must be

25  mutual.  See **In re Lehman Bros.**, 458 B.R. 134, 139 (Bankr. SDNY

PB Life and Annuity Co., Ltd. - 4/14/22                    63

1   2011)

2          The two factors have satisfied first the amount owed

3   by PBLA is a pre-petition debt, as is the unsatisfied judgment

4   at which upon ULICO's claim against the Bermuda estate is

5   predicated.  And the judgment itself was entered pre-petition on

6   August 11, 2020.  Second, PBLA's alleged fraudulent transfer

7   that ULICO seeks to recovery through this action occurred pre-

8   petition in 2017-2018.  However, the third element of mutuality

9   is not present here because ULICO does not owe a debt to PBLA.

10          Bermuda Insolvency Law, like Section 553 of the

11  Bankruptcy Code, contains a mutuality requirement when assessing

12  setoff rights.  The Bankruptcy Act of 1989, which governs

13  personal bankruptcies and due to incorporation by reference in

14  Section 235 of the Company's Act applies to corporate insolvency

15  as well.  Section 37 of the Bermuda Bankruptcy Act of 1989

16  provides, "where there have been mutual credits, mutual debts or

17  other mutual dealings, between a debtor against whom a receiving

18  order shall be made under this Act and any other person proving

19  or claiming to prove a debt under the receiving order, an

20  account shall be taken of what is due from the one party to the

21  other in respect of the mutual dealings, and the sum due from

22  the one party shall be set off against any sum due from the

23  other party, and the balance of the account, and no more, shall

24  be claimed or paid on either side respectively; but a person is

25  not entitled under this section to claim the benefit of any set-

PB Life and Annuity Co., Ltd. - 4/14/22          64

1   off against the property of a debtor in any case where he had,

2   at the time of giving credit to the debtor, notice of an act of

3   bankruptcy committed by the debtor and available against him.

4   Bankruptcy Act of 1989, Section 37.

5          Thus, there are no grounds for ULICO to setoff amounts

6   recovered from the defendants against its claim against PBLA in

7   Bermuda's insolvency proceeding.

8          Under the Bankruptcy Code, there is a provision that

9   precludes a creditor from being paid more than 100 percent of

10  its claim.  The Court does not know if there is something

11  similar under Bermuda Insolvency Law, but even if there were, it

12  is the Court's view that the possibility that ULICO's recovery

13  on its claim against PBLA in the Bermuda insolvency proceeding

14  might have to be cut back because of the recovery in this action

15  is not a sufficient basis for this Court to predicate related-to

16  subject matter jurisdiction.  The settlement agreement itself

17  does not create a basis for subject matter jurisdiction because

18  it post dates the FAC.  It is well established that a court's

19  jurisdiction is to be determined as of the date an action was

20  brought.  See **SIPC v. Bernard L. Madoff Investment Securities**

21  **LLC,** 597 B.R. 466, 481 (Bankr. SDNY 2019).  The time of filing

22  rule assesses a court's subject matter jurisdiction based on the

23  circumstances in existence at the time that the action was

24  filed.

25          Though the time of filing rule has been primarily used

PB Life and Annuity Co., Ltd. - 4/14/22                    65

1   to assess the presence of diversity of jurisdiction, it has been

2   held to apply generally in determination of federal jurisdiction

3   including a bankruptcy court's subject matter jurisdiction.  **Id.**

4   at 482.  In its omnibus opposition brief in connection with the

5   motions to dismiss, ULICO asserts that the settlement agreement

6   removes any doubt as to whether the Court has subject matter

7   jurisdiction over this adversary proceeding and points to the

8   following excerpt from the agreement.  The JPLs acknowledge and

9   confirm their view that the adversary proceeding impacts the

10  JPLs rights and liabilities and that any recoveries by ULICO in

11  that adversary proceeding shall inure to the benefit of the JPL

12  as referenced in this agreement.  The JPLs are therefore

13  expressly of the view that this action relates to the bankruptcy

14  court action as that term is understood under federal law.

15          However, this portion of the settlement agreement is

16  insufficient to provide a basis for this Court to have subject

17  matter jurisdiction because the agreement was entered into on

18  October 5, 2021, which postdates the filing of the original

19  complaint in this action, as well as the filing of the FAC.  At

20  the time that this action was commenced, the settlement

21  agreement had not yet been signed and therefore cannot be

22  considered in this Court's subject matter analysis.

23          The time of filing rule also provides and applies in

24  the application of the conceivable effect test and provides that

25  in assessing whether the Court has related-to jurisdiction, the

PB Life and Annuity Co., Ltd. - 4/14/22                    66

1    question about whether a proceeding has a conceivable effect on

2    an estate is to be determined according to the facts as of the

3    date when the action was filed.  See **SIPC v. Madoff,** at page

4    482.  The conceivable effect test does not require federal

5    district courts to constantly revisit jurisdictional findings to

6    determine whether the effect of the litigation on the bankruptcy

7    court remains conceivable.  This was affirmed by the 2d Circuit,

8    368 F. 3d 286 (2004).

9         The settlement agreement provides as follows.  Any

10   funds recovered in the adversary proceeding or the trust account

11   shall be credited against PBLA's obligations under the judgment

12   in the original district court action.  ULICO contends that the

13   current proceeding would have a conceivable effect on PBLA's

14   liability because pursuant to the settlement agreement, ULICO

15   will reduce it's claim against PBLA by any amount recovered in

16   the present action.  This contention might have had some merit

17   if the action was filed after the settlement agreement took

18   effect, however, that is not what occurred.

19        Accordingly, this Court finds that it does not have

20   subject matter jurisdiction over the adversary proceeding.  The

21   Court knows that there are various other issues raised with

22   respect to the motion, including the failure to plead with

23   sufficient particularity, the application of the statute of

24   limitations, and the futility of the granting of the motion and

25   the amendment of the complaint.  But this Court is not going to

PB Life and Annuity Co., Ltd. - 4/14/22                    67

1    address any of those issues with respect to the motion because

2    of its ruling that it lacks subject matter jurisdiction.

3    Accordingly, the Court denies the motion on the grounds that it

4    lacks subject matter jurisdiction with respect to the adversary

5    proceeding and will enter an order denying the motion and

6    dismissing the adversary proceeding.

7            MR. CAMERON:  Your Honor, may I ask a question?

8            THE COURT:  You may.

9            MR. CAMERON:  So, it's your intention to enter a final

10   order finding that the court lacks subject matter jurisdiction.

11   Are you going to address issue about diversity in that order or

12   no?

13           THE COURT:  I am not because as you pointed out to me,

14   it doesn't mater.  If I don't have subject matter jurisdiction

15   under this, then as we discussed, then I don't have jurisdiction

16   either under the reference because I've determined that I don't

17   have 1334 diversity jurisdiction.  And therefore, this complaint

18   has to be dismissed because there isn't an ability for me to --

19   or you, for that matter, actually more appropriately, there

20   isn't an ability for me to contact the District Court and say,

21   this should be before you.  We discussed that.  But moreover,

22   you don't have the ability to seek a withdrawal of the reference

23   because there is no reference, as you yourself have argued

24   appropriately.  And as we've discussed, if there isn't a

25   reference by virtue of it being a related-to matter, and it is a

PB Life and Annuity Co., Ltd. - 4/14/22                    68

1   diversity matter, then it is something that can't be withdrawn,

2   and therefore there would have to be a dismissal of the action

3   here.  And if you determine to file another complaint in the

4   SDNY or if you determine to file a complaint in the state courts

5   in North Carolina or the state court in New York, all of that is

6   possibly available to you.  I'm not ruling in any way, of

7   course, on the merits of the standing argument or any of the

8   other things that have been raised here with respect to those

9   actions.  I'm simply saying that I don't have jurisdiction under

10  1334, and therefore, as you noted yourself, there isn't an issue

11  with my having diversity jurisdiction, and there isn't a

12  withdrawal of the reference possibility.  So, I think that's

13  what I'm going to rule on and I'm going to dismiss the action

14  based on that.  As you yourself noted, if you were going to

15  pursue a diversity action, you would need to commence it in SDNY

16  itself in the District Court.

17          MR. CAMERON:  Thank you, Your Honor.

18          THE COURT:  All right.  Thank you all.  I appreciate

19  everybody's hard work on their papers, and it's an interesting

20  issue, of course.  There are lots of issues in this case, and

21  obviously not one that's been actually ever decided in the

22  context of these particular facts in the United States.  But

23  that seems to be the way things go in this court.  And so I just

24  want to thank everybody for all their work and their appearances

25  today, and unless there's anything else, court is adjourned.

PB Life and Annuity Co., Ltd. - 4/14/22                    69

1          ALL COUNSEL:  Thank you, Your Honor.

2          THE COURT:  You all my be excused.  And have a nice

3    day.

4                          - o0o -

5                        CERTIFICATION

6    I, Rochelle V. Grant, approved transcriber, certify that the

7    foregoing is a correct transcript from the official electronic

8    sound recording of the proceedings in the matter of 21-01169,

9    held on 4/14/22.

10   *Rochelle V. Grant*

11   April 28, 2022

12   AA Express Transcripts
     (888) 456-9716
     contact@aaexpresstranscripts.com
13

14

15

16

17

18

19

20

21

22

23

24